**IN THE UNITED STATED DISTRICT COURT**
**FOR THE**
**NORTHERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| **ASSOCIATION OF TAXICAB** | ) | |
| **OPERATORS, USA, D.E.C.D.A, INC.** | ) | |
| **d.b.a. STARCAB, MAREDI** | ) | |
| **CORPORATION d.b.a. UNITED CAB,** | ) | |
| **E.P.D.A., INC. d.b.a. ALAMO CAB, INC.,** | ) | |
| **WALAAL CORPORATION d.b.a.** | ) | |
| **AMBASSADOR CAB COMPANY, and** | ) | |
| **PLAINTIFFS LISTED IN EXHIBIT A,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. _____** |
| | ) | |
| **YELLOW CHECKER CAB COMPANY** | ) | |
| **OF DALLAS/FORT WORTH, INC.,** | ) | |
| **IRVING HOLDINGS, INC., MSS** | ) | |
| **TRANSPORTATION d/b/a FREEDOM** | ) | |
| **CAB COMPANY, JETTAXI, INC.,** | ) | |
| **ABC CAB, INC. d/b/a EAGLE CAB** | ) | |
| **COMPANY, CHECKER CAB** | ) | |
| **COMPANY OF DALLAS, LTD.,** | ) | |
| **CHECKER CAB COMPANY OF** | ) | |
| **DALLAS MANAGEMENT, L.L.C.,** | ) | |
| **U.S. CAB, L.L.C., AMBACO, L.L.C.** | ) | |
| **d/b/a DIAMOND CAB COMPANY,** | ) | |
| **RACASON, INC. d/b/a STATE** | ) | |
| **TAXICAB COMPANY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**COMPLAINT**

1.      Plaintiffs, the Association of Taxicab Operators, USA, D.E.C.D.A, Inc. d/b/a

Starcab, Maredi Corporation d/b/a United Cab, E.P.D.A., INC. d/b/a Alamo Cab, Inc., Walaal

Corporation d/b/a Ambassador Cab Company, and all the individuals listed in the attached

Exhibit A Rule 10(a) Compliant Caption for Complaint, (collectively, "Plaintiffs"), file this

Complaint alleging antitrust violations against Defendants Yellow Checker Cab Company of

Dallas/Fort Worth, Inc., Irving Holdings, Inc., MSS Transportation, Inc. d/b/a Freedom Cab

Company, JetTaxi, Inc., ABC Cab, Inc. d/b/a Eagle Cab Company, Checker Cab Company of

Dallas, Ltd., Checker Cab Company of Dallas Management, L.L.C., U.S. Cab, L.L.C.,

RACASON, Inc. d/b/a State Taxicab Company, AMBACO, L.L.C. d/b/a Diamond Cab

Company, and in support thereof, state the following:

## I.

### PRELIMINARY STATEMENT

2.      An individual cannot obtain the authority to operate a taxicab in Dallas, Tarrant

and Collin Counties.  Instead, licensed taxicab drivers must contract with franchise or annual

permit holders ("Holders") which have been approved by local regulators, including the cities of

Dallas, Fort Worth, Addison, Arlington, Hurst, Irving, Mesquite, Plano, and DFW Airport, to

operate fleets of taxicabs.  The drivers are not employees of the Holders.  They are independent

contractors who pay Holders a "Stand Fee" in exchange for the right to operate an authorized

taxicab.  Through the Defendant entities, two individuals – Jack Bewley and Jeff Finkel – assert

dominant control over approximately 52% of the authorized taxicabs in Dallas, Tarrant, and

Collin Counties.  Defendant Yellow Checker Cab Company of Dallas/Fort Worth, Inc., which is

owned and directed by Bewley and Finkel, operates about 36% of the authorized taxicabs in this

market.  Bewley and Finkel also control companies holding another approximately 16% of

taxicab operating authorities through two different mechanisms.  Defendant Irving Holdings,

Inc., owned and managed exclusively by Bewley and Finkel, is the 100% owner of Yellow's

ostensible competitors, Freedom, Eagle, and Jet taxi companies.  These companies hold another

12% of the market.  Through management contracts, Bewley and Finkel control an additional 4%

of authorized taxicabs represented by State, Checker, and Diamond taxi companies.  Thus, using

entities they control by various means, Bewley and Finkel control 52% of the relevant market – which is authorized taxicabs in Dallas, Tarrant, and Collin Counties.

3.      Having achieved this level of market dominance through consolidation, Defendants have (1) fixed Stand Fee prices across the relevant product market, (2) engaged in predatory pricing with respect to Stand Fees, and (3) engaged, and are continuing to engage, in a conspiracy to monopolize the market.  The Plaintiff taxicab companies are Defendants' competitors in the market.  The individual Plaintiffs are drivers who pay Stand Fees to Holders and drive taxicabs authorized to operate in the relevant geographic market.  The Association of Taxicab Operators, USA is a trade group representing the interests of its member drivers situated as the individual Plaintiffs, but lacking the financial means to join the litigation personally. Plaintiffs bring this suit to stop Defendants' antitrust violations by breaking up Defendants' market consolidation and to redress the damages Plaintiffs already have sustained since Defendants' scheme started.

## II.

## PARTIES AND SERVICE OF PROCESS

4.      The individual Plaintiffs listed in the attached Exhibit A – Rule 10(a) Compliant Caption for Complaint, are individually licensed taxicab drivers who regularly operate taxicabs for hire within this District.

5.      Plaintiff, D.E.C.D.A., Inc. d/b/a StarCab, ("Star"), is a Texas Corporation with its principal place of business in within this District.

6.      Plaintiff, Maredi Corporation d/b/a United Cab Company ("United"), is a Texas Corporation which regularly and routinely conducts business within this District.

7.      Plaintiff, E.P.D.A., Inc. d/b/a Alamo Cab, Inc., ("Alamo"), is a Texas Corporation

with its principal place of business within this District.

8.      Plaintiff, Walaal Corporation d/b/a Ambassador Cab, ("Ambassador"), is a Texas Corporation with its principal place of business within this District.

9.      Plaintiff, Association of Taxicab Operators, USA, is a Texas non-profit corporation which has its primary place of business within this District.

10.     Plaintiff Association of Taxicab Operators, USA has standing to bring suit in a representational capacity on behalf of its members. Plaintiff's members would otherwise have standing to sue in their own right. All of the organization's membership are affected by the challenged conduct. Some such members are individual Plaintiffs. Others cannot afford to join the litigation individually.

11.     The interests Plaintiff Association of Taxicab Operators, USA ("ATO") seeks to protect with the lawsuit are germane to its purpose. Plaintiff ATO's articles of incorporation include the following stated purposes to which this litigation is germane:

      b.      to defense [sic] and promote the interest of taxicab operators in the  greater Dallas and fort [sic] Worth area.

*      *      *

      d.      Assistance in the procurement of supplies, equipment, and services through group and wholesale purchases. To provide Legal and Financial services to all qualified members [sic].

In filing this suit, Plaintiff ATO is taking a legal position that promotes the interests its members.

12.     Neither the claim asserted nor the relief requested by Plaintiff ATO require the participation of individual members in the lawsuit. The Court may grant the relief requested by Plaintiff ATO that does not require proof of the individual circumstances of its members. The

equitable and injunctive relief sought by Plaintiff ATO are the types of relief which satisfy this requirement.

13.     Defendant, Yellow Checker Cab Company of Dallas/Fort Worth, Inc. ("Yellow" or "Yellow Cab") is a Texas Corporation conducting business within this District which may be served through its registered agent, Jack Bewley, at 2515 Irving Blvd., Dallas, Texas 75207.

14.     Defendant, Irving Holdings, Inc. ("Irving Holdings") is a Texas Corporation with a primary place of business within this District which may be served through its registered agent, Jack Bewley, at 2515 Irving Blvd., Dallas, Texas 75207.

15.     Defendant, MSS Transportation, Inc. d/b/a Freedom Cab Company ("Freedom" or "Freedom Cab") is a Texas Corporation is a Texas Corporation with a primary place of business within this District, which may be served through its registered agent, Jack Bewley, at 2515 Irving Blvd., Dallas, Texas 75207.

16.     Defendant, JetTaxi, Inc. ("Jet" or "JetTaxi") is a Texas Corporation with a primary place of business within this District, which may be served through its registered agent, Jack Bewley, at 2515 Irving Blvd., Dallas, Texas 75207.

17.     Defendant, ABC Cab, Inc. d/b/a Eagle Cab Company ("Eagle" or "Eagle Cab") is a Texas Corporation with a primary place of business within this District, which may be served through its registered agent, Jack Bewley, at 2515 Irving Blvd., Dallas, Texas 75207.

18.     Defendant, Checker Cab Company of Dallas, Ltd. ("Checker" or "Checker Cab") is a Texas Limited Partnership with a primary place of business within this District, which may be served through its registered agent, Jan Deborah Richards, at 2220 S. Riverside Dr., Fort Worth, Texas 76104.

19.     Defendant, Checker Cab Company of Dallas Management, L.L.C., ( "Checker" or

"Checker Management") is a Texas Limited Liability Company which is the general partner of Defendant Checker Cab Company of Dallas, Ltd., may be served through its registered agent for service, Jan Deborah Richards, at 2220 S. Riverside Dr., Fort Worth, Texas 76104.

20.     Defendant, U.S. Cab, L.L.C. ("US Cab") is a Texas Limited Liability Company with a principal place of business within this District, which may be served through its registered agent, Jack Bewley, at 2515 Irving Blvd., Dallas, Texas 75207.

21.     Defendant, AMBACO, L.L.C. d/b/a Diamond Cab Company ("Diamond" or "Diamond Cab") is a Texas Limited Liability Company with a primary place of business within this District, which may be served through its registered agent, Asad Bahaji, at 10822 Steppington Dr., Apt. 3301, Dallas, Texas 75230.

22.     Defendant, RACASON, Inc. d/b/a State Taxicab Company ("State" or "State Taxi") is a Texas Corporation found and conducting business within this District, which may be served through its registered agent, Jack Bewley, at 2515 Irving Blvd., Dallas, Texas 75207.

### III.

### JURISDICTION AND VENUE

23.     This Complaint raises claims under 15 U.S.C. § 15 (Section 4 of the Clayton Act) in order to prevent and restrain violations by the Defendants of 15 U.S.C. §§ 1 and 2 (Sections 1 and 2 of the Sherman Act) and 15 U.S.C. § 18 (Section 7 of the Clayton Act).  This Court has subject matter jurisdiction over this case under 15 U.S.C. § 4 (Section 4 of the Sherman Act) and 28 U.S.C. §§ 1331 because this case arises and is brought under the federal antitrust statutes.

24.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because each Defendant is found and transacts business in the Northern District of Texas.  Substantially all the acts and omissions of Defendants giving rise to the claims complained of herein have occurred in

the Northern District of Texas.  Each Defendant is subject to personal jurisdiction here, and each

of the Defendants' contacts with the Northern District of Texas would be sufficient to confer

personal jurisdiction if the Northern District of Texas were a separate state.

## IV.

### NATURE AND EXTENT OF TRADE AND COMMERCE AFFECTED BY DEFENDANTS' CONDUCT

25.     The relevant product and geographic markets are providers of taxicab

authorizations ("Decals"), dispatch, insurance, and related services received by taxicab operators

in exchange for Stand Fees in Dallas, Tarrant and Collin Counties, Texas.  The market is part of

the flow of interstate commerce in the following particulars, among others: (1) the substantial

percentage, perhaps even a majority, of passengers for taxicab services within the market are air

travelers passing through Dallas/Fort Worth International Airport and Dallas Love Field Airport

from other states within the United States and are serviced exclusively by taxicabs in the relevant

product and geographic market, (2) the vehicles used in the provision of taxicab services in the

relevant product and geographic market are manufactured throughout the United States and

elsewhere and purchased in interstate commerce, and (3) taxicab operators picking up airport

passengers routinely transport passengers from such airports to destinations in other states

(examples include transporting military personnel to Altus Air Force Base in Altus, Oklahoma,

and patrons of the casinos and gaming facilities in southern Oklahoma and Shreveport and

Bossier City, Louisiana).

26.     The Defendants together provide approximately 52% of the taxicab services in the

relevant product and geographic market.  The combined sales of the Defendants for taxicab

services within this area run into the millions of dollars annually.

27.    During the period in which Defendants engaged in the conduct challenged by this suit, up to and including the present, taxicabs held and operated under the authority of Defendants provided services to passengers from other states and carried passengers across state lines, in the flow of interstate commerce.  There was, thus, a constant flow in, and effect on, interstate commerce in the provision of taxicab services by Defendants.

V.

**FACTUAL BACKGROUND RELEVANT TO ALL CLAIMS**

**A.    Description of the Taxicab Market in the Dallas, Tarrant and Collin Counties.**

28.    All of the Defendants and Plaintiffs Alamo, Ambassador, Star, and United are Decal holders for taxicabs in the Dallas, Tarrant and Collin Counties (collectively these companies are referred to as "Holders").  Under the City of Dallas's rules for granting operating authority – which through control of Dallas Love Field and DFW Airport, effectively control the entire relevant market in terms of setting minimum standards for obtaining Holder status – Holders generally must have at least 25 taxicabs either owned or driven for them by an owner operator, in order to hold Decals in this market.  Currently, due to a 2003 City of Dallas moratorium on the addition of new Holders, which DFW Airport joined in 2009, no new competitors can enter the market.  As long as the moratoriums remain in effect, any consolidation among the limited number of Holders causes a permanent reduction in competition that as a practical matter, cannot be offset by new market entries.  Taxicab drivers in the relevant geographic market operate taxicabs with Decals granted to the Holders by area cities including Dallas, Fort Worth, Irving, Arlington, Addison, Plano, Mesquite, and Hurst, as well as by DFW Airport.  To obtain the use of Decals from Holders, individual taxicab drivers pay Holders a "Stand Fee."  In exchange for the Stand Fee, Drivers receive Decals to operate (which vary

between taxicabs), insurance, dispatch services, decals, branding and trade name rights.

29.     To make a living as a taxicab operator in the Dallas, Tarrant and Collin Counties, drivers generally need an operator's license, a properly outfitted taxicab, a Decal granting authority operate it out of either DFW Airport or Dallas Love Field, some means of obtaining dispatches, and insurance and inspections satisfying the requirements of their regulators. Technically, a taxicab operator could operate without access to an airport, but it would be virtually impossible to obtain a sufficient number of trips to cover operating costs. Drivers are responsible for obtaining their own taxicab operator's licenses. For a car, some drivers lease cars owned by the Holders (or their related companies), while others own their own taxicabs, but obtain their Decals by affiliating with Holders. Generally, a company must have 25 taxicabs to obtain operating authority from the cities or DFW Airport, though one company holds authority for only 18 taxicabs through the City of Plano, which also have DFW Airport Decals. All Holders are required to have independent dispatch facilities and insure the taxicabs for which they hold Decals. City of Dallas and DFW Airport regulations require that insurance be through a company the decision making for which is not controlled by the Holder. The limitation of Decals to fleet-sized companies results in all drivers being required to go through the Holders in order to be authorized to operate.

B.      **Pricing of Stand Fees**

30.     The price paid for a Stand Fee varies widely depending upon the Decals and dispatch services received by a driver in exchange for the Stand Fee. Defendants have access through Yellow and Irving Holdings to a computer dispatch system that allows taxicabs to be dispatched to locations throughout the Dallas/Fort Worth area. All of Yellow's taxicabs have access to the computer dispatch system. Almost all, if not all, of the taxicabs equipped for the

computer dispatch system also have operating authority at DFW Airport and the City of Dallas (which allows access to Dallas Love Field). References throughout this Complaint to "Computer Dispatch" taxicabs or the Stand Fees associated with the computer dispatch system are to these taxicabs. Computer Dispatch Stand Fees are the most expensive in the market.

31.     Defendants Eagle, Jet, Freedom, State, Checker and Diamond offer a Stand Fee for taxicabs that have Decals for DFW Airport and Dallas, but are not equipped for access to the Computer Dispatch system. Most are, instead, radio dispatched. These are referred to throughout this Complaint as "Airport with Dallas Decal" authorities or Stand Fees.

32.     Defendants Eagle, Jet, Freedom, State, Checker and Diamond, as well as Plaintiffs Alamo, Ambassador, Star and United offer radio dispatched Decals for DFW Airport only. These are the least expensive Stand Fees, and are referred to throughout this Complaint as "Airport Only" authorities or Stand Fees. Plaintiffs Alamo, Ambassador, Star and United offer a "Dallas Only" option as well.

33.     Current approximate pricing for Computer Dispatch, Airport with Dallas Decal, Dallas Only, and Airport Only authorities among the Holder parties is as follows:

| Holder | Computer Authority Price per Week | Airport with Dallas Decal Price per Week | Airport Only Price per Week (based on $99 per month) |
|---|---|---|---|
| **Defendants** | | | |
| Yellow | $215 | | |
| Eagle | $215 | $110 | $22.85 |
| Jet | $215 | $110 | $22.85 |
| Freedom | $215 | $110 | $22.85 |
| State | $215 | $110 | $22.85 |
| Checker | $215 | $110 | $22.85 |
| Diamond | $215 | $110 | $22.85 |
| **Plaintiffs** | | **Dallas Decal Only** | |
| Alamo | - | $125 | $79 |
| Ambassador | - | $109 | $69 |
| Star | - | $110 | $110 |
| United | - | - | $80 |

## C.    Centralized Ownership and Control of Defendants

34.    It is no coincidence that all the Defendant Holders are priced in lockstep.  While they maintain the appearance of being competitors in the taxicab market, all these Defendants are controlled, and most are indirectly owned, by Jack Bewley and Jeff Finkel.  Defendants Irving Holdings and Yellow are owned by Bewley and Finkel, and they are the only directors of either company.  Defendant Irving Holdings is the 100% owner and parent corporation of Defendants JetTaxi, Freedom, and Eagle.  Mr. Bewley also manages day to day operations and provides dispatch facilities and other services for Defendants Checker, Diamond, State, and US Cab.  Through this control structure, Defendants engage in the anti-competitive conduct that forms of the basis of this suit.

# VI.

## ANTITRUST VIOLATIONS

**COUNT I: PRICE FIXING**

35.     All of the facts alleged throughout this Complaint are re-alleged in this Count as though set forth fully herein.

36.     Beginning at least as early as 2007, and continuing at least through the date of filing of this Complaint, Defendants have engaged in a combination and conspiracy in unreasonable restraint of interstate trade and commerce in violation of 15 U.S.C. § 1 and attempted monopolization or conspiracy to monopolize in violation of 15 U.S.C. § 2. This unlawful conduct will continue or may be renewed, if ceased at some point while the case is pending, unless the Court grants the relief requested in this Complaint.

37.     The combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among the all Defendants to fix and maintain the Stand Fee prices at the amount set by Defendants. Each Defendant acted in furtherance of this combination and conspiracy by agreeing to charge, and charging, the same price for each type of Stand Fee.

38.     Holders are the competitors in the relevant product market. The relevant product is the bundle of rights the taxicab drivers receive in exchange for their Stand Fees. The taxicab drivers, which include the individual Plaintiffs, and also are represented in an associational capacity for the purpose of pursuing injunctive and other equitable relief by Plaintiff Association of Taxicab Operators, USA, are the consumers of the relevant product.

39.     This price fixing combination and conspiracy has affected trade or commerce by fixing and maintaining Stand Fees, and by restraining, suppressing and eliminating competition within the relevant market.

## COUNT II – PREDATORY PRICING

40.     All of the facts alleged throughout this Complaint are re-alleged in this Count as though set forth fully herein.

41.     For operational purposes, as to this Count, Defendants should be held jointly and severally liable for the conduct of all other Defendants.  Defendants Eagle, Freedom, Jet, State, U.S. Cab, Checker and Diamond are mere tools or business conduits for Defendants Irving Holdings and Yellow.  The totality of these entities' dealings with one another shows that they are so entwined that treating them as separate would result in injustice.  Defendants also are operating as a single business enterprise by sharing common dispatch facilities and employees, servicing customers of one Defendant with employees of another, sharing dispatch facilities and personnel, dispatching taxicabs from one Defendant to service customer calls made to another of the Defendants.  The corporate forms of the Defendants also should be disregarded because their scheme of operation is being used to hide the perpetration of a monopoly or attempted monopoly and circumvent the requirements of United States antitrust laws.

42.     Operating as described in the previous paragraph, Defendants have engaged in predatory pricing of Stand Fees.  The $99 per month DFW Only Stand Fee charged by Defendants is below the average increased costs incurred by Defendants for insurance alone on each additional taxicab authorized and serviced.  Other marginal costs, such as decals, airport usage fees, marginal dispatch costs and the like, make the disparity between pricing and costs even more imbalanced.  This DFW Only Stand Fee is one of the primary types of Stand Fees Plaintiffs Alamo, Ambassador, Star and United offer in the market.  The effect of this in the Stand Fee market is that any time a taxicab with DFW Only authority becomes available through Defendants Eagle, Freedom, Jet, State, U.S. Cab, Checker or Diamond, one of the Plaintiff

Holders, or a similarly situated competitor that is not controlled by Defendants, loses a taxicab operator. The erosion caused by this phenomenon is accelerated by the fact that smaller Holders such as Plaintiffs are unable to maintain authorities for dormant taxicabs. Thus, Defendants' predatory pricing scheme not only diminishes Plaintiffs' competitive position through loss of drivers, but also damages their long term competitive position by causing them to lose taxicab authorities. The moratorium further compounds this anticompetitive effect by ensuring that there will be no new entries into the market. Since 2007, this scheme has resulted in a siphoning of 4% of market share from Plaintiff Holders to Defendants collectively.

43. Defendants have ever-increasing dominant or monopoly power that will allow them to recoup ever greater portions of their initial losses from below-cost pricing. Here, Defendants already have found ways to recoup such costs. One means is by leveraging the requirement that taxicabs in this market be no more than 5 years old. Rather than allowing operators using Defendants' Decals to go all the way to the end of their final year, Defendants require cabs that would have to be replaced at year end to cease operations at or near the end of October. Having cut the driver off from the driver's current taxicab, Defendants then can push operators to take over another taxicab, usually one of the $215 per week Computer Dispatch units. Whether the driver is an owner operator or a lessee operator, this scheme pushes drivers first from Plaintiff Holders and similar competitors to the Defendants with predatory prices. Defendants then push those same drivers toward the most expensive Computer Dispatch units. This scheme also has the effect of pushing owner operators to lease from Defendants or their affiliates. The net effect is to make taxicab operators ever more beholden to Defendants through the leveraging of dominant market power, and a further consolidation of a market virtually closed to new competitors.

## COUNT III – CLAYTON ACT VIOLATIONS

44.     All of the facts alleged throughout this Complaint are re-alleged in this Count as though set forth fully herein.

45.     Some time in approximately the second half of 2007, Defendant Irving Holdings became the 100% owner and parent company of Defendants Freedom, Eagle and Jet taxicab companies. This is not the first market consolidation fostered by Irving Holdings. Previously, such competitors in the taxicab market as Choice Cab Company, Terminal Taxi Corporation, Yellow Checker Cab Company of Dallas, Inc., Yellow Checker Cab Company of Fort Worth, Inc., and Big Tex Taxi Corporation were merged into Irving Holdings at its formation. While not the particular subject of this claim, other consolidations of some sort occurred, such that the dispatch telephone numbers of former taxicab competitors Republic, West End, City Cab, and Allied taxicab companies all roll into the dispatch center for Yellow, even though none of these companies have any taxicabs in service. Thus, the merger of Irving Holdings, Freedom, Eagle and Jet occurred after there already had been a huge consolidation into the control sphere of Yellow and Irving Holdings.

46.     The consolidation brought about by the merger of Defendants Irving Holdings, Freedom, Eagle and Jet, and by the *de facto* joint venture these Defendants have entered with Defendants State, Checker, Diamond and Yellow have had the effect of substantially lessening competition and tending to create a monopoly, in violation of Section 7 of Clayton Act. This has produced a concentration of market power after the merger and joint venture of approximately 52% of market share. This concentration of market power is particularly injurious to competition where, as here, barriers to entry are high that new competitors could enter the market only if the moratorium on new Holders is lifted. Collusion and consolidation within the

market already have occurred and likely will continue, as supported by Defendants' lock-step pricing scheme and Defendants' seemingly complete concert of action in the market.

## VII.

## REQUEST FOR CONSIDERATION OF DIVESTITURE REMEDY

47.     Plaintiffs ask that the Court grant injunctive relief enjoining generally the anticompetitive conduct alleged throughout this Complaint.  While the relief requested is stated in terms of general relief, Plaintiffs request that the Court consider breaking up through divestiture and injunction the consortium Defendants have formed over the over the last few years.  Plaintiffs specifically request that the Court consider, and award if appropriate, the following injunctions:

a.     That Defendant Irving Holding, Inc. be required to divest itself of Defendants MSS Transportation, Inc. d/b/a Freedom Cab Company, JetTaxi, Inc., and ABC Cab, Inc. d/b/a Eagle Cab Company, and that such divestiture be to entities that are not owned or controlled by Jack Bewley, Jeffrey Finkel, or any of their affiliates; and

b.     That Defendants Irving Holdings, Inc. and Yellow Checker Cab Company of Dallas/Fort Worth, Inc. be permanently restrained and enjoined from owning or managing by merger, contract, asset purchase or any other means, any of the other Defendants in this case.

## VIII.

## ANTITRUST INJURIES AND RELIEF REQUESTED

48.     Plaintiffs Alamo, Ambassador, Star and United have been injured in their businesses and property by Defendants' antitrust violations described herein.  Specifically, these Plaintiffs are subject to artificially low price competition because of Defendants' predatory pricing scheme.  The competing Plaintiffs also are suffering losses as a result of the pricing

fixing, merger, and *de facto* joint venture which is causing a competitively dangerous consolidation of market power. All of these behaviors reduce competition and harden the pricing structure within the relevant market. With 52% of the market setting prices in lock step, and that same 52% engaging in predatory pricing, market prices are being set by Defendants, not market forces. Consumers, Plaintiff Holders' drivers and former drivers ultimately are driven to higher priced authority options offered by Defendants. Thus, in addition to lost profits in the short term, Plaintiffs Alamo, Ambassador, Star and United are suffering a potentially permanent diminution in their driver base and authorized taxicabs, which devalues their businesses, all as a result of unfair competition by Defendants.

49. The individual Plaintiffs, the consumers of the relevant product, are being injured by Defendants' antitrust violations described above. The predatory pricing and recoupment scheme of Defendants ultimately drives the Stand Fee costs up by reducing the competitors offering taxicab Decals and pushing them into more expensive Computer Stand Fees offered only by Defendants. Plaintiffs also have been denied the benefit of unrestricted competition in Stand Fee prices.

50. Plaintiffs Alamo, Ambassador, Star, United and the Individual Plaintiffs request that after a jury trial on the merits, they receive judgment finding that Defendants have violated Sherman Act Sections 1 and 2 and Clayton Act Section 7 and awarding them, and ordering Defendants jointly and severally to pay, treble their damages, reasonable costs, and their attorneys' fees under Section 4 of the Clayton Act.

51. All Plaintiffs request that Defendants, and their officers, directors, agents, employees and successors, and all other persons acting or claiming to act on their behalf, be restrained and enjoined from:

a.   Continuing, maintaining, or renewing the combination and conspiracy alleged herein in any manner, directly or indirectly; and

b.   Engaging in any other combination, conspiracy, contract, agreement, understanding, or concert of action having a similar purpose or effect.

Date:   August 20, 2010.

Respectfully submitted,

**GLAST PHILLIPS & MURRAY, P.C.**

By:_____
     Kelly D. Hollingsworth
     Texas Bar No. 00793966

14801 Quorum Dr., Suite 500
Dallas, Texas 75254
khollingsworth@gpm-law.com
(972) 419-7180
(972) 419-8329 – fax

**BRYANT LAW FIRM**
John W. Bryant
Texas Bar No. 03277500
5419 Swiss Ave.
Dallas, Texas 75202

**ATTORNEYS FOR PLAINTIFFS**

| | | |
|---|---|---|
| Association Of Taxicab Operators, USA, D.E.C.D.A, Inc. d/b/a Starcab, Maredi Corporation d/b/a United Cab, E.P.D.A., Inc. d/b/a Alamo Cab, Inc., Walaal Corporation d/b/a Ambassador Cab Company, Ah-Hane Yi, Ebenezer Acquaye, Habtamu K. Abate, Tilahun Ali Abayo, Waleed Abdadinageed, Mohamed A. Abdalla, Moustafa Abdalla, Mohammed A. Abdalla, Mohamed A. Abdalla, Badreldin A. Abdelbasit, Tahir M. Abdelhadi, Salaheldin A. Abdelrahman, Mohamed S Abdi, Yasin Osman Abdi, Sahal Abdirahman, Mortaza Abdollahi, Sadeldin M. Abdon, Yonis Abdousemed, Abdulahi M Ali, Abdulhamid Abdulbaki, Abdulkafar Abdulbaqi, Awol Abdulbasit, Ibrahim K. Abdulhameed, Hassan Y Abduljabbar , Liban A. Abdulkadir, Said A. Abdulle, Mohamed A. Abdurahman, Abra Abduwebar, Getachew W. Abebe, Fantahun A. Abebe, Kendie M. Abitew, Wahib I Aboubaker, Abdulhakim B. Abraha, Goitom B. Abraham, Kassim S Abraham , Mengestab Abrha, Mahmoud M. Abuelghanam, Ibrahim M. Abusaad, Kuku S. Adam, Siddig I. Adam, Mustafa E. Adam, Hamid Adib, Richard Adjei, Austin Agbonavbare, Mia Faroque Ahamed, Magrabi A. Ahmed, Mahdi A. Ahmed, Mohamed A. Ahmed, Beharu K. Ahmed, Foyaz Ahmed, Jashim U. Ahmed, Omer Wais Ahmed, Mutasim I. Ahmed, Jamal U. Ahmed, Ahmed Ali Ahmed, Mohammed Ahmed, Mohammed H Ahmed, Ahmed M Yusuf , Kwame O. Aidoo, Cliff Aimsor, Sunday Ajumobi, Hassan Akbarnejad, Thomas Akpan, Abera A. Alemu, Dires A. Alemu, Musa O. Alhassan, Elnueit Ali, Dawed Seid Ali, Ahmed A Ali, Abdi A Ali, Abdiwahid Salah Ali, Shafi M Ali, Hassen M Ali, Shire H Ali, Abdulahi M Ali , Ali A Mohamed, Abdul Alim, Abdelazez Alrobei, Musa K. Alsabag, Ali S. Al-Yafai, Haider M. Alzoubi, Sunday Amaefula, Samatar F Amin, Hassan F Amin, Innocent N. Anonyei, Felix A. Anosike, Abdulkadir M. Anshur, Hassan Anshur, Ali Anshur, Kilase Anwar, Demessie H. Aragaw, Meshesha T. Aragaw, Ayalew H. Aragaw, Solomon A. Armede, Kuol N. Arop, Masood Aryen, Syed Asgarullah, Getachew Asheber, Negash Ashencho, Paul Asiedu, Shewarega W. Assefa, Abubakr I. Ateem, Makwei Bol Atem, Lemma E. Atme, Ankamah Atteffah, Rashid Awad, Abdu M. Awal, Muneeb N Awan, Woubshet B. Awgichew, Richard A. Ayala, Babak Ayati, Charles Azoagye, Kagbara Badom, Baki S Bahjat , Zia A. Baiani, Ashraf A. Baiani, Teferi Bala, Laurie Ballard, Abebe G. Baraki, Abdul W Bawani, Solomon A. Bedane, Bernanu G. Bekele, Ababu G. Bekele, Tesfu N. Belachew, Eylachew T. Belay, Solomon Belay, DeGraft Benjamin, Berihu N. Berhanu, Dereje G. Bersoma, Abdulrab B.A. Besher, Million Beyene, Mulugeta Beyene, Asefa B. Beyene, Mohammad A Bhuiyan, Issac Biegon, Tadesse K Birhane, Addis K. Bizuneh, Seth O. Boakye, Sakchai Boonsaru, Bounthong Boon Bouasykeo, Daher | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Civil Action No.:**<br>_____<br><br>**Complaint** |

M Boulhan, Peter Brenya, Mehamed Brhan, Kwakye Brobbey, Awale
M Bulale, Taddesse Bushra, Hassan M Buux, Obed Chimezie,
Amirul I. Chowdhury, Samuel Daffa, Dembelash W. Dagachew,
Abdiwahab A Dahir, Kingsley Dankwah, Samuel Dankyi, Sami A.
Darwish, Kinfe H. Degefu, Aklilu A. Demboba, Daniel T. Demoz,
Andarge T. Dersseh, Dereje G. Desessea, Dawit B. Dessalegn, Behailu
H. Desta, Mamadou Diallo, Tahirou Diallo, Paul Y. Dimbo, Birame
Diogou, Showani Dlawar, Ararso D. Duguma, Arop M. Dut,
Raymond Dwomo, Brodrick Edeko, Okokon A. Ekpenyong, Murdy I.
Elamaen, Salaheldin M. Elamin, Mohamed I Elebaid, Falah El-
Ghazali, Abdel R. Elhadi, Mahgob A. Elhusen, Jama Elmi Wardere,
Eltom Ahmed Elnour, Mohamed Hisham M. Eltayeb, Mohamed M.
El-Wakil, Andrew Emu, Andrew S. Emurkhagbon, Tesfayohannes
Endrias, Moshen Erfani, Aklilu Ersido, Tesfaye G. Esayas, Haile
Estefanos, Israel Evulukwu, Eze Eweke, Daniel E. Fanta, Tedros M.
Fante, Hassan A Farah, Aden Farah , Farah M Abdirahman , Magdy
A. Farahat, Ahmed Uddin Farid, Abdelhady F. Fawzy, Ferej A. Ferej,
Boru Galgalo, Abdurahman Gamada, Manmohan S. Gangar, Emilio
A. Garcia, Nadif M. Garjeh, Abdul Z. Gazi, Cornelius Gbadebo,
Alemayehu W Gebermariam, Tesfai Gebrehiwet, Tazebew B.
Gebrehiwot, Solomon Y. Gebrekiros, Mehari N. Gebremariam,
Tahirou Gebremedhin, Eyassu Gebremedhin, Fasica E. Gebremedinh,
Goshu Gebreselassie, Esteve Gebreyohannis, Mekuria F. Gebru,
Jamal Geshow, Bille A. Gessod, Getahun B. Getahun, Omar
Gharaibeh, Numan H. Gharaybeh, Johnny Gharbin, Ismacil A Gibrir,
Dawit T. Gizaw, Tekeba Gizaw, Alemzewed J. Gizaw, Yared N.
Gobena, Ali M Gouled, Hussen M Gule , Mesele S. Habebe, George
K. Habte, Michael Habte, Loul Habte, Petros Habteab, Misgina K.
Hadera, Zerai Hagos, Dereje Haile, Getachew Hailemariam, Ali H.
Hajibare, Fekadu G. Halefom, Husham O. Hamid, Abdelmonim E.
Hamid, Tarig A. Hamid, Bah Hamidou , Sarder Haque, Ehab G.
Haron, Wazir S Hasan, Mohamed I Hashi, Mohamed O Hashi, Kamal
I. Hassan, Said A Hassan, Cumar B Hassan , Sirous Nasiman
Hassanabadi, Mohammed S. Hassen, Ali H. Hatibare, Robert
Headspeth, Musa Hebo, Demilew G. Hebstie, Koffi Hemeng, Ali
Herzalla, Dagne A. Hirruy, Monzurul Hoque, Shoukat Hossain,
Shoukat Hossain, Mohamed Rahabar Hossain, Mohammed Kawser
Hossain, Seyed A. Hosseini, Nabi Hosseini, Shaik Moazzen Hossian,
Masood Hovaidar-Safid, Muhammed N Huda, Surral Huddain,
Robert Hudspeth, Abdisalad H. Husen, Muhedin M. Hussein, Yusuf
Mohamed Hussein, Abdisamu A Hussein, Ahmed A Hussen ,
Anthony Ibidapo, Mohamed A. Ibrahim, Ahmedin M. Ibrahim,
Abdelrahim M. Ibrahim, Yasir M. Ibrahim, Suliman Ibrahim,
Mohamed A Ibrahim, Samatar M Ibrahim, Adala Mohamed Idris,
Ismal Abdu Idris, Ken O Ihazah, Khalid Abdalla Imam, James
Inyang, Fawaz S. Irshid, Mohammed S. Islam, Kazi K. Islam,
Mohammed. A. Islam, MD Mazharul Islam, Noah Jama Issa,
Mohammed J Uddin, Abdirahman M Jama, Ali Reza Jamshidi,

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Anayat Jawade, Tegneh T. Jimma, Koffey Joseph, Habil A Jumale, Abdirahman Nuh Kahin, Mohammed. A. Kalam, Kazi R. Karim, Mo Babur Karin, Mulugeta C. Kassa, Mekonnen Kassa, Tadesse A. Kassa, Solomon M. Kebede, Gali R. Kereta, Reza Khadempir, Ahamad G. Khalefa, Bounxom Khamasa, William Khampaseut, Reza N. Khanian, Ahmadpour Kheder, Adil A. Khorsheed, Alem Kibrom, Bekele Kidane, Ali A. Kilwe, Ali A Kilwe, Efiou Komla, Marc Koui, Peter Kowal, Isaac Krampah, Appiah Kubi, Abdi A Kulmiye, Edward Kumaga, Ermias Kumsa, Dut K. Kuol, Misganaw Lakew, Mussie G. Lakew, Annop Lasongyang, Samuel M. Lawe, Serge A. Lepohe, Steven Lum, Mahamed Abdilahi Mahamoud, Adam M. Mahmoud, Bahaeldin A. Mahmoud, Alor A. Malek, Ater B. Malekjok, Alex Mamo, Gezae Mana, Dereje E. Manaze, Mosdia K. Massad, Simon T. Matiyas, Beny M. Matuk, Michael P McManimen, Osman A Mead, Meka M Shekur, Mekamu A Abra, Wubie A. Mekonnen, Gebru F. Mekuria, Melaku S. Mekuria, Tekleab Mender, Tesfatsion Mengesha, Mulugeta Mesfin, Mamdouh M. Metwally, Francis Michael, Zagros Mir, Ketema K. Mitiku, Mehdi Y. Moadeli, Medhi Moadeli, Marcelino G. Modi, Anthony Mogga, Mohamed H. Mohamed, Eltayeb A. Mohamed, Abubakar F. Mohamed, Mahgob Elhusen Ali Mohamed, Reda Mohamed, Abdel L. Mohamed, Sirelkhatim N. Mohamed, Amir A. Mohamed, Aden H. Mohamed, Ali F. Mohamed, Mohamed H Mohamed, Hassan Mohamed , Abdu Mohamedaman, Hamza Mohammed, Mohamed Zein Mohammed, Mohammed T Mohammed, Farooq Mohammed, Mohamed A. Mohamud, Mohammed Mohasin, Ahmmed Mohid, Hamid Mojdeh, Mohammad A. Momeni, Tony Motari, Philip Mouhon, Alawe Mudesir, Yunus O. Muhammad, Kihehe Muigai, (Shelley) Mukudi Mukete, Hussen S. Muktar, Dawelbeit A. Musa, Seddig M. Musa, Habte Mussie, Abubakar Mustafa, Awazi M Mzelea, Mohammad Najafian, Abebaw K. Nega, Abdul Ngaruko, Cong T Nguyen, Alozie Ngwaba, Joseph A. Nimoh, Kuethping Deng Nmrom, Salah A Nor , Hishan Nubi, Abdul S Nur , Burhan A Nur , Abdirahman S Nur , Christian Nwachukwu, Farooq Nwakanma, Eze Nwake, Emmanuel Nwanze, Betram Nwaohiri, Gilbert Nwawuchi, Gilbert Nwawuchi, Kon A. Nyenger, Elijha M. Nyuklual, Ngoesina B. Obigbo, Oluma Ochula, Assem M. Odeh, Odesola P. Odelusi, Kehinde H. Odunsi, Weldeab Ogbazion, Simeon Ogboaloh, Asiedu Ohene, Clement Ohenhen, James Ojo, Osita Okafor, Sam Okafor, Gabriel Okafor, Osita Okafor, Gabriel Okafor, Sam Okafor, Alex Okoh, Okon Okon, Okon Okon, Cornelius Okoro, Richard I. Okpalor, Shola Loius Olanipekun, Abel Olatoye, Mathew Omeodu, Chris Omere, Mathew Omodu, Bathram Onuorah, Bathram Onuorah, Tom S. Opacha, Joseph K. Opoku, Sam Orji, Pullen Osagie, Bashir E. Osman, Kamil A Osman, Denis Owusu-Hellene, David Owusu-Hemewg, Johnny Ozumba, Lucky Pathamma, Lucky Sivirak Pathammavong, Dusit Piman, Thainchai Piriyayon, Mongkol Promtet, Mohammad Qazi, Mohamed H Qorane, Jamil S. Qureshi, Seifu Ragasa, Mohammed A

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Rahman, Gobind Rai, Ramazan A Osman , Harun O. Rashid, Saied
Ali Rofougar, Adil Sadalla, Ezana Sahilie, Abdul Aziz Said, Said A.
Hussen, Mirza M Sajid, Mohamed A. Salah, Ahmed H. Salah,
Abdulasis M Salah, Ahmed H Salah, Salim S. Salim, Mohamed I.
Salsal, Onoh Samuel, Manjit S Sandhu, James Sanlola , Paul
Sarpong, Kwame Sarpong, Shapour Sefidi, Fritz Seiboldt,
Mohammed G. Seid, Siraj Seman, Issa H Seman , Doog A Shada,
Ezzat Shahi, Mawad W. Shandut, Getachew Shekure, Ali H. Shire,
Nur A Shoble, Said Sibbi, Mohd Siddiquee , Bernanu T. Sima, Rana
I. Singh, Nebiyou Sirak, Birru B. Soke, Mehari A. Solomon, Serate
Solomon, Noel Suarez, Sebagadis Tadesse, Abdelhadi M. Tahir,
Abrar Tahir, Ghassan Tayeh, Istifanos I. Tedla, Wudeneh Tedla,
Mahari Tefere, Araya Teferi, Nemariam G. Tekleab, Tewodros A.
Teklewold, Surafiel Z. Tekleyohanes, Mulualem G. Teklu, Simon
Tesfai, Beyene T. Tesfaledet, Mengash Tesfamariam, Wasyhun B.
Tesfaye, Endrias Tesfayohan, Gebrehana Tesfu, Gebreselassie G.
Tetemke, Alem O. Tewolde, Berhane Tewolde, Aumna
Thammaiyam, Kwarteng Thomas, Tawee Tichai, Jean Tienoui,
Estifanos G. Tikabo, Abebe D. Tiruneh, Zekarias C. Tiyo, Yohannes
E. Tolla, Thanavoot Tongrasmee, Musa M. Tor, Yassin A. Toto,
Michael S. Udozorv, Abdi A Ugas, Alex Uzoigwe, Nasr K. Vijvieh,
Delesa Wakane, Neseru G. Wakjira, Abdikarem Warsame M, Abera
B. Wekene, Gregory S. Winters, Neguse Woldai, Kedir S. Wolde,
Demeke G. Woldie, Mengishi Workagegnehu, Mesfin T. Worku,
Tadesse A. Worku, Kalid Yassin, Zelealem W. Yeneneh, Getachew
G. Yilma, Abebe Yimenu, Abdousemed A. Yonis, Mohahid M.
Yosuf, Yaqoob R Youhanna, Abdelkarim M. Yousif, Ayoub Yusuf,
Abbas F. Yusuf, Abdirahim I. Yusuf, Abdullahi A. Yusuf, Abbas F
Yusuf, Ahmed M Yusuf, Dawit G. Zerai, Henok Zerom, Delnesaw
M. Zewde, Bekele Zewdie, Jamal Ziad, Hoe Tran, Anthony Lee,
Jakphong Sinlong, Birame Diogou, and Israel Wobilor Evulukwu,

       Plaintiffs,

V.

YELLOW CHECKER CAB COMPANY OF DALLAS/FORT
WORTH, INC., IRVING HOLDINGS, INC., MSS
TRANSPORTATION d/b/a FREEDOM CAB COMPANY,
JETTAXI, INC., ABC CAB, INC. d/b/a EAGLE CAB COMPANY,
CHECKER CAB COMPANY OF DALLAS, LTD., CHECKER
CAB COMPANY OF DALLAS MANAGEMENT, L.L.C., U.S.
CAB, L.L.C., AMBACO, L.L.C. d/b/a DIAMOND CAB
COMPANY, RACASON, INC. d/b/a STATE TAXICAB
COMPANY,

       Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)