## IN THE UNITED STATES DISTRICT COURT
### FOR THE
### NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| ASSOCIATION OF TAXICAB OPERATORS, USA, D.E.C.D.A., INC. d/b/a STARCAB, MAREDI CORPORATION d/b/a UNITED CAB, E.P.D.A., INC. d/b/a ALAMO CAB, INC. WALAAL CORPORATION d/b/a AMBASSADOR CAB COMPANY, and PLAINTIFFS LISTED IN EXHIBIT A, <br><br> Plaintiffs, <br><br> v. <br><br> YELLOW CHECKER CAB COMPANY OF DALLAS/FORT WORTH, INC., IRVING HOLDINGS, INC., MSS TRANSPORTATION d/b/a FREEDOM CAB COMPANY, JETTAXI, INC., ABC CAB, INC. d/b/a EAGLE CAB COMPANY, CHECKER CAB COMPANY OF DALLAS, LTD., CHECKER CAB COMPANY OF DALLAS MANAGEMENT, L.L.C., U.S. CAB, L.L.C., AMBACO, L.L.C. d/b/a DIAMOND CAB COMPANY, RACASON, INC. d/b/a STATE TAXICAB COMPANY, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CIVIL ACTION NO. 3:10-cv-01638-N <br><br><br><br><br><br><br><br> APPENDIX TO RULE 12B(6) MOTION TO DISMISS |

### APPENDIX TO DEFENDANTS' MOTION TO DISMISS

Defendants files this appendix to their Rule 12B(6) Motion to Dismiss. Attached are documents bates-stamped 1 through 205.

LAW OFFICES OF
**BURT BARR & ASSOCIATES, L.L.P.**
P.O. BOX 223667
DALLAS, TEXAS 75222-3667

APPENDIX TO DEFENDANTS' MOTION TO DISMISS - PAGE 1
F:\Bb\1578.23\Pleading\App.Mtn to Dismiss.wpd

Respectfully submitted,

By: __/s/ M. Forest Nelson_____

M. FOREST NELSON
State Bar No. 14904625
BURT BARR & ASSOCIATES, L.L.P.
203 E. Colorado Blvd.
Dallas, Texas 75203
Telephone: (214) 943-0012
Telecopier: (214) 943-0048
fnelson@bbarr.com

COUNSEL FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I certify that on September 14, 2010, I filed this Appendix using the electronic case filing system for the Northern District of Texas. The electronic case filing system sent a "Notice of Electronic Filing" to all counsel of record, who have consented to such service.

__/s/ M. Forest Nelson_____
M. Forest Nelson

LAW OFFICES OF
BURT BARR & ASSOCIATES, L.L.P.
P.O. BOX 223667
DALLAS, TEXAS 75222-3667

APPENDIX TO DEFENDANTS' MOTION TO DISMISS - PAGE 2
F:\Bb\1578.23\Pleading\App.Mtn to Dismiss.wpd

# CHAPTER 45
# TAXICABS

## ARTICLE I.
## GENERAL PROVISIONS.

Sec. 45-1.1.   Statement of policy.

Sec. 45-1.2.   General authority and duty of director.

Sec. 45-1.3.   Establishment of rules and regulations.

Sec. 45-1.4.   Exclusions.

Sec. 45-1.5.   Definitions.

## ARTICLE II.
## OPERATING AUTHORITY.

Sec. 45-2.1.   Operating authority required.

Sec. 45-2.2.   Transferability of operating authority.

Sec. 45-2.3.   Franchise or annual permit granted by city council; service requirements.

Sec. 45-2.3.1.    Qualification for operating authority.

Sec. 45-2.4.   Application for franchise or annual permit.

Sec. 45-2.5.   Franchise or annual permit - Investigation of application and approval.

Sec. 45-2.6.   Temporary permit; application; purposes.

Sec. 45-2.7.   Reciprocal agreement.

Sec. 45-2.8.   Grant of franchise and permit.

Sec. 45-2.9.   Renewal of annual permit.

Sec. 45-2.10.    Amendment, suspension, and revocation of operating authority.

Sec. 45-2.11.    Franchise and permit fees.

Sec. 45-2.12.   Number of taxicabs authorized.

Sec. 45-2.13.   Special provisions of operating authority.

## ARTICLE III.
## TAXICAB DRIVER'S LICENSE.

Sec. 45-3.1.   Taxicab driver's license required.

Sec. 45-3.2.   Qualification for taxicab driver's license.

Sec. 45-3.3.   Application; fee.

Sec. 45-3.4.   Investigation of application.

Sec. 45-3.5.   Issuance and denial.

Sec. 45-3.6.   Expiration of taxicab driver's license; voidance upon suspension or revocation of state driver's license.

Sec. 45-3.7.   Provisional license.

Sec. 45-3.8.   Probationary license.

Sec. 45-3.9.   Duplicate license.

Sec. 45-3.10.   Display of license.

Sec. 45-3.11.   Suspension by designated representative.

Sec. 45-3.12.   Suspension and revocation.

Sec. 45-3.13.   Appeal for taxicab driver's license.

Sec. 45-3.14.   Falsifying of a license.

Sec. 45-3.15.   Current mailing address of licensee.

## ARTICLE IV.
## MISCELLANEOUS HOLDER AND DRIVER REGULATIONS.

Sec. 45-4.1.   Holder's and driver's duty to comply.

Sec. 45-4.2.   Holder's duty to enforce compliance by drivers.

Sec. 45-4.3.   Driver as independent contractor.

Sec. 45-4.4.   Insurance.

Sec. 45-4.5.   Apparel to be worn by drivers.

Sec. 45-4.6.   Driver's daily manifest.

Sec. 45-4.7.   Holder's records and reports.

Sec. 45-4.8.   Monthly summary of meter readings.

## ARTICLE V.
## SERVICE REGULATIONS.

Sec. 45-5.1.   City-wide taxicab service required.

Sec. 45-5.2.   Representation of availability of taxicab.

Sec. 45-5.3.   Refusal to convey passengers.

Sec. 45-5.4.   Passenger limitations.

Sec. 45-5.5.   Carry passengers by direct route.

Sec. 45-5.6.   Solicitation of passengers.

Sec. 45-5.7.   Regulations for use of taxicab stands.

Sec. 45-5.8.   Conduct of drivers.

Sec. 45-5.9.   Return of passenger's property.

Sec. 45-5.10.   Establishment of taxicab stands.

Sec. 45-5.11.   Service regulations for business establishments requesting taxicabs for customers.

Sec. 45-5.12.   Ground transportation service at Dallas Love Field airport.

## ARTICLE VI.
## FARES.

Sec. 45-6.1.   Rates of fare.

Sec. 45-6.2.   Display of rate card.

Sec. 45-6.3.   Computation of fares.

Sec. 45-6.4.   Design and testing of taximeters; fees.

Sec. 45-6.5.   Fare collection procedures.

## ARTICLE VII.
## VEHICLES AND EQUIPMENT.

Sec. 45-7.1.   False representation as taxicab.

Sec. 45-7.2.   Vehicle requirements and inspections.

Sec. 45-7.2.1.   Taxicab age limits.

Sec. 45-7.3.   Required equipment.

Sec. 45-7.4.   Vehicle color scheme and distinctive markings.

Sec. 45-7.5.   Required vehicle identification.

Sec. 45-7.5.1.   Taxicab display receptacle.

Sec. 45-7.6.   Taxicab decals.

Sec. 45-7.7.   Not-for-hire status of taxicabs.

Sec. 45-7.8.   Removal of equipment.

## ARTICLE VIII.
## ENFORCEMENT.

Sec. 45-8.1.   Authority to inspect.

Sec. 45-8.1.1.   Removal of evidence of authorization.

Sec. 45-8.2.   Enforcement by police department.

Sec. 45-8.3.   Correction order.

Sec. 45-8.4.   Service of notice.

Sec. 45-8.5.   Appeal of correction order.

Sec. 45-8.6.   Criminal offenses.

# ARTICLE I.
# GENERAL PROVISIONS.

## SEC. 45-1.1.   STATEMENT OF POLICY.

It is the policy of the city of Dallas to provide for and to promote adequate and efficient taxicab service in the city. To this end, this chapter provides for the regulation of taxicab rates and services, to

be carried out in a manner that protects the public health and safety, promotes the public convenience and necessity, and respects the concept of free enterprise. (Ord. 15127)

## SEC. 45-1.2.   GENERAL AUTHORITY AND DUTY OF DIRECTOR.

The director shall implement and enforce this chapter and may by written order establish such rules or regulations, not inconsistent with this chapter, as he determines are necessary to discharge his duty under, or to effect the policy of this chapter. (Ord. 15127)

## SEC. 45-1.3.   ESTABLISHMENT OF RULES AND REGULATIONS.

(a)   Before adopting, amending, or abolishing a rule or regulation, the director shall hold a public hearing on the proposal.

(b)   The director shall fix the time and place of the hearing and, in addition to notice required under the Open Meetings Act (Chapter 551, Texas Government Code), as amended, shall notify each holder and such other persons as the director determines are interested in the subject matter of the hearing.

(c)   After the public hearing the director shall notify the holders and other interested persons of the director's action and shall post an order adopting, amending, or abolishing a rule or regulation on the official bulletin board in the city hall for a period of not fewer than 10 days.  The order becomes effective immediately upon expiration of the posting period. (Ord. Nos. 15127; 25457)

## SEC. 45-1.4.   EXCLUSIONS.

This chapter does not apply to:

(1)   the transportation of a person by taxicab licensed by another governmental entity from a point outside the city to a destination inside the city, if the taxicab leaves the city without receiving a passenger inside the city;

(2)   a taxicab service operated under state or federal authority unless the service is subject to the city's regulatory authority; or

(3)   a motor vehicle used to transport persons for hire that is regulated by other city ordinance. (Ord. 15127)

## SEC. 45-1.5.   DEFINITIONS.

The definition of a term in this section applies to each grammatical variation of the term.  In this chapter, unless the context requires a different definition:

(1)   ALTERNATIVE FUEL VEHICLE means any vehicle that:

(A)   uses only an alternative fuel as defined by the Energy Policy Act of 1992 or is powered by hybrid-electricity; and

(B)   meets Tier 2 Bin 1-3 emission standards as defined by the United States Environmental

Protection Agency.

(2)   ANNUAL PERMIT means permission granted by the city to a person to operate a taxicab service inside the city for a period of one year, renewable under the provisions of this chapter.

(3)   CONVICTION means a conviction in a federal court or a court of any state or foreign nation or political subdivision of a state or foreign nation that has not been reversed, vacated, or pardoned.

(4)   DEPARTMENT means the department designated by the city manager to enforce and administer this chapter.

(5)   DIRECTOR means the director of the department designated by the city manager to enforce and administer this chapter and includes representatives, agents, or department employees designated by the director.

(6)   DISPATCHING FACILITY means a fixed facility:

(A)   at which requests for taxicab service are received;

(B)   from which drivers are notified, by radio or any other electronic communication system, of requests for taxicab service; and

(C)   to which drivers communicate, by radio or any other electronic communication system, their availability to provide the requested taxicab service.

Except when being operated from the permanent and established place of business required under Section 45-2.4(a)(9) of this chapter, the term does not include any facility from which the primary administrative operations of the taxicab service are conducted or at which taxicabs are parked, stored, repaired, or maintained.

(7)   DRIVER means an individual who drives or operates a taxicab.

(8)   FRANCHISE means an agreement between the city and another person, executed in the manner prescribed by the city charter, under which the other person is granted the privilege of operating a taxicab service inside the city for a specific period of time and in accordance with the specific terms and conditions of the agreement.

(9)   HOLDER means a person who is granted an annual permit or franchise under this chapter. If the context in which the term is used applies to operations under a temporary permit or reciprocal agreement the term "holder" includes a person who is granted a temporary permit or reciprocal agreement.

(10)   LEGAL RESIDENT means a citizen of the United States or a person residing in the United States in accordance with federal immigration laws.

(11)   OPERATE means to drive or to be in control of a taxicab.

(12)   OPERATING AUTHORITY means a franchise, annual permit, temporary permit, or reciprocal agreement granted under this chapter.

(13)    OPERATOR means the driver of a taxicab, the owner of a taxicab, or the holder of a taxicab operating authority.

(14)    OWNER means the person to whom state license plates for a vehicle were issued.

(15)    PERSON means an individual, corporation, government or governmental subdivision, or agency, trust, partnership, or two or more persons having a joint or common economic interest.

(16)    RECIPROCAL AGREEMENT means an agreement between the city and one or more political subdivisions to provide reciprocal operation of taxicabs.

(17)    TAXICAB means a chauffeured motor vehicle with a rated passenger capacity of eight or less, used to transport persons for hire that typically operates on irregular routes, irregular schedules, and a call and demand basis, but not including limousines or special service vehicles as defined in Chapter 10 of this code.

(18)    TAXICAB DRIVER'S LICENSE means a license issued to an individual by the director authorizing that person to operate a taxicab in the city.

(19)    TAXICAB SERVICE means a passenger transportation service operated for hire that uses taxicabs in the operation of the service and includes (but is not limited to) a facility from which the service is operated, taxicabs used in the operation, and a person who owns, controls, or operates the service.

(20)    TAXICAB STAND means a public place reserved exclusively for use by taxicabs.

(21)    TAXIMETER means a device that mechanically or electronically computes a fare based upon the distance traveled, the time the taxicab is engaged, and any other basis for charges authorized in Article VI of this chapter.

(22)    TEMPORARY PERMIT means permission granted by the city to a person to operate a taxicab service inside the city for a specified period of time less than one year. (Ord. Nos. 15127; 17226; 17775; 18829; 22222; 23152; 24312; 27295)

# ARTICLE II.
# OPERATING AUTHORITY.

## SEC. 45-2.1.   OPERATING AUTHORITY REQUIRED.

(a)    A person may not operate a taxicab service inside the city without operating authority granted under this chapter, nor may a person transport a passenger for hire inside the city by taxicab unless the person driving the taxicab or another who employs or contracts with the driver has been granted operating authority under this chapter.

(b)    A person shall not engage or hire a taxicab which he knows does not have operating authority from the city. (Ord. 15127)

## SEC. 45-2.2.   TRANSFERABILITY OF OPERATING AUTHORITY.

(a)   A franchise or annual permit may not be transferred to another unless the holder files a written application for the transfer in the manner and containing the information prescribed by the director, and the transfer application is approved by the city council.

(b)   A temporary permit or reciprocal agreement is not transferable.  (Ord. 15127)

### SEC. 45-2.3.   FRANCHISE OR ANNUAL PERMIT GRANTED BY CITY COUNCIL; SERVICE REQUIREMENTS.

(a)   Before a franchise or annual permit is granted, the application for the franchise or annual permit must be approved by the city council.  The granting of a franchise or annual permit is in the discretion of the city council, but will not be granted unless:

(1)   the proposed taxicab service is required by the public convenience and necessity; and

(2)   the applicant qualifies for operating authority under Section 45-2.3.1 of this chapter and is otherwise fit, willing, and able to operate the taxicab service in accordance with the requirements of this chapter, rules and regulations of the director, provisions of the franchise or annual permit, and other applicable law.

(b)   The holder of a franchise must provide taxicab service to the entire city with a minimum of 50 taxicabs.  A franchise may not be granted for a period longer than 15 years.

(c)   The holder of an annual permit must provide taxicab service as specified in the permit with a minimum of 25 taxicabs.  (Ord. Nos. 15127; 20455)

### SEC. 45-2.3.1.   QUALIFICATION FOR OPERATING AUTHORITY.

(a)   To qualify for operating authority, an applicant must:

(1)   be at least 19 years of age;

(2)   be currently authorized to work full-time in the United States;

(3)   be able to communicate in the English language; and

(4)   not have been convicted of a crime:

(A)   involving:

(i)   kidnapping as described in Chapter 20 of the Texas Penal Code;

(ii)   a sexual offense as described in Chapter 21 of the Texas Penal Code;

(iii)   robbery as described in Chapter 29 of the Texas Penal Code;

(iv)   burglary as described in Chapter 30 of the Texas Penal Code, but only if the offense was committed against a person with whom the applicant came in contact while engaged in a passenger transportation service;

(v)   theft as described in Chapter 31 of the Texas Penal Code, but only if the offense was committed against a person with whom the applicant came in contact while engaged in a passenger transportation service;

(vi)   fraud as described in Chapter 32 of the Texas Penal Code, but only if the offense was committed against a person with whom the applicant came in contact while engaged in a passenger transportation service;

(vii) tampering with a governmental record as described in Chapter 37 of the Texas Penal Code, but only if the offense was committed against a person with whom the applicant came in contact while engaged in a passenger transportation service;

(viii)   public indecency (prostitution or obscenity) as described in Chapter 43 of the Texas Penal Code;

(ix)   the transfer, carrying, or possession of a weapon in violation of Chapter 46 of the Texas Penal Code, but only if the violation is punishable as a felony;

(x)   a violation of the Dangerous Drugs Act (Article 4476-14, Vernon's Texas Civil Statutes) that is punishable as a felony;

(xi)   a violation of the Controlled Substances Act (Article 4476-15, Vernon's Texas Civil Statutes) that is punishable as a felony; or

(xii)   criminal attempt to commit any of the offenses listed in Subdivision (4)(A)(i) through (xi) of this subsection;

(B)   for which:

(i)   less than two years have elapsed since the date of conviction or the date of release from confinement imposed for the conviction, whichever is the later date, if the applicant was convicted of a misdemeanor offense;

(ii)   less than five years have elapsed since the date of conviction or the date of release from confinement for the conviction, whichever is the later date, if the applicant was convicted of a felony offense; or

(iii)   less than five years have elapsed since the date of the last conviction or the date of release from confinement for the last conviction, whichever is the later date, if, within any 24-month period, the applicant has two or more convictions of any misdemeanor offense or combination of misdemeanor offenses;

(b)   An applicant who has been convicted of an offense listed in Subsection (a)(4), for which the required time period has elapsed since the date of conviction or the date of release from confinement imposed for the conviction, may qualify for operating authority only if the director determines that the applicant is presently fit to provide a public transportation service. In determining present fitness under this section, the director shall consider the following:

(1)   the extent and nature of the applicant's past criminal activity;

(2)     the age of the applicant at the time of the commission of the crime;

(3)     the amount of time that has elapsed since the applicant's last criminal activity;

(4)     the conduct and work activity of the applicant prior to and following the criminal activity;

(5)     evidence of the applicant's rehabilitation or rehabilitative effort while incarcerated or following release; and

(6)     other evidence of the applicant's present fitness, including letters of recommendation from prosecution, law enforcement, and correctional officers who prosecuted, arrested, or had custodial responsibility for the applicant; the sheriff and chief of police in the community where the applicant resides; and any other persons in contact with the applicant.

(c)     It is the responsibility of the applicant, to the extent possible, to secure and provide to the director the evidence required to determine present fitness under Subsection (b) of this section. (Ord. 20455)

## SEC. 45-2.4.     APPLICATION FOR FRANCHISE OR ANNUAL PERMIT.

(a)     To obtain a franchise or annual permit, a person shall make application to the city council in the manner prescribed by this section.  The applicant must be the person who will own, control, or operate the proposed taxicab service.  An applicant shall file with the director a written, verified application statement, to be accompanied by a nonrefundable application fee of $150, containing the following:

(1)     the form of business of the applicant and, if the business is a corporation or association, a copy of the documents establishing the business and the name, address, and citizenship of each person with a direct interest in the business;

(2)     the name, address, and verified signature of the applicant;

(3)     an actual or pro forma income statement and balance sheet showing the assets, liabilities, and equity of the business;

(4)     a description of any past business experience of the applicant, particularly in providing passenger transportation services, and an identification and description of any revocation or suspension of a franchise or permit held by the applicant or business before the date of filing the application.

(5)     the number of vehicles and a description of the vehicles the applicant proposes to use in the operation of the taxicab service, and a description of the operations of the proposed taxicab service and the location of the fixed facilities to be used in the operation;

(6)     a description of the proposed insignia and color scheme for the applicant's taxicabs and a description of the distinctive item of apparel or item placed on the apparel to be worn by the applicant's taxicab drivers;

(7)     documentary evidence from an insurance company, authorized to do business in the State of Texas, indicating a willingness to provide liability insurance required by this chapter;

(8)    documentary evidence of payment of ad valorem taxes on the property to be used in connection with the operation of the proposed taxicab service;

(9)    proof of a permanent and established place of business within the city of Dallas, the location of which complies with the Dallas Development Code, from which the proposed taxicab service will be operated, which place of business may, but is not required to, include the dispatching facility for the taxicab service;

(10)    such additional information as the applicant desires to include to aid in the determination of whether the requested operating authority should be granted; and

(11)    such additional information as the director or city council considers necessary to assist or promote the implementation or enforcement of this chapter or the protection of the public safety.

(b)    A holder shall notify the director in writing of any change of address or change in ownership or management of a taxicab service not less than 10 days prior to the change.

(c)    The established place of business required by Subsection (a)(9) of this section must be kept open from 9:00 a.m. to 5:00 p.m. weekdays, other than recognized holidays, and must be staffed and equipped to receive telephone calls during all business hours.  (Ord. Nos. 15127; 20455; 23152)

### SEC. 45-2.5.    FRANCHISE OR ANNUAL PERMIT - INVESTIGATION OF APPLICATION AND APPROVAL.

(a)    Upon receipt of an application for a franchise or annual permit the director shall conduct an investigation and make findings of fact concerning public convenience and necessity and other relevant factors, including, but not limited to:

(1)    the number of taxicabs presently in operation in the city;

(2)    the public transportation needs of the city and the adequacy of existing transportation services, including existing holders, to meet those needs;

(3)    whether existing holders can render the proposed additional taxicab service more efficiently or effectively than the applicant;

(4)    the effect of the proposed additional taxicab service on traffic conditions, taxicab drivers' working conditions and wages, and existing holders and public mass transportation services; and

(5)    the character, experience, and fiscal responsibilities of the applicant.

(b)    The applicant for a franchise or annual permit has the burden of proving that the public convenience and necessity require the proposed taxicab service and that the applicant is qualified and financially able to provide the service proposed in the application.

(c)    Within a reasonable time following the date of application, the director shall report in writing his findings of fact and recommendation to the city manager for transmittal to the city council.  The city council shall then hold a public hearing to consider whether a franchise or annual permit should be granted.  (Ord. 15127)

### SEC. 45-2.6.   TEMPORARY PERMIT; APPLICATION; PURPOSES.

(a)   To obtain a temporary permit, a person shall make application to the director.  Upon receipt of an application for a temporary permit, the director shall give reasonable notice to all holders of his consideration of the application.

(b)   After the director makes a recommendation concerning the application, the city council may issue a temporary permit for the purposes of:

(1)   providing supplemental services during periods of extraordinary demand; or

(2)   to assess the feasibility of new technology or services in furtherance of the duties assigned under Section 2-44.1(d) of this code.

(c)   A temporary permit is not renewable.  (Ord. 15127)

### SEC. 45-2.7.   RECIPROCAL AGREEMENT.

Upon approval of the city council, the city manager may enter into a reciprocal agreement with one or more political subdivisions to provide reciprocal operation and mutual regulation of taxicab services between the city and other political subdivisions.  The director shall give all holders reasonable notice of when a reciprocal agreement is to be considered by the city council.  (Ord. 15127)

### SEC. 45-2.8.   GRANT OF FRANCHISE AND PERMIT.

(a)   Upon approval of an application for a franchise by the city council, the franchise will be granted in the manner prescribed by the city charter, containing such terms or conditions as are included by the city council.  Unless the ordinance granting the franchise expressly indicates otherwise, the provisions of this chapter that apply to a franchise or franchise holder are deemed to be a part of each franchise as if the provisions were expressly included in the ordinance granting the franchise.

(b)   Upon approval of an application for an annual or temporary permit by the city council, the director shall promptly issue the permit and incorporate in the permit the duration of the permit and such other terms or conditions as the city council determines are necessary.  (Ord. 15127)

### SEC. 45-2.9.   RENEWAL OF ANNUAL PERMIT.

(a)   An annual permit is automatically renewed unless the director notifies the holder, before the renewal date, of an intention to recommend denial of the permit renewal based on a determination that:

(1)   the holder is not in compliance with the permit or applicable provisions of this code, department regulations, or other law; or

(2)   the holder does not qualify for operating authority under Section 45-2.3.1 of this chapter or is otherwise not fit, willing, or able to continue to operate the taxicab service in accordance with the permit and applicable provisions of this code, department regulations, and other law; or

(3)   public convenience and necessity do not require the continued operation of the taxicab service.

(b)   A holder desiring a change in the terms or conditions of the permit must file with the director, not fewer than 60 days before the permit expires, a written request stating reasons for the requested changes.

(c)   Minor changes may be made in a permit by the director without city council approval.

(d)   If the director determines that a denial of a permit renewal or material change in the terms or conditions of the permit is required by the public convenience and necessity, or if a holder requests a material change in the terms or conditions of the permit, the director shall submit for consideration by the city council a written report containing his recommendations for denial or his recommendations on the proposed or requested change together with supporting findings of fact.  Upon action being taken by the city council, the director shall issue a denial of permit renewal or renew the permit, as directed by the city council.  In the case of renewal he shall incorporate such changes as authorized by the city council.

(e)   If the permit expires at no fault of the holder before a ruling on the approval or denial of the renewal, the holder may continue to operate the taxicab service pending a final decision.  The holder shall cease operation of the taxicab service immediately upon denial of the request for renewal by the city council.  (Ord. Nos. 15127; 20455)

## SEC. 45-2.10.   AMENDMENT, SUSPENSION, AND REVOCATION OF OPERATING AUTHORITY.

(a)   Amendment.  A franchise is amendable under the conditions and in the manner prescribed by the city charter and the ordinance granting the franchise.  An annual permit is amendable at any time by the city council, and a temporary permit is amendable at any time by the director.  The director may make a minor change by amendment of an annual permit at any time without the approval of the city council.

(b)   Revocation of franchise.  A franchise is revocable on the grounds and in the manner prescribed by the city charter.

(c)   Suspension and revocation of permit.  The following regulations apply to the suspension or revocation of a temporary or annual permit.

(1)   The director may suspend or revoke a permit if the director determines that the holder:

(A)   failed to comply with a correction order issued to the holder by the director, within the time specified in the order;

(B)   intentionally or knowingly impeded the department or other law enforcement agency in the performance of its duty or execution of its authority;

(C)   failed to comply with this chapter;

(D)   does not qualify for operating authority under Section 45-2.3.1 of this chapter;

(E)     has been convicted of a violation of another city, state, or federal law, which violation reflects unfavorably on the fitness of the holder to perform a public transportation service;

(F)     is under indictment for or has been convicted of any felony offense while holding taxicab operating authority;

(G)     substantially breached the terms of the permit;

(H)     failed to pay city ad valorem taxes on any property of the holder used directly or indirectly in connection with the taxicab service; or

(I)     failed to pay a permit fee at the time it was due.

(2)     A suspension of a permit does not affect the expiration date of the permit.

(3)     After revocation of a permit, a holder is not eligible for a permit or franchise for a period of two years.

(d)     Appeal.   After suspension or revocation of a permit by the director, a holder may file an appeal with the permit and license appeal board in accordance with Section 2-96 of this code.   (Ord. Nos. 15127; 18200; 18829; 20455; 25457)

## SEC. 45-2.11.   FRANCHISE AND PERMIT FEES.

(a)     A holder of a franchise shall pay the city a franchise fee in the amount and manner prescribed by the city charter and the franchise.

(b)     A holder of an annual permit shall pay the city a permit fee of $350 a year for each taxicab authorized by the permit or an amount stated in the permit.   The fee for a temporary permit is that which is stated in the permit.   A permit fee is payable in the manner and at the time prescribed by the permit.

(c)     The city shall refund the amount that a permit fee exceeds two percent of the annual gross receipts derived from the operation of the permit holder's taxicab service during the same period as authorized by the permit if within 30 days after the permit expires the holder submits to the director an accounting, using established and accepted accounting principles, that indicates the amount of the excess.   (Ord. Nos. 15127; 17251; 19300; 26598)

## SEC. 45-2.12.   NUMBER OF TAXICABS AUTHORIZED.

(a)     The director shall annually make studies and surveys concerning the public convenience and necessity and may, from time to time, prescribe the number of taxicabs authorized for, and operated by, a holder in order to adequately provide taxicab service in the city.

(b)     In determining the total number of taxicabs required by the public convenience and necessity, the director shall use the following formula:

| Maximum number of taxicabs | = | 27 taxicabs | x | Every 1,000,000 airport passengers per calendar year (based |
|---|---|---|---|---|

allowed to be                on combined passenger authorized
                       information provided by
                       Love Field Airport
                       and the Dallas-Fort
                       Worth International Airport)

(c)    Whenever the number of taxicabs authorized to operate in the city exceeds the number of taxicabs determined under Subsection (b) to be required by the public convenience and necessity, the director shall establish rules and regulations to provide, in a fair and uniform manner, for the reduction of authorized taxicabs to the number required for the public convenience and necessity. Each holder and driver shall reduce the number of taxicabs operated by it in accordance with such rules and regulations.

(d)    Whenever the number of taxicabs authorized to operate in the city is less than the number of taxicabs determined under Subsection (b) to be required by the public convenience and necessity, the director shall authorize, in a fair and uniform manner, additional taxicabs to be operated by holders and drivers.  (Ord. Nos. 15127; 25457)

### SEC. 45-2.13.   SPECIAL PROVISIONS OF OPERATING AUTHORITY.

This chapter governs the operation of taxicabs and taxicab service under each form of operating authority.  This chapter, however, is not a limitation on the power of the city council to incorporate in a grant of operating authority special provisions relating to the operation of the taxicab service under the grant.  To the extent that a special provision conflicts with this chapter, the special provision controls. (Ord. 15127)

# ARTICLE III.
# TAXICAB DRIVER'S LICENSE.

### SEC. 45-3.1.   TAXICAB DRIVER'S LICENSE REQUIRED.

(a)    A person may not operate a taxicab inside the city without a valid taxicab driver's license issued to the person under this article, except when authorized in a reciprocal agreement.

(b)    A holder or taxicab owner may not employ or contract with a driver or otherwise allow a person to drive for hire a taxicab owned, controlled, or operated by the holder or taxicab owner unless the person has a valid taxicab driver's license issued under this article, except when authorized in a reciprocal agreement.  (Ord. Nos. 15127; 20455)

### SEC. 45-3.2.   QUALIFICATION FOR TAXICAB DRIVER'S LICENSE.

(a)    To qualify for a taxicab driver's license, an applicant must:

    (1)    be at least 19 years of age;

    (2)    be currently authorized to work full-time in the United States;

    (3)    hold a valid driver's license issued by the State of Texas;

(4)     be able to communicate in the English language;

(5)     not be afflicted with a physical or mental disease or disability that is likely to prevent the applicant from exercising ordinary and reasonable control over a motor vehicle or that is likely to otherwise endanger the public health or safety;

(6)     not have been convicted of more than four moving traffic violations arising out of separate transactions, or involved in more than two automobile accidents in which it could be reasonably determined that the applicant was at fault, within any 12-month period during the preceding 36 months;

(7)     not have been convicted of a crime:

   (A)     involving:

      (i)     criminal homicide as described in Chapter 19 of the Texas Penal Code;

      (ii)     kidnapping as described in Chapter 20 of the Texas Penal Code;

      (iii)     a sexual offense as described in Chapter 21 of the Texas Penal Code;

      (iv)     an assaultive offense as described in Chapter 22 of the Texas Penal Code;

      (v)     robbery as described in Chapter 29 of the Texas Penal Code;

      (vi)     burglary as described in Chapter 30 of the Texas Penal Code, but only if the offense was committed against a person with whom the applicant came in contact while engaged in a passenger transportation service;

      (vii)     theft as described in Chapter 31 of the Texas Penal Code, but only if the offense was committed against a person with whom the applicant came in contact while engaged in a passenger transportation service;

      (viii)     fraud as described  in Chapter 32 of the Texas Penal Code, but only if the offense was committed against a person with whom the applicant came in contact while engaged in a passenger transportation service;

      (ix)     tampering with a governmental record as described in Chapter 37 of the Texas Penal Code, but only if the offense was committed against a person with whom the applicant came in contact while engaged in a passenger transportation service;

      (x)     public  indecency (prostitution or obscenity) as described in Chapter 43 of the Texas Penal Code;

      (xi)     the transfer, carrying, or possession of a weapon in violation of Chapter 46 of the Texas Penal Code, but only if the violation is punishable as a felony;

      (xii)     a violation of the Dangerous Drugs Act (Article 4476-14, Vernon's Texas Civil Statutes) that is punishable as a felony;

      (xiii)     a   violation of the Controlled Substances Act (Article 4476-15, Vernon's Texas Civil

Statutes) that is punishable as a felony; or

(xiv)    criminal attempt to commit any of the offenses listed in Subdivision (7)(A)(i) through (xiii) of this subsection;

(B)    for which:

(i)    less than two years have elapsed since the date of conviction or the date of release from confinement imposed for the conviction, whichever is the later date, if the applicant was convicted of a misdemeanor offense;

(ii)    less than five years have elapsed since the date of conviction or the date of release from confinement for the conviction, whichever is the later date, if the applicant was convicted of a felony offense; or

(iii)    less than five years have elapsed since the date of the last conviction or the date of release from confinement for the last conviction, whichever is the later date, if, within any 24-month period, the applicant has two or more convictions of any misdemeanor offense or combination of misdemeanor offenses;

(8)    not have been convicted of, or discharged by probation or deferred adjudication for, driving while intoxicated:

(A)    within the preceding 12 months; or

(B)    more than one time within the preceding five years;

(9)    not be addicted to the use of alcohol or narcotics;

(10)    be subject to no outstanding warrants of arrest;

(11)    be sanitary and well-groomed in dress and person in compliance with Section 45-4.5(a) of this chapter;

(12)    have a valid contract with or be currently employed by a holder; and

(13)    have successfully completed within the preceding 12 months a defensive driving course approved by the National Safety Council and be able to present proof of completion.

(b)    An applicant who has been convicted of an offense listed in Subsection (a)(7) or (8), for which the required time period has elapsed since the date of conviction or the date of release from confinement imposed for the conviction, may qualify for a taxicab driver's license only if the director determines that the applicant is presently fit to engage in the occupation of a taxicab driver.  In determining present fitness under this section, the director shall consider the following:

(1)    the extent and nature of the applicant's past criminal activity;

(2)    the age of the applicant at the time of the commission of the crime;

(3)    the amount of time that has elapsed since the applicant's last criminal activity;

(4)    the conduct and work activity of the applicant prior to and following the criminal activity;

(5)    evidence of the applicant's rehabilitation or rehabilitative effort while incarcerated or following release; and

(6)    other evidence of the applicant's present fitness, including letters of recommendation from prosecution, law enforcement, and correctional officers who prosecuted, arrested, or had custodial responsibility for the applicant; the sheriff and chief of police in the community where the applicant resides; and any other persons in contact with the applicant.

(c)    It is the responsibility of the applicant, to the extent possible, to secure and provide to the director the evidence required to determine present fitness under Subsection (b) of this section and under Section 45-3.8(a) of this article.

(d)    As additional qualifications for a taxicab driver's license, the director shall require each new applicant to:

(1)    pass an examination given or approved by the department that tests the applicant's knowledge of:

(A)    traffic laws,

(B)    a driver's duties under this chapter,

(C)    department regulations, and

(D)    the geography of the city; and

(2)    successfully complete a training course approved by the director that provides at least two hours of classroom instruction in each of the following areas:

(A)    taxicab rules and regulations;

(B)    geography of the city and surrounding areas and use of a map; and

(C)    public relations and communication skills.

(e)    When the director has reason to believe that a taxicab driver is in need of training in any area described in Subsection (d)(2), the director may require the driver to successfully complete a training course approved by the director. The decision of the director to require a training course under this subsection may be appealed in accordance with Section 45-8.5 of this article.

(f)    A taxicab driver must successfully complete a refresher training course complying with Subsection (d)(2) before each renewal of a taxicab driver's license.

(g)    Whenever a new applicant or a taxicab driver attends a training course under Subsection (d)(2), (e), or (f), the holder employing or contracting with the applicant or the driver shall pay to the city $12 for the training course. (Ord. Nos. 15127; 17775; 18033; 18829; 20455; 21819; 25048; 25457)

### SEC. 45-3.3.   APPLICATION; FEE.

To obtain a taxicab driver's license or renewal of a taxicab driver's license, a person must file with the department a nonrefundable application fee of $30 and a completed written application on a form provided for the purpose.  The director shall require each application to state such information as he considers necessary to determine whether an applicant is qualified.  (Ord. Nos. 15127; 20076; 25048; 26598)

### SEC. 45-3.4.   INVESTIGATION OF APPLICATION.

(a)    For the purpose of determining qualification under Section 45-3.2(a)(5), the director may require an applicant to submit to a physical examination at applicant's expense conducted by a licensed physician and to furnish to the director a statement from the physician which certifies that the physician has examined the applicant and that in the physician's professional opinion the applicant is qualified under Section 45-3.2(a)(5).

(b)    Upon request of the director, the police department shall investigate each applicant and furnish the director a report concerning applicant's qualification under Section 45-3.2(a)(7).  The municipal court shall furnish the director a copy of the applicant's motor vehicle driving record and a list of any warrants of arrest for the applicant which might be outstanding.

(c)    The director may conduct such other investigation as he considers necessary to determine whether an applicant for a taxicab driver's license is qualified.  (Ord. 15127)

### SEC. 45-3.5.   ISSUANCE AND DENIAL.

(a)    If the director determines that an applicant is qualified, the director shall issue a license to the applicant.

(b)    The director shall delay until final adjudication the approval of the application of any applicant who is under indictment for or has charges pending for:

(1)    a felony offense involving a crime described in Section 45-3.2(a)(7)(A)(i), (ii), (iii), (iv), or (v) or criminal attempt to commit any of those offenses; or

(2)    any offense involving driving while intoxicated.

(c)    The director may deny the application for a taxicab driver's license if the applicant:

(1)    is not qualified under Section 45-3.2;

(2)    refuses to submit to or does not pass a medical or written examination authorized under Section 45-3.4;

(3)    makes a false statement of a material fact in his application for a taxicab driver's license.

(d)    If the director determines that a license should be denied the applicant, the director shall notify

the applicant in writing that his application is denied and include in the notice the reason for denial and a statement informing the applicant of his right of appeal.  (Ord. Nos. 15127; 20455)

### SEC. 45-3.6.   EXPIRATION OF TAXICAB DRIVER'S LICENSE; VOIDANCE UPON SUSPENSION OR REVOCATION OF STATE DRIVER'S LICENSE.

(a)   Except in the case of probationary and provisional licenses, a taxicab driver's license expires two years from the date of issuance.

(b)   If a licensee's state driver's license is suspended or revoked by the state, his taxicab driver's license automatically becomes void.  A licensee shall notify the director and the holder for whom he drives within three days of a suspension or revocation of his driver's license by the state and shall immediately surrender his taxicab driver's license to the director.  (Ord. Nos. 15127; 18829)

### SEC. 45-3.7.   PROVISIONAL LICENSE.

(a)   The director may issue a provisional taxicab driver's license if he determines:

(1)   that the number of taxicab drivers is inadequate to meet the city's need for taxicab service, in which case he may issue the number necessary to meet the need; or

(2)   that it is necessary pending completion of investigation of an applicant for a taxicab driver's license.

(b)   A provisional taxicab driver's license expires on the date shown on the license, not to exceed 45 days from the date of issuance, or upon the applicant's being denied a taxicab driver's license, whichever occurs first.

(c)   The director shall not issue a provisional license to a person who has been previously denied a taxicab driver's license.

(d)   The director may issue a provisional license to a person holding a state driver's license.  (Ord. Nos. 15127; 17775; 18829)

### SEC. 45-3.8.   PROBATIONARY LICENSE.

(a)   The director may issue a probationary taxicab driver's license to an applicant who is not qualified for a taxicab driver's license under Section 45-3.2 if the applicant:

(1)   could qualify under Section 45-3.2 for a taxicab driver's license within one year from the date of application;

(2)   holds a valid state driver's license or occupational driver's license; and

(3)   is determined by the director, using the criteria listed in Section 45-3.2(b) of this article, to be presently fit to engage in the occupation of a taxicab driver.

(b)    A probationary taxicab driver's license may be issued for a period not to exceed one year.

(c)    The director may prescribe appropriate terms and conditions for a probationary taxicab driver's license as he determines are necessary.  (Ord. Nos. 15127; 18829)

### SEC. 45-3.9.    DUPLICATE LICENSE.

If a taxicab driver's license is lost or destroyed, the director shall issue the licensee a duplicate license upon payment to the city of a duplicate license fee of $11.  (Ord. Nos. 15127; 17251; 20076; 25048)

### SEC. 45-3.10.    DISPLAY OF LICENSE.

A taxicab driver shall, at all times while on duty or operating a taxicab, conspicuously display a taxicab driver's license on the clothing of the driver's upper body.  A taxicab driver shall allow the director or a peace officer to examine the driver's taxicab driver's license upon request.  (Ord. Nos. 15127; 17775; 20455; 25365)

### SEC. 45-3.11.    SUSPENSION BY DESIGNATED REPRESENTATIVE.

(a)    If a representative designated by the director to enforce this chapter determines that a licensee has failed to comply with this chapter (except Section 45-3.2) or a regulation established under this chapter, the representative may suspend the taxicab driver's license for a period of time not to exceed three days by personally serving the licensee with a written notice of the suspension.  The written notice must include the reason for suspension, the date the suspension begins, the duration of the suspension, and a statement informing the licensee of his right of appeal.

(b)    A suspension under this section may be appealed to the director or his assistant if the licensee requests an appeal at the time the representative serves notice of suspension.  When appeal is requested, the suspension may not take effect until a hearing is provided by the director or his assistant.

(c)    The director may order an expedited hearing under this section, to be held as soon as possible after the licensee requests an appeal.  The director may affirm, reverse, or modify the order of the representative.  The decision of the director is final.  (Ord. Nos. 15127; 17775)

### SEC. 45-3.12.    SUSPENSION AND REVOCATION.

(a)    If the director determines that a licensee has failed to comply with this chapter (except Section 45-3.2) or a rule or regulation established under this chapter, the director may suspend the taxicab driver's license for a definite period of time not to exceed 60 days.

(b)    If at any time the director determines that a licensee is not qualified under Section 45-3.2, or is under indictment or has charges pending for any offense involving driving while intoxicated or a felony offense involving a crime described in Section 45-3.2(a)(7)(A)(i), (ii), (iii), (iv), or (v) or criminal attempt to commit any of those offenses, the director shall suspend the taxicab driver's license until such time as the director determines that the licensee is qualified or that the charges against the licensee have been finally adjudicated.

(c)    A licensee whose taxicab driver's license is suspended shall not operate a taxicab or any other

city-regulated vehicle for hire inside the city during the period of suspension.

(d)   The director shall notify the licensee and the holder in writing of a suspension under this section and include in the notice the reason for the suspension, the date the director orders the suspension to begin, the duration of suspension or if it is under Subsection (b), and a statement informing the licensee of a right of appeal. The period of suspension begins on the date specified by the director or, in the case of an appeal, on the date ordered by the permit and license appeal board.

(e)   The director may revoke a taxicab driver's license if the director determines that the licensee:

(1)   operated a taxicab or another city-regulated vehicle for hire inside the city during a period in which the taxicab driver's license was suspended;

(2)   made a false statement of a material fact in an application for a taxicab driver's license;

(3)   engaged in conduct that constitutes a ground for suspension under Subsection (a), and received either a suspension in excess of three days or a conviction for violation of this chapter, two times within the 12-month period preceding the occurrence of the conduct or three times within the 24-month period preceding the occurrence of the conduct;

(4)   engaged in conduct that could reasonably be determined to be detrimental to the public safety;

(5)   failed to comply with a condition of a probationary permit; or

(6)   was convicted of any felony offense while holding a taxicab driver's license.

(f)   A person whose taxicab driver's license is revoked shall not:

(1)   apply for another taxicab driver's license before the expiration of two years from the date the director revokes the license or, in the case of an appeal, the date the permit and license appeal board affirms the revocation; or

(2)   operate a taxicab or any other city-regulated vehicle for hire inside the city.

(g)   The director shall notify the licensee in writing of a revocation and include in the notice the reason for the revocation, the date the director orders the revocation, and a statement informing the licensee of the right of appeal.

(h)   After receipt of notice of suspension, revocation, or denial of license renewal, the licensee shall, on the date specified in the notice, surrender the taxicab driver's license to the director and discontinue driving a taxicab inside the city.

(i)   Notwithstanding Subsections (c) and (h), if the licensee appeals the suspension or revocation under this section, the licensee may continue to drive a taxicab pending the appeal unless:

(1)   the taxicab driver's license of the licensee is suspended pursuant to Subsection (b) or revoked pursuant to Subsection (e)(6) of this section; or

(2)   the director determines that continued operation by the licensee would impose an immediate

threat to public safety.  (Ord. Nos. 15127; 18829; 20455; 25457)

### SEC. 45-3.13.    APPEAL FOR TAXICAB DRIVER'S LICENSE.

A person may appeal a denial of a taxicab driver's license application, suspension of a taxicab driver's license under Section 45-3.12, or revocation of a taxicab driver's license to the permit and license appeal board in accordance with Section 2-96 of this code.  (Ord. Nos. 15127; 18829; 25457)

### SEC. 45-3.14.    FALSIFYING OF A LICENSE.

A person commits an offense if he:

(1)    forges, alters, or counterfeits a taxicab driver's license, badge, sticker, or emblem required by law; or

(2)    possesses a forged, altered, or counterfeited taxicab driver's license, badge, sticker, or emblem required by law.  (Ord. 15127)

### SEC. 45-3.15.    CURRENT MAILING ADDRESS OF LICENSEE.

An individual issued a taxicab driver's license shall maintain a current mailing address on file with the director.  The licensee shall notify the director of any change in this mailing address within five business days of the change.  (Ord. 17775)

# ARTICLE IV.
# MISCELLANEOUS HOLDER AND DRIVER REGULATIONS.

### SEC. 45-4.1.    HOLDER'S AND DRIVER'S DUTY TO COMPLY.

(a)    Holder.  In the operation of a taxicab service a holder shall comply with the terms and conditions of the holder's operating authority and, except to the extent expressly provided otherwise by the operating authority, shall comply with this chapter, rules and regulations established under this chapter, and other law applicable to the operation of a taxicab service.

(b)    Driver.  While on duty, a driver shall comply with this chapter, rules and regulations established under this chapter, other law applicable to the operation of a motor vehicle in this state, and orders issued by the holder employing or contracting with the driver in connection with the holder's discharging of its duty under its operating authority and this chapter.  (Ord. Nos. 15127; 25457)

### SEC. 45-4.2.    HOLDER'S DUTY TO ENFORCE COMPLIANCE BY DRIVERS.

(a)    A holder shall establish policy and take action to discourage, prevent, or correct violations of this chapter by drivers who are employed by or contracting with the holder.

(b)    A holder shall not permit a driver who is employed by or contracting with the holder to drive a taxicab if the holder knows or has reasonable cause to suspect that the driver has failed to comply with

this chapter, the rules and regulations established by the director or other applicable law. (Ord. 15127)

### SEC. 45-4.3.   DRIVER AS INDEPENDENT CONTRACTOR.

(a)   A holder may contract with a driver on an independent-contractor basis, but only if the contract:

(1)   provides that the holder shall indemnify the city and hold the city harmless for a claim or cause of action against the city arising from conduct of the driver;

(2)   provides that the driver is insured under the holder's fleet insurance policy; and

(3)   imposes a condition that the driver must comply with this chapter and provides that failure to comply may be considered by the holder as a material breach of the contract.

(b)   The form of the contract between a holder and driver must be approved by the director.  The director may disapprove a contract form if he determines that the contract is inconsistent with this chapter, rules and regulations established under this chapter, or other applicable law.  A holder may not use a contract that has been disapproved by the director.  (Ord. Nos. 15127; 25457)

### SEC. 45-4.4.   INSURANCE.

(a)   A holder shall procure and keep in full force and effect automobile liability insurance written by an insurance company that:

(1)   is approved, licensed, or authorized by the State of Texas;

(2)   is acceptable to the city; and

(3)   does not violate the ownership/ operational control prohibition described in Subsection (i) of this section.

(b)   The insurance must be issued in the standard form approved by the Texas Department of Insurance, and all provisions of the policy must be acceptable to the city.  The insured provisions of the policy must name the city and its officers and employees as additional insureds, and the coverage provisions must provide coverage for any loss or damage that may arise to any person or property by reason of the operation of a taxicab service by the holder.

(c)   The automobile liability insurance must provide combined single limits of liability for bodily injury and property damage of not less than $500,000 for each occurrence, or the equivalent, for each motor vehicle used by the holder.  Aggregate limits of liability are prohibited.

(d)   If a vehicle is removed from service, the holder shall maintain the insurance coverage required by this section for the vehicle until the director receives satisfactory proof that all evidence of operation as a taxicab has been removed from the vehicle.

(e)   Insurance required under this section must include:

(1)   a cancellation provision in which the insurance company is required to notify the director in

writing not fewer than 30 days before canceling or making a material change to the insurance policy;

(2)    a provision to cover all vehicles, whether owned or not owned by the holder, operated under the holder's operating authority; and

(3)    a provision requiring the insurance company to pay every claim on a first-dollar basis.

(f)    Insurance required by this section may be obtained from an assigned risk pool if all of the policies and coverages are managed by one agent, and one certificate of insurance is issued to the city.

(g)    Operating authority will not be granted or renewed unless the applicant or holder furnishes the director with such proof of insurance as the director considers necessary to determine whether the applicant or holder is adequately insured under this section.

(h)    If the insurance of a holder lapses or is canceled and new insurance is not obtained, the director shall suspend the operating authority until the holder provides evidence that insurance coverage required by this section has been obtained.  A person shall not operate a passenger transportation service while operating authority is suspended under this section whether or not the action is appealed.  A $100 fee must be paid before operating authority suspended under this section will be reinstated.

(i)    No person with any direct or indirect ownership interest in the holder's taxicab service may have any operational control, direct or indirect, in any insurance company that provides insurance required by this section to the taxicab service.  For purposes of this subsection, "operational control" means holding any management position with the insurance company (including, but not limited to, the chief executive officer, the president, any vice-president, or any person in a decision-making position with respect to insurance claims) or having the right to control the actions or decisions of any person in such a management position in the insurance company. (Ord. Nos. 15127; 22805; 25215; 25331; 25457)

### SEC. 45-4.5.    APPAREL TO BE WORN BY DRIVERS.

(a)    Each holder shall have company dress standards for drivers employed by or contracting with the holder.  These standards must be kept on file with the director and must include the following:

(1)    A driver may not wear:

(A)    cut-offs or shorts;

(B)    apparel with offensive or suggestive language;

(C)    tank tops or halter tops; or

(D)    outer apparel made of fishnet or undergarment material.

(2)    Shoes must be worn at all times in the manner for which they were designed.  A driver may not wear shoes or sandals without socks or hosiery and may not wear beach or shower thongs.

(3)    A driver and the driver's clothing must conform to basic standards of hygiene and be neat, clean, and sanitary at all times.

(4)    A driver's hair must be clean and neatly groomed. Facial hair must be neatly trimmed.

(b)    A holder shall specify and require an item of apparel or an item placed on the apparel to be worn by drivers employed by or contracting with the holder, which item must be of such distinctive and uniform design as to readily identify the holder's taxicab service and must bear the name of the holder's taxicab service. The item specified by each holder must be approved by the director to insure that drivers of one holder may be easily distinguished from drivers of another and to insure the neat appearance of drivers.

(c)    While on duty, a driver shall wear the item specified by the holder who employs or contracts with the driver and shall comply with such other identification regulations prescribed by the holder's operating authority. (Ord. Nos. 15127; 20455)

### SEC. 45-4.6.    DRIVER'S DAILY MANIFEST.

(a)    Each holder shall provide its drivers with forms, approved by the director, for maintaining a daily manifest. The form must include appropriate spaces for recording:

(1)    taxicab number, driver's name, date, hours of operation, meter number, total miles, paid miles, units, trips, and extras;

(2)    time, place, origin, and destination of each trip;

(3)    number of passengers and amount of fare and other charges; and

(4)    other information required by the director to aid in the discharge of his duties.

(b)    Each driver shall complete a manifest on a separate form for each tour of duty. The driver shall provide the information required by the form and shall record the information with regard to trips at the end of each trip. The driver shall return completed manifest forms to the holder once a week unless the director requires that the manifest forms be turned in more frequently. (Ord. Nos. 15127; 17775)

### SEC. 45-4.7.    HOLDER'S RECORDS AND REPORTS.

(a)    Each holder shall maintain at a single location business records of its taxicab service. The method used in maintaining the records must be approved by the director, and the director may require maintenance of certain records which he determines are necessary for monitoring the activities, operations, service, and safety record of a holder. A holder shall make its records available for inspection by the director at reasonable times upon request.

(b)    Each holder shall submit to the director such annual and monthly reports concerning its taxicab service as the director determines necessary to evaluate the holder's operations. A franchise holder shall submit a monthly report of gross receipts in a form approved by the director. (Ord. 15127)

### SEC. 45-4.8.    MONTHLY SUMMARY OF METER READINGS.

(a)    A holder, owner, or driver shall obtain forms from the director for maintaining a monthly summary of meter readings for each taxicab operating under a holder's authority. The form must include appropriate spaces for recording:

(1)    taxicab number;

(2)    driver's name;

(3)    date;

(4)    meter number;

(5)    total miles;

(6)    paid miles;

(7)    units;

(8)    trips;

(9)    extras; and

(10)   other information required by the director.

(b)    A holder, owner or driver of a taxicab shall provide all information required by the form.  A separate form must be completed for each taxicab.  A holder, owner, or driver shall return completed forms to the director once a month, or as otherwise required by the director.  (Ord. 17775)

# ARTICLE V.
# SERVICE REGULATIONS.

### SEC. 45-5.1.    CITY-WIDE TAXICAB SERVICE REQUIRED.

(a)    Except as otherwise provided by the holder's operating authority, a holder shall:

(1)    provide taxicab service to the general public to and from any point inside the city that is accessible by public street, except that this provision does not require a holder to subject a taxicab to mob violence or destruction;

(2)    answer each call received for service inside the city as soon as practicable, and if the service cannot be rendered within a reasonable time, the holder shall inform the caller of the reason for the delay and the approximate time required to answer the call; and

(3)    maintain a single station for the purpose of receiving calls and dispatching taxicabs that is operational 24 hours each day.

(b)    The station required by Subsection (a)(3) of this section may be located outside the city of Dallas but must be located within Collin, Dallas, Denton, or Tarrant County, except that any station that is operated from the permanent and established place of business required under Section 45-2.4(a)(9) of this chapter must be located within the city of Dallas.  (Ord. Nos. 15127; 23152)

### SEC. 45-5.2.    REPRESENTATION OF AVAILABILITY OF TAXICAB.

A driver may not represent that his taxicab is engaged when it is in fact vacant or vacant when it is in fact engaged. (Ord. 15127)

### SEC. 45-5.3.   REFUSAL TO CONVEY PASSENGERS.

(a)     While operating a taxicab a driver shall not refuse to convey a person who requests service unless:

(1)     the person is disorderly;

(2)     the driver is engaged in answering a previous request for service;

(3)     the driver has reason to believe that the person is engaged in unlawful conduct; or

(4)     the driver is in fear of his personal safety.

(b)     While operating a taxicab, a driver shall not refuse service requested by a radio dispatch when the location for pick up is within a reasonable distance from the location of the taxicab.  (Ord. 15127)

### SEC. 45-5.4.   PASSENGER LIMITATIONS.

(a)     While operating a taxicab a driver on duty may carry only a person who is a paying passenger, unless the passenger is an employee of the taxicab service that employs or contracts with the driver, a governmental inspector acting in an official capacity, or unless it is authorized by the holder's operating authority.

(b)     A driver may not carry at the same time more passengers than the designed seating capacity of the taxicab.

(c)     The director may establish rules governing passenger limitations, as illustrated by, but not limited to, cab-sharing, cab-pooling, and numbers of passengers with different destinations.  (Ord. 15127)

### SEC. 45-5.5.   CARRY PASSENGERS BY DIRECT ROUTE.

A driver shall carry a passenger to his destination by the most direct and expeditious route available unless otherwise directed by the passenger. (Ord. 15127)

### SEC. 45-5.6.   SOLICITATION OF PASSENGERS.

A driver may not solicit passengers:

(1)     from a location other than the driver's compartment or the immediate vicinity of the driver's taxicab;

(2)     in a way that annoys or obstructs the movement of a person;

(3)     by paying an employee of another business to solicit passengers for or give preferential

treatment in directing passengers to the driver's taxicab; or

(4)    without using a taxicab stand at a location where a taxicab stand exists. (Ord. Nos. 15127; 20455)

### SEC. 45-5.7.    REGULATIONS FOR USE OF TAXICAB STANDS.

(a)    While using a taxicab stand, a driver shall not:

(1)    go beyond 25 feet of his taxicab except to assist a passenger as reasonably necessary after being engaged;

(2)    interfere with the orderly progression of taxicabs from the rear to the front of the taxicab stand;

(3)    perform or allow to be performed repairs or maintenance on a taxicab while parked on the taxicab stand;

(4)    assign or sell his position in a taxicab stand to another; or

(5)    interfere with a taxicab entering a taxicab stand on which there is a vacant space.

(b)    A person shall not park a taxicab on a taxicab stand unless the taxicab is for hire.

(c)    A taxicab left unattended in a taxicab stand is illegally parked and may be removed from the taxicab stand and impounded as provided in Chapter 28 of this code. (Ord. Nos. 15127; 17775; 20455)

### SEC. 45-5.8.    CONDUCT OF DRIVERS.

A driver shall:

(1)    act in a reasonable, prudent, and courteous manner;

(2)    maintain a sanitary and well-groomed appearance in compliance with Section 45-4.5(a) of this chapter;

(3)    not respond to a radio dispatch call assigned to another driver;

(4)    not consume an alcoholic beverage, drug, or other substance that could adversely affect the driver's ability to drive a motor vehicle;

(5)    not monitor the radio frequency of a taxicab company other than the driver's own nor respond to a call for service dispatched to another taxicab;

(6)    not possess a radio capable of receiving the frequency of a taxicab company, other than the driver's own;

(7)    not interfere with the director in the performance of the director's duties; and

(8)   comply with lawful orders of the director issued in the performance of his duties.  (Ord. Nos. 15127; 17775; 20455)

### SEC. 45-5.9.   RETURN OF PASSENGER'S PROPERTY.

(a)   Upon finding property in a taxicab left by a passenger, the driver shall immediately return the property to the owner. However, if the driver is unable to locate the owner or if the driver does not know the identity or whereabouts of the owner, the driver shall, within a reasonable time, deliver the property to the holder who employs or contracts with the driver.

(b)   Upon return of property to the owner or delivery of property to the holder, the driver shall prepare a written report stating the description of the property, the identity of the owner if known, the date the property was left in the taxicab, the circumstances relating to the loss, and the taxicab number. The holder shall keep the report on file for at least one year and shall hold the property for not less than three months. (Ord. 15127)

### SEC. 45-5.10.   ESTABLISHMENT OF TAXICAB STANDS.

(a)   Subject to the approval of the director, the traffic engineer may establish taxicab stands of such character, number, and location as he determines are required by the public convenience and necessity.

(b)   A holder desiring the establishment of a taxicab stand must file a written request with the director and the traffic engineer. (Ord. 15127)

### SEC. 45-5.11.   SERVICE REGULATIONS FOR BUSINESS ESTABLISHMENTS REQUESTING TAXICABS FOR CUSTOMERS.

An employee of a business establishment, other than a taxicab service, who acts as an agent in obtaining taxicab service for prospective taxicab passengers shall not:

(1)   solicit nor accept payment from a driver in return for giving preferential treatment in directing passengers to a driver's taxicab; or

(2)   interfere with the orderly progression of taxicabs from the rear to the front of a taxicab stand. (Ord. 15127)

### SEC. 45-5.12.   GROUND TRANSPORTATION SERVICE AT DALLAS LOVE FIELD AIRPORT.

In addition to complying with this chapter, a holder performing ground transportation service at Dallas Love Field airport shall comply with all requirements of Chapter 5, Article II of this code that are applicable to taxicabs, including, but not limited to:

(1)   only operating taxicabs at the airport that have valid automatic vehicle identification (AVI) tags as defined in Chapter 5, Article II;

(2)   paying all fees applicable to taxicabs operating at the airport as required in Chapter 5, Article II; and

(3)   complying with lawful orders of the director of aviation or the director's designee while performing ground transportation service at the airport.  (Ord. 26492)

# ARTICLE VI.
## FARES.

### SEC. 45-6.1.   RATES OF FARE.

(a)   A holder or a driver shall not charge any fare for providing taxicab service in the city that exceeds the maximum taxicab rates of fare authorized by the following schedule:

(1)   General fares.

Initial meter drop   $2.25

Each 1/9 mile   $0.20

Traffic delay time/waiting time, per 1-1/2 minutes   $0.45

Each extra passenger (up to manufacturer's rated seating capacity)   $2.00

(2)   Love Field Airport fares.

Each passenger-carrying trip departing from the airport (in addition to the general fare)   $0.50

Minimum charge for each trip departing from the airport   $8.00

Flat rate for each trip either originating at the airport and terminating at a location within the Dallas Central Business District area or originating at a location within the Dallas Central Business District area and terminating at the airport   $18.00

Flat rate for each trip either originating at the airport and terminating at a location within the Dallas Market Center area or originating at a location within the Dallas Market Center area and terminating at the airport   $15.00

(3)   Dallas-Fort Worth International Airport fares.

Minimum charge for each terminal transfer   $7.00

Minimum charge for each trip that requires exiting the Airport parking plaza and terminates inside of airport property   $14.50

Minimum charge for each trip that requires exiting the Airport parking plaza and terminates outside of airport property   $17.00

Flat rate for each trip either originating at the airport and terminating at a location within the Dallas Central Business District area or originating  at a location within the Dallas Central Business District area and terminating at the airport   $40.00

Flat rate for each trip either originating at the airport and terminating at a location within the Dallas Market Center area or originating at a location within the Dallas Market Center area and terminating at the airport     $32.00

(4)   Gasoline surcharge.

(A)   A gasoline surcharge approved by the director may be added to a taxicab fare when the average weekly retail price of regular grade gasoline in the State of Texas exceeds $2.00 per gallon as determined by the United States Department of Energy, Energy Information Administration.

(B)   The gasoline surcharge will be calculated in $0.50 increments and applied per taxicab trip.  For every $0.50 increase or decrease in the average price per gallon of gasoline above the $2.00 threshold, the per trip surcharge fee will be adjusted $0.50 up or down to reflect the change in the average gasoline price.  For example:

| AVERAGE PRICE OF GASOLINE (PER GALLON) | AMOUNT OF SURCHARGE (PER TRIP) |
|---|---|
| $2.00 or less | No surcharge |
| $2.01 to $2.50 | $0.50 |
| $2.51 to $3.00 | $1.00 |
| $3.01 to $3.50 | $1.50 |
| Each additional $0.50 increase in the average per gallon price of gasoline | Additional $0.50 per trip |

(C)   The director shall determine the gasoline surcharge on a quarterly basis each year by checking, in accordance with the following schedule, the average price per gallon of gasoline as posted by the United States Department of Energy in its weekly updates:

| DATE OF QUARTERLY PRICE CHECK BY DIRECTOR | DATE OF QUARTERLY ADJUSTMENT (IF REQUIRED) |
|---|---|
| December 20 | January 1 |
| March 20 | April 1 |
| June 20 | July 1 |
| September 20 | October 1 |

(b)   Each holder and driver shall charge the rates of fare prescribed in Subsection (a) in accordance

with the following terms and conditions:

(1)    "Dallas Central Business District area" includes:

(A)    the Dallas Central Business District, which is the area bounded by Woodall Rodgers Freeway on the north, Central Expressway on the east, R. L. Thornton Freeway on the south, and Stemmons Freeway on the west; and

(B)    all points located within 1,000 feet of the Dallas Central Business District boundaries described in Paragraph (1)(A) of this subsection.

(2)    "Dallas Market Center area" includes:

(A)    the Dallas Market Center, which is the area bounded by Motor Street on the northwest, Harry Hines Boulevard on the northeast, Oak Lawn Avenue on the southeast, and Irving Boulevard on the southwest; and

(B)    all points located within 1,000 feet of the Dallas Market Center boundaries described in Paragraph (2)(A) of this subsection.

(3)    "Extra passengers" means the total number of passengers, less one, riding in the same taxicab whether or not going to the same destination. Children in arms are not considered passengers for purposes of counting the number of extra passengers in a taxicab.

(4)    "Traffic delay time" is that time, as set and determined by the taximeter, during which the taxicab is stopped in traffic or proceeding at a speed of less than 11.5 miles per hour due to traffic conditions.

(5)    "Waiting time" may be charged only when a passenger or party requests a taxicab to wait and be held exclusively for the use of that passenger or party.

(6)    Passengers in the same taxicab traveling between the same points must be considered as one trip, and a multiple fare may not be charged. The only extra charge permitted for additional passengers is the $2.00 allowed under Subsection (a) for each extra passenger.

(7)    When passengers in the same taxicab have different destinations, the fare must be collected and the meter must be reset at each destination point, except when the taxicab is engaged by, and the fare for the entire trip is paid by, one passenger or party. The $2.00 charge for each extra passenger is permitted under this paragraph only when the fare for the entire trip is paid by one passenger or party or when more than one passenger disembarks at a single location.

(8)    A passenger or party must reimburse the driver for all lawful tolls paid during the time of engagement only if the passenger or party was notified of the toll route beforehand by the driver and did not object to the toll route.

(c)    The director shall periodically review the taxicab rates of fare and, after receiving input from taxicab holders and drivers, recommend any change to the city council. The city council shall hold a public hearing to consider the proposed change in rates of fare. After the hearing, the city council may approve, disapprove, or modify the proposed change.

(d)   Nothing in this section prohibits a taxicab from being operated for a discounted rate or charge if:

(1)   the discounted rate or charge is not greater than the amount that would be charged for the same service if calculated using the maximum rates of fare allowed under Subsection (a) and applying the requirements of Subsection (b); and

(2)   the discounted rate or charge is mutually agreed upon between the taxicab driver and the party responsible for payment of the fare before taxicab service begins.  (Ord. Nos. 15127; 24312; 24539; 25457; 26164)

## SEC. 45-6.2.   DISPLAY OF RATE CARD.

(a)   A holder shall provide the driver for each taxicab operating under its authority a printed card or sticker containing the maximum rates of fare authorized by Section 45-6.1 of this article.  The form and content of the card or sticker are subject to regulation by the director.

(b)   While operating a taxicab for hire, a driver shall, in a manner approved by the director, prominently display two rate cards or stickers inside the taxicab and two rate cards or stickers outside the taxicab so that they can be easily read by passengers.  (Ord. Nos. 15127; 20455; 24312; 25457)

## SEC. 45-6.3.   COMPUTATION OF FARES.

(a)   A holder shall equip each taxicab with a taximeter programmed to calculate fares using the maximum rates of fare established in Section 45-6.1(a)(1) of this article.  A driver shall charge only a fee as computed by the taximeter, unless a flat rate charge is authorized under Section 45-6.1(a)(2) or (3) of this article or a discounted fare is authorized under Section 45-6.1(d) of this article.  A holder may also authorize a driver to make a flat rate charge for a trip to a destination that is not regulated by this chapter, if the taximeter is kept in operation while the taxicab has a passenger within the scope of the area regulated by this chapter.

(b)   A driver shall keep the taximeter in operation while the taxicab is engaged regardless of whether a flat rate charge or a discounted fare is to be paid.  (Ord. Nos. 15127; 24312; 25457)

## SEC. 45-6.4.   DESIGN AND TESTING OF TAXIMETERS; FEES.

(a)   A taximeter must accurately register in legible figures total miles, paid miles, number of fare units, number of trips, extras, and total fare for a trip.  Figures denoting the fare must be illuminated when the meter is activated.

(b)   A taximeter must be mounted in a conspicuous location in the taxicab in a manner approved by the director.  A taximeter must be equipped to indicate whether the taxicab is engaged or vacant and with a tamper-proof system connecting the taximeter to an amber light atop the taxicab that, when lighted, is visible from all directions.  The system must be designed so that, during the time the taximeter is registering a fare, the amber light is automatically illuminated.

(c)   If the taximeter employs a flag, the flag must project at least four inches above the dashboard when in the non-earning position.

(d)     The taximeter or its drive system must be sealed at all points at which components, if manipulated, could affect the function or accuracy of the taximeter.

(e)     The design of a taximeter is subject to approval by the director to ensure that it complies with this section.

(f)     A holder shall cause each taximeter in taxicabs operating under its authority to be maintained in good operating condition and to be tested and sealed at least once each year by the director in accordance with state and city weights and measures laws.  The director may establish a schedule of regular testing days and times for purposes of this section.

(g)     The owner of a taxicab is responsible for presenting the taxicab to the director for taximeter testing according to the schedule established by the director.  The director may order the owner or the holder to make the taxicab available for taximeter testing at any time.

(h)     The director shall charge the following taximeter testing fees:

(1)     $100 per taximeter when a taximeter is tested on a day other than a scheduled taximeter testing day;

(2)     $35 per taximeter when a taximeter is tested on a scheduled taximeter testing day and the taxicab is operating under the authority of a non-holder; and

(3)     no charge when a taximeter is tested on a scheduled taximeter testing day and the taxicab is operating under the authority of a holder.

(i)     The owner of the taxicab is responsible for paying the taximeter testing fee.

(j)     A person commits an offense if he operates a taxicab that is:

(1)     not equipped with a taximeter; or

(2)     equipped with a taximeter that:

(A)     does not have a current decal and lead seal authorized by the director;

(B)     has been tampered with or altered; or

(C)     incorrectly registers or computes taxicab fares because of alterations to the taxicab odometer, including, but not limited to, changes in the gears, tires, or wheels of the taxicab.

(k)     The following persons are responsible and subject to the penalty for a violation of Subsection (j):

(1)     The driver of the taxicab.

(2)     The owner of the taxicab.

(3)     The holder under whose authority the taxicab is being operated.

(l)   Proof of taxicab ownership for purposes of this section may be made by a copy of the registration of the vehicle with the State of Texas showing the name of the person to whom the state license plates for the vehicle were issued.  The person in whose name the vehicle is registered is prima facie the owner of the vehicle.  If the vehicle is not currently registered, the person in whose name the vehicle was last registered is prima facie the owner of the vehicle.  (Ord. Nos. 15127; 17251; 20076; 20455; 21431; 24312; 25048)

## SEC. 45-6.5.   FARE COLLECTION PROCEDURES.

(a)   Before changing the taximeter to indicate that the taxicab is vacant, a driver shall call the attention of the passenger to the amount of fare registered on the taximeter.

(b)   Upon request by a person paying a fare, a driver shall give the person a legible receipt showing:

(1)   the name of the holder under whose authority the taxicab is operated;

(2)   the taxicab number;

(3)   an itemized list of charges;

(4)   the total amount of fare paid;

(5)   the date of payment; and

(6)   the driver's signature.

(c)   A holder shall provide each driver operating a taxicab under its authority with printed receipt forms adequate for providing the information required in Subsection (b).

(d)   Collection of fare by credit card.

(1)   Every holder and driver shall accept payment of a taxicab fare by the use of any major credit card as designated in rules and regulations established by the director.

(2)   A driver shall either:

(A)   use a secure credit card processing method that encrypts any information transmitted to authenticate a credit card payment transaction for approval; or

(B)   prominently display two cards or stickers, complying with Paragraph (3) of this subsection, inside the taxicab so that they can be easily read by passengers.

(3)   In the event that a secure credit card processing method is not used when collecting a taxicab fare, a holder shall provide each driver operating a taxicab under its authority with printed cards or stickers displaying a warning that the method used to authenticate a credit card transaction for approval is not secure and personal information is subject to being intercepted by unauthorized personnel. The director shall prescribe the form and content of the cards and stickers, and the manner and location in which they must be displayed.  (Ord. Nos. 15127; 17775; 24312; 25457)

# ARTICLE VII.
# VEHICLES AND EQUIPMENT.

### SEC. 45-7.1.   FALSE REPRESENTATION AS TAXICAB.

(a)   A person may not represent that a vehicle is a taxicab if the vehicle is not in fact a taxicab authorized by operating authority granted under this chapter.

(b)   A person may not drive a vehicle in the city that is not a taxicab if the vehicle is marked, painted, or equipped in a way that is likely to result in mistaking the vehicle for a taxicab.  (Ord. 15127)

### SEC. 45-7.2.   VEHICLE REQUIREMENTS AND INSPECTIONS.

(a)   The director may by rule or regulation establish requirements for size, age, vehicle emissions, condition, and accessories of taxicabs used by a taxicab holder, owner, or driver.

(b)   The director shall inspect each taxicab, for compliance with this chapter and rules and regulations of the director, before it is placed in service, twice a year for regular inspections, and once during the year for a random inspection.

(c)   A holder, owner, or driver shall make a taxicab available for inspection when ordered by the director.  If, upon inspection, the director determines that a taxicab is not in compliance with this chapter or rules or regulations of the director, the director shall order the taxicab to be brought into compliance within a reasonable period of time and require it to be reinspected.  The owner shall pay to the director $25 for each reinspection of a taxicab that is required before it is brought into compliance.

(d)   If a holder, owner, or driver fails to make a taxicab available for inspection or if the director determines that a taxicab is not in compliance with this chapter or rules or regulations of the director, the director may order the taxicab removed from service until it is made available for inspection and brought into compliance.

(e)   If the director determines that inspection of the mechanical condition or safety equipment of a taxicab by an expert mechanic or technician is necessary, the holder, owner, or driver shall pay the cost of the inspection.

(f)   When a taxicab is removed from service and placed back in service within 15 days by the same owner, the owner shall pay to the director $100 for reinspection.

(g)   Before any taxicab will be approved for service, the director shall be provided with a copy of the registration for the vehicle with the State of Texas, or a bill of sale if the vehicle is new and has not yet been registered, showing the name of the individual or holder owning the vehicle.  The owner shown on the registration or bill of sale provided to the director shall notify the director of any change in ownership of the taxicab within 10 business days.

(h)   Whenever the director inspects a taxicab for compliance with the Code of Rules and Regulations of the Dallas/Fort Worth International Airport Board, as amended, the taxicab owner shall pay to the director $20 for the inspection.  (Ord. Nos. 15127; 17775; 21431; 22222; 22333; 25048;

25457; 26598)

## SEC. 45-7.2.1.   TAXICAB AGE LIMITS.

(a)   A holder, owner, or driver commits an offense if he operates any vehicle as a taxicab in the city that is older than:

(1)   60 months of age for a vehicle that is not an alternative fuel vehicle; or

(2)   84 months of age for an alternative fuel vehicle, if the vehicle was:

(A)   purchased new as an alternative fuel vehicle; or

(B)   converted to an alternative fuel vehicle within 30 days after the vehicle was purchased new.

(b)   For purposes of this section, vehicle age, for a vehicle purchased used, will be calculated from January 1 of the model year of the vehicle.  If the vehicle is purchased new, age will be calculated from the date of purchase and the holder, owner, or driver shall present to the director:

(1)   a certified copy of the vehicle's title stating the date of purchase and an odometer reading of no more than 1,000 miles at the time of purchase; and

(2)   a manufacturer's certificate, as described in Section 501.025 of the Texas Transportation Code, as amended, certifying that the vehicle has not been previously titled and has not been previously subject to retail sale.

(c)   The city council, by ordinance or resolution, may waive or modify the taxicab age limits set forth in this section after a review of the specific circumstances.  (Ord. Nos. 22222; 22710; 25200; 27295)

## SEC. 45-7.3.   REQUIRED EQUIPMENT.

(a)   Unless otherwise specified in the operating authority under which a taxicab is operated or by rule or regulation of the director, and in addition to other equipment required by this chapter, a holder, owner, or driver shall provide and maintain in good operating condition the following equipment for each taxicab:

(1)   seat belts for each passenger, the number of which is determined by the designed seating capacity of the taxicab;

(2)   heater and air conditioner;

(3)   chemical-type fire extinguisher, of at least one quart capacity, conveniently located in the same compartment of the taxicab as the driver so that it is readily accessible for immediate use;

(4)   equipment to indicate when a taxicab is operating for hire and when it is not for hire;

(5)   top light;

(6)   two-way radio on the holder's dispatch frequency;

(7)   map of the city;

(8)   decal complying with Section 45-7.6 of this article;

(9)   taxicab display receptacle;

(10)   rates of fare cards or stickers;

(11)   taximeter;

(12)   credit card processing device; and

(13)   warning cards complying with Section 45-6.5(d), if credit card transactions are not secure.

(b)   No equipment listed in Subsection (a)(4), (5), (6), (9), (10), (11), and (13) may be placed on a vehicle to be operated as a taxicab unless the equipment is owned by the holder.

(c)   A taxicab in operation on the date this ordinance is adopted that is not equipped with safety belts or the required number of safety belts, is not required to comply with Subsection (a)(1).  (Ord. Nos. 15127; 17775; 20455; 25457)

### SEC. 45-7.4.   VEHICLE COLOR SCHEME AND DISTINCTIVE MARKINGS.

(a)   A holder shall develop the design of a color scheme and distinctive markings for taxicabs operating under its authority, and shall submit the design to the director for approval to insure that the design is readily distinguishable from the design used by other holders.

(b)   After a design is approved by the director, the holder shall submit to the director a color photograph of a completely equipped taxicab using the approved design.

(c)   The holder shall use only the approved design, as depicted in the submitted photograph, for taxicabs operated under its authority unless written approval of a change is obtained from the director. (Ord. 15127)

### SEC. 45-7.5.   REQUIRED VEHICLE IDENTIFICATION.

A holder shall cause each taxicab operating under its authority to be provided with the following uniform vehicle identification:

(1)   the name of the holder's company printed in letters not less than three inches high with one-half inch stroke; and

(2)   the taxicab number assigned to each vehicle by the director in numbers and letters not less than three inches high with one-half inch stroke and so that it is clearly visible from the front, rear, and both sides of the taxicab. (Ord. Nos. 15127; 20455)

## SEC. 45-7.5.1.   TAXICAB DISPLAY RECEPTACLE.

(a)   Every taxicab must have a display receptacle approved by the director securely affixed to a conspicuous place on the dashboard. A display receptacle shall be at least 6-1/4 inches by 10 inches in area, constructed of a rigid material, and designed to accommodate the following information in accordance with the required dimensions:

(1)   At least a two-inch by two-inch colored passport-quality photograph of the driver, with the driver's name as it appears on the driver's Texas driver's license and the taxicab driver's license number placed under the photograph in block letters and numbers not less than three-sixteenths inch high with at least a one-sixteenths inch stroke, must be laminated as a single unit not less than 2-1/4 inches by 3-1/2 inches.

(2)   The company name in block letters not less than one-half inch high with at least a one-eighth inch stroke, with the taxicab number placed under it in block numbers and letters not less than three-fourths inch high with at least a three-sixteenths inch stroke, must be laminated as a single unit not less than three inches by 2-1/2 inches.

(3)   Taxi rates in block numbers at least nine-sixteenths inch high with at least a three-sixteenths inch stroke and in block letters at least one-eighth inch high with at least a 1/32 inch stroke must be laminated as a single unit not less than 6-1/2 by six inches.

(b)   A holder, owner, or driver of a taxicab commits an offense if he operates or allows operation of a taxicab that is equipped with:

(1)   no required display receptacle;

(2)   a display receptacle that does not contain required information; or

(3)   a display receptacle that contains insufficient or incorrect information. (Ord. 20455)

## SEC. 45-7.6.   TAXICAB DECALS.

(a)   The holder, owner, or driver of a taxicab shall obtain a decal, indicating the taxicab's authority to operate, from the director each month, or other period to be determined by the director. A decal must be attached to the lower right corner of the front windshield of the taxicab in a manner approved by the director.

(b)   A person commits an offense if he:

(1)   operates a taxicab with an expired decal or with no decal affixed to it;

(2)   attaches a decal to a vehicle not authorized to operate as a taxicab;

(3)   forges, alters, or counterfeits a taxicab decal required by this section;

(4)   possesses a forged, altered, or counterfeited taxicab decal required by this section; or

(5)   displays more than one taxicab decal issued by the city on a vehicle at the same time.

(c)   A taxicab decal assigned to one person is not transferable to another without consent of the director.  (Ord. Nos. 17775; 20455)

## SEC. 45-7.7.   NOT-FOR-HIRE STATUS OF TAXICABS.

(a)   Each taxicab is presumed to be on duty and ready to serve the general public for hire.  If a driver is not for hire and does not intend to provide taxicab service, the driver shall comply with the following requirements.

(1)   The driver shall place a sign, to be provided by the holder, in the taxicab indicating the words "NOT FOR HIRE" printed in letters not less than three inches in height with a stroke of not less than 3/8 inch.  The letters shall be on a backing of sufficient thickness to not easily bend.

(2)   When a driver is not for hire, the driver shall display the sign in an upright position in the front window on the right side of the taxicab so as to be easily seen and read from outside of the taxicab.

(b)   Any time that a taxicab is not for hire within the Central Business District (that area bounded by Woodall Rogers Freeway on the North, Central Expressway on the East, R. L. Thornton Freeway on the South, and Stemmons Freeway on the West), the driver shall notify the holder's radio dispatcher of his not-for-hire status.

(c)   A driver who is not for hire shall not park or stand a taxicab on a taxicab stand or on a public street or public property within 500 feet of a taxicab stand unless it is parked at a metered parking space.  (Ord. Nos. 17775; 20455)

## SEC. 45-7.8.   REMOVAL OF EQUIPMENT.

(a)   Whenever a vehicle is removed from service or is no longer authorized to operate as a taxicab, the holder, owner, or driver shall remove from the vehicle all taxicab signs, markings, and equipment that would distinguish the vehicle as a taxicab, including, but not limited to, radios, toplights, meters, and decals.

(b)   A holder, owner, or driver of a taxicab shall not sell or transfer to a driver any radio, toplight, meter, or other equipment that would distinguish a vehicle as a taxicab.  (Ord. Nos. 17775; 20455)

# ARTICLE VIII.
# ENFORCEMENT.

## SEC. 45-8.1.   AUTHORITY TO INSPECT.

The director may inspect a taxicab service operating under this chapter to determine whether the service complies with this chapter, rules and regulations established under this chapter, or other applicable law.  (Ord. Nos. 15127; 25457)

## SEC. 45-8.1.1.   REMOVAL OF EVIDENCE OF AUTHORIZATION.

Whenever a holder's operating authority or a taxicab driver's license is suspended, revoked, or denied or whenever a vehicle fails to pass inspection as a taxicab, the director may remove or require the surrender of all evidence of authorization as a holder, taxicab driver, or taxicab, including, but not limited to, removal or surrender of operating authority, licenses, decals, signs, insignia, radios, toplights, and meters.  (Ord. 20455)

### SEC. 45-8.2.   ENFORCEMENT BY POLICE DEPARTMENT.

Officers of the police department shall assist in the enforcement of this chapter.  A police officer upon observing a violation of this chapter or the rules or regulations established by the director, shall take necessary enforcement action to ensure effective regulations of taxicab service.  (Ord. Nos. 15127; 25457)

### SEC. 45-8.3.   CORRECTION ORDER.

(a)    If the director determines that a holder violates this code, terms of its operating authority, a rule or regulation established by the director, or other law, the director may notify the holder in writing of the violation and by written order direct the holder to correct the violation within a reasonable period of time.  In setting the time for correction the director shall consider the degree of danger to the public health or safety and the nature of the violation.  If the violation involves equipment that is unsafe or functioning improperly, the director shall order the holder to immediately cease use of the equipment.

(b)    If the director determines that a violation constitutes an imminent and serious threat to the public health or safety, the director shall order the holder to correct the violation immediately, and, if the holder fails to comply, the director shall promptly take or cause to be taken such action as the director considers necessary to enforce the order immediately.

(c)    The director shall include in a notice issued under this section an identification of the violation, the date of issuance of the notice and the time period within which the violation must be corrected, a warning that failure to comply with the order may result in suspension or revocation of operating authority or imposition of a fine or both, and a statement indicating that the order may be appealed to the city manager.  (Ord. Nos. 15127; 25457)

### SEC. 45-8.4.   SERVICE OF NOTICE.

(a)    A holder shall designate and maintain a representative to receive service of notice required under this chapter to be given a holder and to serve notice required under this chapter to be given a driver employed by a holder.

(b)    Notice required under this chapter to be given:

(1)    a holder must be personally served by the director on the holder or the holder's designated representative; or

(2)    a driver licensed by the city under Article III, must be personally served or sent by certified United States Mail, five day return receipt requested, to the address, last known to the director, of the person to be notified, or to the designated representative for drivers.

(c)    Notice required under this chapter to be given a person other than a driver licensed under

Article III or a holder may be served in the manner prescribed by Subsection (b)(2).

(d)    Service executed in accordance with this section constitutes notice to the person to whom the notice is addressed. The date of service for notice that is mailed is the date received.

(e)    This section does not apply to notice served under Section 45-1.3(b) or Section 45-3.11(a). (Ord. 15127)

## SEC. 45-8.5.    APPEAL OF CORRECTION ORDER.

(a)    A holder may appeal a correction order issued under Section 45-8.3, and a driver may appeal a requirement to take a training course under Section 45-3.2(e), if an appeal is requested in writing not more than 10 days after notice of the order or action is received.

(b)    The city manager or a designated representative shall act as the appeal hearing officer in an appeal hearing under this section. The hearing officer shall give the appealing party an opportunity to present evidence and make argument. The formal rules of evidence do not apply to an appeal hearing under this section, and the hearing officer shall make a ruling on the basis of a preponderance of evidence presented at the hearing.

(c)    The hearing officer may affirm, modify, or reverse all or a part of the order of the director. The decision of the hearing officer is final. (Ord. Nos. 15127; 25457)

## SEC. 45-8.6.    CRIMINAL OFFENSES.

(a)    A person commits an offense if he violates or attempts to violate a provision of this chapter, or a rule or regulation established by the director under this chapter, that is applicable to the person. A culpable mental state is not required for the commission of an offense under this chapter unless the provision defining the conduct expressly requires a culpable mental state. A separate offense is committed each day in which an offense occurs. An offense committed under this chapter is punishable by a fine of not more than $500.

(b)    Prosecution for an offense under Subsection (a) does not prevent the use of other enforcement remedies or procedures applicable to the person charged with or the conduct involved in the offense. (Ord. Nos. 15127; 17775; 19963; 25457)

Disclaimer:
This Code of Ordinances and/or any other documents that appear on this site may not reflect the most current legislation adopted by the Municipality. American Legal Publishing Corporation provides these documents for informational purposes only. These documents should not be relied upon as the definitive authority for local legislation. Additionally, the formatting and pagination of the posted documents varies from the formatting and pagination of the official copy. The official printed copy of a Code of Ordinances should be consulted prior to any action being taken.

For further information regarding the official version of any of this Code of Ordinances or other documents posted on this site, please contact the Municipality directly or contact American Legal Publishing toll-free at 800-445-5588.

© 2010 American Legal Publishing Corporation
techsupport@amlegal.com
1.800.445.5588.

**Fort Worth, Texas, Code of Ordinances >> PART II - CODE >> Chapter 34 - VEHICLES FOR HIRE >> ARTICLE VI. - GROUND TRANSPORTATION FOR HIRE >> DIVISION 1. - GENERAL PROVISIONS >>**

## DIVISION 1. - GENERAL PROVISIONS

Sec. 34-200. - Definitions.
Sec. 34-201. - Scope of article.
Sec. 34-202. - Operating authority required.
Sec. 34-203. - Application.
Sec. 34-204. - Hearing on application; factors to be considered prior to issuance.
Sec. 34-205. - Action by city council; issuance of operating authority to be by ordinance; publication.
Sec. 34-206. - Increase or reduction in specified number of vehicles for hire; annual review.
Sec. 34-207. - Suspension or revocation of operating authority; appeal.
Sec. 34-208. - Annual operating fees.
Sec. 34-209. - Consent required for transfer of operating authority; consent required for transfer of ownership or control.
Sec. 34-210. - Annual report and additional information required.
Sec. 34-211. - Holder's and driver's duties to comply with policies relating to operation of vehicles.
Sec. 34-212. - Driver's responsibilities and duties in operation of a vehicle for hire.
Sec. 34-213. - Driver as employee; independent contractor.
Sec. 34-214. - Dress standards for drivers.
Sec. 34-215. - Driver's permit required; application and information; qualifications; issuance; fee; term.
Sec. 34-216. - Grounds for denial of permit; expiration; change of address, telephone number or employment.
Sec. 34-217. - Display; falsification; driving without a permit.
Sec. 34-218. - Suspension or revocation of driver's permit.
Sec. 34-219. - Appeal from denial, suspension, or revocation of a driver's permit.
Sec. 34-220. - Insurance.
Sec. 34-221. - Expiration and renewal of operating authority.
Sec. 34-222. - Fees; when fee payable.
Sec. 34-223. - Passenger limitations.
Sec. 34-224. - Vehicle for hire decals.
Sec. 34-225. - Return of passenger's property.
Sec. 34-226. - Soliciting prohibited.
Sec. 34-227. - Enforcement.
Sec. 34-228. - Violations and penalties.
Secs. 34-229—34-239. - Reserved.

### Sec. 34-200. - Definitions.

For the purposes of this article, the following words and phrases shall have the meanings respectively ascribed to them in this section, except where the context clearly indicates a different meaning.

*Alternative fuel vehicle* shall mean (i) any vehicle using an alternative fuel as defined by the Energy Policy Act of 1992 or being powered by hybrid-electricity; (ii) any vehicle that meets Tier 2 Bin 1-3 emission standards as defined by the U.S. Environmental Protection Agency; or (iii) any vehicle that is retrofitted to use U.S. Environmental Protection Agency or California Air Resources Board verified aftermarket technologies that reduce emissions.

*Approved adjustment* means the number of vehicles or percentage of vehicles by which a holder is authorized to increase or decrease his fleet not more than one (1) time each year during the term for which the holder has authority under this ordinance. For taxicabs and shuttle service, this range shall be within ten (10) percent of the number of authorized vehicles as specified in the operating authority. Limousines shall be allowed an increase or decrease of up to five (5) vehicles. Horse-drawn carriages shall be allowed an increase or decrease of up to two (2) carriages. Pedicabs shall be allowed an increase or decrease of up to two (2) pedicabs.

*Bench test* means a test of a taximeter head alone, except that the gearbox (i.e., the change gears designed to compensate for tires of different sizes) may be attached.

*Board* shall be the "vehicle for hire review board" composed of a four (4) member panel including: (i) the director of transportation and public works, or his designee, who shall hold place number 1; (ii) the director of

public events, or his designee, who shall hold place number 2; (iii) one (1) representative of the local ground transportation/hospitality industry who shall be appointed by the ground transportation coordinator to place number 3, and shall serve a term of two (2) years; (iv) the ground transportation coordinator shall hold place number 4 and shall be an ex-officio, non-voting member. The board shall be staffed by appropriate employees from the Fort Worth Municipal Court. The board shall make recommendations for approval or denial of grants of operating authority for shuttle and taxicab service.

*City* means the City of Fort Worth.

*City council* shall mean the governing body of the City of Fort Worth.

*City manager* means the individual appointed to that position by the City Council of the City of Fort Worth, Texas, together with all assistant city managers and such other individuals as may be designated by the city manager.

*Classic limousine* means a stretch or executive service limousine that is twenty-five (25) years of age or older. Age of the vehicle shall be calculated from the first day of January of the model year.

*Coordinator* or *ground transportation coordinator* means an employee of the ground transportation office designated by the director to administer and enforce the ground transportation program.

*Cruising* means any movement of a taxicab over the streets of the city without a passenger occupying the taxicab for the purpose of being hailed by a prospective passenger.

*Decal* means a pre-numbered label made to be transferred to glass and issued by the ground transportation coordinator to indicate a vehicle for hire that has the authority to operate in the city of Fort Worth.

*Defensive driving course* means a driving safety course as provided in the Texas Transportation Code.

*Department* means the department or division designated by the city manager to enforce and administer this article.

*Director* means the department head assigned the responsibility for supervising the city's ground transportation services.

*Dispatch trip* means a taxi or shuttle trip originating with a holder and conveyed to the driver.

*Driver* means the individual who drives or operates a vehicle for hire.

*Driver's permit* means the picture identification card issued by the city to a person who is authorized to operate a vehicle for hire pursuant to the operating authority as provided in this article. A driver's permit shall be issued for a period of two (2) years, renewable under the provisions of this article.

*Hearing officer* means the person who is appointed by the city council to act as the hearing officer in municipal court.

*Holder* or *grant holder* means a person, association or corporation that is granted authority to operate a vehicle for hire under this article.

*Horse-drawn carriage* means a chauffeured non-motorized vehicle drawn by a horse and used to transport persons for hire that typically operates in designated areas or on approved routes.

*Horse-drawn carriage stand* means a public place reserved exclusively for use by horse-drawn carriages.

*Initial mileage, time interval or drop* means the mileage or time interval corresponding to the initial drop.

*Legal resident* means a citizen of the United States or a person residing in the United States in accordance with federal immigration laws.

*Limousine* means a luxury sedan or luxury truck that has the manufacturer's rated seating capacity of not more than fifteen (15) passengers excluding the driver and/or is approved by the ground transportation coordinator to be used as a limousine to transport a person on a pre-arranged basis.

*Log* means a computerized record of performance indicating trip requests, including the date and time of the trip request, pickup location, time that the call was dispatched to a cab, cab number of the driver accepting the call and pickup time. These trip records should be subject to outside review as may be needed to verify the accuracy of the logs.

*Luxury sedan* means a motor vehicle that (i) is designated by the manufacturer as a full-size sedan that has at least four (4) doors; (ii) has a rated seating capacity of six (6) passengers or less, excluding the driver;

(iii) whose interior and exterior, including all parts, features, appointments, equipment and accessories, are in excellent condition both in operation and in appearance; and (iv) is approved by the ground transportation coordinator for use as a luxury sedan.

*Luxury truck* means a motor vehicle modified to be a stretch limousine that (i) is designated by the manufacturer as a truck or sport-utility vehicle; (ii) after modification, has seating capacity for at least four (4) passengers, excluding the driver; (iii) whose interior and exterior, including all parts, features, appointments, equipment and accessories, are in excellent condition both in operation and in appearance; and (iv) is approved by the ground transportation coordinator for use as a stretch limousine.

*Minimum fleet operation* shall mean the minimum number of taxicabs a holder may be authorized to operate under this ordinance. Upon issuance of operating authority, a holder must maintain in service at least eighty-five (85) percent of his operational fleet to and from any point inside of the city that is accessible by public street.

*Motor vehicle* means every motor-propelled vehicle used for the transportation of persons over the public streets of the city.

*Operate a vehicle for hire* means the driving of a vehicle for hire for which operating authority has been granted to transport a passenger in the city for a monetary fare, excluding vehicles involved in an organized pool that are not available to the general public.

*Operator* shall mean the same as the term "holder" defined herein.

*Operating authority* means the privilege to operate vehicles for hire service within the city of Fort Worth, as such privilege is granted by the city under this article.

*Owner* means the person to whom authority is granted to operate vehicles for hire service under this article.

*Pedicab* shall mean a non-motorized vehicle with three (3) or more wheels propelled exclusively by human power.

*Pedicab stand* shall mean a public place reserved exclusively for use by pedicabs.

*Person* means an individual, corporation, government or governmental subdivision, agency, trust, partnership, or two (2) or more persons having joint or common economic interest.

*Preapproved regularly scheduled basis* means a shuttle service operating on a predetermined schedule with a fixed point of pickup and with a final destination located within a fixed zone or sector, all of which have been approved by and on file with the ground transportation office.

*Preapproved route* means a shuttle service operating on a predetermined schedule with fixed pickup and destination points located on a route approved by and on file with the ground transportation coordinator

*Public necessity and convenience* means the factors the city considers in granting authority to operate passenger vehicle service under this ordinance, which shall include, but not be limited to: (i) demonstrated need for the proposed number of vehicles to ensure adequate availability of service in Fort Worth; (ii) demonstrated performance in providing satisfactory service; (iii) demonstrated performance in providing satisfactory response times; (iv) the capability of the company to improve service in the city; (v) logs evidencing demonstrated compliance with taxicab utilization rates evaluated using a guideline of eight (8) Fort Worth trips per cab per day, with at least two-thirds (2/3) of the trips being by dispatch or contract; and (vi) any other factors the city deems relevant for granting such authority.

*Road test* means a test similar to a wheel test or bench test, except the taximeter mechanism is actuated as a result of cab travel.

*Prearranged* means an appointment made by a regulated service with a passenger to provide service that was initiated by a person contacting the regulated service by telephone, correspondence or other oral or written communication.

*Shuttle service* means business of offering or providing transportation for hire by a shuttle vehicle when the driver is furnished as part of the service and the service is offered on a pre-approved route.

*Shuttle vehicle* means a van-type motor vehicle that has a manufacturer's rated seating capacity of not less than seven (7) passengers and not more than fifteen (15) passengers including the driver, and is used for the transportation of persons from one (1) location in the city to another location either inside or outside the city.

*Specialty limousine* means a stretch or executive service limousine that has been modified to

accommodate a special feature, such as a hot tub, or enhanced by altering its appearance to provide a distinctive design, such as with a kit to replicate a classic vehicle.

*Street* means any street, alley, lane, public place or highway within the city of Fort Worth.

*Stretch limousine* means a luxury sedan with a wheelbase that has been extended not less than twelve (12) inches from its original length and has a rated seating capacity of fifteen (15) passengers or less, including the driver, and is approved by the ground transportation coordinator for the use as a stretch limousine.

*Taxicab* means a chauffeured motor vehicle used to transport persons for hire that typically operates on irregular routes, irregular schedules and on a call-and-demand basis, but does not include:

(1)     A vehicle being operated pursuant to a franchise, grant of privilege, or permit issued by the city for another type of service as may be from time to time classified and defined by ordinance or otherwise; or pursuant to a franchise or permit legally issued by the railroad commission of the state; or pursuant to permission duly granted by proper authority of the city for a vehicle to operate over a regular route upon a set schedule; or a vehicle being operated as a chartered bus under a contract to carry twelve (12) or more passengers.

(2)     Vehicles being used as ambulances.

(3)     Vehicles rented or leased for self-operation by the persons actually driving the same, unless such a vehicle is transporting persons for compensation other than the one who actually rented or leased the same.

*Taxicab stand* means a public place reserved exclusively for use by taxicabs.

*Taximeter* means a device that mechanically/electronically computes and registers in dollars and cents for viewing by the passenger, the fare based upon the distance traveled, the time the taxicab is engaged, or any other basis for charges which are specified in the operating authority or rate ordinance pertaining to a taxicab grant of operating authority.

*Traffic engineer* shall mean the director of transportation and public works, or an employee of the department appointed by the director of transportation and public works who has authority to exercise the powers and duties provided by Chapter 22 of the Code of City of Fort Worth (1986), as amended, and any other ordinance of the city relative to traffic.

*Transfer* shall mean any form of sale, conveyance, assignment, lease, sublease or merger involving a holder of a grant of operating authority, and shall specifically include, but shall not be limited to:

(1)     Any change in limited partnership interests, non-managing limited liability company interests, or voting or non-voting stock representing more than fifty (50) percent of the equity interests of the holder; and

(2)     Any option, right of conversion or similar right to acquire interests constituting control without substantial additional consideration.

*Vehicle for hire* shall mean every chauffeured vehicle, other than mass transit vehicles or vehicles involved in an organized car pool not available to the general public, which is operated for any fare or compensation and used for the transportation of passengers over city streets. Such vehicles shall include, but are not limited to taxicabs, vans, motorcoaches, buses, limousines, stretch limousines, classic vehicles, luxury vehicles, horse-drawn carriages and pedicabs.

*Waiting time* means all time when a taxicab is not in motion, or is not occupied by a passenger, or the time consumed while standing at the direction of the passenger or person who engaged the taxicab.

*Wheel test* or *meter test* means a test of the entire taximeter assembly when mounted in a vehicle, the mechanism being actuated by the mechanical revolution of the vehicle wheel while the cab remains at rest.

(Ord. No. 17412, § 1, 2-20-07)

## Sec. 34-201. - Scope of article.

(a)     This article governs the operation of vehicles for hire and ground transportation services under an operating authority. This article, however, is not a limitation on the power of the city council to incorporate special provisions relating to the operation of the vehicle for hire services. To the extent that a special provision conflicts with this article, the special provision controls.

(b)     This article does not apply to a vehicle for hire service or to a person operating a vehicle for hire service that is:

(1)     To transport a person from a point outside the city to a destination inside the city if

the vehicle for hire service leaves the city without receiving a new passenger inside the city;

(2)      Rated under state or federal authority unless subject to the city's regulatory authority; or

(3)      Rated for a funeral home in the performance of funeral services.

*(Ord. No. 17412, § 1, 2-20-07)*

## Sec. 34-202. - Operating authority required.

No person shall drive, operate or cause to be operated, nor shall any person employ, permit or allow another to drive, operate or cause to be operated any vehicle for hire over any street in the city for the purpose of transporting a passenger or passengers for compensation, nor shall any person accept compensation for such transportation of passengers without first having obtained operating authority from the city authorizing such operation and acts under this article. A holder's operating authority is not transferable or assignable.

*(Ord. No. 17412, § 1, 2-20-07)*

## Sec. 34-203. - Application.

(a)      Any person desiring authority to operate vehicles for hire in the city shall submit an application on a form provided for that purpose to the ground transportation office. If application is for taxicab or shuttle service, the application shall be submitted to the Board for review. If application is made for limousine, pedicab or horse-drawn carriage service, the application shall be reviewed by the ground transportation coordinator. The applicant must be the person who will own, control, or operate the proposed vehicle for hire service. Each application must contain the following:

(1)      The name, age and address of the applicant, if a natural person, or, if a corporation, its name, date and place of incorporation, address of its principal place of business and the names of all its officers, directors and persons with an economic interest, together with their respective addresses, as well as a certified copy of the articles of incorporation, the trade name, if any, under which the applicant proposes to operate and the address of the place or places of business from which the applicant proposes to operate.

(2)      A description of each vehicle the applicant proposes to use in providing vehicle for hire service, including, but not limited to, each vehicle's year, make, model, type, seating capacity, condition of each vehicle for hire proposed to be operated, the design and color scheme of each vehicle for hire and the lettering and marks to be used thereon.

(3)      The number of vehicles for hire for which operating authority is desired, which shall not be less than the minimum number of vehicles as required by this ordinance. This number should include the approved adjustment as set forth in section 34-200 of this ordinance to allow for reduction or increase in the number of authorized vehicles.

(4)      A full and complete statement of all the applicant's assets and liabilities.

(5)      A full list of any unpaid judgments of record against applicant, which list shall include the name and address of the owner of the judgment and amount of the judgment; and, if the applicant is a corporation, a full list of any unpaid judgments against any of the officers and directors, which list shall include the name and address of the owner of the judgment and the amount of the judgment.

(6)      The make and model type of meter to be installed on each vehicle for hire if required, for which application of the operating authority is made.

(7)      A full list of any and all liens, mortgages and other encumbrances on the vehicles for hire and other equipment to be used in providing service, which list shall include the amount secured by a lien, mortgage or other encumbrance, the amount then due thereon, the character of such lien, mortgage or other encumbrance and the name and address of the holder of such lien, mortgage or other encumbrance.

(8)      A list of all convictions of the applicant for violations of any and all federal, state or municipal laws. The applicant must not have been convicted twice within a two-year period for violations under section 34-215 of this chapter; if the applicant is a corporation or other business entity, a list of all convictions of all officers, members and directors of the corporation or entity and persons with an economic interest in the operating authority for violations of any federal, state or municipal laws.

(9)      Full information pertaining to the extent, quality and character of the service the applicant proposes to render. This shall include, but not be limited to the communication system, frequencies, dispatch staffing and procedures, vehicle maintenance, driver training, safety program and procedures for handling customer complaints or lost items.

(10)    Facts indicating public necessity and convenience as defined in this ordinance for such service with consideration given to the following factors may include but are not limited to:

     a.    Operational information demonstrating applicant's record in providing satisfactory passenger service;

     b.    Demonstrated need for the proposed number of vehicles to ensure adequate availability of taxicabs for dispatch service and taxi stands, taking into account vehicle utilization rates using a guideline of eight (8) Fort Worth trips per cab, per day, with at least two-thirds (2/3) of the trips being by dispatch or contract;

     c.    Dispatch logs or other records indicating customer wait times and on-time performance for customers making advance reservations for geographic areas of the city;

     d.    Overall trip volume, trip volumes for Fort Worth-authorized taxicabs, and trip volumes for Fort Worth pick-ups, with such records being subject to independent review;

     e.    Geographic distribution of trips in the city, and for companies not currently authorized in Fort Worth, the geographic distribution of trips in the region;

     f.    Applicant's ability to demonstrate need through a proposal indicating potential effectiveness, and marketing plans for the period of time covered by the operating authority;

     g.    Applicant's or holder's process for compiling or maintaining a log of performance, events, trips, and dispatches; and

     h.    Any other factor the board or the city council deems relevant.

(11)    A full and complete statement of the experience, if any, the applicant has had in rendering such services in the city or elsewhere; and, if the applicant is a corporation or other business entity, a full and complete statement of the experience the officers, members and directors have had in rendering such service in the city or elsewhere. The statement must list all previous denials, revocations or forfeitures of permits, franchises or other operating authority for such services, the dates, locations and reasons.

(12)    Any such other and additional information as may be required by the board or the city council in its discretion.

(b)    A nonrefundable application fee must accompany the application. Upon request by the city, applicant shall furnish to the city additional copies of its application as the city may require for the review and consideration of same.

(c)    In addition to the requirements set forth in sections 34-203 and 34-206, applications for operating authority made by taxicabs and shuttle services after the adoption of this ordinance for any new company or any existing company desiring to increase its fleet beyond the maximum number of authorized vehicles, may be recommended for approval if the applicant or holder demonstrates the public necessity and convenience as defined by this ordinance for the operation of additional vehicles in Fort Worth. Such additional vehicles must either be (i) licensed in Dallas or (ii) dedicated to Fort Worth and neighboring areas. Applications for increase beyond the maximum number of authorized vehicles for limousines, horse-drawn carriages or pedicabs, may be recommended for approval if the applicant or holder demonstrates sufficient need for the operation of additional vehicles in Fort Worth.

(Ord. No. 17412, § 1, 2-20-07)

## Sec. 34-204. - Hearing on application; factors to be considered prior to issuance.

(a)    Upon receipt of a completed application for issuance of operating authority, the ground transportation coordinator shall promptly notify in writing all holders requesting to be notified of applications for issuance, informing them that the application may be reviewed at a specified location at the City of Fort Worth for fifteen (15) days from the date the coordinator mails notifications. If application is made by taxicab or shuttle service, after the expiration of fifteen (15) days, the board shall hold a public hearing on the proposed service. The board shall set the time and place for the hearing. If application is made by a limousine, horse-drawn carriage or pedicab service, the coordinator shall make a recommendation for issuance of operating authority. In determining whether or not to recommend the granting of operating authority, the board or the coordinator shall consider, among other things, the following items:

(1)    Probable permanency and quality of the service offered by the applicant, the experience of the applicant in rendering such service in the city or similar service elsewhere, and the past record and experience of the applicant in adjusting claims and paying judgments, if any, to claimants;

(2)    The financial ability of the applicant to provide the service described, and to respond to claims or judgments arising by reason of business operations, injury to persons or damage to

property resulting from operation of a vehicle for hire service;

    (3)    The character and condition of the vehicles for hire to be used;

    (4)    If the applicant is a corporation, the qualification of the officers, directors and persons with an economic interest making such application, and each of the above enumerated items as applied to each of the stockholders, officers and directors;

    (5)    The character and past record of the applicant and, if the applicant is a corporation or other business entity, the character and past record of its officers, directors, members and stockholders;

    (6)    Whether the vehicles subject to the request are either licensed in Dallas or dedicated to Fort Worth or neighboring areas;

    (7)    Such information as presented during any public hearing that may bear on the public necessity and convenience as defined by this ordinance and the ability of the applicant to provide service.

**(b)**    Within thirty (30) days after the public hearing or consideration of the application, the board or the coordinator shall approve or deny the application for issuance of operating authority. If the board or the coordinator approves the application, such application shall be forwarded to the city council for adoption of the findings of the board or the coordinator with a recommendation to issue operating authority. If the board or the coordinator denies the application, then that decision is final unless appeal is made with the hearing officer in accordance with section 34-207 within ten (10) business days after the final decision of the board or the coordinator.

(Ord. No. 17412, § 1, 2-20-07)

## Sec. 34-205. - Action by city council; issuance of operating authority to be by ordinance; publication.

**(a)**    The evidence taken at a hearing held pursuant to section 34-204 of this chapter, or the information submitted to the ground transportation coordinator, and every finding or opinion made by the board or the coordinator, shall be the finding or opinion of the city council itself when presented to the city council in open meeting and adopted, approved or confirmed by the city council.

**(b)**    If the city council finds the public necessity and convenience require the operation of the number of vehicles for hire applied for, or of a lesser number, and the applicant is qualified to conduct the business, and that the general welfare of the citizens of the city will best be served by addition of the specific vehicles for hire contained in the application, and that all other requirements of this article have been fully complied with by the applicant, then the city council shall, by ordinance, grant to the applicant the privilege of operating authority for the operation of the number of vehicles for hire within the city specified by the city council. If the city council denies the application, then operating authority shall not be issued.

**(c)**    Unless otherwise previously granted prior to the adoption of this ordinance, operating authority shall not be issued for a period exceeding three (3) years. The applicant must submit the required fees at the time of acceptance of the operating authority. The operating authority shall not become effective if the required fees are not submitted.

**(d)**    Notwithstanding section (c) above, all grants of operating authority issued under this section shall be by ordinance and shall be accepted in writing by the grantees, and before taking effect, a descriptive summary of the ordinance granting such authority and the penalty for violation of its provisions shall be published twice in the official newspaper of the city.

(Ord. No. 17412, § 1, 2-20-07)

## Sec. 34-206. - Increase or reduction in specified number of vehicles for hire; annual review.

**(a)**    The applicant for any operating authority for vehicle for hire service under the terms of this chapter shall be authorized to operate in the city only the number and type of vehicles for hire specified in such operating authority, including the approved adjustment. The holder may request to increase or decrease his fleet within the approved adjustment not more than one (1) time for each year he is authorized to operate under this ordinance. If the holder desires an increase or decrease within the approved adjustment, the holder shall notify the coordinator, and the coordinator shall determine whether or not such increase or decrease is authorized based on the factors set forth in sections 34-203 and 34-204 of this chapter.

**(b)**    If demand periods require the operation of additional or less vehicles for hire which exceeds the holder's approved adjustment, then, the holder may request an adjustment in the number of authorized vehicles. If the request is for taxicab or shuttle services, the holder shall submit a written request,

together with any written documentation to substantiate the reasons for an increase or decrease in the number of vehicles in his fleet to the ground transportation office for review by the "vehicle for hire review board" indicating the reasons for additional or less vehicles. After a public hearing, the board shall make recommendations to the city council for approval as to any necessary adjustments in the number of vehicles. If the request is for a limousine, horse-drawn carriage, or pedicab service, the holder shall submit a written request to increase or decrease the number of authorized vehicles to the ground transportation coordinator indicating the reasons for additional or less vehicles. The board or the coordinator, respectively, shall make recommendations to the city council.

(c)    If the city council finds that the public necessity and convenience require the reduction or addition of vehicles for hire, then it shall authorize the holder to reduce or add to his fleet a designated number of vehicles for hire. After such authorization by the city council and acceptance by the holder, the holder may operate only the number of vehicles for hire specified in the operating authority originally granted to it, plus the number of vehicles for hire it is authorized to add to its fleet as set out above, or the holder may operate only the number of vehicles as specified after the approved reduction. If the board or the coordinator denies a holder's request to increase or decrease its fleet, that decision is final unless appeal is made with the hearing officer in accordance with section 34-207 within ten (10) business days after the final decision of the board or the coordinator.

(d)    The board shall review the approved adjustment of each holder's application for operating authority for taxicabs and shuttle service on an annual basis. If the board determines that modifications are required to the number of vehicles in any holder's fleet, and the modified number exceeds or is less than the approved adjustment, then after notice to the holder(s) and a public hearing in accordance with section 34-204(a), the board shall make recommendations to the city council for approval as to any necessary adjustments. If the city council finds that the public necessity and convenience require the reduction or increase in the number of vehicles for hire, then it shall require the holder to reduce or add to his fleet a designated number of vehicles for hire. After such action, the holder shall only be authorized to operate the number of vehicles for hire specified in the operating authority originally granted to it, plus the number of vehicles for hire it is authorized to add to its fleet as set out above, or the holder may operate only the number of vehicles as specified after the required reduction.

(e)    Upon reduction of the number of authorized vehicles, the holder shall return all decals for vehicles for hire which will no longer be in service due to the reduction to the coordinator within three (3) days of such order.

(Ord. No. 17412, § 1, 2-20-07)

## Sec. 34-207. - Suspension or revocation of operating authority; appeal.

(a)    The coordinator may recommend that the city manager suspend a regulated service operating authority if the coordinator determines that:

(1)    There is sufficient reason to believe that the holder has made a false statement as to a material matter in the application for issuance or renewal of the applicant's operating authority;

(2)    That the holder has failed to comply with the provisions of this city ordinance, or other lawful order;

(3)    The holder has failed to comply with state or federal law or regulations, or for other reasons which would reasonably tend to indicate lack of financial stability of the holder to perform a regulated service;

(4)    The financial position of such holder has reached a condition that the holder is unable to maintain insurance coverage as required by the ordinance, or the holder is deemed unable to pay in full, reasonable claims for damages which might be legally established and confirmed;

(5)    The holder has failed to pay the annual operating fee, or any other fees required by this article as approved by the city council; or

(6)    The general welfare of the citizens or the best interests of the city will be served by such action.

(b)    Except for suspensions recommended for failure to pay the annual operating fees, the city manager may suspend a holder's operating authority for any violation of this ordinance for a period not to exceed sixty (60) days. If the suspension is for failure to pay annual operating fees, the suspension period shall not exceed thirty (30) days. In the event of a suspension, then from and after the time of such suspension, and for the duration of such suspension, the operating authority shall be of no force and effect and the holder thereof shall not be authorized to operate any vehicles for hire within the city. Notice of such suspension shall be given to the holder in writing by registered mail specifying the reasons for the suspension, indicating the procedures for revocation, and notifying the holder of his opportunity to appeal.

(c)    The city manager shall be authorized to remove any such suspension if, within the suspension

period, the holder provides verification to the coordinator that the deficiency causing the suspension has been corrected. Failure of the holder to correct such deficiency prior to the expiration of the suspension period will result in revocation of the holder's operating authority. If a holder's operating authority is revoked in accordance with this article, the revocation will become final unless an appeal is filed with the hearing officer within ten (10) business days from the end of the suspension period. If an appeal is filed, the suspension period will remain in effect until a decision is rendered by the hearing officer.

(d)     If the holder files an appeal with the hearing officer due to revocation of operating authority, or if an applicant files an appeal from a decision of the board, the city manager, or the coordinator, a hearing shall be set and notice of such hearing shall be given to the holder or applicant in question by registered mail to the address as shown on the records of the city. The notice shall specify the time and place of the hearing and shall list all reasons for revocation or denial of operating authority. The holder or applicant in question shall be allowed to be present at the hearing, which shall be public, and shall be allowed to be represented by counsel. The holder or applicant shall have full opportunity to disprove any and all charges and allegations set out against him or her or his or her operations in the notice.

(e)     If the hearing officer finds that an applicant cannot provide sufficient service based on the factors set forth in this ordinance, or if the holder has violated this article in any way, has failed to pay the annual operating fee as required by the city council, is unable to pay in full reasonable claims for damages which might be asserted, is unable to demonstrate the financial stability to perform the services as contemplated by the operating authority, or for any reason, the general welfare of the citizens or the best interests of the city will be served by such action, then the hearing officer is authorized to affirm the decision of the city manager, the board, or the coordinator, or to revoke, repeal and cancel the operating authority of the holder in question.

(f)     The hearing officer may affirm, modify or reverse all or part of the action of the city manager, the board or the coordinator being appealed. The decision of the hearing officer is final, unless otherwise directed by a majority of the city council.

(g)     A holder whose operating authority is revoked or cancelled in accordance with this chapter, may not reapply for an operating authority before the expiration of twenty-four (24) months from the date of revocation, or in the case of an appeal, the date an order of revocation or cancellation is issued by the hearing officer. The holder shall be required to pay a reinstatement fee upon reapplication.

*(Ord. No. 17412, § 1, 2-20-07)*

## Sec. 34-208. - Annual operating fees.

Each holder shall pay the annual operating fees as approved by city council on or before January 1st of each calendar year. If the fees have not been received within ten (10) business days after January 1st, the coordinator shall recommend suspension and revocation of the operating authority in accordance with section 34-207 of this chapter.

*(Ord. No. 17412, § 1, 2-20-07)*

## Sec. 34-209. - Consent required for transfer of operating authority; consent required for transfer of ownership or control.

(a)     No grant of operating authority made under the terms of this article shall be assignable or transferable without the formal consent and approval of the city council after proper application is made to the board or the coordinator. Such application shall be accompanied with a nonrefundable application fee paid to the ground transportation office. Upon receipt of such application and fee, if the application is for taxicab or shuttle service, the board shall review the application and make an investigation as it deems necessary. If the application is for limousine, pedicab or horse-drawn carriage service, the coordinator shall review the application and make an investigation as he deems necessary. The board or the coordinator, respectively, shall make a recommendation to the city council as to whether the proposed transferee is qualified to conduct such business, whether the transferee is financially able to conduct such business and to pay any claims for damages which might be asserted against him or her by virtue of the operation of such vehicle for hire, and whether the operation of such business by the transferee will be beneficial to the general public in the city.

(b)     No holder shall sell, transfer, assign or otherwise encumber holder's vehicle for hire operation without the consent of the city council. If a holder desires the city council's consent to sell, transfer, assign or otherwise encumber its vehicle for hire operation, the holder shall submit an application for such consent in the form requested by the city and shall submit such documents and information that the city may reasonably need for its consideration of the application to the ground transportation office. The holder shall reimburse the city for all costs reasonably incurred due to any proposed sale, transfer, assignment or other encumbrance.

(Ord. No. 17412, § 1, 2-20-07)

## Sec. 34-210. - Annual report and additional information required.

(a)     Each holder of an operating authority shall file with the ground transportation coordinator, no later than January 31 of each calendar year, an annual report showing the average number of vehicles for hire operated daily during the previous calendar year.

(b)     Additional information may be requested by the ground transportation coordinator. The request may include, but is not limited to, information relating to written complaints received by the holder, average calls per day dispatched and available vehicles for hire not operated, number of damage or injury claims filed against the holder, number of claims settled by the holder, and number of lawsuits pending against the holder arising out of his vehicle for hire operations under the holder's operating authority.

(Ord. No. 17412, § 1, 2-20-07)

## Sec. 34-211. - Holder's and driver's duties to comply with policies relating to operation of vehicles.

(a)     A holder shall establish a written policy and take action to discourage, prevent and correct violations of this article by drivers who operate a vehicle for hire under the holder's operating authority.

(b)     A holder shall not allow a driver to operate a vehicle for hire if the holder knows or has reasonable cause to suspect that the driver has failed to comply with this article, the rules and regulations established by the city council or other applicable law.

(c)     A holder shall respond directly to the customer for all complaints received regarding ground transportation service within Fort Worth within ten (10) business days from receipt of the complaint. The holder shall further advise the Coordinator of any and all action taken in response to the complaint within ten (10) business days.

(d)     In the operation of a vehicle for hire, a holder shall comply with the terms and conditions of the holder's operating authority, and shall comply with this article and other laws applicable to the operation of the vehicle for hire service.

(e)     Any violation of this section shall be grounds for suspension or revocation of holder's operating authority not exceeding more than two (2) years.

(Ord. No. 17412, § 1, 2-20-07)

## Sec. 34-212. - Driver's responsibilities and duties in operation of a vehicle for hire.

(a)     While on duty, a driver shall comply with this article, the regulations established under this article, other laws applicable to the operation of a motor vehicle in this state, and the policies and procedures issued by the holder in connection with the holder's discharging of his duties under its operating authority and this article.

In addition, a driver shall:

(1)     Conduct himself or herself in a reasonable, prudent and courteous manner;

(2)     Maintain a sanitary and well-groomed appearance;

(3)     Refrain from sleeping in any vehicle for hire;

(4)     Not refuse a trip from any location within the city unless the driver is in reasonable fear of his or her personal safety;

(5)     Not consume alcoholic beverages, drugs or other substances which could affect his or her ability to safely drive a motor vehicle; and

(6)     Comply with all lawful orders of a peace officer as it relates to carrying out the provisions of this ground transportation ordinance.

(b)     Any violation of this section shall be grounds for the revocation or suspension of a vehicle for hire driver's permit.

(c)     The coordinator, the director, his or his designee, or any Peace Officer of the Municipal Court or the Fort Worth Police Department may conduct inspections of the driver and vehicle for hire to ensure compliance with this section.

(Ord. No. 17412, § 1, 2-20-07)

### Sec. 34-213. - Driver as employee; independent contractor.

A holder of an operating authority may employ drivers, or may contract with a driver on an independent contractor basis, but only if the holder:

    (1)    Agrees to and shall indemnify, defend and hold the city harmless for claims or causes of action against the city arising from the conduct of the driver in the operation of a vehicle for hire;

    (2)    Provides that the driver is insured under the holder's fleet liability insurance policy; and

    (3)    Imposes a condition that the driver must comply with this article, with the understanding that failure to comply shall be a material breach of the operating authority which could result in suspension or revocation of the holder's operating authority.

(Ord. No. 17412, § 1, 2-20-07)

### Sec. 34-214. - Dress standards for drivers.

    (a)    Each holder shall establish and enforce company dress standards for its drivers. In addition to the standards adopted by the holder:

    (1)    A driver shall not wear:

        a.    Tailored shorts more than two (2) inches above the knee, nor wear cutoffs, beach or shower shoes;

        b.    Apparel with offensive or suggestive language;

        c.    Tank tops or halter-tops;

        d.    Outer apparel made of fishnet or undergarment material; or

        e.    Pants or jeans with holes, or hems that are frayed or drag the ground.

    (2)    A driver shall wear:

        a.    Clean and pressed shirts or blouses with a collar, such as sports or dress shirts or polo-type shirts.

        b.    Jeans, dress or sport slacks.

        c.    Clean and pressed shorts or skirts that are no more than two (2) inches above the knee.

    (3)    Shoes with closed heels and toes must be worn at all times in the manner for which they were designed. Socks or hosiery must be worn.

    (4)    A driver and the driver's clothing must conform to basic standards for hygiene and be neat, clean and sanitary at all times, as well as comply with such other dress requirements imposed by the grant holder for whom the driver is operating a vehicle for hire.

    (b)    Any violation of this section shall be grounds for suspension or revocation of the driver's permit.

(Ord. No. 17412, § 1, 2-20-07)

### Sec. 34-215. - Driver's permit required; application and information; qualifications; issuance; fee; term.

    (a)    It shall be unlawful for any person to drive a vehicle for hire in the city without having first obtained a driver's permit from the ground transportation coordinator.

    (b)    A written application for such a permit shall be filed with a non-refundable permit application fee, and shall be upon a form obtained from the ground transportation coordinator containing, among other matters, the following information:

    (1)    The experience of the applicant in driving the specific type of vehicle for hire, other motor vehicles, including public vehicles;

    (2)    Whether or not the applicant has ever been convicted of a violation of any federal, state or municipal law and, if so, the particulars of each violation of which the applicant has been convicted;

    (3)    Applicant's name, street address, age, sex, telephone number and place of

residence for the three (3) years immediately preceding the date of the application;

    **(4)**    The operating authority holder for whom the driver proposes to drive a vehicle for hire; and

    **(5)**    Such other additional information as the ground transportation coordinator may prescribe on the form.

    **(6)**    All applications must be signed by the grant holder for whom the driver proposes to drive a vehicle for hire in the City of Fort Worth. A grant holder's signature will indicate the holder's recommendation that the applicant be issued a driver's permit. A grant holder shall notify the coordinator in writing within forty-eight (48) hours if the holder withdraws its recommendation. The holder must submit written reasons for withdrawal. If the holder withdraws his recommendation, the driver's permit shall be revoked immediately.

**(c)**    The application shall be accompanied by at least two (2) photographs of the applicant taken within the immediately preceding three (3) months.

**(d)**    Written proof showing that the applicant completed a defensive driving course within the last twelve (12) months shall be provided with the application.

**(e)**    A driver's permit may be issued for a period of two (2) years. The permit may be renewed by filing a new application and paying a required application fee.

**(f)**    The coordinator shall make such additional investigation of the applicant as he deems necessary to ascertain whether or not the applicant is a fit and proper person to operate a vehicle for hire in the city. If the coordinator is satisfied that the applicant is a fit and proper person to drive a vehicle for hire in the city, then, the coordinator shall cause to be issued to such applicant a permit to operate a vehicle for hire in the city.

**(g)**    To qualify for a driver's permit, a person must:

    **(1)**    Be at least nineteen (19) years of age;

    **(2)**    Be a citizen of the United States by birth or naturalization, or if alien, submit evidence of legal residence in the United States and legal right to engage in employment therein;

    **(3)**    Hold a valid driver's/operator's license issued by the State of Texas;

    **(4)**    Be able to read and speak the English language;

    **(5)**    Maintain physical and cognitive condition necessary to exercise ordinary and reasonable control over a vehicle for hire or that is not likely to otherwise endanger the public health or safety;

    **(6)**    Not have been convicted of more than three (3) moving traffic violations arising out of separate transactions, or involved in more than two (2) motor vehicle accidents in which it could be reasonably determined that the driver was at fault, within any twelve (12) month period during the preceding thirty-six (36) months;

    **(7)**    Not be under indictment, have charges pending, or have been convicted of a crime as set forth below:

        **a.**    Involving:

        **1.**    Criminal homicide as described in Chapter 19 of the Texas Penal Code;

        **2.**    Kidnapping as described in Chapter 20 of the Texas Penal Code;

        **3.**    A sexual offense as described in Chapter 21 of the Texas Penal Code;

        **4.**    An assaultive offense as described in Chapter 22 of the Texas Penal Code;

        **5.**    Robbery as described in Chapter 29 of the Texas Penal Code;

        **6.**    Burglary as described in Chapter 30 of the Texas Penal Code, but only if the offense was committed against a person with whom the applicant came into contact while engaged in a passenger transportation service;

        **7.**    Theft as described in Chapter 31 of the Texas Penal Code, but only if the offense was committed against a person with whom the applicant came into contact while engaged in a passenger transportation service;

        **8.**    Fraud as described in Chapter 32 of the Texas Penal Code, but only if the offense was committed against a person with whom the applicant came into contact while engaged in a passenger transportation service;

        **9.**    Tampering with a governmental record as described in Chapter 37 of the Texas Penal Code, but only if the offense was committed against a person with whom the applicant came into contact while engaged in a passenger transportation service;

        **10.**    Public indecency (prostitution or obscenity) as described in Chapter 43 of the Texas Penal Code;

        **11.**    The transfer, carrying or possession of a weapon in

violation of Chapter 46 of the Texas Penal Code, but only if the violation is punishable as a felony;

**12.**    A violation of the Health and Safety Code, Chapter 483 - "Dangerous Drugs" that is punishable by a felony;

**13.**    A violation of the Health and Safety Code, Chapter 481 - "Texas Controlled Substances Act" that is punishable by a felony; or

**14.**    Criminal attempt to commit any of the offenses listed in subsection (7)a.

**i.**    And for which:

**A.**    Less than two (2) years have elapsed since the date of conviction or the date of release from confinement imposed for the conviction, whichever is the later date, if the applicant was convicted of a misdemeanor offense;

**B.**    Less than five (5) years have elapsed since the date of conviction or date of release from confinement for the conviction, whichever is the later date, of the applicant was convicted of a felony offense; or

**C.**    Less than five (5) years have elapsed since the date of the last conviction or the date of release from confinement for the last conviction, whichever is the later date, if within any twenty-four-month period the applicant has two (2) or more convictions of any misdemeanor offense or combination of misdemeanor offenses.

**(8)**    Not have been convicted of or discharged by probation or deferred adjudication for driving while intoxicated within the preceding twenty-four (24) months, or more than one (1) time within the preceding seven (7) years;

**(9)**    Not have charges pending or not be under indictment for an offense for driving while intoxicated;

**(10)**    Not be addicted to the use of alcohol or narcotics;

**(11)**    Not have been convicted of or discharged by probation or deferred adjudication for driving while under the influence of drugs within the preceding twenty-four (24) months, or more than one (1) time within the preceding seven (7) years;

**(12)**    Not have criminal charges pending for the offense of driving while intoxicated or while under the influence of drugs; and

**(13)**    Not be subject to any outstanding warrants of arrest.

**(h)**    As a qualification for a driver's permit, the coordinator shall require applicants and/or drivers to pass an examination given by the coordinator, or his or her designee, that will test knowledge of traffic laws, duties under the vehicle for hire ordinance, the road networks and geography of Fort Worth and surrounding cities, airports and counties in the service area, and other related topics. Additionally, the applicants and/or drivers may periodically be tested on English language proficiency.

**(i)**    All applicants shall be screened for the presence of drugs and alcohol within thirty (30) days from the date of the application. Applications shall follow the drug screening and alcohol testing guidelines established by the ground transportation coordinator. All screenings for drug and alcohol testing must be conducted by a department of health and human service certified laboratory and certified laboratory technician. Applicants and drivers may be subject to drug and alcohol screening on a random basis, fingerprinting, and/or criminal records checks.

**(j)**    If a driver's operator's license is suspended or revoked by the state, the driver's permit will automatically become null and void. A permitted driver shall notify the ground transportation office and the grant holder for whom he is permitted within three (3) calendar days of a suspension or revocation of a state driver's or operator's license and shall immediately surrender his or her driver's permit to the ground transportation office. Driver's and operator's licenses shall be subject to random checks.

*(Ord. No. 17412, § 1, 2-20-07)*

## Sec. 34-216. - Grounds for denial of permit; expiration; change of address, telephone number or employment.

**(a)**    The ground transportation coordinator shall deny the application for a driver's permit if the coordinator determines that the applicant:

**(1)**    Is not qualified under section 34-215;

**(2)**    Is not physically or mentally able to safely operate a vehicle for hire;

**(3)**    Fails or refuses to furnish the photographs or defensive driving certificate as required in section 34-215;

(4)    Knowingly makes a false statement of a material fact in the application for a vehicle for hire driver's permit; or

(5)    Refuses to submit to or does not pass the drug and alcohol screening required by section 34-215, or fails to furnish any statements required therein.

(b)    If the coordinator determines that a permit should be denied, he or she shall notify the applicant in writing that the application is denied, and the reason for denial and that the applicant has the right of appeal to the hearing officer in accordance with section 34-219. The action of the ground transportation coordinator is final unless a timely appeal is made.

(c)    Any person issued a driver's permit shall maintain a current address and telephone number on file with the ground transportation office. The driver shall notify the ground transportation office of any changes in his or her address or telephone number within five (5) days of the change.

(d)    If a driver changes grant holders for whom he or she is driving so that the driver will be driving for a different grant holder within the city, he or she must submit a new grant holder contract, or other documentation acceptable to the coordinator, with the new grant holder's signature to the ground transportation coordinator's office within ten (10) business days of the change along with a change of grant holder fee. The driver's permit is not transferable to another grant holder without written consent of the new holder, and notice and payment of the fee to the city within ten (10) days.

(e)    If a driver loses his or her permit, the permitted driver shall pay a replacement fee.

*(Ord. No. 17412, § 1, 2-20-07)*

## Sec. 34-217. - Display; falsification; driving without a permit.

(a)    The driver's permit shall be prominently displayed on his or her upper outer clothing.

(b)    A person commits an offense if he:

(1)    Forges, alters or counterfeits a driver's permit, badge, sticker or emblem required by this article;

(2)    Possesses a forged, altered or counterfeited driver's permit, badge, sticker or emblem required by this article;

(3)    Operates or allows the operation of a vehicle for hire without an approved driver's permit; or

(4)    Fails to allow the coordinator, the director or a peace officer to examine his or her driver's permit upon demand.

(c)    A driver's permit may be immediately suspended by the director or his or her designee, or by the coordinator for any violation of this section.

*(Ord. No. 17412, § 1, 2-20-07)*

## Sec. 34-218. - Suspension or revocation of driver's permit.

(a)    The director or the coordinator may suspend the permit of any driver for up to sixty (60) days on any of the following grounds:

(1)    The driver is not qualified or no longer meets the qualifications as required under section 34-215;

(2)    The driver has violated or failed to comply with sections 34-212, 34-214, 34-217 or any other provision or requirement of this article;

(3)    The driver has made a false statement or representation of a material fact on the permit application submitted to the ground transportation coordinator; or

(4)    The driver has failed to maintain a valid driver's license pursuant to section 34-215(j) of this ordinance and the laws of the State of Texas.

(b)    If the permit is suspended pursuant to this chapter, written notice shall be sent by registered mail addressed to the permitted driver and the holder of the operating authority listing the reason for the suspension and the time in which the driver has to correct the deficiency. If the driver, or the holder of the operating authority on behalf of the driver, fails to correct the deficiency within the suspension period, the driver's permit shall be revoked. The decision of the ground transportation coordinator is final unless a timely appeal is made in accordance with section 34-219.

(c)    After receipt of notice of suspension, the driver shall immediately discontinue driving a vehicle for hire within the city and shall surrender his or her driver's permit to the ground transportation coordinator.

(d)    A driver whose permit has been revoked or suspended may not operate under any holder's operating authority during the period of revocation or suspension.

*(Ord. No. 17412, § 1, 2-20-07)*

**Sec. 34-219. - Appeal from denial, suspension, or revocation of a driver's permit.**

(a)     A person may appeal a denial, suspension or revocation of a driver's permit by requesting an appeal, in writing, delivered to the hearing officer not later than ten (10) business days after notice of the action of the ground transportation coordinator is received by the applicant.

(b)     The hearing officer shall give the appealing party an opportunity to present evidence and make argument on his or her behalf. The formal rules of evidence shall not apply to an appeal hearing under this section, and the hearing officer shall make his or her ruling on the basis of a preponderance of the evidence presented at the hearing. Evidence of continued sponsorship by the holder of the operating authority is a prerequisite for consideration of an appeal.

(c)     The hearing officer may affirm, modify or reverse all or part of the action of the ground transportation coordinator being appealed. The decision of the hearing officer is final, unless otherwise directed by a majority of the city council.

(Ord. No. 17412, § 1, 2-20-07)


**Sec. 34-220. - Insurance.**

(a)     As a condition to the issuance of a grant of operating authority and the continued operation thereunder, a grant holder shall maintain in force during the authorized period of its operating authority the amount and character of insurance coverage for vehicles for hire as established by the city council from time to time. The operating authority will not be granted, renewed or continued unless the applicant or holder furnishes the city with proof of such insurance as considered necessary to determine whether the applicant or holder is adequately insured under this section.

(b)     The minimum insurance required under this section must:

　　　(1)     Be obtained from a carrier that is admitted and licensed to transact insurance in the State of Texas;

　　　(2)     Be written on an occurrence basis;

　　　(3)     Cover any and all carriages and drivers in the holder's fleet, and all drivers of such vehicles;

　　　(4)     Be acceptable to the city's risk management division of the financial management services department;

　　　(5)     Name the City of Fort Worth as an additional primary insured;

　　　(6)     Provide minimum coverage in an amount no less than five hundred thousand dollars ($500,000.00) combined single limit liability (CSL) per occurrence;

　　　(7)     Provide that all claims will be paid on a first dollar basis by the insurance provider;

　　　(8)     Not be obtained from an assigned risk pool;

　　　(9)     Not contain policy exclusions that would change or limit coverage for passengers entering or exiting the vehicle; and

　　　(10)     Provide that all vehicles permitted to operate under the operating authority are listed as scheduled vehicles covered under the policy.

(c)     All liability insurance coverage must include a rider that provides that at all levels of coverage, there must be notification to the city in writing not less than thirty (30) days before canceling or making a material change in the policy.

(d)     The holder shall not have operational control in any insurance company providing coverage to the vehicles operated under the operating authority.

(e)     The city council, in its discretion, may from time to time require insurance coverage of a different kind or a greater amount, and upon such city council action, the holder shall be required to modify its insurance coverage to comply with these requirements, and shall furnish to the ground transportation coordinator a binder of insurance as evidence that it has acquired such type and amounts of insurance within ten (10) days of the city council's action. The holder shall provide a copy of the policy with all endorsements within forty-five (45) days of demand from the ground transportation coordinator.

(Ord. No. 17412, § 1, 2-20-07; Ord. No. 18318-09-2008, § 4, 9-30-08)


**Sec. 34-221. - Expiration and renewal of operating authority.**

(a)     Unless otherwise previously granted prior to the adoption of this ordinance, operating authority for all grants under this chapter shall expire on December 31, after the third year of issuance. A holder shall apply for a renewal at least sixty (60) days prior to the expiration date of the operating authority.

(b)     The vehicle for hire review board shall review all applications for renewal of operating authority for

taxicabs and shuttle service. The board shall review the application and all relevant documents and investigative materials as provided by the ground transportation coordinator, and shall take evidence from the applicant and any other interested parties who request to address the board at a public hearing in its consideration of each application. The board may set reasonable time limits and procedures for such hearings.

(c)    The board shall issue findings as to whether:

    (1)    The holder has performed satisfactorily under the terms of the operating authority;

    (2)    The service provided continues to meet the public necessity and convenience as defined by this ordinance; and

    (3)    The holder continues to comply with all requirements of this chapter.

(d)    The board shall forward its findings and recommendations to the city council for final approval.

(e)    If the board denies renewal of an application, then the applicant may appeal the decision in accordance with section 34-207 of this chapter.

(Ord. No. 17412, § 1, 2-20-07)

## Sec. 34-222. - Fees; when fee payable.

(a)    The city council shall adopt a schedule of fees applicable to this article which shall be available for review at the ground transportation coordinator's office.

(b)    As compensation to the city, each holder of a grant of operating authority made under the terms of this article shall pay to the city, annual fees, as approved by the city council, for the privilege of operating upon and use of the public streets, alleys and thoroughfares of the city in conducting and carrying on the business of transporting passengers for compensation on and over such streets and thoroughfares in authorized vehicles for hire. Such fees shall be paid at the ground transportation office on or before January 1st of each calendar year during which the grant is in effect.

(Ord. No. 17412, § 1, 2-20-07)

## Sec. 34-223. - Passenger limitations.

(a)    While operating a vehicle for hire, a driver may only carry a person who is a paying passenger, unless the passenger is an employee of the grant holder for whom the driver is driving.

(b)    A driver may not carry more passengers than the designated seating allows in the vehicle for hire.

(c)    A violation of this section may be grounds for the suspension of the driver's permit.

(Ord. No. 17412, § 1, 2-20-07)

## Sec. 34-224. - Vehicle for hire decals.

The holder of operating authority or driver of each vehicle for hire shall obtain from the ground transportation coordinator, a decal that indicates the vehicle has authority to operate in the city of Fort Worth. The decal must be attached to the vehicle for hire in a manner and location approved by the ground transportation coordinator. Each holder must have decals for not less than eighty-five (85) percent of its authorized number of vehicles at all times.

(Ord. No. 17412, § 1, 2-20-07)

## Sec. 34-225. - Return of passenger's property.

(a)    Upon finding property in a vehicle for hire left by a passenger, the driver shall immediately return the property to the grant holder's company's lost and found. The holder's company shall maintain a written record of all items turned in to the company. The record shall contain the following:

    (1)    A description of the items found

    (2)    The date on which the items were turned in

    (3)    The vehicle number in which the items were found, and

    (4)    The name of the driver who turned in the items.

All items shall be examined and the owners identified and notified, if possible. If any item is claimed, a record shall be made of the name and address of the claimant.

No item shall be disposed of, other than by return to its owner, less than ninety (90) days after the date in which the item is turned in. If any item is disposed of, a record must be made of such disposition.

(c)    A violation of this section may be grounds for suspension or revocation of the driver's permit or the holder's operating authority.

*(Ord. No. 17412, § 1, 2-20-07)*

## Sec. 34-226. - Soliciting prohibited.

(a)    It shall be unlawful for any driver to solicit by word, signal, sign or payment to a third party to solicit passengers for such vehicle for hire upon any public street or building of the city.

(b)    The driver shall not obstruct entrances or passageways of any sidewalk or building, however, once engaged by his or her prearranged passenger, a driver may provide assistance to his or her passenger.

*(Ord. No. 17412, § 1, 2-20-07)*

## Sec. 34-227. - Enforcement.

(a)    The ground transportation coordinator is primarily responsible for the enforcement of this article.

(b)    The director or his or her designee, or the ground transportation coordinator shall investigate complaints and is authorized to issue warnings and citations to persons violating this article.

(c)    The Fort Worth Police Department and Fort Worth Marshal's Office shall also have the authority to enforce this article.

*(Ord. No. 17412, § 1, 2-20-07)*

## Sec. 34-228. - Violations and penalties.

(a)    A violation of any provision of this article is a Class C misdemeanor.

(b)    Any person, firm, corporation, agent or employee thereof who violates any provision of this article shall, upon conviction, be fined an amount not to exceed five hundred dollars ($500.00).

*(Ord. No. 17412, § 1, 2-20-07)*

## Secs. 34-229—34-239. - Reserved.

Fort Worth, Texas, Code of Ordinances >> PART II - CODE >> Chapter 34 - VEHICLES FOR HIRE >> ARTICLE VI. - GROUND TRANSPORTATION FOR HIRE >> DIVISION 2. - TAXICABS >>

## DIVISION 2. - TAXICABS

Sec. 34-240. - Scope of Division 2.
Sec. 34-241. - Taxicab stands.
Sec. 34-242. - Minimum number of taxicabs needed for operating authority; renewals.
Sec. 34-243. - Additional requirements for the operation of a taxicab.
Sec. 34-244. - Inspection of taxicabs.
Sec. 34-245. - Age limits of taxicabs; other vehicle requirements.
Sec. 34-246. - Display of name of grant holder.
Sec. 34-247. - Commercial advertising on taxicab.
Sec. 34-248. - City-wide taxicab service required.
Sec. 34-249. - Representation of availability of a taxicab.
Sec. 34-250. - Use of scanner prohibited.
Sec. 34-251. - Removal of equipment.
Sec. 34-252. - Rates; posting.
Sec. 34-253. - Taximeters required.
Sec. 34-254. - Inspections and tests of taximeters.
Sec. 34-255. - Standards for tolerances and accuracy.
Sec. 34-256. - Payment of fare; refusal to carry passengers; excess fare prohibited; nonpayment of fare.
Sec. 34-257. - Cruising permitted.
Secs. 34-258—34-269. - Reserved.

## Sec. 34-240. - Scope of Division 2.

Holders of operating authority for a taxicab service shall be governed by the provisions of this division in addition to all of the provisions found in Division 1 of this article.

*(Ord. No. 17412, § 1, 2-20-07)*

## Sec. 34-241. - Taxicab stands.

Vehicles operated under the terms of this article shall be authorized to stand at certain designated places upon the streets of the city. Additional locations may be requested by the holder and granted at the discretion of the ground transportation coordinator, who, in conjunction with the city's traffic engineer, shall determine the public interest in the establishment of such stand, or stands, as petitioned for, as well as the number of vehicles which shall be authorized to occupy the same at any one (1) time, together with such other reasonable regulations thereof that are determined proper. The regulation shall require the operator of each such vehicle to remain within twenty-five (25) feet of his or her taxicab while occupying the stand. No such stand shall ever be used so as to interfere with proper ingress and egress to abutting property. Once engaged by a passenger, the driver may provide assistance to the passenger as may be required. The stands hereby authorized are subject to the control of the ground transportation coordinator and subject to change at his or her will. Each of such stands shall be marked and properly designated under the supervision of the ground transportation coordinator in conjunction with the traffic engineer and, insofar as is practicable, shall be located so as to permit the use of presently established loading or unloading zones by taxicabs as described herein. The ground transportation coordinator or traffic engineer may establish temporary taxicab stands for special events and functions where street access may be limited and the good of the public is best served by such temporary placement of stands.

*(Ord. No. 17412, § 1, 2-20-07)*

## Sec. 34-242. - Minimum number of taxicabs needed for operating authority; renewals.

(a)     In order for an applicant to apply for authority to operate taxicabs in the City of Fort Worth, the

application must request authority for a minimum number of fifty (50) operational taxicabs including the approved adjustment to allow for reduction or increase in the number of authorized vehicles, before it will be accepted for review and consideration.

**(b)** If a grant of operating authority for less than fifty (50) taxicabs is in effect at the time of adoption of this ordinance, such holder shall have until December 31, 2009 to increase its fleet up to the minimum requirement of fifty (50).

**(c)** Renewals will be granted in accordance with section 34-221 of this chapter.

*(Ord. No. 17412, § 1, 2-20-07)*

## Sec. 34-243. - Additional requirements for the operation of a taxicab.

**(a)** A taxicab driver shall not obstruct the view of a taximeter while operating or engaged with passengers.

**(b)** A taxicab driver shall not operate a taxicab for more than twelve (12) hours within a twenty-four-hour period.

**(c)** In addition to the requirements set forth in section 34-217, the taxicab driver shall also prominently display a photo taken within the previous six (6) months. Such photo shall be a color picture no smaller than three (3) inches by three (3) inches with the driver's name, company name, and identification number located on the rate sheet. Such photo shall be displayed inside the vehicle on the front dashboard of the taxicab.

*(Ord. No. 17412, § 1, 2-20-07)*

## Sec. 34-244. - Inspection of taxicabs.

**(a)** No taxicab shall be driven or operated upon the streets of the city unless the same conforms to the minimum safety standards established herein and has a valid inspection decal issued by the city.

**(b)** If the coordinator determines that inspection of the mechanical condition or safety equipment of a vehicle by a certified mechanic or technician is necessary, the holder, owner, or driver shall pay the cost of the inspection and provide written documentation that the vehicle meets the minimum safety and emission standards adopted by Dallas/Fort Worth International Airport.

**(c)** The city shall visually inspect or cause to have inspected each taxicab two (2) times per year. If the taxicab passes such inspection, the city shall issue a decal to be displayed on the right side of the front windshield of the vehicle.

**(d)** A holder shall pay an inspection fee per vehicle inspection.

**(e)** Taxicabs bearing a current inspection decal issued by the Dallas/Fort Worth International Airport may be issued a city decal without a further mechanical inspection.

**(f)** Taxicab operators, owners and operating authority holders shall conduct periodic inspections of taxicabs, but not less than monthly, to ensure compliance of all minimum requirements.

**(g)** Any designated member of the Fort Worth Police Department, the city marshal's office, the director, or his or her designated representative, or the coordinator may conduct inspections of the driver and taxicab to ensure compliance with this section.

**(h)** It shall be grounds for suspension or revocation of a taxicab driver's permit or a holder's operating authority if he or she fails to make a taxicab available for inspection.

**(i)** The fee for each inspection of each vehicle operated under a holder's operating authority shall be established in accordance with the schedule of fees.

**(j)** The ground transportation coordinator may order a regulated vehicle removed from service any time the regulated vehicle fails to meet the minimum standards for appearance, condition, age or equipment.

**(k)** If a taxicab is involved in an accident or collision during the term of the operating authority, the holder shall notify the ground transportation coordinator's office within five (5) days after the accident or collision. Before operating the taxicab again under the operating authority, a holder shall have the vehicle re-inspected for safety and shall send to the ground transportation coordinator's office a sworn affidavit that the vehicle has been restored to its previous condition.

**(l)** A person commits an offense if the person operates a taxicab in the city without obtaining a taxicab decal from the ground transportation coordinator.

*(Ord. No. 17412, § 1, 2-20-07)*

**Sec. 34-245. - Age limits of taxicabs; other vehicle requirements.**

(a)     Effective January 1, 1996, no taxicab may be over five (5) years old as calculated from the first
        day of January of the model year of the vehicle. No vehicle more than four (4) years old, as
calculated above, may be added to the fleet. As vehicles in operation become older than this provision,
they shall be removed from the fleet.

(b)     No taxicab may be salvaged or rebuilt; "blue titled" vehicles shall not be permitted to be operated
as taxicabs.

(c)     Only vehicles designated "large" by the American Automobile Association shall be permitted to
operate as taxicabs. Vehicles in operation as taxicabs as of the date of the adoption of this ordinance
may continue to operate until such vehicle exceeds the age requirement established herein.

(d)     No taxicab that can be classified as an alternative fuel vehicle as defined in section 34-200 of this
chapter may be over seven (7) years old as calculated from the first day of January of the model year of
the vehicle. Documentation of such status shall be submitted to the ground transportation coordinator
upon purchase of the vehicle, if the vehicle will be utilized pursuant to this chapter.

*(Ord. No. 17412, § 1, 2-20-07)*

**Sec. 34-246. - Display of name of grant holder.**

Every taxicab operated in the city shall bear on the outside of the rear door, or front door, in letters not
less than two and one-half (2½) inches in height and not less than five-sixteenths (5/16) inch stroke, the name
of the grant holder for whom the taxicab is driven, or the registered assumed name of the taxicab service of
such holder, together with the telephone number of the service and the number of the taxicab.

*(Ord. No. 17412, § 1, 2-20-07)*

**Sec. 34-247. - Commercial advertising on taxicab.**

Commercial advertising or commercial advertising devices may be placed on, upon or in any taxicab
operated in the city, provided they are securely fastened to the vehicle, do not interfere with driver or passenger
safety, and do not obscure lights, logos, telephone numbers, cab numbers or top lights.

*(Ord. No. 17412, § 1, 2-20-07)*

**Sec. 34-248. - City-wide taxicab service required.**

(a)     Each holder of an operating authority is required to provide city-wide taxicab service. The grant
        holder's taxicab fleet, communication system and other resources must be sufficient to provide
effective service levels to all areas of the city on a regular basis.

(b)     Except as otherwise provided in this article, a grant holder and taxicab driver permit holder shall:

        (1)     Provide taxicab service to the general public;

        (2)     Answer each call received for service inside the city as soon as practicable, and, if
        the service cannot be rendered within a reasonable time, the holder, his agent or employee, shall
        inform the caller of the reason for the delay and the approximate time required to answer the call.

(c)     The grant holder shall maintain a terminal that is operational twenty-four (24) hours each day and
registered with the city for the purpose of receiving calls and dispatching taxicabs, and shall make
available at least eighty-five (85) percent of the grant holder's operational fleet to and from any point
inside of the city that is accessible by public street. Each holder must have decals for not less than
eighty-five (85) percent of its authorized number of vehicles at all times.

(d)     All grant holders and taxicab drivers shall accept calls from all parts of the city within a reasonable
time and attempt to locate and transport the passenger requesting service. Delays due to weather,
vehicle breakdown, natural disasters and other occurrences out of the control of the holder or driver shall
not be considered failure to provide city-wide service. This section shall not require the holder or driver to
place him or herself in violation of other sections of this article.

*(Ord. No. 17412, § 1, 2-20-07)*

**Sec. 34-249. - Representation of availability of a taxicab.**

A driver may not represent that his taxicab is engaged when in fact vacant, or vacant when in fact engaged.

(b)    A violation of this section is grounds for the suspension of the driver's permit.

(Ord. No. 17412, § 1, 2-20-07)

### Sec. 34-250. - Use of scanner prohibited.

(a)    No driver shall use, or permit to be used, a scanner or other electronic device to monitor communications of any grant holder other than the one (1) the taxicab is being operated under.

(b)    A violation of this section is grounds for the revocation of the driver's permit.

(Ord. No. 17412, § 1, 2-20-07)

### Sec. 34-251. - Removal of equipment.

(a)    Whenever a vehicle is removed from service or is no longer authorized to operate as a taxicab, the holder, owner or driver shall remove from the vehicle all taxicab signs, markings and equipment that would distinguish the vehicle as a taxicab, including but not limited to radios, toplights, meters and decals.

(b)    A holder, owner or driver of a taxicab shall not sell or transfer to anyone any radio, toplight, meter or other equipment that would distinguish a vehicle as a taxicab.

(c)    Meters, radios, toplights and distinguishing markings must be and must remain the property of the grant holder, and must be returned to the grant holder when a taxicab is removed from service.

(Ord. No. 17412, § 1, 2-20-07)

### Sec. 34-252. - Rates; posting.

(a)    The maximum meter rate to be charged by all taxicab drivers in the city shall be established by the city council from time to time.

(b)    While operating a taxicab in the downtown business district, a driver may charge a flat rate for a trip to DFW Airport, provided that such flat rate is not in excess of the maximum meter rate or in excess of the established flat rate by the city.

(c)    There shall be no additional charge made for ordinary luggage or ordinary bags or ordinary parcels being carried by a passenger or passengers. It shall be unlawful for any driver of a taxicab to demand or receive a fee or charge for taxicab service in excess of the rates established by the city council from time to time. However, nothing in this section shall be construed as requiring a taxicab to carry trunks, very large packages, very large parcels or articles or objects likely to injure the taxicab driver or damage the taxicab. The intent of this section is to ensure that there are no additional charges for any ordinary parcels or baggage.

(d)    Each taxicab operated in the city shall have affixed thereto at a location in plain view of any passenger therein a placard setting out the maximum rates for taxicab service, as provided in the schedule of rates established by the city council from time to time, and such legal rates shall be readily visible to and legible by any occupant of such taxicab. The holder shall provide said placard at time of initial permitting of each taxicab and shall provide updated placards any time rates are changed.

(e)    A violation of this section shall be grounds for revocation or suspension of the taxicab driver's permit.

(Ord. No. 17412, § 1, 2-20-07)

### Sec. 34-253. - Taximeters required.

It shall be unlawful for any grant holder, owner, operator or driver of any taxicab to operate or allow or cause to be operated on the streets of the city any vehicle for hire unless such vehicle is equipped with a taximeter approved by the city and calibrated for the computation of fares at rates approved by the city council. It shall be the duty of every holder, owner, operator or driver using any taximeter to keep the same accurate at all times, and the failure to do so shall constitute a violation of this article.

(Ord. No. 17412, § 1, 2-20-07)

## Sec. 34-254. - Inspections and tests of taximeters.

(a)     All taximeters shall be subject to inspection at any time by the ground transportation coordinator. It shall be a violation of this article for any person to delay, interfere with or refuse to permit such inspection. Any taximeter found not to conform to the standards and tolerances provided for in this article shall not be approved and shall be ordered out of service by the coordinator. The coordinator shall make or cause to be made, at least every twelve (12) months, inspections of the taximeters to insure their compliance with this article. Once a taximeter is inspected and approved, it shall be sealed. Should a taximeter seal be removed or broken for any reason, the holder shall advise the ground transportation coordinator who shall cause the taximeter to be re-inspected and sealed. Until the taximeter is re-inspected, the taxicab shall not be placed back into service. If the ground transportation coordinator discovers a removed or broken taximeter seal during inspection, the taxicab shall not be placed back into service until the taximeter is re-inspected. After the seal is replaced or repaired, the holder shall have vehicle re-inspected and pay a re-inspection fee.

(b)     A taximeter that has been inspected by either the City of Fort Worth, the City of Dallas or the Dallas/Fort Worth International Airport complies with this section; however, the City of Fort Worth has the right to inspect the taximeter in taxicabs within the city at any time.

*(Ord. No. 17412, § 1, 2-20-07)*

## Sec. 34-255. - Standards for tolerances and accuracy.

The standards for tolerances and accuracy and all other standards to be applied to taximeters shall be the same as the standards applied thereto by the State of Texas under its applicable statutes or regulations, all of which are hereby adopted and declared to be the only legal standards of tolerances or accuracy to be applied to the taximeters within the city.

*(Ord. No. 17412, § 1, 2-20-07)*

## Sec. 34-256. - Payment of fare; refusal to carry passengers; excess fare prohibited; nonpayment of fare.

(a)     No driver of a taxicab shall refuse or neglect to convey any person or persons upon request to any place within the city unless:

(1)     The person is disorderly;

(2)     The driver is engaged in answering a previous request for service;

(3)     Another driver has answered the dispatched call and is in route;

(4)     The driver has reason to believe that the person is engaged in unlawful conduct; or

(5)     The driver is in reasonable fear of his or her personal safety.

(b)     In addition to cash payment, a driver of a taxicab shall accept all major credit cards and/or debit cards for payment at the time of fare. The driver shall deliver to the person paying the fare at the time of such payment a legible receipt either mechanically printed or by a specially prepared receipt, containing the taxicab company name, taxicab number, driver name, any items for which a charge is made, the total amount paid and the date of payment.

(c)     A driver shall carry a passenger to his destination by the most direct route available, unless otherwise directed by the passenger.

(d)     It shall be unlawful for any passenger to refuse to pay the legal fare of any taxicab after having hired the same, and it shall be unlawful for any person to hire a taxicab with the intent to defraud the operator of the taxicab of the fare for such service. Failure to pay the legal fare shall be presumptive of intent to defraud.

(e)     Any violation of subsections (a), (b), or (c), shall be grounds for suspension or revocation of the taxicab driver's permit.

*(Ord. No. 17412, § 1, 2-20-07)*

## Sec. 34-257. - Cruising permitted.

(a)     Taxicabs located at taxicab stands shall line up first come, first out; however, a passenger may choose a taxicab that is not the first taxicab in line and that cab may proceed forward and load.

(b)     Cruising is permitted.

*(Ord. No. 17412, § 1, 2-20-07)*

**Secs. 34-258—34-269. - Reserved.**

*Addison*

## ARTICLE II. TAXICABS, LIMOUSINES AND SHUTTLES*

---

**\*State law references:** Authority to regulate taxicabs, V.T.C.A., Local Government Code § 215.004.

---

### DIVISION 1. GENERALLY

### Sec. 86-31. Definitions.

The following words, terms and phrases when used in this article, shall have the meanings ascribed to them in this section, except where the context clearly indicates a different meaning:

*Annual permit* means permission granted by the town to a person to operate as taxicab, limousine or shuttle service inside the town for a period of one year, renewable under the provisions of this article.

*Holder* means a person having operating authority to operate a taxicab, limousine or shuttle service.

*Limousine* means a chauffeured luxury sedan with manufacturer's rated seating capacity of not more than 15 passengers and that may be used for transportation of persons on a regular or irregular route and schedule and on a call and demand basis, but not including taxicabs, car pools, buses, ambulances or shuttles.

*Limousine service* means a passenger transportation service operated for hire by limousine when a driver is furnished as part of the service and includes, but is not limited to, a facility from which the service is operated, limousines used in the operation, and a person who owns, controls or operates the service.

*Operate* means to drive a vehicle on any street of the town in order to pick up a passenger within the town limits.

*Operating authority* means a current and valid franchise, annual permit or temporary permit.

*Shuttle* means a chauffeured van-type motor vehicle with a manufacturer's rated seating capacity of not less than seven passengers and not more than 15 passengers and that may be used for transportation of persons on a regular or irregular route and schedule and on a call and demand basis, but not including taxicabs, car pools, buses, ambulances or limousines.

*Shuttle service* means a passenger transportation service operated for hire by shuttle when a driver is furnished as part of the service and includes, but is not limited to, a facility from which the service is operated, shuttles used in the operation, and a person who owns, controls, or operates the service.

*Taxicab* means a chauffeured motor vehicle with a rated passenger capacity of eight or less, used to transport persons for hire that typically operates on regular routes and irregular schedules and on a call and demand basis, but not including limousines, car pools, buses, ambulances, or shuttles.

*Taxicab service* means a passenger transportation service operated for hire by taxicab when a driver is furnished as part of the service and includes, but is not limited to, a facility from which the service is operated, taxicabs used in the operation, and a person who owns, controls, or operates the service.

(Code 1982, § 9-261)

**Cross references:** Definitions generally, § 1-2.

## Sec. 86-32. Exclusions.

This article does not apply to:

(1)  A vehicle which is lawfully transporting a passenger from a point outside the town limits to a destination within the town.

(2)  A vehicle which, after having discharged a passenger within the town, is returning empty by the most direct route to its regular place of business outside the town limits.

(3)  Any transportation or bus system operating on prearranged routes and schedules or timetables.

(4)  Any regional transportation authority created under state statute, its agents or assigns under contract, which provides transportation services to mobility-impaired or otherwise handicapped persons.

(5)  A vehicle which is owned and operated by the federal or state government, by a political subdivision of the state, or by a person under contract with the town for operation of the vehicle.

(6)  A vehicle which is used in a carpool to transport the person and others on a prearranged basis between their homes and places of employment or places of common destination, if only a fee calculated to reasonably cover expenses is charged.

(7)  A vehicle which is used to transport children to or from school, if only a fee calculated to reasonably cover expenses is charged.

(8)  A vehicle which is owned by a nonprofit organization and carrying only passengers associated with that organization, if no compensation is received from any other person for carrying the passengers.

(9)  A vehicle which is operated for a funeral home in the performance of funeral services.

(10)  A limousine which is lawfully transporting a passenger from a point outside the town limits, which is dropping off or is waiting for such passenger at a location within the town, and which will transport such passenger to a final destination within or outside the town.

(Code 1982, § 9-262)

## Sec. 86-33. Enforcement.

(a)  *Criminal offenses.* Any activity proscribed in this article preceded by the phrase "it shall be unlawful and an offense" is a Class "C" misdemeanor punishable as provided in section 1-7.

(b)  *Revocation.* Any violation of any provision of this article by a permit holder or driver may subject the holder and/or driver to revocation of the permit consistent with the applicable provisions of this article.

(c)  *Injunctive relief.* In addition to or in lieu of any applicable fine, cancellation or revocation of the license or permit, the town is expressly authorized to bring injunctive or mandatory actions to compel obedience of the provisions contained in this article.

(Code 1982, § 9-286)

### Sec. 86-34. Special provisions of operating authority.

This article governs the operation of taxicab services, limousine services, and shuttle services under each form of operating authority. This article, however, is not a limitation on the power of the city council to incorporate in a grant of operating authority special provisions relating to the operation of the taxicab services, limousine services, and shuttle services. To the extent that a special provision conflicts with this article, the special provision controls.

(Code 1982, § 9-277)

### Sec. 86-35. Authority to inspect.

Officers of the town police department may inspect a taxicab service, limousine service or shuttle service operating under this article to determine whether the service complies with this article or other applicable law and may demand to see the permit or license of such taxicab, limousine or shuttle service to determine if such permit or license is in effect, current or valid.

(Code 1982, § 9-269)

### Sec. 86-36. Administration.

The chief of police shall have overall responsibility of administration, enforcement and implementation of this article and for coordination of all departments of the town involved in the application of this article.

(Code 1982, § 9-271)

### Sec. 86-37. Notice to town required of franchise, permit or license revocation, suspension or modification by Dallas.

The holder shall notify the town within 48 hours after the revocation, suspension or modification by the City of Dallas of any franchise, permit, license or any other operating authority of the holder or of any driver employed by such holder.

(Code 1982, § 9-267)

### Sec. 86-38. Dallas permit to be displayed.

(a) The taxicab, limousine or shuttle driver's permit issued by the City of Dallas shall be prominently displayed at all times in full view of persons in the back seat of the vehicle being driven by the permittee.

(b) A taxicab, limousine or shuttle driver shall allow the chief of police or any peace officer to examine his permit upon request.

(Code 1982, § 9-279)

### Sec. 86-39. Insurance required.

(a)  It shall be unlawful and an offense, and it is hereby made a requirement, for the holder to operate a taxicab, limousine or shuttle service unless such holder shall maintain in force during the authorized period of its operating authority the amount and character of insurance coverage for all motor vehicles used in the taxicab service, limousine service or shuttle service as follows: For each vehicle operated in the town, at least $100,000.00 bodily injury per person, $300,000.00 injury per occurrence and $100,000.00 property damage.

(b)  The insurance must be carried with an insurance company authorized to do business in the state.

(c)  The insurance policy must include a cancellation rider which names the town as an additional insured under its public liability insurance for the term or successive term of such coverage. In addition, the insurance shall include a cancellation rider under which the insurance company is required to notify the city manager in writing not less than 30 days prior to such cancellation or before a material change in the policy is made. A change in the liability amounts and coverage is declared to be a material change.

(d)  The insurance must provide coverage for all vehicles operating under the name of the holder whether such vehicles are owned, leased, hired or contracted, and provide liability coverage for the drivers operating such vehicles, whether on or off duty.

(e)  The insurance policy must contain a provision for a continuing liability thereon for the full amount thereof, notwithstanding any recovery thereon.

(f)  The insurance policy required by this article shall be filed with the chief of police five working days prior to the time any of the vehicles operated by the holder may be operated upon town streets.

(g)  Prior to the time the holder may operate any taxicab, limousine or shuttle upon the streets of the town, the holder must secure written confirmation from the town that the policy meets the requirements of this section.

(Code 1982, § 9-268)


## Sec. 86-40.  Drivers lists to be filed.

On the request of the city manager or chief of police, holders shall file with the chief of police a current list of names of drivers and their driver's license numbers for the purpose of investigation of such drivers' criminal histories and driving records.

(Code 1982, § 9-281)


## Sec. 86-41.  Rates of fare.

(a)  The holder is required to file with the city secretary and the chief of police of the town the rates of fare to be charged by such holder in the town.

(b)  It shall be unlawful and an offense for a driver to charge a fare for operating a taxicab, limousine or shuttle in the town that is inconsistent with the rates on file with the city secretary and the chief of police for the holder under whose operating authority the vehicle is operated.

(Code 1982, § 9-282)


## Sec. 86-42.  Parking on streets prohibited.

Except while loading or unloading passengers into and from such taxicab or limousine or in an

area designated and approved by the city council as a "Taxi/Limo Stand," it shall be unlawful for the holder of any permit issued under the terms of this article or the agent, servant, or employee of such permittee to park or leave standing any taxicab, limousine or shuttle on the streets of the town.

(Code 1982, § 9-284)

### Sec. 86-43.  Cruising prohibited.

It shall be unlawful for any driver of any taxicab, limousine or shuttle to drive or cruise about on the streets of the town seeking passengers who have not ordered or called for a taxicab, limousine or shuttle.

(Code 1982, § 9-285)

Secs. 86-44--86-60.  Reserved.

## DIVISION 2.  PERMIT

### Sec. 86-61.  Required.

(a)  It shall be unlawful and an offense to engage in the business of operating a taxicab service, limousine service, or shuttle service without having secured a permit from the town.

(b)  No taxicab, limousine or shuttle shall be operated unless it meets all of the requirements of the town's annual permit and the laws of the state. It shall be unlawful and an offense for a person to operate a taxicab, limousine or shuttle without having displayed and attached on the driver's side of the front windshield a certificate issued by the town and assigned to that vehicle for the current permit period. Such certificate shall be designed and coded by town for each year.

(Code 1982, §§ 9-263, 9-270)

### Sec. 86-62.  Application.

Applications for annual permits shall be made in writing to the chief of police on a form provided by the town, and shall state on such application the name of the applicant, the applicant's place of business, the number of vehicles to be operated, such other requirements as are necessary to meet federal and state laws and all other information as may be reasonably required by the chief of police. If the applicant is a corporation, the name and address of the president, secretary and registered agent thereof and their addresses shall be given.

(Code 1982, § 9-263)

### Sec. 86-63.  Permit granted by city council; requirements.

An application for a permit must be approved by the city council in accordance with the provisions of this article. The permit will not be granted unless:

(1)  The proposed taxicab services, limousine services, or shuttle services are required by the public convenience and necessity;

71

(2) The applicant is fit, willing and able to operate the taxicab services, limousine services, or shuttle services in accordance with requirements of this article, rules and regulations of the town, provisions of the annual operating permit and other applicable law; and

(3) The applicant and the other owners or parties with financial interest in the taxicab services, limousine services, or shuttle services meet the insurance requirements provided in this article.

(Code 1982, § 9-278)

## Sec. 86-64. Fees.

(a) *Application fee.* The applicant for an annual permit to be issued by the town in accordance with this article shall submit with the application a nonrefundable application fee of $500.00. Such fee shall be paid only upon the initial application for an annual permit or upon reapplication after revocation of such permit. No application fee shall be paid upon annual renewals of such permit.

(b) *Street use fee.* A holder shall pay the town a nonrefundable annual street use permit fee of $20.00 a year for each taxicab, limousine and shuttle, authorized by the permit, however, such fee shall not exceed $3,000.00 per year. The fee for a temporary permit is that which is stated in the permit. A permit fee is payable in the manner and at the time prescribed by the permit.

(Code 1982, § 9-264)

## Sec. 86-65. Conditions and terms.

A permit issued under this article:

(1) Is an annual permit which expires on December 31 of the year in which application was made regardless of the date of application;

(2) Is effective for a single place of business only;

(3) Vests no property right in the permittee except to operate a taxicab service, shuttle service, or limousine service within the town in accordance with the terms and conditions of this article; and

(4) Is nontransferable and nonassignable except that in the event of a vehicle being discontinued in service for any reason, the owner of such vehicle may, within 30 days thereafter, apply to the police department for a transfer of such permit to another vehicle.

(Code 1982, § 9-265)

## Sec. 86-66. Permits nontransferable without consent of town.

No holder of an annual permit with the town shall be permitted to assign any right or privilege granted by such annual permit without the express written consent of the town.

(Code 1982, § 9-280)

## Sec. 86-67. Temporary permit; application; purposes.

(a)  To obtain a permit, a person shall file an application with the chief of police. A temporary permit may not exceed 180 days.

(b)  The city council may issue a temporary permit for the purposes of:

(1)  Providing supplemental services during periods of extraordinary demand; or

(2)  Assessing the feasibility of new technology or services.

(c)  A temporary permit is not renewable.

(Code 1982, § 9-272)

### Sec. 86-68.  Notification of change of address or ownership.

A holder commits an offense if he:

(1)  Fails to notify the town within ten days of a change in the address or telephone number of the taxicab service, limousine service, or shuttle service; or

(2)  Changes the form of the business or officers of the corporation of the taxicab service, limousine service or shuttle service, from that originally submitted, without a request to amend the operating authority.

(Code 1982, § 9-283)

### Sec. 86-69.  Taxicab, limousine or shuttle franchise permit and/or license with City of Dallas required.

No permit shall be issued to an applicant to operate a taxicab, limousine, or shuttle within the town unless such applicant holds a current franchise with the City of Dallas, and every driver operating in the town employed by such applicant holds a current, valid permit or license issued by the City of Dallas. It shall be unlawful and an offense to operate a taxicab, limousine or shuttle within the town limits of the town without having secured a franchise, permit and/or license from the City of Dallas prior to such operation. In order to obtain, to maintain and to renew the operator's permit to operate in the town, the holder or driver, while operating a taxicab service, limousine service or shuttle service within the town, shall comply with the following provisions of chapter 45 of the Dallas Revised Code of Civil and Criminal Ordinances: sections 45-4.1, 45-4.2, 45-4.3, 45-4.5, 45-5.2, 45-5.4, 45-5.5, 45-5.6, 45-5.7, 45-5.8, 45-5.9, 45-7.3, 45-7.4, and 45-7.5.

(Code 1982, § 9-266)

### Sec. 86-70.  Suspension, nonissuance or nonrenewal by chief of police.

The following regulations apply to the temporary or annual operating permits:

(1)  The chief of police may suspend, refuse to issue or refuse to renew a permit if he determines that the holder has:

a.  Failed to comply with any order to comply with this article issued to the holder by the chief of police, within the time specified in the order;

b.  Intentionally or knowingly impeded the chief of police or a law enforcement agency in the performance of their duty or execution of their authority;

c.  Failed to comply with this article;

d.  Substantially breached within the corporate limits of the town the terms of the Dallas Revised Code of Civil and Criminal Ordinances which are set out in section 86-69;

e.  Failed to pay town ad valorem taxes on any property of the holder used directly or indirectly in connection with the taxicab service, limousine service or shuttle service; or

f.  Failed to pay any fee due under the permit or this article at the time it was due.

(2)  The chief of police shall serve notice of the suspension on the holder by delivery of the notice to the holder's principal place of business.

(3)  The notice of suspension shall set forth the grounds for the suspension, the duration, and a statement informing the holder of its rights of appeal.

(4)  A holder may appeal the suspension to the city council in writing within ten days of the date of suspension as stated in the notice of suspension. The filing of the appeal stays the suspension until the council has acted on the appeal except as follows:

a.  If the chief of police determines that continued operation by the holder pending the decision of the city council on the appeal would constitute an immediate threat to the public safety or welfare, the notice of suspension shall so state and the filing of the appeal shall not stay the suspension.

b.  The chief of police shall notify the city manager who shall notify the city council of such a suspension.

c.  The chief of police shall, upon request, hold a hearing on or before the next working day. The holder may testify, present evidence, present witnesses or bring forth any other matter he deems necessary at the hearing.

d.  The sole purpose of such a hearing shall be to determine if the suspension should be stayed pending the appeal.

(5)  The chief of police may reinstate a suspended permit upon his determination that the deficiency causing the suspension has been corrected by the holder, and he shall so notify the city manager.

(Code 1982, § 9-273)


## Sec. 86-71.  Revocation, nonissuance or nonrenewal by city council.

The following regulations apply to the temporary or annual operating permits. The city council may revoke, refuse to issue or refuse to renew a permit if it determines that the holder has:

(1)  Failed to comply with any order to comply with this article issued to the holder by the chief of police, within the time specified in the order;

(2)  Intentionally or knowingly impeded the chief of police or a law enforcement agency in the performance of their duty or execution of their authority;

(3)  Failed to comply with this article;

(4)  Substantially breached within the corporate limits of the town the terms of the Dallas Revised Code of Civil and Criminal Ordinances which are set out in section 86-69;

(5)  Failed to pay town ad valorem taxes on any property of the holder used directly or indirectly in connection with the taxicab service, limousine service or shuttle service; or

(6)   Failed to pay any fee due under the permit or this article at the time it was due.

(Code 1982, § 9-274)

### Sec. 86-72.  Notice and hearing on revocation or nonrenewal.

The holder of operating authority is entitled to notice and hearing prior to the revocation or nonrenewal of such operating authority.

(1)   The hearing on revocation or nonrenewal shall not be held until at least ten days' notice of the hearing has been given to the holder of the operating authority in question by delivery to the holder's principal place of business. Such notice shall:

a.   Specify the time and place of the hearing; and

b.   List the reasons why the general welfare of the town requires the nonrenewal, revocation or cancellation of such operating authority.

(2)   The holder in question shall be allowed:

a.   To be present at such hearing.

b.   To be represented by counsel.

c.   To have full opportunity to disprove any charges and allegations set out against him in the notice.

(3)   Such hearing may be conducted by the city council or any agent, employee or representative designated by it. If conducted by an agent, employee or representative, then upon approval and adoption of the city council of findings of fact made by the person conducting such hearing, such findings of fact so approved and adopted shall be and become the findings of the city council. If the findings of fact made after such hearing show that the holder is not a fit and proper person to conduct such business, or is unable to pay in full reasonable claims for damages which might be asserted or for any reason the general welfare of the citizens of the town or the best interest of the town will be served best by such action, then the city council shall refuse to renew, revoke or cancel the operating authority in question, and the decision of the city council shall be final.

(Code 1982, § 9-275)

### Sec. 86-73.  Automatic suspension for failure to pay fees or for revocation or cancellation of insurance.

Upon failure of any holder to pay any required fees or for revocation or cancellation of the insurance coverage required in section 86-39, the operating authority of such holder shall automatically be suspended, and such suspension shall continue and be in full force and effect until all fees then due are paid, or until the chief of police is satisfied that the holder has complied with section 86-39 in full.

(Code 1982, § 9-276)

Secs. 86-73--86-79.  Reserved.

## ARTICLE II.  CERTIFICATE OF PUBLIC CONVENIENCE AND NECESSITY

### DIVISION 1.  GENERALLY

#### Sec. 23-3.  Certificate required.

No person shall operate a taxicab service within the jurisdiction of the city without first having obtained from the city council a certificate declaring that the public convenience and necessity require such an operation.

(Ord. No. 1179, § 1, 3-10-87)

#### Sec. 23-4.  Form and contents of certificate.

Every certificate issued hereunder shall contain the name and address of the applicant, a declaration that the public convenience and necessity require the services of the applicant, and the terms and limiting conditions of the certificate. There shall also be provided in the certificate a space for the applicant to sign, agreeing to the terms thereof.

(Ord. No. 1179, § 1, 3-10-87)

#### Sec. 23-5.  Transferability.

No certificate shall be transferable without the consent of the city council.

(Ord. No. 1179, § 1, 3-10-87)

#### Sec. 23-6.  Revocation, alteration or suspension of certificate.

The city may revoke, alter, or suspend any certificate, after notice and public hearing, for any of the following reasons: The public convenience and necessity no longer justify such certificate; the operator has willfully violated any of the provisions of this chapter; the operator was guilty of fraud or misrepresentation in the original application; the operator has operated outside the scope of the current certificate; the operator has been finally convicted of a felony or misdemeanor involving moral turpitude; the operator has permitted drivers to operate motor vehicles who could not be bonded, obtain automobile insurance, or who did not have the required state license; the operator has failed to pay any of the fees required herein or ad valorem taxes on personal or real property owned by the operator in the city and used in the operation of its business; the operator has allowed a driver not possessing a current taxicab driver's license to operate a taxicab; the operator has used any motor vehicle that is not in safe mechanical condition, or is improperly marked, identified, or colored, or that it has not been licensed and inspected as required by the laws of the State of Texas; the operator has failed to pay any final judgement against it; or, the operator has failed to furnish the city secretary with any information concerning the business, including information about drivers of taxicabs, duly requested in writing.

(Ord. No. 1179, § 1, 3-10-87)

### Sec. 23-7. Initial annual fee.

On receipt of the certificate from the city, and each year thereafter, on the same date unless such day is a Saturday, Sunday or holiday, in which event the appropriate day will be on the preceding Monday, the operator shall pay to the city a franchise fee in the amount of two hundred fifty dollars ($250.00).

(Ord. No. 1179, § 1, 3-10-87)

### Sec. 23-8. Existing permits.

Any operator who has obtained a permit from the city prior to the adoption of this chapter shall have the right to continue to operate for the duration of said pre-existing permit or one hundred eighty (180) days, whichever is lesser, under the terms and conditions of the grant thereof; provided, that any such operator shall file an application within thirty (30) days of the adoption of this chapter for a certificate appropriate to the type of service permitted prior to the adoption of the chapter.

(Ord. No. 1179, § 1, 3-10-87)

Secs. 23-9, 23-10.  Reserved.

## DIVISION 2.  PROCEDURES

### Sec. 23-11.  Grant by city council; service requirements.

Before a certificate of public convenience and necessity is granted, the application for the annual permit must be approved by the city council. The granting of an annual permit is in the discretion of the city council, but will not be granted unless:

(1)  The proposed taxicab service is required by the public convenience and necessity; and

(2)  The applicant is fit, willing, and able to operate the taxicab service in accordance with the requirements of this chapter, provisions of the certificate, and other applicable law.

(Ord. No. 1179, § 1, 3-10-87)

### Sec. 23-12.  Application.

To obtain a certificate, a person shall make application to the city council in the manner prescribed by this section. The applicant must be the person who will own, control, or operate the proposed taxicab service. An applicant shall file with the city secretary a written, verified application statement containing the following:

(1)  The form of business of the applicant; if the business is a corporation or association, a copy of the documents establishing the business and the name, address, and citizenship of each person with a direct interest in the business;

(2)  Name, address, and verified signature of the applicant;

(3)  An actual or pro forma income statement and balance sheet showing the assets, liabilities, and equity of the business;

(4) Description of any past business experience of the applicant, particularly in providing passenger transportation services; identification and description of any revocation or suspension of a franchise or permit held by the applicant or business before the date of filing the application;

(5) Number of vehicles and description of the vehicles the applicant proposes to use in the operation of the taxicab service; the description of the operations of the proposed taxicab service and location of the fixed facilities to be used in the operation;

(6) Description of the proposed insignia and color scheme for the applicant's taxicabs and description of the distinctive item of apparel or item placed on the apparel to be worn by the applicant's taxicab drivers;

(7) Documentary evidence from an insurance company, authorized to do business in the same State of Texas indicating a willingness to provide liability insurance required by this chapter;

(8) Such additional information as the applicant desires to include to aid in the determination of whether the requested operating authority should be granted; and

(9) Such additional information as the city council considers necessary to assist or promote the implementation or enforcement of this chapter or the protection of the public safety.

(Ord. No. 1179, § 1, 3-10-87)


## Sec. 23-13. Investigation of application; approval.

(a) Upon receipt of an application for a certificate the city manager or his designated representative shall conduct an investigation and make a recommendation to the city council. The city council shall then hold a public hearing to consider whether a certificate should be granted.

(b) The applicant for an annual permit has the burden of providing that the public convenience and necessity require the proposed taxicab service and that the applicant is qualified and financially able to provide the service proposed in the application.

(Ord. No. 1179, § 1, 3-10-87)


## Sec. 23-14. Action on application.

In the event the city council finds that the public convenience and necessity deem the issuance of such a certificate, and that the applicant meets the required qualification to give proper and adequate service to the best interest of the inhabitants of the city, the council shall grant a certificate of public convenience and necessity to such applicant, subject to any specific terms and conditions as may be imposed by the city council upon approval of the franchise and permit.

(Ord. No. 1179, § 1, 3-10-87)


## Sec. 23-15. Issuance.

Upon approval of an application for an annual permit by the city council, the city secretary shall issue the certificate upon receipt of the initial annual fee heretofore prescribed, a copy of the certificate of insurance hereinafter prescribed, and upon obtaining the signature of the applicant to the original certificate.

(Ord. No. 1179, § 1, 3-10-87)

Secs. 23-16--23-19.  Reserved.

Mesquite, Texas, Code of Ordinances >> PART II - CODE OF ORDINANCES >> Chapter 8 - LICENSES, PERMITS AND BUSINESS REGULATIONS >> ARTICLE II. - VEHICLES FOR HIRE >> DIVISION 4. - TAXICABS >> Subdivision II. - Service Regulations >>

## Subdivision II. - Service Regulations

Sec. 8-113. - City-wide taxicab service required.
Sec. 8-114. - Representation of availability of taxicab.
Sec. 8-115. - Refusal to convey passengers.
Sec. 8-116. - Passenger limitations.
Sec. 8-117. - Carry passengers by direct route.
Sec. 8-118. - Solicitation of passengers.
Sec. 8-119. - Regulations for use of taxicab stands.
Sec. 8-120. - Conduct of drivers.
Sec. 8-121. - Return of passenger's property.
Sec. 8-122. - Establishment of taxicab stands.
Sec. 8-123. - Service regulations for business establishments requesting taxicabs for customers.

### Sec. 8-113. - City-wide taxicab service required.

Except as otherwise approved by the holder's operating authority, a holder shall:

(1)
Provide taxicab service to the general public to and from any point inside the city that is accessible by public street (this provision does not require a holder to subject a taxicab to mob violence or destruction);
(2)
Answer each call received for service inside the city as soon as practicable, and if the service cannot be rendered within a reasonable time, the holder shall inform the caller of the reason for the delay and the approximate time required to answer the call; and
(3)
Maintain a single station for the purpose of receiving calls and dispatching taxicabs that is operational twenty-four (24) hours each day.

(Ord. No. 2793, § 2, 2-3-92)

### Sec. 8-114. - Representation of availability of taxicab.

A driver may not represent that his taxicab is engaged when it is in fact vacant or vacant when it is in fact engaged.

(Ord. No. 2793, § 2, 2-3-92)

### Sec. 8-115. - Refusal to convey passengers.

(a)
While operating a taxicab a driver shall not refuse to convey a person who requests service unless:
(1)
The person is disorderly;
(2)
The driver is engaged in answering a previous request for service;
(3)
The driver has reason to believe that the person is engaged in unlawful conduct; or
(4)
The driver is in fear of his personal safety.
(b)
While operating a taxicab, a driver shall not refuse service requested by a radio or other data dispatch when the location for pick up is within a reasonable distance from the location of the taxicab.

*(Ord. No. 2793, § 2, 2-3-92)*

## Sec. 8-116. - Passenger limitations.

(a)
While operating a taxicab a driver on duty may carry only a person who is a paying passenger, unless the passenger is an employee of the taxicab service that employs or contracts with the driver, a governmental inspector acting in an official capacity, or unless it is authorized by the holder's operating authority.
(b)
A driver may not carry at the same time more passengers than the designed seating capacity of the taxicab.
(c)
The chief of police may establish rules governing passenger limitations, as illustrated by, but not limited to, cab-sharing, cab-pooling, and numbers of passengers with different destinations.

*(Ord. No. 2793, § 2, 2-3-92)*

## Sec. 8-117. - Carry passengers by direct route.

A driver shall carry a passenger to his destination by the most direct and expeditious route available unless otherwise directed by the passenger.

*(Ord. No. 2793, § 2, 2-3-92)*

## Sec. 8-118. - Solicitation of passengers.

A driver may not solicit passengers:

(1)
From a location other than the driver's compartment or the immediate vicinity of his taxicab;
(2)
In a way that annoys or obstructs the movement of pedestrian or vehicular traffic; or
(3)
By paying an employee of another business to solicit passengers for or give preferential treatment in directing passengers to the driver's taxicab.

*(Ord. No. 2793, § 2, 2-3-92)*

## Sec. 8-119. - Regulations for use of taxicab stands.

(a)
While using a taxicab stand, a driver shall not:
(1)
Interfere with the orderly progression of taxicabs from the rear to the front of the taxicab stand;
(2)
Perform or allow to be performed repairs or maintenance on a taxicab while parked on the taxicab stand;
(3)
Assign or sell his position in a taxicab stand to another; or
(4)
Interfere with a taxicab entering a taxicab stand on which there is a vacant space.
(b)
A person shall not park a taxicab on a taxicab stand unless the taxicab is for hire.

*(Ord. No. 2793, § 2, 2-3-92)*

## Sec. 8-120. - Conduct of drivers.

A driver shall:

(1)

Conduct himself in a reasonable, prudent, and courteous manner;
(2)
Maintain a sanitary and well-groomed appearance;
(3)
Not respond to a radio or data dispatch call assigned to another driver;
(4)
Not consume alcoholic beverage, drugs, or other substance which could adversely affect his ability to drive a motor vehicle;
(5)
Not monitor the radio or data frequency of a taxicab company other than his own nor respond to a call for service dispatched by another company;
(6)
Not possess a radio or data equipment capable of receiving the frequency of a taxicab company other than his own;
(7)
Not interfere with the chief of police in the performance of his duties; and
(8)
Comply with lawful orders of the chief of police issued in the performance of his duties.

*(Ord. No. 2793, § 2, 2-3-92)*

## Sec. 8-121. - Return of passenger's property.

(a)
Upon finding property in a taxicab left by a passenger, the driver shall immediately return the property to the owner. However, if the driver is unable to locate the owner or if the driver does not know the identity or whereabouts of the owner, the driver shall, within a reasonable time, deliver the property to the holder who employs or contracts with the driver.
(b)
Upon return of property to the owner or delivery of property to the holder, the driver shall prepare a written report stating the description of the property, the identity of the owner if known, the date the property was left in the taxicab, the circumstances relating to the loss, and the taxicab number. The holder shall keep the report on file for at least one (1) year and shall hold the property for not less than three (3) months.

*(Ord. No. 2793, § 2, 2-3-92)*

## Sec. 8-122. - Establishment of taxicab stands.

(a)
Subject to the approval of the chief of police, the traffic engineer may establish taxicab stands of such character, number, and location as he determines are required by the public convenience and necessity.
(b)
A holder desiring the establishment of a taxicab stand must file a written request with the chief of police and the traffic engineer.

*(Ord. No. 2793, § 2, 2-3-92)*

## Sec. 8-123. - Service regulations for business establishments requesting taxicabs for customers.

An employee of a business establishment, other than a taxicab service, who acts as an agent in obtaining taxicab service for prospective taxicab passengers shall not:

(1)
Solicit nor accept payment from a driver in return for giving preferential treatment in directing passengers to a driver's taxicab; or
(2)
Interfere with the orderly progression of taxicabs from the rear to the front of a taxicab stand.

*(Ord. No. 2793, § 2, 2-3-92)*

**1. Plano, Texas, Code of Ordinances >>**
**PART II - CODE OF ORDINANCES >> Chapter 11 - LICENSES AND BUSINESS REGULATIONS >> ARTICLE III. - VEHICLES FOR HIRE >> DIVISION 2. - PERMIT >> DIVISION 2. - PERMIT**

**Sec. 11-106. - Vehicle permit required, exception.**

**Sec. 11.106.1. - Permit application.**

**Sec. 11.106.2. - Permit terms and conditions.**

**Sec. 11-106.3. - Permit fees.**

**Sec. 11-107. - Rear window decal, taxicabs.**

**Sec. 11-108. - Insurance.**

**Sec. 11-106.** - Vehicle permit required, exception.

(a)

A person may not operate a taxicab or limousine service within the City of Plano for the pickup of passengers inside the city without first having obtained a permit from the city issued under the terms and provisions of this division, except as provided in subsection (b).

(b)

A person displaying a current and valid decal issued either by the City of Dallas or the Dallas/Fort Worth Airport that indicates the vehicle's authority to operate in those locals is excepted from the permit and fees otherwise required by this division.

(Ord. No. 2001-7-16, § II, 7-23-01)

**Sec. 11.106.1.** - Permit application.

An applicant for a permit required by this division shall file with the police department a written application signed by the applicant. The application must contain the following information:

(1)

The applicant's name, address, and telephone number; the grade name (assumed name certificate) under which applicant does business; the street address of the business; and, if incorporated, the name and address of the corporate officers registered with the secretary of state;

(2)

The name, local address, and local telephone number of the business for which the applicant seeks a permit;

(3)

Proof of insurance as required in section 11-108 of this division; and

(4)

A description of the business services which the applicant intends to offer, including the number and identification number of all vehicles for which the applicant seeks a permit.

(Ord. No. 2001-7-16, § II, 7-23-01)

**Sec. 11.106.2.** - Permit terms and conditions.

A permit issued under this division:

(1)

Is an annual permit that expires twelve (12) months after the date of issuance;

(2)

Is effective for a single place of business only;

(3)

Vests no property right in the permittee except to operate a taxicab or limousine service within the city in accordance with the terms and conditions of this article; and

(4)

Is nontransferable and nonassignable, except that in the event of a vehicle's discontinuation in service for any reason, the owner of said vehicle may, within thirty (30) days of the discontinuation, apply to the police department for a transfer of said permit to another vehicle.

(Ord. No. 2001-7-16, § II, 7-23-01)

**Sec. 11-106.3.** - Permit fees.

A holder of an annual permit shall pay the city a permit fee as provided below:

(1)

Two hundred fifty dollars ($250.00) a year for each taxicab authorized to operate under the permit; or

(2)

Five hundred dollars ($500.00) a year for a limousine service, with an additional twenty dollars ($20.00) for each vehicle authorized to operate under the permit.

(Ord. No. 2001-7-16, § II, 7-23-01)

**Sec. 11-107.** - Rear window decal, taxicabs.

(a)

The owner of a taxicab permit shall be supplied with a decal, indicating his authority to operate within the city, which shall be valid for the same time period as is the permit. The decal must be attached to the rear window of each vehicle in a manner and location approved by the police department.

(b)

A person commits an offense if he:

(1)

Operates a taxicab with an expired decal or with no decal affixed to it;

(2)

Attaches a decal to a vehicle not authorized to operate as a taxicab;

(3)

Forges, alters, or counterfeits a decal required by this section; or

(4)

Possesses a forged, altered, or counterfeited decal required by this section.

(c)

A decal assigned to one (1) vehicle is not transferable to another without the consent of the police department as provided for in section 11-106(2).

(Ord. No. 88-3-23, § I, 3-14-88)

**Sec. 11-108.** - Insurance.

It shall be unlawful for any permittee to operate a limousine or taxicab service unless said permittee shall maintain in force during the authorized period of its operating authority the amount and character of insurance coverage for all vehicles used in such service as follows:

(1)

A five hundred thousand dollar ($500,000.00) per occurrence combined single limit liability policy with a deductible not to exceed one thousand dollars ($1,000.00) which shall pay on behalf of the insured named therein and any other person, as insured, using any such taxicab motor vehicle or motor vehicles with the express or implied permission of such named insured, all sums which the insured shall become legally obligated to pay as damage arising out of the operation of the taxicab service or the ownership, maintenance or use of such taxicab motor vehicles or motor vehicles operated for or on behalf of the permittee;

(2)

Be carried with an insurance company authorized to do business in the State of Texas;

(3)

Include a cancellation rider under which the insurance company is required to notify the city in writing not fewer than fourteen (14) days before canceling or making a material change to the insurance policy.

(4)

Provides that the city is an additional named insured;

(5)

Provides coverage for all vehicles operating under the name of the permittee whether said vehicles are owned, leased, hired or contracted and liability coverage for the drivers operating said vehicles, whether on or off duty;

(6)

Contains a provision for a continuing liability thereon up to the full amount thereof, notwithstanding any recovery thereon;

(7)

The insurance policy required by this article shall be filed with the police chief five (5) working days prior to the time any of the vehicles operated by the permittee may be operated upon city streets; and

(8)

Prior to the time the permittee may operate any vehicles upon the streets of the city, the permittee must secure written confirmation from the city that the policy meets the requirements of this section.

(Ord. No. 88-3-23, § I, 3-14-88)

Ordinances Governing

**TRANSPORTATION**

in the

CITY OF ARLINGTON

TEXAS

Amended by Ordinance No. 10-007

(January 12, 2010)

(Chapter Designator:   TRANSPORTATION)

## ORDINANCE HISTORY

| Number | Date of Adoption | Comments |
| --- | --- | --- |
| 88-25 | 02/02/88 | Amend Section 2.05, **Existing Certificate**, and Section 3.08, **Certificate Procedure**, relative to method of payment of permit fee; amend Section 5.08, **City Inspections**, to authorize random inspection of records and mandatory submission of monthly dispatch records; and amend Section 6.02, **Fares**, to revise the fee structure. |
| 89-83 | 07/18/89 | Amend Section 2.02, **Exceptions**, to allow the operation of special service transportation vehicles licensed by another governmental agency to transport passengers in or out of the City; amend Section 3.02, **Fee**, to adjust the filing fee for application for certificate to operate a taxicab or special transportation service. |
| 91-17 | 02/12/91 | Amend Section 6.02, **Fares**, relative to taxi fares. |
| 92-103 | 10/06/92 | Amend Section 2.02, **Exceptions**, to provide for additional exceptions to the category of exempt transportation. |
| 96-137 | 10/15/96 | Amend Section 1.02, **Definitions**, relative to the definition of "Passengers for Hire"; amend **Article II, Operating Authority**, by deleting Sections 2.05 and 2.06 and renumbering the remaining sections; amend Section 3.08, **Permit and Street Use Fee**, relative to amount of permit fee; amend Section 4.02, **Application for Permit**, relative to an application fee, the removal of the requirement for the applicant's fingerprints on the application, the date of the applicant's medical report, the expiration date of the applicant's Texas |

i

TRANSPORTATION
History

## ORDINANCE HISTORY

| Number | Date of Adoption | Comments |
|---|---|---|
| | | class A, B or C license, proof of satisfactory completion of a certified defensive driving course within the last two years, applicant's traffic offenses within the last five years and forfeiture of application fee; amend Section 4.04, **Permit Issued**, relative to verbal communication in the English language, statute update, the requirement of a certified defensive driving course within the last two years and payment of a permit fee; amend Section 4.05, **Identification Cards**, to remove the requirement for the driver's address on the identification card; amend Section 4.06, **Denial of Driver's Permit for Reasons Other Than Criminal Background**, to update the section reference; amend Section 4.07, **Driver Registration Files**, to remove the requirement for driver's fingerprints; amend Section 4.08, **Restrictions on Renewal of Driver's Permit**, to permit duration and renewal; amend Section 5.03, **Liability Insurance Required**, relative to insurance requirements; amend Section 5.06, **Motor Vehicle Registration**, relative to Texas salvage certificate of titles; amend Section 5.08, **City Inspection**, Subsection (C), relative to reference to permitted taxicabs; amend Section 5.09, **Condition of Vehicles**, Subsection (A)(6), relative to age of vehicles; amend Subsection 5.09(A)(7), relative to amount of doors in vehicles; amend Section 7.01, **Eligibility of Persons with Criminal Backgrounds for Certificates or Permits**, Subsection (A), relative to criminal complaints; amend Subsection 7.01(B)(2), relative to specific criminal acts providing for a fine of up to $2,000 for each offense. |

ii

## ORDINANCE HISTORY

| Number | Date of Adoption | Comments |
| --- | --- | --- |
| 98-63 | 05/19/98 | Amend **Article I, General Provisions**, Section 1.02, **Definitions**, relative to the definitions of "Certificate", "Certificate Holder", and "Driver", and the addition of the definition of "Jitney"; Amend **Article IV, Drivers**, Section 4.01, **Driver's Permit Required**; Amend Section 4.02, **Application for Permit**, Subsection (A); Amend Section 4.02, Subsection (B)(8); Amend Section 4.03, **City's Geography Test Required**; Amend Section 4.04, **Permit Issued**, Subsection (D); Amend Section 4.07, **Driver Registration Files**; Amend **Article V, Standards for Operation**, Section 5.08, **City Inspection**; Amend **Article VII, Revocation, Suspension, and Denial of Certificates and Permits: Procedures, Considerations, Appeals**, Section 7.01, **Eligibility of Persons with Criminal Backgrounds for Certificates or Permits**, Subsection (A); Amend Section 7.01, Subsection (B)(2); Amend Section 7.02, Subsection (A); Amend Section 7.02, Subsection (B); Amend Section 7.02, Subsection (C)(5); Amend Section 7.02, Subsection (C)(6); Add **Article IX, Jitney Operation**, and renumber the remaining articles. |
| 98-114 | 09/08/98 | Amend **Article IX, Jitney Operation**, Section 9.11, **Fares**, Subsection (A), relative to the elimination of the $5.00 maximum charge for jitney service. |
| 99-108 | 09/07/99 | Amend **Article I, General Provisions**, **Section 1.02**, Definitions, by the deletion of the definition of "Door-to-Door Service", the addition of definitions for "Medical Service" and |

TRANSPORTATION
History

**ORDINANCE HISTORY**

| Number | Date of Adoption | Comments |
|--------|------------------|----------|
| | | "Shuttle Service", and the revision of the definitions of "Special Service Transportation" and "Taxicab"; Amend **Article II**, Operating Authority, **Section 2.01**, Certificate Required; Permits Required, relative to the deletion of the requirement to receive a certificate from the City Council; Amend **Section 2.02**, Exceptions, **Subsection (B)**, relative to the addition of medical service vehicles; Amend **Section 2.03**, Form and Contents of Certificate, relative to the proper execution of the certificate; Amend **Section 2.04**, Transferability, relative to proper consent for transfer of a certificate; Amend **Section 2.05**, Duration of Certificate or Permit, relative to annual permit renewal; Amend **Section 2.06**, Renewal of Certificate or Permit, by the deletion of **Subsection (D) and (E)**; Amend **Article III**, Certificate Procedure, **Section 3.02**, Fee, relative to application fee; Amend **Section 3.04**, Public Hearing, relative to the deletion of the requirement for a public hearing; Amend **Section 3.06**, Issuance of Certificate, relative to street-use fees; Amend **Section 3.07**, Action on Amendments, relative to certificate amendments; Amend **Section 3.08**, Permit and Street Use Fee, relative to street use fees; Amend **Article IV**, Drivers, **Section 4.02**, Application for Permit, **Subsection (B) (3)**, relative to residence; Amend **Section 4.02**, **Subsection (B) (8)**, relative to the requirement that a copy of the applicant's driver's license be attached to the permit application; De- |

iv

**ORDINANCE HISTORY**

| Number | Date of Adoption | Comments |
|--------|------------------|----------|

lete **Section 4.03**, <u>City's Geography
Test Required</u>, and the addition of a
new **Section 4.03**, <u>Temporary Driver's
Permit Issued</u>; Amend **Section 4.04**,
<u>Permit Issued</u>, by the deletion of
**Subsection (C)**, and the renumbering
of the remaining subsections; Amend
**Section 4.04**, **Subsection (G)**, rela-
tive to driver's permit fee; Amend
**Section 4.04**, by the addition of a
new **Subsection (G)**, relative to the
requirement for a sworn statement au-
thorizing the applicant to drive a
vehicle for a specific certificate
holder; Amend **Section 4.05**, <u>Identifi-
cation Cards</u>, relative to driver's
permit identification cards; Amend
**Section 4.07**, <u>Driver Registration
Files</u>, relative to administrative re-
view; Amend **Section 4.08**, <u>Permit Du-
ration and Renewal</u>, relative to tem-
porary driver's permits; Amend **Arti-
cle V**, <u>Standards for Operation</u>, **Sec-
tion 5.04**, <u>Nonliability of City for
Pecuniary Responsibility</u>, relative to
the addition of special services ve-
hicles; Amend **Section 5.05**, <u>Certifi-
cate Holder's Duty to Screen Drivers</u>,
relative to the deletion of the word
taxicab; Amend **Section 5.06**, <u>Motor
Vehicle Registration</u>, **Subsection (B)**,
relative to City decals; Amend **Sec-
tion 5.08**, <u>City Inspection</u>, **Subsec-
tion (C)**, relative to shuttle service
vehicles; Amend **Article VII**, <u>Revoca-
tion, Suspension, and Denial of Cer-
tificates and Permits: Procedures,
Considerations, Appeals</u>, **Section
7.01**, <u>Eligibility of Persons with
Criminal Backgrounds for Certificates
or Permits</u>, **Subsection (A)**, relative
to the deletion of the provision for
the suspension of a permit when the
holder is under indictment or subject
to an official criminal complaint;

v

TRANSPORTATION
History

**ORDINANCE HISTORY**

| Number | Date of Adoption | Comments |
|---|---|---|
| | | Amend **Section 7.01, Subsection (B)(2)(K)**, relative to criminal background checks; Amend **Section 7.01**, by the deletion of **Subsection (C)(6)** relative to administrative guidelines issued; Amend **Article VIII**, <u>Special Service Transportation</u>, relative to special service transportation. |
| <u>00-088</u> | 08/08/00 | Amend **Article VI**, <u>Taxicab Operation</u>, **Section 6.02**, <u>Fares</u>, **Subsection (A)**, relative to the fare structure for taxicab service. |
| <u>03-040</u> | 04/01/03 | Amend **Article IV**, <u>Drivers</u>, **Section 4.02**, <u>Application for Permit</u>, **Subsection (A)**, relative to the application fee; Amend **Section 4.08**, <u>Permit Duration and Renewal</u>, **Subsection (A)**, relative to permit duration. |
| <u>07-042</u> | 06/05/07 | Amend **Article I**, <u>General Provisions, Section 1.02, Definitions</u>, relative to the addition of the definitions of "Alternative Fuel", "Classic Limousine", "Defensive Driving Course", "Horse-drawn Carriage Service", "Luxury Sedan", "Luxury Truck", "Specialty Limousine", "Stretch Limousine" and "Veterinarian" and the amendment of the definitions of "Limousine Service", "Shuttle Service", "Special Service Transportation" and "Taxicab Stand"; **Article II**, <u>Operating Authority, Sections 2.05, Duration of Certificate or Permit</u>, and **2.06**, <u>Renewal of Certificate or Permit</u>; **Article III**, <u>Certificate Procedure</u>, **Sections 3.01**, <u>Application</u>, **3.02**, <u>Fee</u>, **3.03**, <u>Investigation of Applicants</u>, **3.07**, <u>Action on Amendments</u>, and the addition of **3.09**, <u>Holder's Records and Reports</u>; the title of |

## ORDINANCE HISTORY

| Number | Date of Adoption | Comments |
|--------|------------------|----------|
| | | Article IV from Drivers to Drivers and Certificate Holders, and Subsection 4.02(B), Sections 4.03, Temporary Driver's Permit Issued, 4.04, Permit Issued, 4.06, Denial of Driver's Permit for Reasons Other Than Criminal Background, 4.08, Permit Duration and Renewal, 4.09, Neat and Clean Appearance of Drivers, 4.10, Conduct of Drivers, and the addition of Sections 4.11, Driver and Certificate Holders and 4.12, Driver's Daily Manifest; Article V, Standards for Operation, Sections 5.03, Liability Insurance Required, 5.08, City Inspection, 5.09, Condition of Vehicles, 5.10, Use of Alcoholic Beverages or Controlled Substances, 5.11, Notification of Change of Address of Drivers, 5.13, Delivery of Lost Articles, and the addition of Sections 5.16, General Prerequisites to Putting Vehicle into Service and 5.17, Passenger Comfort; Article VI, Taxicab Operation, Sections 6.02, Fares, 6.03, Markings, 6.04, Taximeter Required, and the addition of Sections 6.06, Payment of Fare; Refusal to Carry Passengers; Excess Fare Prohibited; Nonpayment of Fare and 6.07, Representation of Availability of a Taxicab; Article VII, Revocation, Suspension, and Denial of Certificates and Permits: Procedures, Considerations, Appeals, Section 7.01, Eligibility of Persons with Criminal Backgrounds for Certificates or Permits, Subsection 7.02(B) and (C), and the addition of Section 7.03, Denial of a Permit for Reasons Other Than Criminal History; Article VIII, Special Service Transportation; Article IX, Jitney Operation, Sections 9.04, Application Procedure for Certificate of Operation and 9.05, |

vii

TRANSPORTATION
History

ORDINANCE HISTORY

| Number | Date of Adoption | Comments |
|--------|------------------|----------|
| | | Investigation of Applicants, **Subsection 9.06(A)**, **Sections 9.07**, Renewal of Certificate, **9.09**, Liability Insurance, **9.23**, Denial of Driver's Permit for Reasons other Than Criminal Background and **9.28**, Condition of Vehicles; **Article XI**, Enforcement, **Section 11.01**, Violation of a Misdemeanor, relative to the protection of public safety. |
| 08-076 | 09/16/08 | Amend **Article I**, General Provisions, by the addition of certain definitions, through the renumbering of **Article X**, Miscellaneous Provisions, and **Article XI**, Enforcement, and through the addition of a new **Article X**, Motor Vehicle Idling Restrictions. |
| 10-007 | 01/12/10 | Amend **Article I**, General Provisions, **Section 1.02**, Definitions, by the addition and amendment of certain definitions; amend **Article II**, Operating Authority, **Section 2.01**, Certificate Required; Permits Required, relative to prohibiting modes of transportation for hire not specified as permitted; amend **Article II**, **Section 2.05**, Duration of Certificate or Permit, relative to term of certificate and permit; amend **Article II**, **Section 2.06**, Renewal of Certificate or Permit, by a minor clarification; amend **Article V**, Standards for Operation, by the addition of a new **Section 5.18**, Pick-up and Drop-off in Certain Areas Prohibited During Special Events, related to prohibiting pick-up and drop-off of passengers by buses and taxis in certain areas except authorized queuing areas; amend **Article VIII**, Special Service Transportation, **Section 8.01**, Solicitation of Passengers, and **Section 8.03**, Markings, adding provisions relative |

viii

TRANSPORTATION
History

## ORDINANCE HISTORY

| Number | Date of Adoption | Comments |
|---|---|---|
| | | to pedicabs and NEVs-For-Hire; amend **Article IX**, Jitney Operation, **Section 9.07**, Renewal of Certificate, by a minor clarification; add new **Article X**, Pedicab and NEV-For-Hire Operation, adding regulations for pedicabs and NEVs-for-hire; through the renumbering of the remaining articles and corresponding cross-references; amend renumbered **Article XIII**, Enforcement, relative to culpable mental state. |

ix

# TABLE OF CONTENTS

**ARTICLE I        GENERAL PROVISIONS**

    Section 1.01   Chapter Designation
    Section 1.02   Definitions


**ARTICLE II       OPERATING AUTHORITY**

    Section 2.01   Certificate Required; Permits Required
    Section 2.02   Exceptions
    Section 2.03   Form and Contents of Certificate
    Section 2.04   Transferability
    Section 2.05   Duration of Certificate or Permit
    Section 2.06   Renewal of Certificate or Permit


**ARTICLE III      CERTIFICATE PROCEDURE**

    Section 3.01   Application
    Section 3.02   Fee
    Section 3.03   Investigation of Applicants
    Section 3.04   Public Hearing
    Section 3.05   Action on Application
    Section 3.06   Issuance of Certificate
    Section 3.07   Action on Amendments
    Section 3.08   Street Use Fees
    Section 3.09   Holder's Records and Reports


**ARTICLE IV       DRIVERS AND CERTIFICATE HOLDERS**

    Section 4.01   Driver's Permit Required
    Section 4.02   Application for Permit
    Section 4.03   Temporary Driver's Permit Issued
    Section 4.04   Permit Issued
    Section 4.05   Driver's Permit Identification Cards
    Section 4.06   Denial of Driver's Permit for Reasons
               Other Than Criminal Background
    Section 4.07   Driver Registration Files
    Section 4.08   Certificate Holders Duties Regarding the
               Appearance of Drivers
    Section 4.09   Appearance of Drivers
    Section 4.10   Conduct of Drivers
    Section 4.11   Driver and Certificate Holders
    Section 4.12   Driver's Daily Manifest

TRANSPORTATION
Contents

**ARTICLE V        STANDARDS FOR OPERATION**

Section 5.01    Central Place of Business
Section 5.02    Vehicles to be Kept on Private Premises
Section 5.03    Liability Insurance Required
Section 5.04    Nonliability of City for Pecuniary Responsibility
Section 5.05    Certificate Holder's Duty to Screen Drivers
Section 5.06    Motor Vehicle Registration
Section 5.07    Right to Payment of Regular Fare in Advance
Section 5.08    City Inspection
Section 5.09    Condition of Vehicles
Section 5.10    Use of Alcoholic Beverages or Controlled Substances
Section 5.11    Notification of Change of Address of Drivers
Section 5.12    Most Direct Route to be Used
Section 5.13    Delivery of Lost Articles
Section 5.14    Complaint Procedure
Section 5.15    Responsibility of Each Person Engaging a Taxicab or Special Service Transportation Vehicle
Section 5.16    General Prerequisites to Putting Vehicle into Service
Section 5.17    Passenger Comfort
Section 5.18    Pick-up and Drop-off in Certain Areas Prohibited During Special Evnets

**ARTICLE VI       TAXICAB OPERATION**

Section 6.01    Soliciting of Passengers
Section 6.02    Fares
Section 6.03    Markings
Section 6.04    Taximeter Required
Section 6.05    Taxicabs Used Only for Transporting Passengers or Operating Courier Services
Section 6.06    Payment of Fare; Refusal to Carry Passengers; Excess Fare Prohibited; Nonpayment of Fare
Section 6.07    Representation of Availability of a Taxicab

ii

**ARTICLE VII**   **REVOCATION, SUSPENSION, AND DENIAL OF CERTIFICATES AND PERMITS: PROCEDURES, CONSIDERATIONS, APPEALS**

Section 7.01   Eligibility of Persons with Criminal Backgrounds for Certificates or Permits

Section 7.02   Suspension or Revocation of a Certificate or Permit for Reasons other than Criminal History

Section 7.03   Denial of a Permit for Reasons Other Than Criminal History


**ARTICLE VIII**   **SPECIAL SERVICE TRANSPORTATION**

Section 8.01   Solicitation of Passengers
Section 8.02   Schedule of Fares
Section 8.03   Markings
Section 8.04   Limousine
Section 8.05   Shuttle Service
Section 8.06   Horse-drawn Carriage Service


**ARTICLE IX**   **JITNEY OPERATION**

Section 9.01   Purpose and Name
Section 9.02   Administration
Section 9.03   Certificate of Operation
Section 9.04   Application Procedure for Certificate of Operation
Section 9.05   Investigation of Applicants
Section 9.06   Duration of Certificate of Operation
Section 9.07   Renewal of Certificate
Section 9.08   Certificate of Operation Application Fee
Section 9.09   Liability Insurance
Section 9.10   Service Areas
Section 9.11   Fares
Section 9.12   Solicitation of Passengers
Section 9.13   Information to be shared with each Passenger
Section 9.14   Communications
Section 9.15   Maximum Occupancy
Section 9.16   Use of Temporary Vehicles
Section 9.17   Vehicle Location
Section 9.18   Motor Vehicle Registration
Section 9.19   Motor Vehicle Identification and Markings
Section 9.20   Certificate Holder's Duty to Screen Drivers
Section 9.21   Driver's Permit Required

TRANSPORTATION
Contents

Section 9.22    Driver's   Application,   Permit   and
                Identification
Section 9.23    Denial  of  Driver's  Permit  for  Reasons
                Other Than Criminal Background
Section 9.24    Driver's Permit Duration and Renewal
Section 9.25    Driver's Registration Files
Section 9.26    Right to Payment of Regular Fare
Section 9.27    City Inspection
Section 9.28    Condition of Vehicles
Section 9.29    Complaint Procedure
Section 9.30    Responsibility of Each Person Engaging a
                Jitney Vehicle
Section 9.31    Nonliability  of  City  for  Pecuniary
                Responsibility


ARTICLE X       PEDICAB AND NEV-FOR-HIRE OPERATION

Section 10.01   Purpose
Section 10.02   Administration
Section 10.03   Certificate of Operation
Section 10.04   Application Procedure for Certificate of
                Operation
Section 10.05   Investigation of Applicants
Section 10.06   Duration of Certificate of Operation and
                Revocation
Section 10.07   Renewal of Certificate
Section 10.08   Certificate of Operation Application Fee
Section 10.09   Liability Insurance
Section 10.10   Service Area and Time
Section 10.11   Fares
Section 10.12   Solicitation of Passengers
Section 10.13   Information  to  be  shared  with  each
                Passenger
Section 10.14   Communications
Section 10.15   Maximum Occupancy
Section 10.16   Pedicab Location
Section 10.17   Pedicab and NEV-for-hire Registration
Section 10.18   Vehicle Identification and Markings
Section 10.19   Certificate  Holder's  Duty  to  Screen
                Drivers
Section 10.20   Driver's Permit Required
Section 10.21   Driver's   Application,   Permit   and
                Identification
Section 10.22   Denial of Driver's Permit for Reasons
                Other Than Criminal Background
Section 10.23   Driver's Permit Duration, Renewal and
                Revocation
Section 10.24   Driver's Registration Files
Section 10.25   Right to Payment of Regular Fare
Section 10.26   City Inspection