Section 10.27  Condition and Construction of Pedicabs
Section 10.28  Condition and Construction of NEVs-for-hire
Section 10.29  Complaint Procedure
Section 10.30  Responsibility of Each Person Engaging a Pedicab or NEV-for-hire
Section 10.31  Nonliability of City for Pecuniary Responsibility

## ARTICLE XI     MOTOR VEHICLE IDLING RESTRICTIONS

Section 11.01  Applicability and Definitions
Section 11.02  Idling Prohibited
Section 11.03  Exemptions

## ARTICLE XII    MISCELLANEOUS PROVISIONS

Section 12.01  Transportation for Unlawful Purposes
Section 12.02  Applicability of All Other Laws
Section 12.03  Advertising

## ARTICLE XIII   ENFORCEMENT

Section 13.01  Violation a Misdemeanor
Section 13.02  No Culpable Mental State Required
Section 13.03  Other Remedies

v

## ARTICLE I

### GENERAL PROVISIONS

**Section 1.01   Chapter Designation**

This ordinance and Chapter of the Code of the City of Arlington is hereby designated and shall be known and referred to as the "Transportation" Chapter of said Code, or as the "Transportation Ordinance".

**Section 1.02   Definitions**

The following terms and phrases as used in this Chapter, unless the context clearly shows otherwise, shall have meanings as follows:

**"Administrator"** shall mean such officers and employees of the City as may be designated by the City Manager to enforce and administer the provisions of this Chapter. The designated administrator shall promulgate rules necessary to enforce the provisions of this Chapter.

**"Alternative Fuel"** shall mean any vehicle using fuel that can replace ordinary gasoline and have particularly desirable energy efficiency and pollution reduction features. Alternative fuels may include compressed natural gas, alcohols, liquefied petroleum gas (LPG), and electricity. (Amend Ord 07-042, 6/5/07)

**"Applicant"** shall mean the person, partnership, or corporation that applies for a certificate or permit hereunder.

**"Bus Service"** shall mean a service rendered by a vehicle designed to transport passengers, on a scheduled fare basis, with fixed schedules or routes, by which passengers are picked up and transported to one or more destinations. Such service does not include door-to-door service as herein defined.

**"Certificate"** shall mean a permit in the form of a certificate of public convenience and necessity, or certificate of operation authorizing the operation of taxicabs, jitneys, pedicabs, NEVs-for-hire, or special service transportation vehicles over the streets of the City pursuant to certain terms, regulations, and conditions;

ARTICLE I - 1
(Amend Ord 10-007, 1/12/10)

issued and held pursuant to this Chapter.   (Amend Ord 10-007, 1/12/10)

**"Certificate Holder"** shall mean any person, firm, corporation, association, partnership or society who holds a valid and current certificate of convenience and necessity, or certificate of operation and who has the control, direction, maintenance and the benefit of the collection of revenue derived from the operation of one or more taxicabs, jitneys, pedicabs, NEVs-for-hire, or special service transportation vehicles on or over the streets or public ways of the City, whether as owner or otherwise.   (Amend Ord 10-007, 1/12/10)

**"Charter Service"** shall mean any type of service in which a vehicle designed to accommodate more than eight (8) persons, along with a driver, is furnished for a specific trip or excursion, and which is contracted for orally or in writing by an individual or group so as to obtain exclusive use of the vehicle for an interval of time generally less than twenty-four (24) hours.

**"City"** shall mean the City of Arlington, Tarrant County, Texas.

**"Classic Limousine"** shall mean a stretch or executive service limousine that is twenty-five (25) years of age or older.   Age of the vehicle shall be calculated from the first day of January of the model year.   (Amend Ord 07-042, 6/5/07)

**"Commercial or Public Passenger Transportation"** shall mean a mode of transportation provided by a bus or motor coach designed to accommodate more than ten (10) passengers (including the operator) for compensation and that is powered by a primary propulsion engine, but specifically excluding the modes of railroad, light rail, or taxicabs. (Amend Ord 08-076, 9/16/08)

**"Defensive Driving Course"** shall mean a driving safety course as provided in the Texas Transportation Code.   (Amend Ord 07-042, 6/5/07)

**"Driver"** shall mean the person actually driving a taxicab, jitney, pedicab, NEV-for-hire, or special service transportation vehicle, or a person who has been hired or has contracted with another to drive, whether he is the owner or is an agent, servant or employee of the owner. (Amend Ord 10-007, 1/12/10)

ARTICLE I - 2
(Amend Ord 10-007, 1/12/10)

**"For Hire"** shall mean for money or other thing of value, gratuities, tips and free-will offerings, whether paid directly or indirectly, as compensation or consideration for services rendered.

**"Holder"** shall mean a person or organization to whom a certificate or permit has been issued.

**"Horse-drawn Carriage Service"** shall mean a chauffeured non-motorized vehicle that is drawn by a horse, used to transport passengers for hire, and typically operates in designated areas or on approved routes.  (Amend Ord 07-042, 6/5/07)

**"Idle"** shall mean the operation of an engine in the operating mode where:  (a) the engine is not engaged in gear; (b) the engine operates at a speed at the revolutions per minute specified by the engine or vehicle manufacturer for when the accelerator is fully released; and (c) there is no load on the engine.  (Amend Ord 08-076, 9/16/08)

**"Jitney"** shall mean a motorized passenger vehicle having a manufacturer's rated seating capacity of not less than four (4) nor more than fifteen (15) including the driver, that is operated within a specified service area and without a fixed schedule, carrying passengers in exchange for a fee to places within the service area, or in other areas of the City provided that such service either originates or terminates within one of the designated service areas. (Amend Ord 98-63, 5/19/98)

**"Limousine Service"** shall mean a service which offers chauffeured vehicles (other than properly identified taxicabs) with a seating capacity of no more than fifteen (15) passengers in addition to a driver, to engage in the commercial transportation of people for compensation and to provide such service in response to advance arrangement and reservation by persons who specify a point of pickup, a time of pickup, and a length of time for which service is to be provided for the exclusive use of such persons; such service being rendered only in response to reservation and prearrangement generally and customarily made at least one (1) hour in advance of the time that such service is to begin.  (Amend Ord 07-042, 6/5/07)

**"Luxury Sedan"** shall mean a motor vehicle that is designated by the manufacturer as a full-size sedan that has at least four (4) doors; and has a rated seating capacity of six (6)

TRANSPORTATION
1.02

passengers or less, excluding the driver.  (Amend Ord 07-042, 6/5/07)

**"Luxury Truck"** shall mean a motor vehicle modified to be a stretch limousine that is designated by the manufacturer as a truck or sport-utility vehicle; after modification, has seating capacity for at least four passengers, excluding the driver.  (Amend Ord 07-042, 6/5/07)

**"Mechanical Operations"** shall mean the use of electrical tools or equipment in construction, maintenance, or repair of facilities.  (Amend Ord 08-076, 9/16/08)

**"Medical Service"** shall mean a service which offers medically assisted transportation to medical treatment to ambulatory patients using a passenger vehicle of no more than (8) passengers in addition to the driver.  (Amend Ord 99-108, 9/7/99)

**"Motor Vehicle"** shall mean every motor propelled vehicle used for the transportation of persons over the public streets of the City.  For the purpose of Article XI, "Motor Vehicle Idling Restrictions," Motor Vehicle shall mean any self-propelled device powered by an internal combustion engine and designed to operate with four or more wheels in contact with the ground, in or by which a person or property is or may be transported, and is required to be registered under Texas Transportation Code, Section 502.002, excluding vehicles registered under Section 502.006(c).  (Amend Ord 10-007, 1/12/10)

**"NEV-for-hire"** shall mean a mode of transportation provided by a Neighborhood Electric Vehicle that is capable of propulsion solely by electric power, for compensation, whether in the form of a fare or tips.  A "Neighborhood Electric Vehicle" means a vehicle that can attain a maximum speed of 35 miles per hour on a paved level surface and otherwise complies with Federal Motor Vehicle Safety Standard 500 (49 C.F.R. Section 571.500).  (Amend Ord 10-007, 1/12/10)

**"Passengers for Hire"** shall mean passengers that pay a fee or fare for transportation, or for whom someone pays a fee or fare, for transportation.  Such term does not include guests of hotels or motels that offer transportation without charge; students of private and public schools where transportation is provided by the school or school district; nor individuals engaged in pooling or sharing the expense

ARTICLE I - 4
(Amend Ord 10-007, 1/12/10)

arrangement and the number of passengers is not in excess of eight (8).   (Amend Ord 96-137, 10/15/96)

"**Passenger Transit Operations**" shall mean a regional mode of public transportation that is funded through a portion of sales tax for the region being served.   (Amend Ord 08-076, 9/16/08)

"**Pedicab**" shall mean a mode of transportation provided for compensation, whether in the form of a fare or tips, by a non-motorized vehicle with three or more wheels propelled exclusively by human power.   (Amend Ord 10-007, 1/12/10)

"**Permit**" shall mean a driver's permit issued pursuant to Article IV.

"**Person**" shall include an individual, firm, corporation, association, partnership, joint venture, or society.

"**Primary Propulsion Engine**" shall mean a gasoline or diesel-fueled internal combustion engine that: (a) is attached to a motor vehicle; and (b) provides the power to propel the motor vehicle into motion and maintain motion.   (Amend Ord 08-076, 9/16/08)

"**Shuttle Service**" shall mean a van-type motor vehicle that has a manufacturer's rated seating capacity of not less than seven (7) passengers and not more than fifteen (15) passengers including the driver designed to transport passengers, on a scheduled fare basis, with by which passengers are picked up and transported from their place of residence to their destination and returned on a personalized "door-to-door" basis.   (Amend Ord 07-042, 6/5/07)

"**Special Service Transportation**" shall mean a service which includes tour vehicle service, charter service, limousine service, bus service, shuttle service, NEV-for-hire, pedicab, and horse-drawn carriage service as defined herein, using vehicles carrying passengers for hire, but not including a taxicab or jitney.   (Amend Ord 10-007, 1/12/10)

"**Specialty Limousine**" shall mean a stretch or executive service limousine that has been modified to accommodate a special feature, such as a hot tub, or enhanced by altering its appearance to provide a distinctive design, such as with a kit to replicate a classic vehicle.   (Amend Ord 07-042, 6/5/07)

TRANSPORTATION
1.02

**"Stretch Limousine"** shall mean a luxury sedan with a wheelbase that has been extended not less than twelve (12) inches from its original length and has a rated seating capacity of fifteen (15) passengers or less, including the driver. (Amend Ord 07-042, 6/5/07)

**"Taxicab"** shall mean a motor vehicle with a minimum of four doors (excluding vans) and a seating capacity of not less than five (5) or no more that eight (8), including the driver, used to transport persons for hire that uses a taximeter to compute a fare and typically operates on irregular routes, irregular schedules, and a call-and-demand basis, but not including special service transportation vehicle or a jitney. (Amend Ord 99-108, 9/7/99)

**"Taxicab Stand"** shall mean a public place alongside the curb or curbline or a street which has been designated by the Director of Public Works as reserved exclusively for the use of taxicabs in accordance with the provisions of this article and the traffic ordinances of the City. (Amend Ord 07-042, 6/5/07)

**"Taximeter"** shall mean a meter, instrument or device attached to a taxicab which measures mechanically or electronically the distance driven and the waiting time upon which the fare is based.

**"Tour Vehicle Service"** shall mean a service which will furnish vehicles for hire to carry passengers to any established place or places of interest within the City.

**"Veterinarian"** shall mean a person licensed by the State of Texas to practice veterinary medicine and who specializes in equine or large animal medicine. (Amend Ord 07-042, 6/5/07)

ARTICLE I - 6
(Amend Ord 07-042, 6/5/07)

## ARTICLE II

## OPERATING AUTHORITY

### Section 2.01    Certificate Required; Permits Required

No person shall operate any taxicab service or special service transportation vehicle service (which vehicles and services are not within the exclusive jurisdiction of the Interstate Commerce Commission) within the jurisdiction of the City without first having obtained a certificate, pursuant to Article III of this Chapter, declaring that public convenience and necessity require such an operation; except that no person shall operate a pedicab or NEV-for-hire within the jurisdiction of the City without first having obtained a certificate of operation pursuant to Article X of this Chapter; and no person shall drive such taxicab or special service transportation vehicle within the jurisdiction of the City without first having obtained a driver's permit from the Administrator, pursuant to Article IV of this Chapter, or pursuant to Article X of this Chapter in the case of pedicab drivers and NEV-for-hire drivers, provided, however, that vehicles of the types named in Section 2.02 shall not be required to obtain such certificates or permits.   No vehicle or other mode of transportation may be operated in the City of Arlington for hire unless specifically authorized by and defined in this ordinance, or unless it is exempt from the terms of this Chapter as set forth in Section 2.02.   (Amend Ord 10-007, 1/12/10)

### Section 2.02    Exceptions

The following vehicles shall be in the category of exempt transportation and shall be exempt from the terms of this Chapter:

A.    Vehicles that are leased or rented without drivers.

B.    Ambulances, medical service vehicles and special vehicles used exclusively in connection with funerals. (Amend 99-108, 9/7/99)

C.    Vehicles operated by the City or its agents.

D.    Taxicabs licensed by another governmental entity transporting a passenger from a point outside the City to a

destination inside the City, if the taxicab leaves the City without receiving a passenger inside the City.

E.   Special service transportation vehicles licensed by another governmental agency transporting a passenger or passengers from a point outside the City to destinations inside the City, if the vehicle leaves the City with no passengers or without receiving additional passengers.

F.   Special service transportation vehicles permitted by another governmental agency transporting a passenger or passengers from a point inside the City to destinations inside or outside the City, provided:

   1.   The service is chartered by a nonprofit organization;

   2.   The period of service will not exceed twelve (12) months; and

   3.   Any pick-up/drop-off points and any necessary routing on City streets must be reviewed and approved by the City Council.

Providers of such service shall submit an application to operate special service transportation. The application will be reviewed by the Administrator who may issue a temporary operational permit based upon the following:

   (a)   The proposed service does not interfere with normal traffic operations on City streets; and

   (b)   The proposed service does not utilize residential streets in a manner contrary to the public health, safety and welfare.

Any aggrieved party may appeal the decision of the Administrator and contest the issuance or denial of such permit.

G.   Vehicles operated by public transportation authorities. (Amend Ord 92-103, 10/6/92)

ARTICLE II - 2
(Amend Ord 92-103, 10/6/92)

## Section 2.03   Form and Contents of Certificate

Every certificate issued hereunder shall be signed by the Administrator or his designee and shall contain the name and address of the applicant, a declaration that the public convenience and necessity require the services of the applicant and the terms and limiting conditions of the certificate. There shall also be provided in the certificate a space for the applicant to sign agreeing to the terms thereof. (Amend 99-108, 9/7/99)

## Section 2.04   Transferability

No certificate shall be transferable without the consent of the Administrator. A purported transfer without such consent shall cause an immediate suspension of such certificate. The term "transfer" shall include a transfer of a majority interest in the company to which a certificate has been issued or a change adding or deleting a person or persons occupying positions classified in the application for certificate as owner or applicant, or as a partner in a partnership applicant or as a stockholder holding fifty-one percent (51%) of the shares of stock in a corporation applicant. (Amend 99-108, 9/7/99)

## Section 2.05   Duration of Certificate or Permit

A.   Effective August 1, 2007, a certificate issued pursuant to this Chapter is valid for three (3) years from date of issuance, unless suspended or revoked for cause under the authority of this Chapter or a different term is specifically provided under this Chapter. Any certificate issued prior to August 1, 2007 shall be valid through July 31, 2010, unless suspended or revoked for cause under the authority of this Chapter.

B.   A permit issued pursuant to this Chapter is valid for two (2) years from date of issuance, unless suspended or revoked for cause under the authority of this Chapter or a different term is specifically provided under this Chapter. (Amend Ord 10-007, 1/12/10)

## Section 2.06   Renewal of Certificate or Permit

A.   Renewal of a certificate or permit may be applied for by submission to the Administrator of an application on the form prescribed by the Administrator and payment of

TRANSPORTATION
2.06

a nonrefundable and nontransferable application fee at least thirty (30) days before the expiration of the certificate or permit. The application fee shall be in an amount as set by City Council resolution.

B. Applications for renewal of a certificate shall be reviewed by the Administrator without a public hearing to determine, after investigation, whether the following conditions are met:

    1. The certificate holder has performed satisfactorily under the terms of the certificate;

    2. The service provided continues to meet the public necessity and convenience as defined by this ordinance; and

    3. The certificate holder continues to comply with all requirements of this Chapter.

C. 1. If all conditions of this section are met, the Administrator may renew the certificate.

    2. If all conditions of this section are not met, the Administrator shall make a written report to City Council of the results of his investigation and the same procedure for initial applications shall be followed unless the Administrator rejects an application on the basis of applicant's criminal history in accordance with Article VII in this Chapter.

D. Applications for renewal of a permit may be renewed upon the Administrator's review of the renewal application unless the Administrator notifies the renewal applicant in writing of his intention to deny the renewal due to the applicant's failure to comply with provisions of this Chapter or other applicable law. The Administrator's notice shall be provided in accordance with the notice provision in Article VII of this Chapter. An applicant may appeal an intent to deny provided that the appeal is in accordance with the appeal provisions in Article VII of this Chapter. (Amend Ord 10-007, 1/12/10)

ARTICLE II - 4
(Amend Ord 10-007, 1/12/10)

## ARTICLE III

### CERTIFICATE PROCEDURE

**Section 3.01    Application**

Application for a certificate for the operation of taxicabs, special service transportation vehicles and jitneys shall be in writing, signed and sworn to by the applicant and shall be filed with the Administrator.    The application shall be on a form provided by the Administrator and shall contain at least the following:

A.    The name, date of birth and address of the applicant; if a partnership, the name, date of birth and address of each partner; if a corporation, its name, date and place of incorporation, the address of its principal place of business, the names and addresses of all officers and directors and a certified copy of its permit to do business in Texas; the trade name under which the applicant does or proposes to do business.

B.    The address of each place of business from which the applicant proposes to operate.

C.    A description of each vehicle the applicant proposes to use in providing vehicle for hire service, including, but not limited to, each vehicle's year, make, model, type, seating capacity, and condition of each vehicle for hire proposed to be operated.

D.    A list of all convictions of the applicant for violations of any and all federal, state or municipal laws and proof that the applicant is in compliance with Article VII regarding the eligibility of persons with criminal backgrounds.    If the applicant is a corporation or other business entity, a list of all convictions of all officers, members and directors of the corporation or entity and persons with an economic interest in the operating authority for violations of any federal, state or municipal laws.

E.    A statement regarding whether or not the applicant or any partner, officer or director in the organization of the applicant has any suit filed against him or judgment based on an unpaid debt or negligent operation of a motor vehicle.    If any, list all such suits and judgments.    Additionally, applicant must provide a list

of any unpaid judgments of record against applicant, which list shall include the name and address of the owner of the judgment and amount of the judgment; and, if the applicant is a corporation, a list of any unpaid judgments against any of the officers and directors, which list shall include the name and address of the owner of the judgment and the amount of the judgment.

F.   An actual or pro forma income statement and balance sheet showing the assets, liabilities, and equity of the business.

G.   The nature and character of the service that the applicant proposes to render, the facts showing the demand for such service, the experience that the applicant has had in rendering such service and the period of time that he has rendered such service. This shall include but not be limited to the communication system, frequencies, dispatch staffing and procedures, vehicle maintenance, driver training, safety program and procedures for handling customer complaints or lost items.

H.   The proposed places of loading or unloading passengers, routes and schedules to be followed, fares, rates and charges, operating procedures and term of certificate.

I.   A list of all drivers who will operate by authority of applicant's certificate, to be updated as new drivers are added or removed, and a certification signed by applicant that after making a careful investigation, he believes that the driver has a current Texas driver's license, is physically fit to chauffeur passengers, is able to sufficiently communicate in the English language as necessary to chauffer passengers, is not addicted to drugs or intoxicating liquors so as to render him unfit to perform the duties of a driver and is a person of good moral character.

J.   The applicant shall also sign and attach a statement that he has and shall abide by the terms, conditions and requirements of the Immigration Reform and Control Act of 1986 and amendments thereto.  Failure to comply with such Act shall be grounds for revocation of any certificate granted pursuant to this Chapter.

K.   A description of the proposed insignia and color scheme for the taxicabs, special service transportation

ARTICLE III-2
(Amend Ord 07-042, 6/5/07)

vehicles and jitneys and description of any distinctive item of apparel to be worn by the service's drivers.

L.   A letter from a duly authorized agent of applicant's insurance carrier stating that the insurance required hereunder is available to applicant, such coverage is or will be provided, and that a certificate of insurance shall be provided prior to the issuance by the Administrator of the certificate to operate hereunder.

M.   A full and complete statement of the experience, if any, the applicant has had in rendering such services in the City or elsewhere; and, if the applicant is a corporation or other business entity, a full and complete statement of the experience the officers, members and directors have had in rendering such service in the City or elsewhere.  The statement must list all previous denials, revocations or forfeitures of permits, franchises or other operating authority for such services, the dates, locations and reasons.

N.   Any other information which in the opinion of the Administrator is necessary to determine the financial ability and responsibility of the applicant and the ability to provide for the City the services for which the certificate is to be issued.  (Amend Ord 07-042, 6/5/07)

**Section 3.02    Fee**

Such application for a certificate for the operation of a taxicab or special service transportation shall be verified under oath and shall be filed in triplicate and accompanied by a nonrefundable and nontransferable Application Fee as set by resolution to cover administrative costs and the costs of publication of notices as required in this Chapter.  (Amend Ord 07-042, 6/5/07)

**Section 3.03    Investigation of Applicants**

Upon receipt by the Administrator of an application for a certificate, the Administrator shall make or cause to be made an investigation of the facts indicating public necessity and convenience for such service with consideration given to the following factors which may include but are not limited to:

ARTICLE III-3
(Amend Ord 07-042, 6/5/07)

1.   character and reputation of the applicant and his
     ability to perform the services of a certificate
     holder;

2.   the financial responsibility of the applicant to
     respond in damages and/or to pay claims for personal
     injury, death and property damage claims arising from
     his operation;

3.   operational information demonstrating applicant's
     record in providing satisfactory passenger service;

4.   need for the proposed number of vehicles to ensure
     adequate availability of taxicabs for dispatch service;

5.   dispatch logs or other records indicating customer wait
     times and on-time performance for customers making
     advance reservations for geographic areas of the City;

6.   trip volume, trip volumes for Arlington authorized
     taxicabs, and trip volumes for Arlington pick-ups, with
     such records being subject to independent review;

7.   geographic distribution of trips in the City, and for
     companies not currently authorized in Arlington, the
     geographic distribution of trips in the region;

8.   applicant's ability to demonstrate need through a
     proposal indicating potential effectiveness;

9.   applicant's or holder's process for compiling or
     maintaining a log of performance, events, trips, and
     dispatches;

10.  whether applicant is legally authorized to work in the
     United States and his record of employment for the past
     five (5) years;

11.  fingerprints of each applicant in a manner specified by
     the Administrator within five (5) days following the
     application filing deadline;

12.  whether application was filed in completed form with no
     material inaccuracies or omissions, provided that if
     the application as originally filed was substantially
     complete and in proper form, the Administrator shall
     allow an applicant a reasonable opportunity to correct
     any minor inaccuracies or omissions if that can be

accomplished without delaying the processing of applications;

13. ability to sufficiently communicate in the English language as necessary to the operation of a taxicab, special service transportation and jitney;

14. evidence of payment of ad valorem taxes and City utilities, if the property to be used in connection with the operation of the proposed service is within the territorial limits of the City;

15. and such investigation of other pertinent facts which the Council shall deem relevant in determining the fitness of the applicant to become a certificate holder hereunder.

The Administrator may reject an application on the basis of applicant's criminal history in accordance with Article VII in this Chapter. If an application is not rejected and if the application is otherwise in compliance with this Chapter, the Administrator shall make a written report to the City Council of the results of his investigation. (Amend Ord 07-042, 6/5/07)

## Section 3.04   Public Hearing

Upon receipt of such written report, the Council may schedule a public hearing on the application. Notice of such public hearing by the Council shall be given to the applicant and all certificate holders at least ten (10) days prior to such public hearing. Such notice shall also be published once in the official newspaper of the City at least ten (10) days prior to the date set for such hearing. The purpose of such public hearing shall be to determine, among other things, the following:

A. Whether or not the public convenience and necessity require the operation of the service applied for.

B. Whether or not the applicant is a fit and proper person to conduct such business, including the fitness of the officers and stockholders of any corporation making such application;

C. Whether the applicant will be able to afford public service of such permanence and quality as to best serve the public interest;

ARTICLE III-5
(Amend Ord 07-042, 6/5/07)

D.  The experience that the applicant has had in rendering
    such service;

E.  The past experience of the applicant in satisfying
    judgments, if any;

F.  The financial ability of the applicant to satisfy any
    judgment that might be rendered;

G.  The character and condition of the vehicles the appli-
    cant proposes to use;

H.  The qualifications of the drivers which the certificate
    holder intends to employ to drive the vehicles author-
    ized by requested certificate;

I.  The interrelationship of the requested certificate and
    the outstanding certificates with reference to the
    places of loading or unloading passengers, routes and
    schedules to be followed, fares, notes and charges,
    operating procedures, and term of certificates.  (Amend
    Ord 99-108, 9/7/99)

## Section 3.05   Action on Application

    In the event the City Council finds that the public
convenience and necessity require the issuance of such a
certificate, and that the applicant meets the required
qualifications to give proper and adequate service to the
best interest of the inhabitants of the City, the Council
shall by ordinance grant a certificate of public convenience
and necessity to such applicant, subject to certain terms
and conditions.  Such terms may cover any of the following
considerations and such other provisions appropriate to the
service to be rendered under the certificate; number of
vehicles authorized, description of vehicles to be operated,
including their color scheme, number of passengers that may
be carried in each vehicle, the customers to be served,
place of loading or unloading passengers, routes and
schedules to be followed, fares, rates and charges,
operating procedures, and term of the certificate.

## Section 3.06   Issuance of Certificate

    The Administrator shall issue the certificate upon
receipt of the initial street-use fees heretofore

prescribed, a copy of the certificate of insurance
hereinafter prescribed, and upon obtaining the signature of
the applicant to the original certificate. The original
copy shall be on file with the Administrator and a copy
shall be furnished to the certificate holder. (Amend Ord
99-108, 9/7/99)

## Section 3.07    Action on Amendments

Any provision or condition of a certificate can be
amended by the Administrator except to alter rates for
taxicab service, provided that all certificate holders and
the members of the City Council have been furnished with ten
(10) days notice of such amendment and the Administrator has
not received a written notice of appeal to the City Council.
When an amendment is approved in this manner, the
Administrator is authorized to sign and file such amendment
with the certificate. If a notice of appeal is received by
the Administrator or the City Council has requested that the
proposed amendment be placed on its agenda, the same hearing
procedure for initial applications shall be followed.
(Amend Ord 07-042, 6/5/07)

## Section 3.08    Street Use Fees

A.  The certificate holder shall pay to the Administrator a
    street use fee as set by resolution for total number of
    vehicles authorized under the terms of the certificate
    pro-rated per month.

B.  Except that shuttle service certificate holders shall,
    prior to January 1, each year, pay the Administrator a
    street use fee annually according to the maximum number
    of permitted shuttle vehicles the certificate holder
    estimates will be operated within the corporate limits
    of the City of Arlington per day throughout the
    duration of the year, said estimate being subject to
    verification by the Administrator as hereinafter
    described in Section 5.08 of this Chapter.

C.  If the Administrator determines that, on ten (10) or
    more days within a six-month period, more shuttle
    service vehicles have been operated than were estimated
    by a certificate holder in accordance with Section
    3.08(A), additional street use fees per vehicle for the
    maximum number of vehicles operated within that period
    over the number estimated shall be due from the

certificate holder no later than twenty-four (24) hours after receipt of written notice of the discrepancy. Such notice shall be sent to the certificate holder by certified mail, or shall be personally delivered to the certificate holder. Failure to comply with this Section shall constitute grounds for the suspension or revocation of the Certificate of Public Convenience and Necessity for the affected shuttle service transportation operation. (Amend Ord 99-108, 9/7/99)

## Section 3.09   Holder's Records and Reports

A.   Each holder shall maintain at a single location such categories of its business records of its service as the Administrator may require.

B.   The method used in maintaining the records shall be approved by the Administrator, and the Administrator may require maintenance of certain records which the Administrator determines necessary for monitoring the activities, operations, service or safety record of a holder.

C.   A holder shall maintain a record of the driver of each regulated service vehicle operated under the holder's operating authority.   The records shall include the name of each driver who has operated the regulated service vehicle and the dates and times of each driver's operation of the vehicle.

D.   A holder shall maintain a log of computerized records of performance indicating trip requests, including the date and time of the trip request, pickup location, time that the call was dispatched to a cab, cab number of the driver accepting the call and pickup time. These trip records should be subject to outside review as may be needed to verify the accuracy of the logs.

E.   A holder shall make such records available for inspection by the Administrator or provide the Administrator with information contained in those records upon request.   (Amend Ord 07-042, 6/5/07)

## ARTICLE IV

### DRIVERS AND CERTIFICATE HOLDERS
(Amend Ord 07-042, 6/5/07)

### Section 4.01  Driver's Permit Required

Every person desiring to drive a taxicab, jitney or special service transportation vehicle in the City shall apply for and obtain a permit from the Administrator. It shall be unlawful for a certificate holder to permit any person to drive a taxicab, jitney or special service transportation vehicle under authority of such certificate unless such driver shall have a permit in good standing duly issued by the Administrator. (Amend Ord 98-63, 5/19/98)

### Section 4.02  Application for Permit

A. To obtain a City taxicab, jitney, or special service transportation vehicle driver's permit, each applicant shall make a sworn written application to the Administrator and submit the required application fee in an amount approved by resolution of the Arlington City Council. This fee is not refundable or transferable. (Amend Ord 03-040, 4/1/03)

B. The application shall be made upon the form provided and shall contain the following information:

1. The name, date of birth and address of applicant.

2. The name of the business or person by whom the applicant expects to be or is employed.

3. The applicant's current place of residence and the applicant's place of residence for the past five (5) years.

4. A full description of the applicant, including his height, weight, color of eyes and hair, and the applicant's photograph.

5. The applicant's experience driving a taxicab, special service transportation vehicle, jitney or in a related type of work.

TRANSPORTATION
4.02

6.   A medical report signed and dated not more than
     ninety (90) days prior to date of application,
     from a local physician, which certificate shall
     certify that applicant was examined by the
     physician and that the examination reveals that
     the applicant does not suffer from any physical
     impairment, physical or mental disease, or
     disability which would impair his ability to
     operate a taxicab, special service transportation
     vehicle or jitney in a safe manner upon the
     streets of the city; such medical report shall
     specifically state the condition of hearing and
     eyesight of the applicant.   A medical report
     submitted not more than (90) days prior to date of
     application to the City, which has been submitted
     to and accepted by either the City of Fort Worth,
     the City of Dallas or the Dallas/Fort Worth
     International Airport within this same time
     period, complies with this section.  The applicant
     shall provide the City said medical report for
     purposes of establishing compliance with this
     Chapter.

7.   Proof that applicant holds a valid Texas
     Department of Public Safety Driver's License
     classified to permit the applicant to operate the
     regulated vehicle for which the person is applying
     for permission to operate;

8.   Proof of satisfactory completion of a certified
     defensive driving course within the last two (2)
     years.

9.   A list of all traffic offenses with which
     applicant has been charged within the last five
     (5) years:   offense, approximate date, and
     disposition.

10.  Proof that applicant is legally authorized to work
     in the United States and his record of employment
     for the past five years.

11.  Any charges or convictions including deferred
     adjudications, which would be considered a
     conviction, from the list in Article VII in this
     Chapter.

12.  A list of applicant's previous taxicab, special
     service transportation and jitney driver permits.

ARTICLE IV - 2
(Amend Ord 07-042, 6/5/07)

13. A list and detailed explanation of any denial, suspension, and revocation of any taxicab, special service transportation and jitney driver permits issued to applicant.

14. A list and detailed explanation of any revocation of a private passenger vehicle operator's license or a commercial vehicle driver's license or a chauffeur's license issued to applicant.

15. The certificate holder who employs or intends to employ the applicant.

16. Signature of the certificate holder who employs or intends to employ applicant, which will represent the holder's recommendation that the applicant be issued a driver's permit. (Amend Ord 07-042, 6/5/07)

C. Failure to obtain a driver's permit within ninety (90) days of application is cause for forfeiture of application fee. (Amend Ord 96-137, 10/15/96)

## Section 4.03   Temporary Driver's Permit Issued

The Administrator may issue a temporary driver's permit if he or she determines:

1. That the number of drivers is inadequate to meet the City's need for service, in which case the Administrator may issue the number necessary to meet the need.

2. A temporary driver's permit expires on the date shown on the permit, not to exceed thirty (30) days from the date of issuance, or upon the applicant's being denied a permit, whichever occurs first.

3. The Administrator may not issue a temporary driver's permit to a person who has been previously denied a driver's permit. (Amend Ord 07-042, 6/5/07)

## Section 4.04   Permit Issued

A permit shall be issued to an applicant that meets all of the following criteria:

1.  Who has truthfully and correctly submitted the required sworn application.

2.  Whose medical report reveals no physical impairment, physical or mental disease, or disability which would impair his ability to safely operate a vehicle for hire.

3.  Who is at least 18 years of age and licensed by the Texas Department of Public Safety.

4.  Who has successfully completed a certified defensive driving course within the last 2 years.

5.  Whose criminal history does not require denial of a permit pursuant to Section 7.01 of this Chapter.

6.  Who has paid a nonrefundable Driver's Permit Fee as set by resolution.

7.  Who has a sworn statement from a certificate holder or their representative authorizing the applicant to drive a vehicle for that certificate holder.

8.  Who has not have been convicted of more than two moving traffic violations or involved in more than two motor vehicle accidents in which it could be reasonably determined that the driver was at fault, within any twelve month period during the preceding thirty-six (36) months.

9.  Who is able to sufficiently read and speak the English language as necessary to chauffer passengers.

10.  Who is able to maintain a physical and cognitive condition necessary to exercise ordinary and reasonable control over a vehicle for hire or that is not likely to otherwise endanger the public health or safety.

11.  Who, as a qualification for a driver's permit, is able to pass an examination given by the Administrator, or his or her designee, that will test knowledge of traffic laws, duties under this Chapter, the road networks and geography of the City and surrounding cities, airports, points of interest, and counties in the service area, and other related topics. An applicant who has successfully passed a driver examination, not more than one-hundred eighty (180) days prior to date of application to Arlington, which

ARTICLE IV - 4
(Amend Ord 07-042, 6/5/07)

has been provided by either the City of Fort Worth, the City of Dallas or the Dallas/Fort Worth International Airport within this time period, complies with this Chapter. The Administrator shall receive on City of Fort Worth, City of Dallas or DFW Airport letterhead said information indicating the named applicant having successfully passed the driver examination for purposes of establishing compliance with this Chapter.

12. Who has been screened for the presence of drugs and alcohol within thirty (30) days from the date of the application. Applicants and drivers may also be subject to the City drug and alcohol screening based on probable cause. A report submitted indicating a screening for the presence of alcohol and drugs, within thirty (30) days from the date of application to the City, which has also been submitted to and accepted by either the City of Fort Worth, the City of Dallas or the Dallas/Fort Worth International Airport within this same time period, complies with this Chapter. The applicant shall provide the City said report for purposes of establishing compliance with this Chapter.

13. Who, as qualification for a driver permit, shall submit himself to be fingerprinted at applicant's expense in accordance with established guidelines determined by the Administrator. (Amend Ord 07-042, 6/5/07)

**Section 4.05   Driver's Permit Identification Cards**

After the applicant has complied with all requirements of this article and a permit has been issued, he shall receive an identification card which shall contain a photograph of the applicant, identification number, and physical description of driver. The driver's permit identification card shall be posted in any vehicle driven by the driver in such a manner as to be visible to all passengers. (Amend Ord 99-108, 9/7/99)

**Section 4.06   Denial of Driver's Permit for Reasons Other Than Criminal Background**

A. The Administrator may deny a driver's permit for the following:

1. Applicant fails to meet the criteria established in this Chapter;

TRANSPORTATION
4.06

2.  Applicant refuses to cooperate with any investigation conducted by the Administrator;

3.  Applicant makes a false statement of a material fact in the person's application for a driver permit;

4.  Applicant refuses to submit to or does not pass a medical or written examination required by the Administrator; or

5.  Applicant has had a driver permit revoked within a two year period prior to the date of application.

B.  The Administrator's notice of denial shall be provided in accordance with the notice provision in Article VII of this Chapter.

C.  An applicant has the right to appeal the denial provided that the appeal is in accordance with the appeal provisions in Article VII of this Chapter. (Amend Ord 07-042, 6/5/07)

## Section 4.07   Driver Registration Files

A registration file shall be kept and maintained on each person to whom a driver's permit has been issued. The file shall contain all information furnished by the applicant under this Chapter and all other facts and data supplied by investigation, including without limitation, personal history, character, experience, qualifications and such other matters considered consistent with and pertinent to the driver's fitness to operate a vehicle for hire within the City in a manner consistent with the welfare of the citizens.

The file of any driver may be inspected at the office of the Administrator by such driver at all reasonable times and may be examined by any holder upon showing that the driver has applied to the certificate holder for employment as a driver.  (Amend Ord 99-108, 9/7/99)

## Section 4.08   Certificate Holders Duties Regarding the Appearance of Drivers

A.  It shall be the responsibility of every person with a certificate to require and insure that the drivers

ARTICLE IV - 6
(Amend Ord 07-042, 6/5/07)

operating under the certificate are neat and clean in appearance while on duty.

B. A certificate holder shall, during the term of the certificate maintain and enforce the requirements established pursuant to Section 4.09 below. Should the Administrator determine that a certificate holder has failed to maintain and enforce the standards established in such section, said official shall notify the certificate holder in writing of the deficiency and the certificate holder shall rectify the condition within a period of time specified in the notice.

C. It is an offense to fail to maintain and enforce the standards established in Section 4.09 below and constitutes a violation of this ordinance. (Amend Ord 07-042, 6/5/07)

**Section 4.09   Appearance of Drivers**

A. It shall be the duty of every driver to be hygienically clean, well-groomed, neat and suitably dressed in compliance with all applicable requirements of this section at all times while a taxicab, special service transportation vehicle, or jitney is in his or her custody.

B. Male drivers shall be clean-shaven, and hair shall be neatly trimmed. If a beard or moustache is worn, it shall be well groomed and neatly trimmed at all times in order not to present a ragged appearance.

C. Subject to the limitations of Subsection (D) below, the term "suitably dressed" shall be interpreted to mean the driver shall wear trousers, slacks, or jeans, provided that they do not have holes and they do not have frayed hems; skirt or shorts provided that it is no more than two (2) inches above the knee; a shirt, with or without a tie; shoes; and if desired, appropriate outer garments.

D. Clothing that is not considered appropriate and is not permitted includes:  t-shirts, underwear, tank tops, body shirts, swim wear, jogging suits, or similar types of attire when worn as an outer garment.

E. It is an offense to fail to maintain and enforce the standards established in this Section and constitutes a

operating under the certificate are neat and clean in appearance while on duty.

B.  A certificate holder shall, during the term of the certificate maintain and enforce the requirements established pursuant to Section 4.09 below.  Should the Administrator determine that a certificate holder has failed to maintain and enforce the standards established in such section, said official shall notify the certificate holder in writing of the deficiency and the certificate holder shall rectify the condition within a period of time specified in the notice.

C.  It is an offense to fail to maintain and enforce the standards established in Section 4.09 below and constitutes a violation of this ordinance.  (Amend Ord 07-042, 6/5/07)

## Section 4.09   Appearance of Drivers

A.  It shall be the duty of every driver to be hygienically clean, well-groomed, neat and suitably dressed in compliance with all applicable requirements of this section at all times while a taxicab, special service transportation vehicle, or jitney is in his or her custody.

B.  Male drivers shall be clean-shaven, and hair shall be neatly trimmed.  If a beard or moustache is worn, it shall be well groomed and neatly trimmed at all times in order not to present a ragged appearance.

C.  Subject to the limitations of Subsection (D) below, the term "suitably dressed" shall be interpreted to mean the driver shall wear trousers, slacks, or jeans, provided that they do not have holes and they do not have frayed hems; skirt or shorts provided that it is no more than two (2) inches above the knee; a shirt, with or without a tie; shoes; and if desired, appropriate outer garments.

D.  Clothing that is not considered appropriate and is not permitted includes:  t-shirts, underwear, tank tops, body shirts, swim wear, jogging suits, or similar types of attire when worn as an outer garment.

E.  It is an offense to fail to maintain and enforce the standards established in this Section and constitutes a

> violation of this ordinance.  (Amend Ord 07-042, 6/5/07)

**Section 4.10**  **Conduct of Drivers**

While on duty a driver shall:

A.  Conduct himself in a reasonable, prudent and courteous manner;

B.  Not respond to a radio dispatch call assigned to another driver;

C.  Not monitor the radio frequency of a taxicab company other than his own nor respond to a call for service dispatched by another company;

D.  Not possess a radio equipped to receive the frequency of a taxicab, other than his own;

E.  Comply with lawful orders of the Administrator issued in the performance of his duties;

F.  Not file a false report or make a false statement to the Administrator;

G.  Not allow another person to drive or operate a regulated vehicle assigned to the driver unless such a person has authorization from the Administrator to operate under the holder's operating authority which the vehicle is regulated and the person has written authority from the holder; and

H.  Not refuse a trip from any location within the City unless the driver is in reasonable fear of his or her personal safety.  (Amend Ord 07-042, 6/5/07)

**Section 4.11**  **Driver and Certificate Holders**

A.  A certificate holder shall:

1.  indemnify, defend and hold the City harmless for claims or causes of action against the City arising from the conduct of the driver in the operation of a vehicle for hire;

2. provide that the driver is insured under the holder's fleet liability insurance policy; and

3. shall be responsible for training all drivers employed by or contracting with the holder in:

   a. driver permitting procedures;

   b. vehicle requirements and permitting procedures;

   c. Rules and Regulations;

   d. driver disciplinary guidelines and appeal procedures;

   e. dress standards;

   f. daily inspection standards;

   g. service area knowledge standards;

   h. customer service standards;

   i. driver conduct standards;

   j. lost article reporting procedures;

   k. driver safety policy and procedures;

   l. maintaining a driver daily manifest; and

   m. procedures established by the Administrator regarding the operation of a regulated vehicle in the City.

B. The failure to comply shall be a material breach of the operating authority which could result in suspension or revocation of the certificate holder's operating authority. (Amend Ord 07-042, 6/5/07)

## Section 4.12   Driver's Daily Manifest

A. Each holder shall provide its drivers with forms for maintaining a daily manifest. The form must include appropriate spaces for recording:

1.   taxicab or vehicle number, driver's name, date, hours of operation, meter number, total miles, paid miles, units, trips, and extras;

2.   time, place, origin, and destination of each trip;

3.   number of passengers and amount of fare and other charges; and

4.   other information required by the Administrator to aid in the discharge of his duties.

B.   Each driver shall complete a manifest on a separate form for each tour of duty.  The driver shall provide the information required by the form and shall record the information with regard to trips at the end of each trip.  The driver shall return completed manifest forms to the holder once a week unless the Administrator requires that the manifest forms be turned in more frequently.  (Amend Ord 07-042, 6/5/07)

## ARTICLE V

### STANDARDS FOR OPERATION

### Section 5.01   Central Place of Business

Each certificate holder shall maintain a central place of business at a location approved by the Administrator.

### Section 5.02   Vehicles to be Kept on Private Premises

Except when carrying passengers, or going to pickup passengers, or going to a garage or other place where automotive repairs are made, all vehicles shall be kept off the streets of the City and upon premises owned by or leased to, and under the supervision and control of, the holder of the certificate; provided, that taxicabs may await dispatch calls on any non-residential property in the City with the consent of the owner thereof, and further provided that if a person is an owner and certificate holder of a taxicab such person may keep their taxicabs at their residence.

### Section 5.03   Liability Insurance Required

A.  Each certificate holder shall purchase and keep in full force and effect automobile liability insurance written by an insurance company that is approved by the State Board of Insurance as a subscriber to the State Guarantee Fund under the Property and Casualty Insurance Guarantee Act; and does not directly or indirectly hold ownership or operational interest in the holder's company.

B.  The insurance must be issued in the standard form approved by the Texas Department of Insurance, and all provisions of the policy must be acceptable to the City.  The insured provisions of the policy must provide coverage for any loss or damage that may arise to any person or property by reason of the operation of a taxicab or special service transportation vehicle authorized herein.

C.  The automobile liability insurance must provide combined single limits of liability for bodily injury and property damage of not less than $500,000 for each occurrence, or the equivalent for each motor vehicle

used by the holder.  Aggregate limits of liability are prohibited.

D.   Insurance required under this section must include:

1.   a cancellation provision which the insurance company is required to notify the administrator in writing not fewer than (thirty) 30 days before canceling or making change to the insurance policy;

2.   a provision to cover all vehicles, whether owned or not owned by the holder, operated under the holder's operating authority;

3.   a provision requiring the insurance company to pay every claim on a first-dollar basis;

4.   an endorsement that names the City of Arlington and its officers and employees as an additional primary insured;

5.   no policy exclusions that would change or limit coverage for passengers entering or exiting the vehicle; and

6.   all vehicles permitted to operate under the operating authority are listed as scheduled vehicles covered under the policy.

E.   Within sixty (60) days of issuance, a certified copy of the automobile insurance policy which meets the requirements of this chapter must be provided by the certificate holder for review by the Administrator. (Amend Ord 07-042, 6/5/07)

**Section 5.04   <u>Nonliability of City for Pecuniary Responsibility</u>**

Neither the City nor any officer thereof shall be held liable for the pecuniary responsibility or solvency of any certificate holder or insurer or in any manner become liable on account of any act or omission relating to the operation of a taxicab or special services vehicle.  (Amend Ord 99-108, 9/7/99)

ARTICLE V - 2
(Amend Ord 07-042, 6/5/07)

**Section 5.05**   **Certificate Holder's Duty to Screen Drivers**

It is the duty of every certificate holder to screen its drivers. While it is the intent of the City in its permitting process to provide protection to the public generally by exercise of police power, such exercise shall not relieve a certificate holder from its duty to determine the fitness of its drivers, and no certificate holder shall rely on the City driver's permit to excuse it from said duty. (Amend Ord 99-108, 9/7/99)

**Section 5.06**   **Motor Vehicle Registration**

A.   The certificate holder shall furnish the Administrator at the time of the original application or as new vehicles are purchased or rented, the following information on such motor vehicles: number of vehicles in operation at the time of the application or acquisition of any new motor vehicles, model, size, year, make, design, color scheme, motor identification number, the state license registration number of each vehicle, and passenger capacity. The certificate holder shall further furnish the Administrator with a statement that the motor vehicle is currently licensed and inspected by the State of Texas and its agencies, that it is satisfactory and in safe mechanical condition, that it has the color scheme, and that it is identified and marked as represented in certificate holder's application for public convenience and necessity. Effective, January 1, 1997, Texas Salvage Certificates of Title as defined in Transportation Code Chapter 501 Subchapter E, are prohibited.

B.   Each taxicab or special service transportation vehicle permitted in accordance with Section 5.06(A) shall have affixed to it a City of Arlington Taxicab or Special Service Transportation Vehicle decal issued by the Administrator and affixed upon the vehicle in a location designated by the Administrator. The Administrator shall devise a system for issuing a new City of Arlington Taxicab or Special Service Transportation Vehicle decal to each permitted vehicle. It shall be unlawful to operate a taxicab or special service transportation vehicle upon the streets of Arlington without such decal. Such decals shall not be transferred from one vehicle to another without the Administrator's approval. (Amend Ord 99-108, 9/7/99)

### Section 5.07   Right to Payment of Regular Fare in Advance

Every driver of a taxicab or special service transportation vehicle shall have the right to demand the payment of the regular fare before picking up a passenger and may refuse employment unless so paid; otherwise, no driver of such vehicle shall refuse or neglect to convey any orderly person upon request to any place in the City unless previously engaged or unable to do so. It shall be unlawful for any driver to request payment in advance of a fare in excess of the fare prescribed by the driver's operating authority.

### Section 5.08   City Inspection

A. The Administrator, or his agent, shall have the right to inspect during regular business hours any of the operations, equipment, vehicles or premises used by the certificate holder in conducting the taxicab, jitney or special service transportation operations. The Administrator, or his agent, shall also have the right to obtain from the certificate holder a current audited financial statement, and names and addresses of current officers, owners and managers. The certificate holder shall make available to the Administrator, or his agent, any equipment or vehicle requested by the Administrator pursuant to this Section within twenty-four (24) hours after receipt of written notice to do so if such equipment or vehicle is not located within the corporate limits of the City of Arlington when the Administrator, or his agent, attempts to inspect the same. Such notice shall be sent by certified mail or shall be personally delivered to the certificate holder.

B. No taxicab, special service transportation vehicle, or jitney shall be driven or operated upon the streets of the City unless it has a valid inspection decal issued by the City.

C. If the Administrator determines that inspection of the mechanical condition or safety equipment of a vehicle by a certified mechanic or technician is necessary, the certificate holder, owner, or driver shall pay the cost of the inspection and provide written documentation that the vehicle meets the minimum safety and emission standards adopted by Dallas/Fort Worth International Airport.

ARTICLE V - 4
(Amend Ord 07-042, 6/5/07)

D. The City may visually inspect or cause to have inspected each taxicab, special service transportation vehicle and jitney annually. Inspection may determine safety, condition, age, appearance, equipment, signs and markings. Upon the passage of such inspection, the City may issue an inspection decal for vehicles covered by this Chapter to be displayed on the right side of the front windshield of the vehicle. A taxicab, special service transportation vehicle or jitney that has a current inspection by either the City of Fort Worth, the City of Dallas or the Dallas/Fort Worth International Airport may be issued a City decal without further mechanical inspection.

E. A taxicab, that has a current taximeter decal and has been sealed by either the City of Fort Worth, the City of Dallas or the Dallas/Fort Worth International Airport verifying inspection may be issued a City decal without further taximeter inspection; however, the City has the right to inspect the taximeter in taxicabs within the City at any time.

F. A certificate holder shall pay an inspection fee or re-inspection fee per vehicle inspection as approved by resolution of City Council.

G. Taxicab, special service transportation vehicle or jitney operators, owners and certificate holders shall conduct periodic inspections of taxicabs, special service transportation vehicles and jitneys, but not less than monthly, to ensure compliance of all minimum requirements.

H. Any member of the Arlington Police Department or the Administrator may conduct inspections to ensure compliance with this section.

I. It shall be grounds for suspension or revocation of a driver's permit or a certificate if he or she fails to make a taxicab, special service transportation vehicle or jitney available for inspection.

J. The Administrator may order a regulated vehicle removed from service any time the vehicle fails to meet the minimum standards for appearance, condition, age or equipment.

TRANSPORTATION
5.08

K.   If a taxicab, special service transportation vehicle or jitney is involved in an accident or collision during the term of the operating authority, the certificate holder shall notify the Administrator within five (5) days after the accident or collision. Before operating the vehicle again under the operating authority, a certificate holder shall have the vehicle re-inspected for safety and shall provide the Administrator a sworn affidavit that the vehicle has been restored to its previous condition.

L.   A person commits an offense if the person operates a taxicab, special service transportation vehicle or jitney in the city without obtaining a taxicab decal from the Administrator.

M.   Inspections may include, but not be limited to, the following items: vehicle identification number; taxicab number; date of purchase; foot brakes; emergency brake; head lamps; tail lamps; license plate lights; stool light; dome light; horn; windshield wipers; heating, ventilating, and air conditioning systems; current state inspection sticker; rearview mirror; all glasses; cleanliness; safety; condition of paint; color scheme; medallions; taximeter seals and readings; rate card; signs; fumes; state license plates and registration sticker; speedometer readings; mileage; steering; tires; muffler and tail pipe; accuracy of taximeter; condition of the body of the vehicle and fenders.

N.   Each certificate holder of a taxicab, jitney or special service transportation operation shall make available to the Administrator, or his agent, for viewing and copying, the books, records, logs and receipts relative to operations within the City of Arlington, at any time during normal business hours after four (4) hours notice. Such actions shall not be construed to constitute a waiver of any claim of confidentiality the certificate holder may have.

O.   For purposes of verifying the estimated maximum number of permitted shuttle service vehicles being operated within the corporate limits of the City of Arlington per day, a certificate holder who has elected to pay an annual permit fee amount determined in accordance with Section 3.08(A) shall:

   1.   maintain books, records, logs or receipts relative to operations within the City of Arlington

ARTICLE V - 6
(Amend Ord 07-042, 6/5/07)

indicating all pick-ups, destinations and routes, by vehicle identification number, sufficient to allow the Administrator to verify the number of taxicab and special service transportation vehicles actually being operated within the City of Arlington per day for the immediately preceding twelve (12) month period; and

2.   make a monthly submission to the Administrator of dispatch records clearly indicating, by vehicle identification number, all pick-ups made within the City of Arlington for the preceding calendar month, said monthly submission being due on the 15th day of each month that the certificate is in effect.

P.   Any failure by a certificate holder to maintain adequate records as required by this Section or to comply with the reporting or inspection procedures of this Section shall constitute grounds for the suspension or revocation of the Certificate for the affected taxicab, jitney, or special service transportation operation.   (Amend Ord 07-042, 6/5/07)

## Section 5.09   Condition of Vehicles

A.   It shall be unlawful to cause, suffer or allow to be operated a taxicab, special service transportation vehicle or jitney which is not in compliance with the following minimum standards:

1.   Each taxicab, special service transportation vehicle or jitney shall conform to all state minimum safety standards.

2.   No part of the body of such vehicle shall be missing, bent, dented out of shape, visibly rusted or with scraped paint.

3.   Rips, tears, stains and threadbare portions of floors, seats, and back and arm rests shall be repaired.

4.   Each taxicab shall be equipped with two-way radio communication equipment in proper operating condition capable of transmitting and receiving vocal communication between such taxicab and the dispatching office of the certificate holder.

5. Each taxicab, special service transportation vehicle and jitney shall conform to the description of the insignia and color scheme proposed in the certificate holder's application for a certificate, or as such color scheme and insignia has been amended by written request of the certificate holder approved by the Administrator.

6. No vehicle shall be used as a taxicab or jitney if it is more than five (5) years old, as calculated from the first day of January of the model year of the vehicle, and not equipped to use alternative fuel; or eighty-four (84) months of age for a vehicle equipped to use only alternative fuel, if the equipment was on the vehicle when the vehicle was purchased new or added to the vehicle within thirty (30) days after the vehicle was purchased new. As vehicles in operation become older than this provision, they shall be removed from the fleet. Proof of the Administrator's approval must be carried in such vehicles at all times.

7. Each taxicab must have at least four (4) doors (excluding vans).

8. The passenger compartment of the vehicle is free of litter and debris.

9. The passenger compartment of the vehicle is free of any personal items of the driver or other objects that would restrict the seating comfort of the passengers.

10. The vehicle is free of noxious or offensive odors.

11. The carpet, seating surfaces and head liner have no tears, exposed springs or underparts and are free of any spots or stains that are removable with a reasonable cleaning effort.

12. The exterior of the vehicle is free from debris and dirt, commensurate with ambient weather conditions and free of any paint or body work damage, excepting "door dings," minor scratches, and similar defects that are not significantly visible.

13. The vehicle has no broken windows or windows with cracks, except for cracks in places that do not interfere with driver vision.

14. The vehicle has hubcaps or wheel covers on all four (4) wheels if it was so equipped by the manufacturer.

15. The vehicle has seat belts for each passenger, the number of which is determined by the designed seating capacity; and,

16. The vehicle has an operable heater and air conditioner. (Amend Ord 07-042, 6/5/07)

## Section 5.10  Use of Alcoholic Beverages or Controlled Substances

It shall be unlawful for any taxicab, special service transportation vehicle, or jitney driver to consume or be under the influence of any alcoholic beverages or use any form of controlled substances or dangerous drugs while on duty as a taxicab driver.  (Amend Ord 07-042, 6/5/07)

## Section 5.11  Notification of Change of Address of Drivers

Every person operating any taxicab, special service transportation vehicle or jitney shall keep the Administrator informed by written notice of any change of address of such driver.  (Amend Ord 07-042, 6/5/07)

## Section 5.12  Most Direct Route to be Used

Any driver of a taxicab employed to carry passengers to a definite point shall take the most direct route possible that will carry the passengers safely and expeditiously to their destination.

## Section 5.13  Delivery of Lost Articles

A. All drivers of taxicabs, special service transportation vehicles and jitneys shall promptly deliver, to the certificate holders company's lost and found, all property left in such vehicle by passengers.  The certificate holder shall maintain a written record of

ARTICLE V - 9
(Amend Ord 07-042, 6/5/07)

all items turned in to the company.  The record shall contain the following:

1.  a description of the items found;

2.  the date on which the items were turned in;

3.  the vehicle number in which the items were found; and

4.  the name of the driver who turned in the items.

B.  All items shall be examined and the owners identified and notified, if possible.  If any item is claimed, a record shall be made of the name and address of the claimant.

C.  No item shall be disposed of, other than by return to its owner, less than ninety (90) days after the date in which the item is turned in.  If any item is disposed of, a record must be made of such disposition.

D.  A violation of this section may be grounds for suspension or revocation of the driver's permit or the holder's operating authority.  (Amend Ord 07-042, 6/5/07)

**Section 5.14    Complaint Procedure**

Should the Administrator receive a complaint about the operations of any certificate holder, he shall reduce such complaint to writing, without advising of the complainant's name, if requested, and forward such written complaint to the certificate holder involved.  The certificate holder shall reply in writing within ten (10) days.  If the complaint is not resolved to the satisfaction of the Administrator, he is authorized to initiate whatever action is necessary to remedy the problem.

**Section 5.15    Responsibility of Each Person Engaging a Taxicab or Special Service Transportation Vehicle**

By taking any action in connection with this Chapter on taxicabs and special service transportation vehicles (including, but not limited to, inspections, investigations,

administration, enforcement, record keeping, and the granting, suspension and revocation of certificates, and permits), the City and its agents and employees do not in any way represent or undertake to represent the fitness of any taxicab, special service transportation vehicle, driver, or aspect of the taxicab business or special service transportation business, and it shall be the sole responsibility of each person to decide whether to engage or use a taxicab without relying on any action of the City.

**Section 5.16   General Prerequisites to Putting Vehicle into Service**

A.   Before any certificate holder may put a taxicab into service or replace a taxicab, he shall furnish to the Administrator, for the Administrator's approval, the vehicle, the certificate of title showing the then current true ownership of the vehicle, the liability insurance policy or certificate of insurance required hereunder, and, in the case of a leased vehicle, the written lease contract.

B.   The Administrator may not authorize a vehicle to initially be placed into service unless it has sufficient interior passenger space to qualify in the United States Environmental Protection Agency's annual Fuel Economy Guide as a mid-size car, a large car, a mid-size station wagon, a large station wagon or a van, passenger type, provided that the Administrator may also allow vehicles classified for purposes of the Fuel Economy Guide as special passenger vehicles if the vehicle has passenger seating and space accommodations at least equivalent to those of a vehicle rated as a mid-size car.   To the extent that the Fuel Economy Guide has not yet been published for the model year of the vehicle at the time that a vehicle is presented for placement into initial service, then the Administrator may utilize the previous year's Guide entry for the same or most equivalent make and model of vehicle. (Amend Ord 07-042, 6/5/07)

**Section 5.17   Passenger Comfort**

A.   It shall be unlawful for the certificate holder or driver of any taxicab to suffer, allow or cause the taxicab to be in service at any time during which the

TRANSPORTATION
5.17

vehicle's heating, ventilating, and air conditioning
system is not in good repair and capable of functioning
within the tolerances of the vehicle manufacturer's
specifications.

B.   It shall be the duty of the driver of any taxicab to
ensure that the vehicle is operated for the comfort of
the passengers and that the vehicle's heating,
ventilating, and air conditioning system is in
operation at all times while passenger(s) are present
in the vehicle and is functioning in accordance with
the passenger's reasonable request for heating,
ventilating, or cooling, unless the passenger(s)
specifically request that the system be turned off.
(Amend Ord 07-042, 6/5/07)

**Section 5.18**   **Pick-up   and   Drop-off   in   Certain   Areas
Prohibited During Special Events**

A.   During the three-hour period before the Scheduled Start
Time of a Special Event, during a Special Event, and
during the three-hour period after the completion of a
Special Event, the driver of a vehicle carrying
passengers for hire shall not park upon, stop upon,
unload or load passengers upon Collins Street between
Interstate Highway 30 and Division Street, upon East
Randol Mill Road between Collins Street and Ballpark
Way/Stadium Drive, upon Legends Way between East Randol
Mill Road and East Sanford Street, upon Cowboys Way
between Collins Street and Legends Way, upon Ballpark
Way between East Road to Six Flags and East Randol Mill
Road, upon East Road to Six Flags between Nolan Ryan
Expressway and Ballpark Way, and upon Nolan Ryan
Expressway between East Road to Six Flags and East
Randol Mill Road (the vehicle-for-hire-stand streets)
at any place other than at a stand designated for
vehicles carrying passengers for hire, as indicated by
signage installed or erected by the City of Arlington.
In addition, pedicabs and NEVs-for-hire are prohibited
from traveling in the travel lanes of Collins Street
between Interstate Highway 30 and Division Street at
all times.   Pedicabs and NEVs-for-hire are permitted to
travel across Collins Street at street intersections.

B.   During the three-hour period before the Scheduled Start
Time of a Special Event, during a Special Event, and
during the three-hour period after the completion of a
Special Event, the driver of a vehicle carrying

ARTICLE V - 12
(Amend Ord 10-007, 1/12/10)

passengers for hire shall not park upon, stop upon, unload or load passengers at any place other than at the corner, on any street in the designated Special Event service area shown in the map in Section 10.10 other than the vehicle-for-hire-stand streets listed in Section 5.18(A). "At the corner" means any point along the curb of a street that is within 20 feet of the back of curb of the intersecting street's nearest curb.

C.   These provisions shall not prevent the driver of any such vehicle from temporarily stopping in accordance with other stopping or parking regulations at any place in compliance with traffic signals, directions from a public safety officer, or as necessary in the course of the flow of traffic.

D.   Scheduled Start Time of the Special Event means the time advertised for the Special Event to begin as set by its organizers, and the term includes the time listed on admission tickets and other promotional material for the Special Event.   Special Event means the definition set forth in the Special Events Chapter of the Code of the City of Arlington.

E.   The Traffic Engineer or his designee shall have power and is hereby authorized to designate stands for vehicles carrying passengers for hire and to erect signs prohibiting the parking of vehicles other than vehicles carrying passengers for hire in such stands. The stands may generically permit vehicles carrying passengers for hire or may specify by type of vehicle the appropriate standing area.   (Amend Ord 10-007, 1/12/10)

## ARTICLE VI

### TAXICAB OPERATION

### Section 6.01   Soliciting of Passengers

It shall be unlawful for any taxicab driver to solicit by word, signal, sign or otherwise, patronage for such taxicab upon any public street of the City, or in or near any public place within the City.

### Section 6.02   Fares

A.   Schedule of Fares.  The maximum prices to be charged by all taxicab operations in the City, which prices are hereby declared to be fair and reasonable for such services, shall be as follows:

1.   Initial meter drop, $2.25, for the first passenger on a single call for the first one-ninth (1/9) of a mile or portion thereof.

2.   $0.20 for the first passenger on a single call for each additional one-ninth (1/9) of a mile or fraction thereof.

3.   $16.00 per hour waiting time.

4.   $2.00 for each additional passenger.

5.   $1.00 surcharge for out-of-town trips.

6.   Time and mileage on in-town fares, to-wit: as long as the vehicle is moving with the meter on, it will operate on mileage fares only; however, when the vehicle is standing at traffic control signals, waiting for trains, processions or other mandatory delays, the meter shall automatically switch to time fares.  The delay time fare shall be the same as the per hour waiting time noted in (3) above.

B.   Ordinary Luggage Not to Affect Fare.  The fares set out above shall be the maximum charge made or collected, and there shall be no additional charge made for ordinary luggage, bags or parcels being carried by such passengers.  It shall be unlawful for any driver of a taxicab to demand or receive a fee or charge for taxicab

services in excess of the fares specified in the preceding section. However, nothing herein contained shall be construed as requiring a taxicab to carry trunks, very large packages, parcels, articles or objects likely to injure or damage the taxicab.

C.  Fares to be Posted.  Every taxicab certificate holder shall post in each taxicab operated by him, in a conspicuous place in view of the passengers to be conveyed, a schedule of fares to be charged for such service.  Such schedule shall be printed on a card in not less than 24-point black-face type, letter spaced and giving the fares and distances for which such fares apply.

D.  Gasoline Surcharge.

1.  A gasoline surcharge approved by the Administrator may be added to a taxicab fare when the average weekly retail price of regular grade unleaded gasoline, in the State of Texas, exceeds $2.00 per gallon as posted by the United States Department of Energy, Energy Information Administration, in its weekly updates.

2.  A fuel surcharge shall become effective on the first day of the first month of each calendar quarter, i.e., January 1, April 1, July 1, and October 1, and shall remain in effect for the remainder of the quarter.

3.  The average price per gallon shall be calculated for a three-month period ending not more than 14 days prior to the beginning of a calendar quarter.

4.  The gasoline surcharge will be calculated in $0.50 increments and applied per taxicab trip.  For every $0.50 increase or decrease in the average price per gallon of gasoline above the $2.00 threshold, the per trip surcharge fee will be adjusted $0.50 up or down to reflect the change in the average gasoline price.  For example:

ARTICLE VI - 2
(Amend Ord 07-042, 6/5/07)

| AVERAGE PRICE OF GASOLINE (PER GALLON) | AMOUNT OF SURCHARGE (PER TRIP) |
|---|---|
| $2.00 or less | No surcharge |
| $2.01 to $2.50 | $0.50 |
| $2.51 to $3.00 | $1.00 |
| $3.01 to $3.50 | $1.50 |
| Each additional $0.50 increase | Additional $0.50 in the average per gallon price per trip of gasoline |

(Amend Ord 07-042, 6/5/07)

**Section 6.03   Markings**

Each and every taxicab certificate holder upon the streets in the City shall have:

1.   Painted upon its rear end and both sides in letters and numbers more than six inches (6") in height and three inches (3") in width, the trade name of the organization under whose certificate such taxicab is being operated and the number assigned to such taxicab by or under the direction of the Administrator.

2.   Such letters and numbers shall be painted on each taxicab with permanent, nonwashable paint of a color contrasting to the color of the taxicab so that the same will be readily apparent.

3.   Such letters and numbers shall not, at any time, be covered with any substance, material or other object that would prevent the same being seen or in any way obscure their visibility.

4.   Each person operating taxicabs in the City shall cause same to be painted in such a manner as to properly distinguish them from private vehicles, and such color combinations as are used shall be filed with the Administrator

5.   No two (2) taxicab certificate holders shall be permitted to use the same or similar color combinations. Provided, however, where an illuminated sign displaying the trade name is affixed to the top of a taxicab and is visible from the rear of the taxicab, it shall be

unnecessary to paint the trade name of the organization under whose certificate such taxicab is being operated upon the rear end of such taxicab.  (Amend Ord 07-042, 6/5/07)

## Section 6.04   Taximeter Required

A.   All taxicabs operated under the authority of this Chapter shall be equipped with taximeters fastened in front of the passengers, visible to them at all times, day and night; and after sundown, the face of the taximeter shall be illuminated.  Said taximeters shall be operated mechanically or electronically by a mechanism of standard design and construction, driven either from the transmission or from one of the front wheels by a flexible and permanently attached driving mechanism.  They shall be sealed at all points and connections which, if manipulated, would affect their correct reading and recording.  Each taximeter shall have thereon a flag to denote when the vehicle is employed and when it is not employed; and it shall be the duty of the driver to throw the flag of such taximeter into a nonrecording position at the termination of each trip.  The said taximeter shall be subject to inspection from time to time by the City Police Department or Administrator.  Any officer of said department, or the Administrator, is hereby authorized, either on complaint of any person or without such complaint, to inspect any meter, and, upon discovery of any inaccuracy therein, to notify the person operating said taxicab to cease operation.  Thereupon said taxicab shall be kept off the streets until the taximeter is repaired and in the required working condition.

B.   A taximeter that has been inspected and sealed by either the City of Fort Worth, the City of Dallas or the Dallas/Fort Worth International Airport complies with this Chapter; however, the City of Arlington has the right to inspect the taximeter in taxicabs within the City at any time.  (Amend Ord 07-042, 6/5/07)

## Section 6.05   Taxicabs Used Only for Transporting Passengers or Operating Courier Services

It shall be unlawful for the owner or driver of any taxicab to use such vehicle for any purpose other than transporting passengers for hire, or performing courier

ARTICLE VI - 4
(Amend Ord 07-042, 6/5/07)

services for hire; provided, however, that courier services shall not be performed simultaneously with transporting a passenger unless the courier services are performed for the passenger.

**Section 6.06    Payment of Fare; Refusal to Carry Passengers; Excess Fare Prohibited; Nonpayment of Fare**

A.    No driver of a taxicab shall refuse or neglect to convey any person or persons upon request to any place within the city unless:

1.    The person is disorderly;

2.    The driver is engaged in answering a previous request for service;

3.    Another driver has answered the dispatched call and is in route;

4.    The driver has reason to believe that the person is engaged in unlawful conduct; or

5.    The driver is in reasonable fear of his or her personal safety.

B.    In addition to cash payment, a driver of a taxicab shall accept all major credit cards and/or debit cards for payment at the time of fare.   The driver shall deliver to the person paying the fare at the time of such payment a legible receipt either mechanically printed or by a specially prepared receipt, containing the taxicab company name, taxicab number, driver name, any items for which a charge is made, the total amount paid and the date of payment.

C.    A driver shall carry a passenger to his destination by the most direct route available, unless otherwise directed by the passenger.

D.    It shall be unlawful for any passenger to refuse to pay the legal fare of any taxicab after having hired the same, and it shall be unlawful for any person to hire a taxicab with the intent to defraud the operator of the taxicab of the fare for such service.   Failure to pay the legal fare shall be presumptive of intent to defraud.

TRANSPORTATION
6.06

E.   Any violation of this section shall be grounds for suspension or revocation of the taxicab driver's permit. (Amend Ord 07-042, 6/5/07)

### Section 6.07   <u>Representation of Availability of a Taxicab</u>

A.   A driver may not represent that his taxicab is engaged when in fact vacant, or vacant when in fact engaged.

B.   A violation of this section is grounds for the suspension of the driver's permit.   (Amend Ord 07-042, 6/5/07)

## ARTICLE VII

### REVOCATION, SUSPENSION, AND DENIAL OF CERTIFICATES AND PERMITS:  PROCEDURES, CONSIDERATIONS, APPEALS

**Section 7.01    Eligibility    of    Persons    with    Criminal Backgrounds for Certificates or Permits**

A.   The Administrator may suspend or revoke an existing certificate or permit, or disqualify a person from receiving a certificate or permit who is under indictment, have charges pending, or has been convicted of a crime as set forth below.

B.   In determining whether the criminal act directly relates to the duties and responsibilities which correlate to the certificate or permit sought by an applicant, the Administrator shall consider:

1.   The nature and seriousness of the crime;

2.   The relationship of the crime to the purpose of requiring a driver's permit; for example, the following crimes are deemed to have such a relationship because they involve potential danger or harm to passengers and their property, and because the opportunity to commit such offenses is enhanced by the nature of the driver's occupation:

   a.   Criminal homicide as described in Chapter 19 of the Texas Penal Code;

   b.   Kidnapping as described in Chapter 20 of the Texas Penal Code;

   c.   A sexual offense as described in Chapter 21 of the Texas Penal Code;

   d.   An assaultive offense as described in Chapter 22 of the Texas Penal Code;

   e.   Robbery as described in Chapter 29 of the Texas Penal Code;

   f.   Burglary as described in Chapter 30 of the Texas Penal Code, but only if the offense was committed against a person with whom the

applicant came into contact while engaged in a passenger transportation service;

g.    Theft as described in Chapter 31 of the Texas Penal Code, but only if the offense was committed against a person with whom the applicant came into contact while engaged in a passenger transportation service;

h.    Fraud as described in Chapter 32 of the Texas Penal Code, but only if the offense was committed against a person with whom the applicant came into contact while engaged in a passenger transportation service;

i.    Tampering with a governmental record as described in Chapter 37 of the Texas Penal Code; but only if the offense was committed against a person with whom the applicant came into contact while engaged in a passenger transportation service;

j.    Public indecency (prostitution or obscenity) as described in Chapter 43 of the Texas Penal Code;

k.    The transfer, carrying, or possession of a weapon in violation of Chapter 46 of the Texas Penal Code; but only that is punishable as a felony;

l.    A violation of the Health and Safety Code, Chapter 483 - "Dangerous Drugs" that is punishable by a felony;

m.    A violation of the Health and Safety Code, Chapter 481 - "Texas Controlled Substances Act" that is punishable as a felony; or

n.    Criminal attempt to commit any of the offenses listed in Section 7.01(B).

C.    And for which:

1.    Less than two (2) years have elapsed since the date of conviction or the date of release from confinement imposed for the conviction, whichever is the later date, if the applicant was convicted of a misdemeanor offense;

2. Less than five (5) years have elapsed since the date of conviction or date of release from confinement for the conviction, whichever is the later date, if the applicant was convicted of a felony offense; or

3. Less than five (5) years have elapsed since the date of the last conviction or the date of release from confinement for the last conviction, whichever is the later date, if within any twenty-four-month period the applicant has two (2) or more convictions of any misdemeanor offense or combination of misdemeanor offenses.

4. Not have been convicted of or discharged by probation or deferred adjudication for driving while intoxicated within the preceding twenty-four (24) months, or more than one (1) time within the preceding seven (7) years;

5. Not have charges pending or not be under indictment for an offense for driving while intoxicated;

6. Not be addicted to the use of alcohol or narcotics;

7. Not have been convicted of or discharged by probation or deferred adjudication for driving while under the influence of drugs within the preceding twenty-four (24) months, or more than one (1) time within the preceding seven (7) years;

8. Not have criminal charges pending for the offense of driving while intoxicated or while under the influence of drugs; and

9. Not be subject to any outstanding warrants of arrest.

D. Within forty-five days after receipt of an application for issuance or renewal of a driver permit, the Administrator may approve and issue the driver permit or deny the application, except the Administrator shall delay until final adjudication the approval of the application of any applicant who is under indictment for or has charges pending for:

ARTICLE VII - 3
(Amend Ord 07-042, 6/5/07)

TRANSPORTATION
7.01

    1.   a felony offense involving a crime described in this Article or criminal attempt to commit any of those offenses; or

    2.   any offense involving driving while intoxicated.

E.  An applicant who has been convicted of an offense listed in this Article, for which the required time period has elapsed since the date of conviction or the date of release from confinement imposed for the conviction, may qualify for a driver permit only if the Administrator determines that the applicant is presently fit to engage in the specified occupation. In determining present fitness under this section, the Administrator shall consider the following:

    1.   The extent to which the permit might offer an opportunity to engage in further criminal activity of the same type as that in which the person had previously been involved;

    2.   The extent and nature of the past criminal activity;

    3.   The age of the applicant when the crime was committed;

    4.   The amount of time elapsed since the applicant's last criminal activity;

    5.   The conduct and work activity of the person prior to and following the criminal activity;

    6.   Evidence of rehabilitation efforts;

    7.   Other evidence of personal fitness submitted by the applicant such as recommendations from prosecution, law enforcement, correctional officers.

    8.   It shall be the responsibility of the applicant to the extent possible to secure and provide to the Administrator the recommendations of the prosecution, law enforcement, and correctional authorities as required under this Act. An applicant who is serving a probated sentence at the time of application shall also furnish proof in such form as may be required by the licensing authority that he or she has maintained a record

of steady employment and has supported his or her
dependents and has otherwise maintained a record
of good conduct and has paid all outstanding court
costs, supervision fees, fines, and restitution as
may have been ordered in all criminal cases in
which he or she has been convicted.

9.  Upon a licensee's felony conviction, felony
probation revocation, revocation of parole, or
revocation of mandatory supervision, his
certificate or permit shall be revoked.

F.  Suspension, Revocation, or Denial of Certificate or
Permit Based on Criminal Background; Guidelines and
Application of Law

1.  Notice

If the Administrator suspends or revokes a valid
certificate or permit or denies a certificate or
permit because of the applicant's or holder's
criminal background and the relationship of the
crime to the license, the Administrator shall give
written notice to the applicant or holder of the
intent to suspend, revoke or deny by certified
mail or by personal delivery and such notice shall
state:

a.  the reason for suspension, revocation, or
denial;

b.  that the applicant or holder has ten (10)
calendar days from the date of notice to
request a hearing on the suspension,
revocation or denial provided that the
applicant or holder submits a written request
for hearing to the Administrator before the
expiration of the tenth calendar day after
notice; and

c.  that if a written request for a hearing is
not timely received the suspension,
revocation, or denial shall take effect at
the expiration of the tenth calendar day
after notification.

TRANSPORTATION
7.01

2.   <u>Administrator's Hearing</u>

    a.   Upon receipt of the request for hearing, a hearing before the Administrator shall be scheduled to take place within five (5) calendar days from the date of receipt unless both parties agree to a certain date beyond the five (5) calendar days.

    b.   After such hearing, the Administrator shall notify the applicant or holder of the decision by certified mail or by personal delivery.

    c.   If the Administrator's decision is adverse, the Administrator shall notify the applicant or holder that he or she has five (5) calendar days from the date the decision is received to appeal provided that the applicant or holder submits a written notice of appeal to the City officer (Appeal Officer) designated by the City Manager to hear such appeals.  The written notice of appeal must be timely submitted to the Administrator and shall specify the grounds upon which the appeal is based.

3.   <u>Appeal</u>

    a.   Upon receipt of the written notice of appeal, the Administrator shall immediately transmit to the Appeal Officer all papers, audio and video tapes, and any other items constituting the record of the action from which the appeal is taken.

    b.   The Appeal Officer shall schedule a hearing to take place within five (5) calendar days from the date notice of appeal was received unless both parties agree to a certain date beyond the five (5) calendar days.

    c.   After such appeal, the Appeal Officer shall notify the applicant or holder of the decision by certified mail or by personal delivery.

ARTICLE VII - 6
(Amend Ord 07-042, 6/5/07)

4. Stay of Proceedings

A request for hearing to the Administrator, an appeal to the Appeal Officer or an action filed in District Court shall stay the suspension, revocation, or denial unless the Administrator certifies that by reason of facts stated in the certification, a stay would, in his opinion, cause imminent peril to life or property. In such case, proceedings shall not be stayed otherwise than by a restraining order which may be granted by a court of record on application and notice to the officer from whose decision the appeal is taken and on due cause shown.

5. District Court Review

a. An applicant or holder whose certificate or permit has been suspended or revoked or who has been denied a certificate or permit because of a criminal background, who has exhausted administrative appeals, may file an action in a district court of the county in which the suspension, revocation or denial occurred for review of the evidence presented to the licensing authority and its decision.

b. The person must begin the judicial review by filing a petition with the court within thirty (30) days after the Appeal Officer's decision is final and appealable. (Amend Ord 07-042, 6/5/07)

**Section 7.02    Suspension or Revocation of a Certificate or Permit for Reasons other than Criminal History**

A. Action

Any certificate and any driver's permit may be either suspended for any period of time not to exceed six (6) months or revoked by the Administrator. (Amend Ord 98-63, 5/19/98)

B. Grounds

The Administrator shall suspend or revoke a certificate or driver's permit if it is determined from a sworn

ARTICLE VII - 7
(Amend Ord 07-042, 6/5/07)

statement filed with the Administrator based upon the
information and belief that the holder has:

1.   Failed to comply with a order issued to the holder
     by the Administrator within the time specified in
     the order;

2.   Intentionally or knowingly impeded the City
     Manager, Administrator, or a law enforcement
     agency in the performance of their duties; or

3.   Breached the terms of the certificate;

4.   Failed to pay City ad valorem taxes, when due, on
     all vehicles and other equipment used in
     connection with the taxicab, special service
     transportation vehicle service or jitney;

5.   Failed to pay any fee required by this Chapter on
     or before the date required; provided however,
     that such certificate shall be automatically
     suspended if the certificate holder fails to pay
     such fee within thirty (30) days of notice of
     delinquency from the Administrator;

6.   Failed to maintain required insurance coverage;

7.   Committed fraud or willful misrepresentation in
     the original application or renewal application;

8.   Failed to comply with the provisions of this
     ordinance or other lawful order; or

9.   The general welfare of the citizens or the best
     interest of the City will be served by such
     action.

C.   Notice

1.   Every suspension or revocation shall be in
     writing, be dated and state the reason for such
     suspension or revocation. Such notice shall
     immediately be sent to the holder of such
     certificate or permit by certified mail or by
     personal delivery.

2.   Such order of suspension or revocation shall be
     effective as of the date of the notice unless
     within ten (10) calendar days from the date of the

notice the holder submits to the Administrator a written request for a hearing before the Administrator in order to show-cause as to why the certificate or permit should not be suspended or revoked.   Such written request for hearing may also contain a request for reinstatement pending the hearing.

3.   Upon receipt of the request for hearing, a hearing before the Administrator shall be scheduled to take place within five (5) calendar days from the date of receipt unless both parties agree to a certain date beyond the five (5) calendar days.

4.   After such hearing, the Administrator may order a certificate or permit suspended or revoked or may cancel the suspension or termination proceedings. The Administrator's decision shall be in writing and delivered to the holder by certified mail or by personal delivery.

5.   If the Administrator's decision is to suspend or revoke, the Administrator shall also notify the applicant or holder that the holder has five (5) calendar days from the date the decision is received to appeal provided that the holder submits a written notice of appeal to the City officer (Appeal Officer) designated by the City Manager to hear such appeals.  The written notice of appeal must be timely submitted to the Administrator and shall specify the grounds upon which the appeal is based.

6.   Upon receipt of the written notice of appeal, the Administrator shall immediately transmit to the Appeal Officer all papers, audio and video tapes, and any other items constituting the record of the action from which the appeal is taken.

7.   The Appeal Officer shall schedule a hearing to take place within five (5) calendar days from the date the notice of appeal was received unless both parties agree to a certain date beyond the five (5) calendar days.

8.   After such appeal, the Appeal Officer shall notify the applicant or holder of his or her decision by certified mail or by personal delivery.

ARTICLE VII - 9
(Amend Ord 07-042, 6/5/07)

TRANSPORTATION
7.02

9.  A holder whose certificate or permit has been
    suspended or revoked, who has exhausted
    administrative appeals, may file an action in a
    district court of the county in which the
    suspension or revocation occurred for review of
    the evidence presented to the licensing authority
    and its decision.  A holder must begin the
    judicial review by filing a petition with the
    court within thirty (30) days after the Appeal
    Officer's decision is final and appealable.

10. A request for hearing to the Administrator, an
    appeal to the Appeal Officer or an action filed in
    District Court shall stay the suspension or
    revocation unless the Administrator certifies that
    by reason of facts stated in the certification, a
    stay would, in his opinion, cause imminent peril
    to life or property.  In such case, proceedings
    shall not be stayed otherwise than by a
    restraining order which may be granted by a court
    of record on application and notice to the officer
    from whose decision the appeal is taken and on due
    cause shown.  (Amend Ord 07-042, 6/5/07)

D.  Expiration Date

    A suspension shall not affect the expiration date of
    the certificate or permit which is suspended.

E.  Eligibility for New Certificate

    Upon revocation of a certificate or permit, the holder
    shall be ineligible for a new certificate or permit for
    a period of one (1) year.

F.  Reinstatement

    After suspension of a certificate or permit, a holder
    may file with the Administrator a written request for
    reinstatement.  The Administrator shall inspect the
    operation of the suspended holder to determine if the
    deficiency causing the suspension has been corrected by
    the holder.  After inspection, the Administrator may
    reinstate the certificate or deny reinstatement based
    upon facts ascertained in the inspection.

**Section 7.03**   **Denial of a Permit for Reasons Other Than Criminal History**

A.   <u>Notice</u>.   If the Administrator denies a permit for reasons other than criminal history the Administrator shall give written notice to the applicant or holder of the intent to deny by certified mail or by personal delivery and such notice shall state:

   1.   the reason for denial;

   2.   that the applicant or holder has ten (10) calendar days from the date of notice to request a hearing on the denial provided that the applicant or holder submits a written request for hearing to the Administrator before the expiration of the tenth calendar day after notification; and

   3.   that if a written request for a hearing is not timely received the denial shall take effect at the expiration of the tenth calendar day after notification.

B.   <u>Administrator's Hearing.</u>

   1.   Upon receipt of the request for hearing, a hearing before the Administrator shall be scheduled to take place within five (5) calendar days from the date of receipt unless both parties agree to a certain date beyond the five (5) calendar days.

   2.   After such hearing and within a period of five (5) business days, the Administrator shall notify the applicant or holder of the decision by certified mail or by personal delivery.

   3.   If the Administrator's decision is adverse, the Administrator shall notify the applicant or holder that he or she has five (5) calendar days from the date the decision is received to appeal provided that the applicant or holder submits a written notice of appeal to the City officer (Appeal Officer) designated by the City Manager to hear such appeals.   The written notice of appeal must be timely submitted to the Administrator and shall specify the grounds upon which the appeal is based.

C.   Appeal.

    1.   Upon receipt of the written notice of appeal, the Administrator shall immediately transmit to the Appeal Officer all papers, audio and video tapes, and any other items constituting the record of the action from which the appeal is taken.

    2.   The Appeal Officer shall schedule a hearing to take place within five (5) calendar days from the date the notice of appeal was received unless both parties agree to a certain date beyond the five (5) calendar days.

    3.   After such appeal and within a period of five (5) business days, the Appeal Officer shall notify the applicant or holder of the decision by certified mail or by personal delivery.

D.   District Court Review.

    1.   An applicant or holder whose permit has been denied, who has exhausted administrative appeals, may file an action in a district court of the county in which the denial occurred for review of the evidence presented to the licensing authority and its decision.

    2.   The person must begin the judicial review by filing a petition with the court within thirty (30) days after the Appeal Officer's decision is final and appealable.  (Amend Ord 07-042, 6/5/07)

## ARTICLE VIII

### SPECIAL SERVICE TRANSPORTATION

**Section 8.01    Solicitation of Passengers**

It shall be unlawful for any driver of a special service vehicle authorized under this Chapter to solicit patronage by word or signal while driving same, except for pedicabs and NEVs-for-hire.  The placing of a sign or booth where persons can seek information is permitted if it does not violate any other ordinance of the City or any state law and does not interfere with other motor vehicle and pedestrian travel.  (Amend Ord 10-007, 1/12/10)

**Section 8.02    Schedule of Fares**

The prices to be charged by all special service transportation holders in the City shall be fair and reasonable as compared to services of the similar type in the area.

**Section 8.03    Markings**

Each such special service transportation service vehicle except limousine service vehicles, NEVs-for-hire, and pedicabs shall have signs placed on both sides of the vehicle while in service unless otherwise requested by the passengers, which show the trade name of the organization. The signs shall have letters of sufficient size and with a color contrasting to that of the vehicle so that the signs are readily apparent.  The signs can be painted onto the vehicle or removable magnetic signs can be used to comply with this requirement.  (Amend Ord 10-007, 1/12/10)

**Section 8.04    Limousine**

A.   Holders and drivers for a limousine service shall be governed by the provisions of this Article in addition to all other applicable Articles and fees as approved by City Council resolution.

B.   Holders and drivers are subject to the following regulations regarding fares:

TRANSPORTATION
8.04

1.   A driver or holder shall not charge a fare for operating a limousine service that is inconsistent with the rates authorized in the certificate.

2.   A holder desiring to change the authorized rates of fare must submit a written request to the Administrator.

3.   The rates listed in the holder's certificate must be strictly adhered to, and no change in rates may be implemented without review of the Administrator.

4.   The driver or holder shall give the person paying a fare a ticket or receipt that indicates the date, name, address, and telephone number of the limousine service and the amount of the fare.

5.   The use of any type of meter or measuring device to calculate the fare for service is prohibited.

C.   It shall be unlawful for any passenger to refuse to pay the legal fare of any limousine after having hired the same and it shall be unlawful for any person to hire a limousine with the intent to defraud the operator of the limousine of the fare for such service.  Failure to pay the legal fare shall be presumptive of intent to defraud.

D.   Holders and drivers shall comply with the following regarding service on a prearranged basis and trip manifests:

1.   Each holder providing limousine service shall provide its drivers with forms or other electronic means for maintaining a trip manifest.  This shall include recording:

a.   Time, place, origin, and destination of each trip;

b.   The names and addresses of the passengers;

c.   The total number of passengers; and

d.   Other information required by the Administrator to aid in the discharge of official duties.

ARTICLE VIII - 2
(Amend Ord 07-042, 6/5/07)

2.   A driver furnishing limousine service pursuant to the section above shall show the written or electronic documentation on company letterhead and/or other sufficient identification upon request to the Administrator, his or her designee, or a peace officer.

3.   A driver furnishing limousine service shall not accept any passenger except a passenger for whom service has been prearranged and documented in accordance with this section.

4.   A driver furnishing limousine service on a prearranged basis shall not arrive at a location to pick up a passenger with whom prearrangement has been made more than twenty (20) minutes before the designated pickup time.

E.   Effective January 1, 2008, limousines shall comply with the following provisions:

1.   No sedan may be over five (5) years old as calculated from the first day of January of the model year of the vehicle.

2.   No vehicle more than four (4) years old, as calculated above, may be added to the fleet.  As vehicles in operation become older than this provision, they shall be removed from the fleet.

3.   No limousine may be salvaged or rebuilt; "blue titled" vehicles shall not be permitted to be operated as limousines.

4.   Vehicles in operation as limousines as of the date of the adoption of this ordinance may continue to operate until such vehicle exceeds the age requirement established herein.

5.   Subsections (1) and (2) of this section do not apply to stretch limousines, luxury limousines, luxury trucks or specialty limousines.  Other vehicles for which the holder desires to operate under the certificate must be approved by the Administrator.

F.   Each holder is required to provide city-wide limousine service.  The holder's limousine fleet, communication system and other resources must be sufficient to

provide effective service levels to all areas of the
city on a regular basis.

G.  Except as otherwise provided in this Article, a holder
    and limousine driver shall provide limousine service to
    the general public to and from any point inside the
    city that is accessible by public street.

H.  A limousine driver shall not obstruct entrances or
    passageways of any sidewalk or building.   Once engaged
    by his or her prearranged passenger, a limousine driver
    may provide assistance to his or her passenger.

**Section 8.05    Shuttle Service**

A.  Certificate holders, applicants and drivers for a
    shuttle service shall be governed by the provisions of
    this Article in addition to all other applicable
    Articles and fees as approved by City Council
    resolution.

B.  A holder or driver commits an offense if he operates
    any shuttle vehicle in the city that is older than
    seven (7) years as calculated from the first day of
    January of the model year of the vehicle.   If a vehicle
    in operation is older than this provision allows, the
    vehicle shall be removed from operation under the
    certificate.

C.  A holder of a shuttle service in the City shall provide
    the Administrator with a description of the service to
    be offered that includes a map of the entire service
    area, divided in sectors and schedules, which such map
    shall be subject to approval by the Administrator.

D.  A shuttle service shall maintain a level of service to
    the entire service area by dispatching shuttle vehicles
    to any sector or schedule areas upon passenger request.

E.  All vehicles operating under a holder's shuttle service
    certificate shall be required to maintain service to
    all sectors listed in the holder's certificate three
    hundred sixty-five (365) days a year.

F.  A shuttle driver shall not operate a shuttle for more
    than twelve (12) hours within a twenty-four (24) hour
    period.

ARTICLE VIII - 4
(Amend Ord 07-042, 6/5/07)

G.   A holder and driver shall follow the scheduled route on time, whether or not the vehicle is filled to capacity. The shuttle service must serve each approved sector within a reasonable time.

H.   Holders and drivers shall comply with the following regarding service on a prearranged basis and trip manifests:

  1.   Each holder shall provide to its drivers a form or other electronic means for maintaining a prearranged trip manifest.  This shall include recording:

    a.   time, place, origin, and destination of each trip;

    b.   names and addresses of the passengers; and

    c.   total number of passengers.

  2.   A driver furnishing shuttle service on a prearranged basis pursuant to the section above shall show the written or electronic documentation on company letterhead or other sufficient identification upon request by the Administrator, his or her designee, or a peace officer.

  3.   A driver furnishing shuttle service on a prearranged basis shall not accept any passenger except a passenger for whom service has been prearranged and documented in accordance with this section.

  4.   A driver furnishing shuttle service on a prearranged basis shall not arrive at a location to pick up a passenger with whom prearrangement has been made more than twenty (20) minutes before the designated pickup time.

  5.   Any violation of this section may be grounds for suspension or revocation of the shuttle driver's permit or the holder's certificate.

I.   Holders and drivers are subject to the following regulations regarding fares:

  1.   A driver or holder shall not charge a fare for operating a shuttle service that is inconsistent

ARTICLE VIII - 5
(Amend Ord 07-042, 6/5/07)

with the rates authorized in the shuttle's certificate.

2. A holder desiring to change the authorized rates of fare must submit a written request to the Administrator.

3. The rates listed in the holder's certificate must be strictly adhered to and no change in rates may be implemented without review of the Administrator.

4. The holder shall provide each driver with rates of fares, which rates shall be located inside the shuttle vehicle and be available to passengers upon request.

5. The driver or holder shall give the person paying a fare a ticket or receipt that indicates the date, name, address, and telephone number of the shuttle service and the amount of the fare.

6. The use of any type of meter or measuring device to calculate the fare for shuttle service is prohibited.

J. A holder or driver shall, at all times, provide and maintain in good operating condition the following equipment for each shuttle vehicle:

1. A heater and air conditioner and

2. A chemical-type fire extinguisher, of at least a one-quart capacity, conveniently located in the same compartment of the vehicle as the driver so that it is readily accessible for immediate use.

K. Each shuttle vehicle operating on a pre-approved regularly scheduled basis or pre-approved route must:

1. Have a lighted front destination sign;

2. Have a designated luggage holding area, located separately from passenger seating;

3. Have a uniform paint scheme approved by the Administrator;

4.  Have a two-way radio, cellular telephone or other approved means of electronic communication that is operational during service hours;

5.  Have a sufficient number of back-up vehicles for each approved route;

6.  Have evidence of insurance required in accordance with Section 5.03;

7.  Have a rate schedule posted inside the vehicle in a manner approved by the Administrator; and

8.  Have the trade name of the shuttle service and a unit number permanently affixed to both sides of the vehicle in letters at least three (3) inches high with a one-half (1/2) inch stroke in a contrasting color.

## Section 8.06   Horse-drawn Carriage Service

A.  Certificate holders, applicants and drivers operating a horse-drawn carriage service shall be governed by the provisions of this Article in addition to all other applicable Articles and fees as approved by City Council resolution.

B.  A proposed detailed route system of an equine-drawn vehicle for hire shall be submitted to the Public Works Department for review, recommendation and approval. The Public Works Department shall designate streets, traffic lanes and hours of the day that equine-drawn vehicles will be permitted. A route system shall be submitted for each vehicle to be placed into operation. This detailed route system shall include the following information:

1.  The hours of operation for the vehicle.

2.  The days of the week the vehicle will be in operation.

3.  The duration of the operation, i.e., summer only or year-round.

4.  All locations for loading and unloading passengers.

TRANSPORTATION
8.06

C.  A horse-drawn carriage may operate only on the streets
    and designated traffic lanes and during the times
    proposed in the application for the certificate and
    approved by the Public Works Department.

D.  Holders and drivers are subject to the following
    regulations regarding fares:

    1.  A driver or holder shall not charge a fare for
        operating a horse drawn carriage service that is
        inconsistent with the rates authorized in the
        holder's certificate.

    2.  A holder desiring to change the authorized rates
        of fare must submit a written request to the
        Administrator.

    3.  The rates listed in the holder's certificate must
        be strictly adhered to and no change in rates may
        be implemented without review of the
        Administrator.

    4.  The holder shall provide each driver with rates of
        fares, which rates shall be available to
        passengers upon request.

E.  All horse drawn carriages shall comply with the
    following safety, condition, appearance, equipment,
    sign and marking regulations:

    1.  Holder shall keep its equipment in a neat, clean,
        operable and safe condition, and attractive to the
        general public.

    2.  Holder shall identify each carriage with the name
        of the entity holding the certificate and shall
        number each of the vehicles; such letters and
        numbers shall be at least one (1) inch in height.

    3.  Each carriage operating in the City pursuant to
        this article shall have the following lighting and
        reflector equipment:

        a.  Vehicle rear shall have:

            (1)  One (1) or two (2) lamps displaying red
                 lights which shall be at least four (4)
                 inches in diameter and use a bulb of at
                 least thirty-two (32) candlepower.  If

ARTICLE VIII - 8
(Amend Ord 07-042, 6/5/07)

only one (1) lamp is used, it shall be mounted as far to the left, towards the front, as possible.

(2)   Two (2) red reflectors which shall be at least three (3) inches in diameter or seven (7) square inches in diameter. The reflectors shall be mounted below the lamps, but not lower than two (2) feet from the ground.

b.   Vehicle front shall have:

(1)   At least one (1) lamp displaying a white light.  The lamp shall be at least four (4) inches in diameter and use a bulb of at least thirty-two (32) candlepower.

(2)   If only one (1) lamp is used, it shall be mounted as far to the left, looking forward, as possible and shall not be obscured from view by the driver, the passenger or the horse pulling the vehicle.

(3)   The lamp shall be mounted no less than two (2) feet from the ground.

c.   Sides of vehicle shall have:

(1)   Two (2) white, yellow or amber reflectors that shall be mounted on each side of the vehicle.

(2)   The reflectors shall be at least three (3) inches in diameter or seven (7) square inches.

(3)   Such reflectors shall be mounted no less than two feet from the ground.

d.   Front legs of horse shall have:

(1)   A reflective wrap that shall be worn by a horse on each of its front legs.

(2)   The wraps must cover at least from the horse's ankle to the knee.

4. The lamps required by this section shall be in use and operational during nighttime hours beginning one-half (1/2) hour before sunset and at any other time when weather conditions cause reduction in visibility.

5. All horse-drawn carriages shall display a "slow moving vehicle" emblem on the center rear body of the vehicle. The emblem shall be a thirteen and three-fourths (13 3/4) inch fluorescent orange triangle with a one and five-eighths (1 5/8) inch red reflective border. The emblem shall meet the current standards adopted by the "American Society of Agricultural Engineers," shall be visible in daylight or at night when illuminated by the lower beams of headlamps for a distance of not less than five hundred (500) feet and shall be mounted not less than three (3) feet from the ground. No decorative trim or any part of the vehicle shall cover or obscure any part of the emblem at any time.

6. All horse-drawn carriage wheels shall be firmly attached to the hub and shall not wobble excessively. All spring axles and supporting structures shall be intact without any visible breaks or deflection greater than incurred by a normal load.

7. Each horse-drawn carriage shall be equipped with a suitable and efficient manually operated braking mechanism designed for such carriage.

8. The harness attachment to the horse and to the carriage shall have safety devices to ensure that the horse cannot break away from its harness or the carriage. The driver shall inspect the harness each day prior to placing the carriage into service.

9. No equine will be worked without a padded saddle or a bit that is approved by the Administrator.

10. The harness must be oiled and cleaned so as to be soft at all times.

11. All pads must be clean and kept soft at all times.

ARTICLE VIII - 10
(Amend Ord 07-042, 6/5/07)

12.  The harness will be properly fitted and maintained and kept free of makeshift material such as wire, sisal rope and hazardous rusty chain.

13.  Vehicles for hire pulled by equine must be properly lubricated and wheels must spin freely. Such vehicles for hire must be inspected and approved for service by the Administrator annually, but are subject to removal of service pending repair and reinspection.

14.  Vehicles shall conform to the following specifications:

   a.  The wheel base shall be equal to or less than 14 feet.

   b.  The total overall length of the vehicle shall be equal to or less than 28 feet.

   c.  The maximum overall width of the vehicle shall be equal to or less than 78 inches.

   d.  The tires shall be rubber or other resilient material. Metal tires shall be prohibited.

   e.  The vehicle right turn radii shall not be greater than 12 feet for the right rear wheel and 24 feet for the left front wheel.

   f.  The vehicle shall be drawn by no more than two equine, except at parades and at special events approved by the Administrator.

15.  No equine shall pull a vehicle for hire unless such equine is wearing a diaper. Diapers must be properly fitting and constructed of a sturdy material to ensure comfort to the equine and complete waste disposal.

G.  Holders and drivers shall comply with the following provisions regarding condition and treatment of horses and routes:

   1.  Each year, before any horse is brought into service, a licensed veterinarian who specializes in equine medicine must examine the horse.

ARTICLE VIII - 11
(Amend Ord 07-042, 6/5/07)

2.   A holder shall annually submit a complete state certificate of veterinarian inspection to the Administrator.

3.   Any horse brought into service must:

   a.   Weigh at least one thousand (1,000) pounds;

   b.   Be a gelding or a mare; and

   c.   Be at least three (3) years old.

4.   A holder shall be responsible for maintaining the following information for each horse brought into service:

   a.   Current veterinarian examination record;

   b.   Current picture of the horse; and

   c.   Immunization record of rabies, tetanus, influenza and Eastern and Western equine, updated annually.

   d.   Coggins test with negative results as required by state law.

   e.   Fit for service in pulling vehicles for hire,

5.   All holders shall provide horses with sufficient, wholesome and appropriate food and fresh potable drinking water.   While working, each horse shall be permitted to eat at reasonable intervals and have access to drinking water when necessary.   In addition, if the equine works more than ten hours in any 24-hour period, there shall be at least one 20-minute rest break or two ten-minute rest breaks per hour.

6.   All holders shall keep all routes clean and free of horse excrement.   The failure to keep all routes clean is grounds for suspension or revocation of the certificate.

7.   A horse shall not be left unattended except when confined to a stable or other enclosure.

8.   No driver of an equine-drawn vehicle for hire may whip an equine with more than a light touch by a whip approved by the Administrator.

9.   No equine shall be used to pull a vehicle for hire without properly fitting shoes on each properly trimmed hoof.   Should an equine throw a shoe during its shift, the time and location must be noted on the trip sheet, and the hoof must be examined by the driver and any nails removed.   The equine may complete the fare, but must be shod prior to the next day's shift.

10.   A holder may not work a horse when the temperature at any City site monitored by the National Weather Service is reported to be at or below thirty (30) degrees Fahrenheit.

11.   A horse cannot work more than two (2) hours when the temperature is reported by the National Weather Service to exceed ninety-five (95) degrees Fahrenheit.

12.   A horse cannot work more than two (2) hours when the combined temperature and humidity index for Arlington exceeds a numerical value of one hundred fifty (150), as measured by the National Weather Service.

13.   The equine shall have no open sores or wounds, shall not be lame or have any other ailment.   Any equine found to have an ailment shall not be used without the approval of an approved veterinarian.

14.   The equine must be groomed daily and not have fungus, a dirty coat or exhibit symptoms of illness or irritation.

15.   The equine must have adequate flesh and muscle tone.

16.   The equine must be no more than six months pregnant.

17.   No equine used as provided in this article shall be worked under any of the following conditions and any holder or driver permitting equine to be worked under any of the following conditions will be found in violation of this article:

ARTICLE VIII - 13
(Amend Ord 07-042, 6/5/07)

TRANSPORTATION
8.06

    a.    Pull any combined weight, including passengers and driver, in excess of two times the equine's body weight. No equine or combination of equine shall pull any vehicle which is occupied by a number of persons which exceeds such vehicle's normal safe seating capacity;

    b.    Move at a speed faster than a slow trot. A slow trot means a speed of five to 15 miles per hour;

    c.    Work more than 50 hours in any seven-day period or if the equine works more than five consecutive days;

    d.    Work with equipment, other than normal blinders, which causes an impairment of vision;

    e.    Subject to any condition or treatment which will impair the good health and physical condition of the equine; or

    f.    Subject to any conditions that constitute a violation of Texas Penal Code Section 42.09 or Animals Chapter Section 9.07 referencing cruelty to animals or care and humane treatment of animals.

18.    For purposes of this section, working hours of equine shall include time spent on rest breaks and all the time equine is available for hire.

19.    The Administrator shall have the authority to implement programs to ensure public safety.

H.    Holders and drivers shall comply with the following provisions regarding operating regulations:

1.    Vehicles shall travel in the curb lane except when passing parked vehicles or other obstructions which prevent use of the curb lane.

2.    Vehicles shall not travel on streets with grades equal to or greater than ten percent without approval of the Administrator and Public Works Department.

ARTICLE VIII - 14
(Amend Ord 07-042, 6/5/07)

3.   Vehicles shall not stop within the roadway other than at designated loading and unloading areas except when necessary to avoid conflict with other traffic or in compliance with the directions of a police officer or traffic control sign or signal.

4.   Drivers shall observe all applicable rules of the road in accordance with the State of Texas Transportation Chapter and all applicable ordinances.

5.   The driver of an equine drawn carriage shall:

   a.   Possess and display at all times his or her license to operate an equine-drawn carriage in the front/passenger compartment of the carriage.

   b.   A driver shall not drive a carriage when a passenger is standing in the carriage or not seated securely inside of the carriage.

   c.   A driver shall provide humane care and treatment of the equine under his or her direct supervision and control.

   d.   No person shall drive or operate an equine drawn carriage on any public street in the city at any hour other than those so designated by the Public Works Director or his designee.

I.   Each certificate holder for the operation of a horse-drawn carriage service shall comply with the following provisions regarding insurance.

1.   Each certificate holder shall purchase and keep in full force and effect liability insurance.

2.   The minimum insurance required under this section must:

   a.   Be obtained from a carrier that is admitted and licensed to transact insurance in the State of Texas;

   b.   Be written on an occurrence basis;

    c.   Cover any and all carriages and drivers in the holder's fleet and all drivers of such vehicles;

    d.   Be acceptable to the City's Risk Manager;

    e.   Name the City of Arlington and its officers and employees as additional primary insured;

    f.   Provide minimum coverage in an amount no less than five hundred thousand dollars ($500,000) combined single limit liability per occurrence;

    g.   Provide that all claims will be paid on a first dollar basis by the insurance provider;

    h.   Not be obtained from an assigned risk pool;

    i.   Not contain policy exclusions that would change or limit coverage for passengers entering or exiting vehicles; and

    j.   Provide that all vehicles permitted to operate under the certificate are listed as scheduled vehicles covered under the policy.

3.   All liability insurance coverage must include a rider that provides that at all levels of coverage, there must be notification to the City in writing not less than thirty (30) days before canceling or making a material change in the policy.

4.   The holder shall not have operational control in any insurance company providing coverage to the vehicles operated under the certificate.

(Amend Ord 07-042, 6/5/07)

## ARTICLE IX

### JITNEY OPERATION

### Section 9.01   Purpose and Name

A.   The purpose of the jitney service is to provide economical and additional transportation choices within designated service corridors as defined herein.

B.   The name of the jitney service in Arlington shall be the Central Arlington Jitney Service.

### Section 9.02   Administration

A.   All jitney services shall be governed by this chapter and any other applicable local, state and federal laws.

B.   The Director of the Department of Transportation, or the director's designee, shall serve as administrator and shall implement and enforce the provisions of this chapter.

### Section 9.03   Certificate of Operation

A.   No person shall operate a jitney service within the jurisdiction of the City without having first applied for and obtained a certificate of operation.

B.   Once requirements stated herein are met, the Administrator shall issue a certificate to the owner/operator which shall be displayed in each vehicle which the operator has listed as providing jitney services.

### Section 9.04   Application Procedure for Certificate of Operation

Application for a certificate of operation for a jitney service shall be in writing, signed and sworn to by the applicant and shall be on a form provided by the Administrator and shall contain at least the information in Section 3.01 of this Chapter.   (Amend Ord 07-042, 6/5/07)

## Section 9.05   Investigation of Applicants

Upon receipt by the Administrator of an application for a certificate to operate hereunder, the Administrator shall make or cause to be made an investigation of the factors stated in Section 3.03 of this Chapter.   (Amend Ord 07-042, 6/5/07)

## Section 9.06   Duration of Certificate of Operation

A.   A certificate of operation, issued pursuant to this section, shall be in effect for three (3) years from the date of such issuance unless during the three (3) year period, the Administrator determines that the certificate has become subject to suspension or revocation by authority of this Chapter.   (Amend Ord 07-042, 6/5/07)

B.   If a certificate or permit expires through no fault of the renewal applicant, before approval or denial of the renewal, the renewal applicant may continue to operate the service pending action of the Administrator. However, upon notice of denial, the renewal applicant shall immediately cease operation of the service.

## Section 9.07   Renewal of Certificate

A.   Renewal of a certificate may be applied for by submission to the Administrator of an application on the form prescribed by the Administrator and payment of a nonrefundable and nontransferable application fee at least thirty (30) days before the expiration of the certificate.

B.   Applications for renewal of a certificate shall be reviewed by the Administrator without a public hearing to determine, after investigation, whether the following conditions are met:

1.   The certificate holder has performed satisfactorily under the terms of the certificate;

2.   The service provided continues to meet the public necessity and convenience as defined by this ordinance; and

ARTICLE IX - 2
(Amend Ord 10-007, 1/12/10)

3.   The certificate holder continues to comply with all requirements of this Chapter.

C.   1.   If all conditions of this section are met, the Administrator may renew the certificate.

2.   If all conditions of this section are not met, the Administrator shall make a written report to City Council of the results of his investigation and the same procedure for initial applications shall be followed unless the Administrator rejects an application on the basis of applicant's criminal history in accordance with Article VII of this Chapter.   (Amend Ord 10-007, 1/12/10)

**Section 9.08   Certificate of Operation Application Fee**

The initial application to operate a jitney shall be verified under oath, filed in triplicate and accompanied by a filing fee of no more than Fifteen Dollars ($15.00).

At the time of certificate renewal, the City may charge a fee in excess of the initial application fee as may be determined by the City Council.

**Section 9.09   Liability Insurance**

Each certificate holder shall purchase and keep in full force and effect automobile liability insurance as prescribed in Section 5.03 of this Chapter.   (Amend Ord 07-042, 6/5/07)

**Section 9.10   Service Areas**

A.   A jitney shall operate within the corporate limits of the City of Arlington servicing one or both of the designated service corridors. Jitneys may serve other areas of the City provided that such service either originates or terminates within one of the designated service areas.

B.   The North-South Service Corridor is bounded by Collins Street on the east, Cooper Street on the west; North Green Oaks Boulevard on the north; and Interstate 20 on the south.

ARTICLE IX - 3
(Amend Ord 10-007, 1/12/10)

TRANSPORTATION
9.10


C.   The East-West Service Corridor is bounded by State
~~Highway 360 on the east; Fielder Road on the west;~~
Randol Mill Road on the north; and Arkansas Lane on the
south.


## Section 9.11    Fares

A.   Rates may be advertised on the outside of the jitney.
Rates may either be fixed and, if not fixed, must be
agreed upon prior to service being rendered.   (Amend
Ord 98-114, 9/8/98)

B.   The jitney operator may negotiate with the customer a
fare for service in advance of the provision of
service.

C.   Jitneys may concurrently serve multiple fares to
multiple locations.


## Section 9.12    Solicitation of Passengers

Jitneys may cruise for passengers only within the
designated service areas and may advertise their services at
will provided that such advertisement does not violate any
local, state or federal laws.


## Section 9.13    Information to be shared with each Passenger

Each passenger shall, if requested, receive from the
jitney driver a business type card that includes the name of
the driver, company contact phone number, and the City
Administrator's phone number.


## Section 9.14    Communications

Jitneys may not use a base radio for coordination;
however, pagers and cellular phones are permitted.


## Section 9.15    Maximum Occupancy

A.   No jitney vehicle shall carry more than the
manufacturer's suggested occupancy capacity for that
vehicle.


ARTICLE IX - 4
(Amend Ord 98-114, 9/8/98)

B.  No vehicle shall have a manufacturer's suggested occupancy capacity of more than fifteen (15) including the driver.

C.  If the jitney operator has vehicles with a capacity of eight persons or more, at least one vehicle shall be handicapped accessible, or shall otherwise comply with federal requirements regarding accessibility for disabled individuals.

## Section 9.16    Use of Temporary Vehicles

A jitney owner/operator may use a temporary vehicle but shall inform the Administrator by fax or letter within five (5) days of its use.  Liability insurance coverage shall be transferred to the temporary vehicle.

## Section 9.17    Vehicle Location

Except when carrying passengers, or going to pickup passengers, or going to a garage or other place where automotive repairs are made, all vehicles shall be kept off the streets of the City and upon premises owned by or leased to, and under the supervision and control of, the holder of the certificate; provided, that jitneys may await dispatch on any non-residential property in the City with the consent of the owner thereof, and further provided that if a person is an owner and certificate holder of a jitney such person may keep their jitney at their residence.

## Section 9.18    Motor Vehicle Registration

A.  The certificate holder shall furnish the Administrator at the time of the original application or as new vehicles are purchased or rented, the following information on such motor vehicles:

1.  number of vehicles in operation at the time of the application or acquisition of any new motor vehicles;

2.  model, size, year, make, design, color scheme, motor identification number;

3.  the state license registration number of each vehicle; and

4.   passenger capacity.

B.   The certificate holder shall further furnish the Administrator with a statement that the motor vehicle is currently licensed and inspected by the State of Texas and its agencies, that it is satisfactory and in safe mechanical condition.

C.   Texas Salvage Certificates of Title as defined in Transportation Code Chapter 501 Subchapter E, are prohibited.

### Section 9.19   Motor Vehicle Identification and Markings

A.   Each jitney shall have affixed to it a Central Arlington Jitney Service sign and operator license number on the outside of the vehicle. Temporary signs, e.g. magnetic removable, are permissible. The sign shall be two feet by one foot (2' x 1') in size and shall be placed on both sides of the passenger door of each vehicle while in service.

B.   It shall be unlawful to operate a jitney upon the streets of Arlington without such signs.

C.   Such signs shall not be transferred from one vehicle to another without the Administrator's prior approval.

### Section 9.20   Certificate Holder's Duty to Screen Drivers

It is the duty of every certificate holder to screen its drivers. While it is the intent of the City in its permitting process to provide protection to the public generally by exercise of police power, such exercise shall not relieve a certificate holder from its duty to determine the fitness of its drivers, and no certificate holder shall rely on the City jitney driver's permit to excuse it from said duty.

### Section 9.21   Driver's Permit Required

A.   Every person desiring to drive a jitney vehicle in the City shall apply for and obtain a permit from the Administrator.

ARTICLE IX - 6
(Amend Ord 98-63, 5/19/98)

B.   It shall be unlawful for a certificate holder to permit
     any person to drive a jitney vehicle under authority of
     such certificate unless such driver shall have a permit
     in good standing duly issued by the Administrator.

**Section 9.22   Driver's Application, Permit and Identification**

A.   To obtain a jitney driver's permit, each applicant
     shall make a sworn written application and successfully
     pass a geography test in accordance with Article IV,
     Sections 4.02 and 4.03 of this chapter.

B.   A permit and identification cards shall also be issued
     in accordance with Article IV, Sections 4.04 and 4.05
     of this chapter.

**Section 9.23   Denial of Driver's Permit for Reasons Other Than Criminal Background**

A.   The Administrator may deny a driver's permit for the
     following:

     1.   Applicant fails to meet the criteria established
          in this Chapter.

     2.   Applicant refuses to cooperate with any
          investigation conducted by the Administrator;

     3.   Applicant makes a false statement of a material
          fact in the person's application for a driver
          permit;

     4.   Applicant refuses to submit to or does not pass a
          medical or written examination required by the
          Administrator; or

     5.   Applicant has had a driver permit revoked within a
          two year period prior to the date of application.

B.   The Administrator's notice of denial shall be provided
     in accordance with the notice provision in Article VII
     of this Chapter.

C.   An applicant has the right to appeal the denial
     provided that the appeal is in accordance with the

appeal provisions in Article VII of this Chapter.
(Amend Ord 07-042, 6/5/07)

### Section 9.24   Driver's Permit Duration and Renewal

A.   A Jitney Driver's Permit shall be valid for twelve (12) months from the date of application, unless sooner revoked for cause.

B.   Driver shall contact the Department of Transportation no later than thirty (30) days prior to expiration of the driver's permit to initiate action necessary for repermitting in accordance with Article IV, Section 4.02 of this Chapter.

### Section 9.25   Driver's Registration Files

A.   A driver's registration file shall be kept and maintained on each person to whom a driver's permit has been issued in accordance with Article IV, Section 4.07 of this chapter.

### Section 9.26   Right to Payment of Regular Fare

A.   Every driver of a jitney vehicle shall have the right to demand the payment of the regular fare before picking up a passenger and may refuse employment unless so paid; otherwise.

B.   No driver of such vehicle shall refuse or neglect to convey any orderly person upon request to any place in the City unless previously engaged or unable to do so or the request is for transportation not in keeping with the jitney service area limitations.

C.   It shall be unlawful for any driver to request payment in advance of a fare in excess of the fare prescribed by the driver's operating authority.

### Section 9.27   City Inspection

A.   The Administrator, or his agent, shall have the right to inspect jitney operators as prescribed in Section 5.08 of this Chapter.

ARTICLE IX - 8
(Amend Ord 07-042, 6/5/07)

## Section 9.28    Condition of Vehicles

It shall be unlawful to cause, suffer or allow to be operated a jitney vehicle which is not in compliance with the minimum standards prescribed in Section 5.09 of this Chapter.  (Amend Ord 07-042, 6/5/07)

### Section 9.29    Complaint Procedure

A.    Should the Administrator receive a complaint about the operations of any certificate holder, he shall reduce such complaint to writing, without advising of the complainant's name, if requested, and forward such written complaint to the certificate holder involved.

B.    The certificate holder shall reply in writing within ten (10) days.

C.    If the complaint is not resolved to the satisfaction of the Administrator, he is authorized to initiate whatever action is necessary to remedy the problem.

### Section 9.30    Responsibility of Each Person Engaging a Jitney Vehicle

By taking any action in connection with this Chapter on jitney (including, but not limited to, inspections, investigations, administration, enforcement, record keeping, and the granting, suspension and revocation of certificates, and permits), the City and its agents and employees do not in any way represent or undertake to represent the fitness of any jitney vehicle, driver, or aspect of the jitney business, and it shall be the sole responsibility of each person to decide whether to engage or use a jitney without relying on any action of the City.

### Section 9.31    Nonliability of City for Pecuniary Responsibility

Neither the City nor any officer thereof shall be held liable for the pecuniary responsibility or solvency of any certificate holder or insurer or in any manner become liable on account of any act or omission relating to the operation of a jitney.  (Amend Ord 98-63, 5/19/98)

## ARTICLE X

### PEDICAB AND NEV-FOR-HIRE OPERATION

**Section 10.01   Purpose**

The purpose of this Article is to provide for the safety of Entertainment District area residents and visitors, and to provide a systematic approach to NEV-for-hire and pedicab regulation for special events within a designated service area.

**Section 10.02   Administration**

A.   Pedicab and NEV-for-hire services shall be governed by this chapter and any other applicable local, state and federal laws.

B.   For the purpose of implementing and enforcing the provisions of this Article, Administrator means the person or persons designated by the City Manager to administer this Article.

**Section 10.03   Certificate of Operation**

A.   No person shall operate a pedicab service or NEV-for-hire service within the jurisdiction of the City without having first applied for and obtained a certificate of operation.

B.   Once requirements stated herein are met, the Administrator shall issue a certificate to the owner/operator which shall be displayed in each vehicle which the operator has listed as providing pedicab or NEV-for-hire services that indicates that the pedicab vehicle or NEV-for-hire vehicle has authority to operate in the City of Arlington and that it has been inspected.

C.   As an alternative to following the procedures set forth in Section 10.04 and Section 10.05, the Administrator may issue a certificate of operation to an applicant who provides a copy of an active permit to operate a pedicab service or an NEV-for-hire service from another city that regulates pedicab or NEV-for-hire services, however, the same fee will apply.

D.   No certificate of operation shall be issued to any operator who will own and operate less than two pedicabs.

E.   A maximum of 40 pedicabs may be authorized at any one time under all certificates of operation combined. If there is a demand for certificates for more than 40 pedicabs then certificates will be issued to qualified applicants on an annual lottery basis. If a lottery is used to issue certificates, a cap of 10 vehicle certificates per operator will be enforced.

F.   A maximum of 25 NEVs-for hire may be authorized at any one time under all certificates of operation combined. If there is a demand for certificates for more than 25 NEVs-for hire then certificates will be issued on an annual lottery basis. If a lottery is used to issue certificates, a cap of 5 vehicle certificates per operator will be enforced.

G.   All applications for a certificate of operation must be submitted by February 5. If it is determined that there are more qualified applications for certificates requested than the maximum number of certificates allowed, then all certificates for that type of vehicle up to the maximum number will be issued by lottery. If more certificates are available after the issuance of certificates for which applications were made by February 5 of that year, then certificates will be issued on a first-come, first-served basis.

**Section 10.04   Application Procedure for Certificate of Operation**

Application for a certificate of operation for a pedicab service or NEV-for-hire service shall be in writing, signed and sworn to by the applicant and shall be on a form provided by the Administrator and shall contain at least the information in Article III, Section 3.01 of this Chapter, except 3.01 (E) and (K).

**Section 10.05   Investigation of Applicants**

Upon receipt by the Administrator of an application for a certificate to operate hereunder, the Administrator shall make or cause to be made an investigation of the factors

ARTICLE X - 2
(Amend Ord 10-007, 1/12/10)

stated in Article III, Section 3.03 of this Chapter, except
3.03(4) - (9).

### Section 10.06   Duration of Certificate of Operation and Revocation

A.   A certificate of operation, issued pursuant to this section, shall be in effect for one year from the date of such issuance unless the Administrator determines that the certificate has become subject to suspension or revocation by authority of this Chapter.

B.   If a certificate or permit expires through no fault of the renewal applicant, before approval or denial of the renewal, the renewal applicant may continue to operate the service pending action of the Administrator. However, upon notice of denial, the renewal applicant shall immediately cease operation of the service.

C.   In addition to the other grounds for revocation or suspension of a Certificate outlined in this Chapter, a Certificate of Operation issued to the Certificate Holder of a pedicab or NEV-for-hire may be revoked or suspended using the procedures outlined in Article VII of this chapter if the Certificate Holder receives three (3) or more violations for offenses related to the operation and regulation of pedicabs or NEV's.

### Section 10.07   Renewal of Certificate

A.   Renewal of a certificate may be applied for by submission to the Administrator of an application on the form prescribed by the Administrator and payment of a nonrefundable and nontransferable application fee at least thirty (30) days before the expiration of the certificate.

B.   Applications for renewal of a certificate shall be reviewed by the Administrator without a public hearing to determine, after investigation, whether the following conditions are met:

1.   The certificate holder has performed satisfactorily under the terms of the certificate;

2.   The pedicab or NEV-for-hire has passed an annual inspection in accordance with Section 10.26; and

TRANSPORTATION
10.07

3. The certificate holder continues to comply with
all requirements of this Chapter.

C. 1. If all conditions of this section are met, the
Administrator may renew the certificate.

2. If all conditions of this section are not met, the
Administrator shall make a written report to City
Council of the results of his investigation and
the same procedure for initial applications shall
be followed unless the Administrator rejects an
application on the basis of applicant's criminal
history in accordance with Article VII of this
Chapter.

### Section 10.08   Certificate of Operation Application Fee

The initial application to operate a pedicab shall be
verified under oath, filed in triplicate and accompanied by
a filing fee in the amount set forth by Council resolution.
At the time of certificate renewal, the City may charge a
fee in the amount set forth by Council resolution.

### Section 10.09   Liability Insurance

A. Each certificate holder shall purchase and keep in full
force and effect liability insurance. The minimum
insurance required under this section must:

1. Be obtained from a carrier that is admitted and
licensed to transact insurance in the State of
Texas;

2. Be written on an occurrence basis;

3. Cover any and all pedicabs or NEVs-for-hire and
drivers in the holder's fleet and all drivers of
such pedicabs and NEVs-for-hire;

4. Be acceptable to the City;

5. Name the City of Arlington and its officers and
employees as additional primary insured;

ARTICLE X – 4
(Amend Ord 10-007, 1/12/10)

6.  Provide minimum coverage in an amount no less than one million dollars ($1,000,000) combined single limit liability per occurrence;

7.  Provide that all claims will be paid on a first dollar basis by the insurance provider;

8.  Not be obtained from an assigned risk pool;

9.  Not contain policy exclusions that would change or limit coverage for passengers entering or exiting pedicabs; and

10. Provide that all pedicabs or NEVs-for-hire permitted to operate under the certificate are listed as scheduled vehicles covered under the policy.

B.  All liability insurance coverage must include a rider that provides that at all levels of coverage, there must be notification to the City in writing not less than thirty (30) days before canceling or making a material change in the policy.

C.  The holder shall not have operational control in any insurance company providing coverage to the vehicles operated under the certificate.

D.  A neighborhood electric vehicle also requires the same financial responsibility or insurance as a passenger car.

## Section 10.10  Service Areas and Time

A pedicab or NEV-for-hire shall operate only on the day of Special Events, beginning no sooner than the opening of the parking lots at a Major Sports Venue and ending no later than 3 hours after the end of a Special Event, and only in the designated Special Event service area shown in the map below.  In addition, it is unlawful for a pedicab or NEV-for-hire to operate on any sidewalk or on Collins Street between Highway I-30 and Division Street.

TRANSPORTATION
10.10



**Section 10.11   <u>Fares</u>**

A.   Rates may be advertised on the outside of the pedicab or NEV-for-hire.  Rates may either be fixed and, if not fixed, must be agreed upon prior to service being rendered unless the fare is "tips only" at the customer's discretion.

B.   The pedicab or NEV-for-hire operator may negotiate with the customer a fare for service in advance of the provision of service.

C.   Pedicabs and NEVs-for-hire may concurrently serve multiple fares to multiple locations.

ARTICLE X – 6
(Amend Ord 10-007, 1/12/10)

**Section 10.12    Solicitation of Passengers**

Pedicabs and NEVs-for-hire may cruise for passengers only within the designated service areas and may advertise their services at will provided that such advertisement does not violate any local, state or federal laws.

**Section 10.13    Information to be shared with each Passenger**

Each passenger shall, if requested, receive from the pedicab or NEV-for-hire driver a business type card that includes the name of the driver, company contact phone number, and the City Administrator's phone number.

**Section 10.14    Communications**

Pedicabs and NEVs-for-hire may not use a base radio for coordination; however, pagers and cellular phones are permitted.

**Section 10.15    Maximum Occupancy**

No pedicab or NEV-for-hire shall carry more than the manufacturer's suggested occupancy capacity for that vehicle.

**Section 10.16    Pedicab Location**

Except when carrying passengers, or going to pickup passengers, or going to a garage or other place where repairs are made, all pedicabs shall be kept off the streets of the City and upon premises owned by or leased to, and under the supervision and control of, the holder of the certificate; provided, that pedicabs may await dispatch on any non-residential property in the City with the consent of the owner thereof, and further provided that if a person is an owner and certificate holder of a pedicab such person may keep their pedicab at their residence.

**Section 10.17    Pedicab and NEV-for-hire Registration**

A.    The certificate holder shall furnish the Administrator at the time of the original application or as new

vehicles are purchased or rented, the following information on such vehicles:

1. number of vehicles in operation at the time of the application or acquisition of any new vehicles;

2. model, size, design, color scheme, identification number;

3. passenger capacity;

4. proof of inspection by an inspector approved by the Administrator unless vehicle will be inspected during the application process by an inspector approved by the Administrator.

**Section 10.18   Vehicle Identification and Markings**

A. Each pedicab and NEV-for-hire shall have affixed to it an operator certificate number sign on the outside of the vehicle. Temporary signs, e.g. magnetic removable, are permissible. The operator certificate number shall be displayed in numbers no less than 2 inches in height and shall be placed on the outside of the passenger seating area of each vehicle while in service.

B. It shall be unlawful to operate a pedicab or NEV-for-hire upon the streets of Arlington without a certificate sign.

C. Such signs shall not be transferred from one vehicle to another without the Administrator's prior approval.

D. An NEV-for-hire must display a Texas vehicle license plate whether it is designed as a 4-wheeled truck (truck plate) or a 4-wheeled passenger vehicle (passenger car plate).

**Section 10.19   Certificate Holder's Duty to Screen Drivers**

It is the duty of every certificate holder to screen its drivers. While it is the intent of the City in its permitting process to provide protection to the public generally by exercise of police power, such exercise shall not relieve a certificate holder from its duty to determine the fitness of its drivers, and no certificate holder shall

rely on the City pedicab or NEV-for-hire driver's permit to excuse it from said duty.

## Section 10.20  Driver's Permit Required

A.   Every person desiring to drive a pedicab or NEV-for-hire in the City shall apply for and obtain a permit from the Administrator.

B.   It shall be unlawful for a certificate holder to permit any person to drive a pedicab or NEV-for-hire under authority of such certificate if that driver does not have a valid driver's permit duly issued by the Administrator.

## Section 10.21  Driver's Application, Permit and Identification

A.   To obtain a driver's permit, each applicant shall make a sworn written application in the form set forth by the Administrator, but including at least the information in Article IV, Sections 4.02(B) and 4.03 of this chapter.  Proof of a physical exam as set forth in Section 4.02(B)(6) of this chapter is not required for a driver's permit.

B.   A permit shall be issued to an applicant that meets all criteria set forth in Section 4.04 of this chapter.

C.   As an alternative to following the procedures set forth in Section 10.21(A) and (B), the Administrator may issue a driver's permit to a driver who provides a copy of an active permit from another city that regulates pedicab or NEV-for-hire drivers, however, the same fee will apply.

## Section 10.22  Denial of Driver's Permit for Reasons Other Than Criminal Background

A.   The Administrator may deny a driver's permit for the following:

   1.   Applicant fails to meet the criteria established in this Chapter;

2.  Applicant refuses to cooperate with any investigation conducted by the Administrator;

3.  Applicant makes a false statement of a material fact in the person's application for a driver permit;

4.  Applicant refuses to submit to or does not pass a medical or written examination required by the Administrator; or

5.  Applicant has had a driver permit revoked within a two year period prior to the date of application.

B.  The Administrator's notice of denial shall be provided in accordance with the notice provision in Article VII of this Chapter.

C.  An applicant has the right to appeal the denial provided that the appeal is in accordance with the appeal provisions in Article VII of this Chapter.

**Section 10.23  Driver's Permit Duration, Renewal and Revocation**

A.  A Driver's Permit shall be valid for two years from the date of application, unless sooner suspended or revoked.

B.  Driver shall contact the Administrator no later than thirty (30) days prior to expiration of the driver's permit to initiate action necessary for repermitting in accordance with Article IV, Section 4.02 of this Chapter.

C.  In addition to the other grounds for revocation or suspension of a driver's permit outlined in this Chapter, a driver's permit issued to a pedicab or NEV-for-hire driver may be revoked or suspended using the procedures outlined in Article VII of this Chapter if the driver receives three (3) or more violations for offenses related to the operation of a pedicab, including passing through or moving traffic barricades and violations of state law.

## Section 10.24   Driver's Registration Files

A.   A driver's registration file shall be kept and maintained on each person to whom a driver's permit has been issued in accordance with Article IV, Section 4.07 of this chapter.

## Section 10.25   Right to Payment of Regular Fare

A.   Every driver of a pedicab or NEV-for-hire shall have the right to demand the payment of the regular fare before picking up a passenger and may refuse employment unless so paid otherwise.

B.   No driver of such vehicle shall refuse or neglect to convey any orderly person upon request to any place in the City unless previously engaged or unable to do so or the request is for transportation not in keeping with the pedicab and NEV-for-hire service area limitations.

C.   It shall be unlawful for any driver to request payment in advance of a fare in excess of the fare prescribed by the driver's operating authority.

## Section 10.26   City Inspection

A.   The Administrator, or his agent, or any member of the Arlington Police Department, shall have the right to inspect pedicab and NEV-for-hire operators as prescribed in Article V, Section 5.08, of this Chapter to ensure compliance with this Article.

B.   It shall be a violation of this Article for any person to delay, interfere with or refuse to allow such inspection. Any pedicab or NEV-for-hire vehicle found not to conform to the standards and tolerances provided for in this Article shall not be approved by Administrator and shall be ordered out of service. The Administrator shall make or cause to be made, at least every twelve (12) months, inspections of pedicab and NEV-for-hire vehicles to ensure their compliance with this Article. The Administrator's office shall maintain a record of each inspection and shall provide the holder a copy of same. Once a pedicab or NEV-for-hire vehicle is inspected and found to be in compliance

with this Article, the Administrator shall affix a pedicab or NEV-for-hire decal on the vehicle.

C.   Annually, the holder shall provide an inspection report per pedicab or NEV-for-hire vehicle from an inspector approved by the Administrator. The Administrator shall not require an inspection of a pedicab or NEV-for-hire if the owner provides proof that the vehicle passed an inspection within the last year from another city that regulates pedicabs or NEVs-for-hire, however, the same fee will apply.

D.   If a pedicab or NEV-for-hire is involved in an accident or collision during the term of the operating authority, the holder shall notify the Administrator's office within five (5) days after the accident or collision. Before operating the pedicab or NEV-for-hire again under the operating authority, a holder shall have the vehicle re-inspected for safety and shall send to the ground Administrator's office a sworn affidavit that the vehicle has been restored to its previous condition.

### Section 10.27   Condition and Construction of Pedicabs

A.   The pedicab must be a Delta-style construction, meaning the wheels are held together by single steel frame and the distance between each wheel remains constant while turning.

B.   The passenger seating area of the pedicab must NOT be attached by means of a trailer; i.e., a regular two-wheeled bicycle with a trailer attached to tow passengers will not be allowed.

C.   The certificate holder shall keep its equipment in a neat, clean, operable and safe condition with state and federal laws, attractive to the general public.

D.   The certificate holder shall identify each pedicab vehicle with the name of the entity holding the operating authority and the unit number of each vehicle located on the rear of the vehicles; such letters and numbers shall be at least two (2) inches high.

E.   The certificate holder or driver shall, at all times, provide and maintain in good operating condition the following items and equipment for each pedicab vehicle:

1.   Head lights;

2.   Tail lights;

3.   A braking system;

4.   Rubber on all wheels;

5.   A slow moving vehicle sign attached to the rear of the vehicle;

6.   Evidence of insurance;

7.   Inspection certificate;

8.   Safety helmet;

9.   Seat belts.

**Section 10.28   Condition and Construction of NEVs-for-hire**

The certificate holder or driver shall, at all times, provide and maintain in good operating condition the following items and equipment for each NEV-for-hire vehicle:

1.   Head lights;

2.   Tail lights;

3.   Brake lights and parking brake;

4.   Turn signals;

5.   A slow moving vehicle sign attached to the rear of the vehicle;

6.   Evidence of insurance;

7.   Inspection certificate;

8.   Exterior mirrors;

9.   Seat belts;

10.  Glazed windshield;

11.  Reflectors.

**Section 10.29   Complaint Procedure**

A.    Should the Administrator receive a complaint about the operations of any certificate holder, he shall reduce such complaint to writing, without advising of the complainant's name, if requested, and forward such written complaint to the certificate holder involved.

B.    The certificate holder shall reply in writing within ten (10) days.

C.    If the complaint is not resolved to the satisfaction of the Administrator, he is authorized to initiate whatever action is necessary to remedy the problem.

**Section 10.30   Responsibility of Each Person Engaging a Pedicab or NEV-for-hire**

By taking any action in connection with this Chapter on pedicabs or NEVs-for-hire (including, but not limited to, inspections, investigations, administration, enforcement, record keeping, and the granting, suspension and revocation of certificates, and permits), the City and its agents and employees do not in any way represent or undertake to represent the fitness of any pedicab or NEV-for-hire vehicle, driver, or aspect of the pedicab or NEV-for-hire business, and it shall be the sole responsibility of each person to decide whether to engage or use a pedicab or NEV-for-hire without relying on any action of the City.

**Section 10.31   Nonliability of City for Pecuniary Responsibility**

Neither the City nor any officer thereof shall be held liable for the pecuniary responsibility or solvency of any certificate holder or insurer or in any manner become liable on account of any act or omission relating to the operation of a pedicab or NEV-for-hire.

(Amend Ord 10-007, 1/12/10)

## ARTICLE XI

### MOTOR VEHICLE IDLING RESTRICTIONS

### Section 11.01   Applicability and Definitions

Article XI applies during the period of April 1 through October 31 of each calendar year.  The terms used in this Article have the meanings commonly ascribed to them in the field of air pollution control, unless specifically defined in the Texas Health and Safety Code or in the rules of the Texas Commission on Environmental Quality.

### Section 11.02   Idling Prohibited

A.   No person shall cause, suffer, allow, or permit the primary propulsion engine of a motor vehicle to idle for more than five consecutive minutes when the motor vehicle is not in motion.

B.   No driver using the vehicle's sleeper berth may idle the vehicle:

1.   in a residential area as defined by the Texas Local Government Code, Section 244.001, as amended; [1]

2.   in a school zone;

3.   within 1,000 feet of a hospital; or

4.   within 1,000 feet of a public school during its hours of operation.

---

[1]At the time of adoption of this Article XI, Section 11.02, "Residential area" as set forth in Section 244.001 of the Texas Local Government Code means:

(A)   an area designated as a residential zoning district by a governing ordinance or code or an area in which the principal permitted land use is for private residences;

(B)   a subdivision for which a plat is recorded in the real property records of the county and that contains or is bounded by public streets or parts of public streets that are abutted by residential property occupying at least 75 percent of the front footage along the block face; or

(C)   a subdivision for which a plat is recorded in the real property records of the county and a majority of the lots of which are subject to deed restrictions limiting the lots to residential use.

C.   An offense under Subsection B is punishable by a fine not to exceed $500. Subsection B expires September 1, 2009.

### Section 11.03   Exemptions

The restrictions in Section 11.02, Subsection A, "Idling Prohibited," do not apply to:

A.   a motor vehicle that has a gross vehicle weight rating of 14,000 pounds or less, and does not have a sleeper berth;

B.   motor vehicle that has a gross vehicle weight rating of 14,000 pounds or less, after September 1, 2009;

C.   a motor vehicle forced to remain motionless because of traffic conditions over which the operator has no control;

D.   a motor vehicle being used by the United States military, national guard, or reserve forces, or as an emergency or law enforcement motor vehicle;

E.   the primary propulsion engine of a motor vehicle providing a power source necessary for a mechanical operation, other than propulsion, and/or passenger compartment heating or air conditioning;

F.   the primary propulsion engine of a motor vehicle being operated for maintenance or diagnostic purposes;

G.   the primary propulsion engine of a motor vehicle being operated solely to defrost a windshield;

H.   the primary propulsion engine of a motor vehicle being used to supply heat or air conditioning necessary for passenger comfort or safety in vehicles intended for commercial or public passenger transportation, or passenger transit operations, in which case idling up to a maximum of 30 minutes is allowed;

I.   the primary propulsion engine of a motor vehicle being used to provide air conditioning or heating necessary for employee health or safety while the employee is using the vehicle to perform an essential job function related to roadway construction or maintenance;

J.    the primary propulsion engine of a motor vehicle being used as airport ground support equipment;

K.    the owner of a motor vehicle rented or leased to a person that operates the vehicle and is not employed by the owner; or

L.    a motor vehicle when idling is necessary to power a heater or air conditioner while a driver is using the vehicle's sleeper berth for a government-mandated rest period and is not within two miles of a facility offering external heating and air conditioning connections at a time when those connections are available.   This Subsection L expires September 1, 2009.

(Amend Ord 10-007, 1/12/10)

## ARTICLE XII

### MISCELLANEOUS PROVISIONS

**Section 12.01   Transportation for Unlawful Purposes**

No certificate holder or driver shall knowingly, without duress, provide transportation for any person in furtherance of the commission of a criminal offense by such person.

**Section 12.02   Applicability of All Other Laws**

All vehicles, certificate holders, and drivers shall be subject to all other laws, civil or criminal, governing the use of vehicles within the City and State.

**Section 12.03   Advertising**

No certificate holder shall engage in any misleading or untruthful advertising.

(Amend Ord 10-007, 1/12/10)

### ARTICLE XIII

### ENFORCEMENT

### Section 13.01  Violation a Misdemeanor

A.  A person commits an offense if the person performs an act prohibited by this Chapter or fails to perform an act required by this Chapter.

B.  An offense under this chapter is a Class "C" misdemeanor punishable by a fine not to exceed $500.00. Each act of violation and each day in which a violation is permitted to continue shall constitute a separate offense.

### Section 13.02  No Culpable Mental State Required

Except as otherwise provided in this Chapter, proof of a culpable mental state is not required for a conviction of an offense under this Chapter.

### Section 13.03  Other Remedies

The City shall be entitled to pursue all other criminal and civil remedies to which it is entitled under any other law and the remedies provided herein are not exclusive.

(Amend Ord 10-007, 1/12/10)