IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ASSOCIATION OF TAXICAB OPERATORS, USA., *et al.*, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:10-CV-1638-N |
| YELLOW CHECKER CAB COMPANY OF DALLAS/FORT WORTH, INC., *et al.*, | § § § § § | |
| Defendants. | § § | |

# ORDER

This Order addresses four motions for summary judgment or partial summary judgment, one filed by each of Defendants Yellow Checker Cab Company of Dallas/Fort Worth, Inc. ("Yellow") [Doc. 22]; Jet Taxi, Inc. ("Jet") [25]; Irving Holdings, Inc. ("Irving") [29]; and MSS Transportation, Inc. d/b/a Freedom Cab Company ("Freedom") [30]. Each movant has requested relief for itself only, and each requests different relief. The Court grants Yellow's, Jet's, and Irving's motions. The Court denies Freedom's motion.

## I. THE DALLAS-FORTH WORTH AREA
## TAXICAB ANTITRUST DISPUTE

Dallas, Tarrant, and Collin Counties do not allow individual drivers to operate taxicabs. Instead, a licensed taxicab driver seeking to operate a taxicab must pay a "stand fee" to a permit holder ("Holder"), an entity approved by local regulators to operate a fleet of taxicabs. In exchange for the stand fee, the Holder gives the driver one or more of several

items and services: a decal that allows the driver to operate a taxi in a particular place or places, insurance, dispatch services, branding, and trade name rights. Decal holders charge various stand fees, depending on the decals and dispatch services the operators receive in exchange for paying the fee.

Plaintiffs D.E.C.D.A., Inc. d/b/a StarCab; Maredi Corporation d/b/a United Cab Company; E.P.D.A., Inc. d/b/a Alamo Cab, Inc.; and Walaal Corporation d/b/a Ambassador Cab Company (collectively "Holder Plaintiffs") are authorized taxicab decal holders in Dallas, Tarrant, and Collin Counties. The other plaintiffs are licensed drivers who operate taxicabs in the region and the Association of Taxicab Operators, which represents members who claim to be affected by Defendants' conduct. Most of the defendants who have answered in this case (collectively "Answering Defendants")[1] are also decal holders (collectively "Holder Defendants") and thus the Holder Plaintiffs' direct competitors. The Holder Defendants are Yellow; Freedom; Jet; ABC Cab, Inc. d/b/a Eagle Cab Company ("Eagle"); U.S. Cab, LLC ("U.S. Cab"); Ambaco, LLC d/b/a Diamond Cab Company ("Diamond"); and Racason, Inc. d/b/a State Taxicab Company ("State Taxicab"). The remaining defendant, Irving Holdings, Inc. ("Irving") is the corporate parent of the other Answering Defendants.

Plaintiffs allege that the Holder Defendants collectively authorize approximately fifty-two percent of the taxicabs operating in Dallas, Tarrant, and Collin Counties. They

---

[1] Defendants Checker Cab Company of Dallas, LTD and Checker Cab Company of Dallas Management, LLC have not answered or otherwise appeared.

further assert that two individuals, Jack Bewley and Jeff Finkel, control all the Defendant entities. *Id.* at ¶ 34. Bewley and Finkel allegedly gained this control through a series of mergers or acquisitions accomplished in the latter half of 2007. *Id. at* ¶ 45. The Holder Defendants allegedly charged several different stand fees that are at issue in this case: (1) a $215 weekly fee that included use of a computer dispatch system, (2) a $110 weekly fee that included a decal authorizing service at DFW Airport and in the City of Dallas, and (3) a $99 monthly fee enabling the operator to pick up passengers only at DFW Airport (the "DFW Stand Fee"). Compl. ¶ 33. The DFW Stand Fee does not allow a taxicab to pick up passengers in any city or at Dallas Love Field, and it does not include any dispatch or GPS services.

Plaintiffs's assert that the Holder Defendants charge stand fees to their associated taxicabs that are lower than the stand fees that the Holder Plaintiffs charge to their associated taxicabs, and also lower than the Holder Defendants' average operational costs. Compl.¶¶ 30-33, 42. They also allege that Defendants conspired to monopolize the taxicab industry by use of these lower stand fees in violation of the Clayton Act and engaged in price fixing and predatory pricing in violation of the Sherman Antitrust Act. *Id.* ¶¶ 35–46. Reading the Complaint broadly, then, Plaintiffs appear to allege five causes of action: (1) price fixing under section 1 of the Sherman Act, 15 U.S.C. § 1; (2) price fixing under section 2 of the Sherman Act, *id.* § 2; (3) predatory pricing under section 1 of the Sherman Act; (4) predatory pricing under section 2 of the Sherman Act; and (5) illegal mergers in violation of section 7 of the Clayton Act, 15 U.S.C. § 18.

Yellow, Jet, Irving, and Freedom now move for summary judgment or partial summary judgment. Yellow asks for summary judgment as to all Sherman Act claims and the portions of the Clayton Act claim based on predatory pricing and price fixing. Jet requests summary judgment as to both the Sherman Act predatory pricing claims and the Clayton Act predatory pricing claim. Irving moves for summary judgment as to the Clayton Act claim. Finally, Freedom moves for summary judgment as to all claims.

## II. STANDARDS OF REVIEW

### A. Summary Judgment

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, "he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the

nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322-25. Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Indeed, factual controversies are resolved in favor of the nonmoving party "'only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts.'" *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

Because Plaintiffs did not respond to any of the four summary judgment motions Defendants have filed, the Court accepts each movant's asserted facts as undisputed. *See, e.g.*, *United States v. Dallas Area Rapid Transit*, 96 F.3d 1445 (5th Cir. 1996) (affirming grant of summary judgment when district court accepted movant's evidence as undisputed after nonnmovant failed to respond). "A summary judgment nonmovant who does not respond to the motion is relegated to [his] unsworn pleadings, which do not constitute summary judgment evidence." *Bookman v. Schubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)). If a party "fail[s] to respond to a [] motion for summary judgment, the inquiry must be whether

the facts presented by the [moving party] create an appropriate basis to enter summary judgment against the" nonmoving party. *Adams*, 465 F.3d at 164.

### B.  *Sherman Act*

*1. Section 1.* – Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce." 15 U.S.C. § 1. Section 1 prohibits only actions that *unreasonably* restrain competition. *See Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 885 (2007). To prevail on a claim under section 1, a plaintiff must prove three elements: (1) the defendants engaged in a conspiracy; (2) that restrained trade; (3) in the relevant market. *See Golden Bridge Tech., Inc. v. Motorola, Inc.*, 547 F.3d 266, 271 (5th Cir. 2008) (citing *Apani Sw., Inc. v. Coca-Cola Enters., Inc.*, 300 F.3d 620, 627 (5th Cir. 2002). If, after the plaintiff successfully proves that a conspiracy occurred, "the court determines that the defendant's conduct 'would always or almost always tend to restrict competition and decrease output,' the restraint is *per se* illegal and no further inquiry occurs." *Id.* at 271 (quoting *Leegin*, 551 U.S. at 886). If the court deems that no *per se* violation has occurred, "the plaintiff will also have to prove that the conduct unreasonably restrains trade in light of actual market forces under the rule of reason." *Id.* "To prove a Section 1 violation under rule of reason analysis, [plaintiffs] must show that the defendants' activities caused an injury to competition." *See Doctor's Hosp., Inc. v. Se. Med. Alliance, Inc.*, 123 F.3d 301, 307 (5th Cir. 1997) (citing *Roy B. Taylor Sales, Inc. v. Hollymatic Corp.*, 28 F.3d 1379, 1385 (5th Cir. 1994)). Under this analysis, courts balance "the anticompetitive evils of a restrictive practice . . . against any procompetitive

benefits or justifications within the confines of the relevant market." *Id.* (quoting *Hornsby Oil Co. v. Champion Spark Plug Co.*, 714 F.2d 1384, 1392 (5th Cir. 1983)).

   *2. Section 2.* – Section 2 of the Sherman Act makes it unlawful for any person or firm to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States." 15 U.S.C. § 2. Plaintiffs allege that Defendants attempted to monopolize or conspired to monopolize the Dallas-Fort Worth area taxicab market. Attempted monopolization has three elements: that (1) the defendant engaged in predatory or exclusionary conduct, (2) the defendant possessed the specific intent to monopolize, and (3) there was a dangerous probability that the defendant would succeed in his attempt. *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 302 (5th Cir. 2003) (citing *Taylor Pub. Co. v. Jostens, Inc.*, 216 F.3d 465, 474 (5th Cir. 2000)). A conspiracy to monopolize, on the other hand, requires proof of four elements: (1) the existence of specific intent to monopolize, (2) the existence of a combination or conspiracy to achieve that end, (3) overt acts in furtherance of the combination or conspiracy, and (4) an effect upon a substantial amount of interstate commerce. *Stewart Glass & Mirror, Inc. v. U.S. Auto Glass Disc. Ctrs., Inc.*, 200 F.3d 307, 316 (5th Cir. 2000) (quoting *N. Miss. Commc'ns, Inc. v. Jones*, 792 F.2d 1330 (5th Cir. 1986)).

### C. Clayton Act

Section 7 of the Clayton Act prohibits a corporation from acquiring the stock or assets of another corporation "in any line of commerce" in which the effect "may be substantially

to lessen competition, or to tend to create a monopoly." 15 U.S.C. § 18. The basic purpose of section 7 is "to prevent economic concentration in the American economy by keeping a large number of small competitors in business." *United States v. Von's Grocery Co.*, 384 U.S. 270, 275 (1966). For a private plaintiff to recover under section 7, he "must prove *antitrust* injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Phototron Corp. v. Eastman Kodak Co.*, 842 F.2d 95, 99 (5th Cir. 1988) (emphasis in original) (citing *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)). To qualify as an antitrust injury, an injury must be "attributable to an anti-competitive aspect of the practice under scrutiny." *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990) (citing *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 109-10 (1986)).

### D.  Predatory Pricing and Price Fixing

Plaintiffs' allegations are predicated on two illegal acts that Defendants allegedly performed: predatory pricing and price fixing. The Supreme Court is skeptical of predatory pricing claims, since the allegedly unlawful behavior may actually benefit consumers. *See Matsushita*, 475 U.S. at 594 ("[C]utting prices in order to increase business often is the very essence of competition. Thus, mistaken inferences in cases such as this one are especially costly, because they chill the very conduct the antitrust laws are designed to protect."). "Accordingly, the standard for inferring an impermissible predatory pricing scheme is high." *Stearns Airport Equip. Co., Inc. v. FMC Corp.*, 170 F.3d 518, 528 (5th Cir. 1999). Specifically, a plaintiff must prove that (1) the prices complained of are below an appropriate

measure of the alleged monopolist's costs and (2) the alleged monopolist has a reasonable chance of recouping the losses sustained through below-cost pricing. *Id.* (citing *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 222–23 (1993)).

As to price fixing, it is unclear whether Plaintiffs allege the horizontal (i.e., among competitors) or vertical (i.e, along the supply chain) variety. Horizontal price fixing is *per se* illegal. *See Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 315 (2d Cir. 2008) (citing *Arizona v. Maricopa Cnty. Med. Soc.*, 457 U.S. 332 (1982)). Courts analyze vertical price fixing under a "rule of reason" analysis. *PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, No. 2:03-CV-107(TJW), 2009 WL 938561, at *1 (E.D. Tex. Apr. 6, 2009), *aff'd*, 615 F.3d 412 (5th Cir. 2010) (citing *Leegin*, 551 U.S. 877).

### III. YELLOW IS ENTITLED TO PARTIAL SUMMARY JUDGMENT

Yellow has moved for partial summary judgment on the following claims: price fixing and predatory pricing under section 1 of the Sherman Act, price fixing and predatory pricing under section 2 of the Sherman Act, and all claims under the Clayton act based on price fixing and predatory pricing. Yellow's Mot. Summ J. 1–2. Yellow's motion as to section 2 of the Sherman Act and as to the Clayton act amounts to a "no-evidence" summary judgment motion as to those claims; that is, Yellow points out that there is no evidence to support essential elements of Plaintiffs' claims rather than submitting evidence negating those elements. *See Celotex*, 477 U.S. at 322 (1986). As to all the claims Yellow challenges, Yellow has successfully shifted the burden to Plaintiffs to establish that there is a genuine

issue of material fact so that a reasonable jury might return a verdict in its favor. *See Matsushita*, 475 U.S. at 586–87 (1986)

### A. Plaintiffs' Claims Against Yellow Under Section 1 of the Sherman Act Fail

Section 1 of the Sherman Act prohibits combinations and conspiracies that restrain trade. 15 U.S.C. § 1. The Supreme Court has held that a subsidiary cannot illegally conspire with a corporate parent under section 1. *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 777 (1984). Moreover, the Fifth Circuit has stated that there is "no relevant difference between a corporation wholly owned by another corporation, two corporations wholly owned by a third corporation or two corporations wholly owned by three persons who together manage all affairs of the two corporations." *Century Oil Tool, Inc. v. Prod. Specialties, Inc.*, 737 F.2d 1316, 1317 (5th Cir. 1984). The Court accordingly finds that Yellow cannot have illegally conspired with its sister companies, the Holder Defendants, or with its corporate parent, Irving. All of these entities "always had 'a unity of purpose or a common design.'" *Id.* at 1317 (quoting *Copperweld*, 467 U.S. at 771). This is especially true since, in this case, Plaintiffs allege that Jack Bewley and Jeff Finkel control the Holder Defendants. Compl. ¶ 34. *Accord El Aguila Food Prods., Inc. v. Gruma Corp.*, 301 F. Supp. 2d 612, 627 (S.D. Tex. 2003) ("[N]o combination or conspiracy is possible between corporations that are commonly owned and controlled and that regularly conduct their business affairs in such a manner that they constitute, in effect, a single business entity." (citing *Computer Identics Corp. v. S. Pac. Co.*, 756 F.2d 200, 205 (1st Cir. 1985))), ), *aff'd*,

131 F. App'x 450 (5th Cir. 2005) (unpub.).  Yellow is thus entitled to summary judgment as to all section 1 claims.

## B.  Plaintiffs' Claims Against Yellow Under Section 2 of the Sherman Act Fail

Plaintiffs argue that Defendants attempted to monopolize and conspired to monopolize the Dallas-Fort Worth area taxicab market.  Both claims fail for want of evidence.  First, Plaintiffs neither allege nor come forward with summary judgment proof that Defendants had the specific intent to monopolize.  This is fatal to their claim, as specific intent is an element of an attempt claim.  *See Bell Atl.*, 339 F.3d at 302.  Second, Plaintiffs must come forward with summary judgment evidence sufficient to raise a fact issue regarding whether Defendants engaged in predatory or exclusionary conduct.  They allege both predatory pricing and price fixing, but the evidence in the record supports neither allegation.  As to predatory pricing, there is no summary judgment evidence either that (1) Defendants' prices are below an appropriate measure of their costs, or (2) Defendants had a reasonable chance of recouping any losses through below-cost pricing.  *See Stearns*, 170 F.3d at 528.  As to price fixing, Plaintiffs do not point to evidence to support either a vertical or a horizontal scheme, not least because they allege that Defendants are controlled by the same two people. Yellow is therefore entitled to summary judgment on Plaintiffs' claims under section 2 of the Sherman Act.

## C.  Plaintiffs' Clayton Act Claims Fail for Lack of Antitrust Injury

Plaintiffs have not established that Defendants have violated any antitrust laws.  *A fortiori*, they cannot show that they have suffered any antitrust injury.  *See Brunswick*, 429

ORDER – PAGE 11

U.S. at 489 (defining antitrust injury as "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful"). Because they have pointed to no evidence proving they suffered an antitrust injury, Plaintiffs' Clayton Act claim fails as to Yellow. Yellow asks for, and is entitled to, summary judgment as to all claims Plaintiffs assert that are based on allegations that Yellow engaged in predatory pricing or price fixing, whether those claims are asserted under the Sherman Act or the Clayton Act.[2]

### D. Conclusion as to Yellow

Yellow has proved that it is entitled to the relief it requests: summary judgment as to Plaintiffs' Sherman Act and Clayton Act claims based on predatory pricing and price fixing.

### IV. JET IS ENTITLED TO PARTIAL SUMMARY JUDGMENT AS TO ALL PREDATORY PRICING CLAIMS

Jet asks for partial summary judgment as to all claims based on the theory that Jet engaged in predatory pricing. Plaintiff's predatory-pricing claim is based on the $99 DFW Stand Fee. Compl. ¶ 42. To succeed on this claim, Plaintiffs must prove that (1) the prices they complain of are below an appropriate measure of Jet's costs, and (2) Jet has a reasonable chance of recouping the losses through below-cost pricing. *See Stearns*, 170 F.3d at 528. Plaintiffs allege that the $99 DFW Stand Fee is priced below the Holder Defendants' average costs. Compl. ¶ 42. Jet, however, point to the testimony of Elizabeth George, Irving's controller, regarding Defendants' profit figures between 2007 and 2010, the years when the

---

[2]The Court understands Plaintiffs to assert that the Plaintiffs' Clayton Act claim is based on the mergers or acquisitions accomplished by Defendants, not on predatory pricing or price fixing. To the extent that Plaintiffs assert a Clayton Act claim based on predatory pricing or price fixing, however, Yellow is entitled to summary judgment as to that claim.

DFW Stand Fee cost $99.  George calculates that, on average, Jet made a profit on its affiliated taxicabs whose operators paid the $99 DFW Stand Fee during those years.  Aff. of Elizabeth George ¶ 13, Jet's App. to Mot. Partial Summ. J. 5.  Moreover, Defendants' expert E. Allen Jacobs testified that "market outcomes[,] . . . not predatory pricing" set the DFW Stand Fee's price at $99.  Plaintiffs have not responded to this evidence, which the Court accordingly accepts for the purposes of this motion.  *See Eversley*, 843 F.2d at 174.  Given the undisputed testimony of George and Jacobs, the evidence in the summary judgment record demonstrates that the complained-of prices were not below Jet's variable costs.  Plaintiffs cannot make out a predatory-pricing claim against Jet, and Defendants are accordingly entitled to summary judgment as to all claims under the Sherman Act and the Clayton Act based on the theory that Jet engaged in predatory pricing.

## V.  IRVING IS ENTITLED TO SUMMARY JUDGMENT AS TO THE CLAYTON ACT CLAIMS

Irving asks for partial summary judgment on all claims that it violated the Clayton Act.  As described above, Plaintiffs' Clayton Act claims against Yellow fail because Plaintiffs have failed to prove that they suffered an antitrust injury.  *See supra* section III.C.  For the same reasons, Plaintiffs have not shown that Irving caused them an antitrust injury.  Plaintiffs' Clayton Act claims against Irving thus fail as a matter of law, and Irving is entitled to summary judgment on them.

## VI. FREEDOM IS NOT ENTITLED TO SUMMARY JUDGMENT UNDER THE DOCTRINE OF STATE-ACTION IMMUNITY

Freedom asserts that it is protected by the state-action immunity exception and is therefore is entitled to summary judgment as to all claims. To establish state-action immunity for Clayton and Sherman Act violations, "[f]irst, the challenged restraint must be one clearly articulated and affirmatively expressed as state policy; second, the policy must be actively supervised by the State itself." *Cal. Retail Liquor Dealers Assoc. v. Midcal Aluminum, Inc.*, 445 U.S. 97, 105 (1980). This two-pronged *Midcal* test applies to private actors. *S. Motor Carriers Rate Conference, Inc. v. United States*, 471 U.S. 48, 61 (1985).

Freedom and the other Defendants' alleged restraints on competition are not pursuant to a clearly articulated and affirmatively expressed state policy. Texas state law authorizes municipalities to licence taxicabs and regulate various aspects of the taxi business:

> (a) A municipality by ordinance: shall license, control, and otherwise regulate each private passenger vehicle . . . that provides passenger taxicab transportation services for compensation and is designed for carrying no more than eight passengers . . . .
>
> (b) The ordinance may include: (1) regulation of the entry into the business of providing passenger taxicab or limousine transportation services, including controls, limits, or other restrictions on the total number of persons providing the services; (2) regulation of the rates charged for the provision of the services; (3) establishment of safety and insurance requirements; and (4) any other requirement adopted to ensure safe and reliable passenger transportation service.
>
> (c) In regulating passenger taxicab or limousine transportation services under this section, a municipality is performing a governmental function. A municipality may carry out the provisions of this section to the extent the governing body of the municipality considers it necessary or appropriate.

TEX. LOC. GOV'T CODE § 215.004. This statute expresses a state policy in favor of allowing municipalities – rather than the market – to regulate competition. *See Southern Motor*, 471 U.S. at 63–64 (observing that Mississippi clearly articulated a restraint on trade when it authorized a commission to set rates). However, it does not authorize private taxicab companies to create monopolies or fix their own stand fees without municipal approval.

Freedom also points to regulations from various Dallas-Fort Worth area municipalities that regulate a number of aspects of the taxicab business, including permit granting, franchises, insurance, suspension and revocation of operating authority, restriction of transfer, fares, conduct and dress of drivers, and vehicle inspection. Freedom's App. to Mot. Summ. J. 1–216. Freedom, however, identifies no municipal policy that compels or permits its alleged anticompetitive practices. Federal and state courts in Texas have upheld anticompetitive taxicab practices that accord with specifically expressed municipal policies and actions. *See, e.g.*, *Woolen v. Surtran Taxicabs, Inc.*, 801 F. 2d 159, 164 (5th Cir. 1986) (upholding private company's monopoly where compelled by cities' policy to offer license to single operator only); *Indep. Taxicab Drivers' Emps. v. Greater Hous. Transp. Co.*, 760 F. 2d 607 (5th Cir. 1985) (upholding city's decision to grant taxicab company exclusive dominion over taxicab transportation); *Cont'l Bus Sys., Inc. v. City of Dallas*, 386 F. Supp. 359, 262–63 (N.D. Tex. 1974) (upholding cities' right to grant exclusive bus contracts). This case differs in that the municipal policies Freedom identifies do not compel or expressly permit the anticompetitive actions Plaintiff alleges Freedom engaged in. Thus, Freedom does not satisfy the first *Midcal* prong.

Freedom also fails to satisfy *Midcal*'s second prong. It points to no evidence that any municipality actively supervised its pricing or its merging with the other Holder Defendants. Freedom maintains that the relevant state statutes and the municipal laws that authorize cab permits and establish safety and insurance requirements constitute active supervision. This amount of authorization and regulation, however, does not rise to the level of active supervision. *See Midcal*, 445 U.S. at 105–06 (holding second prong not met where state did not establish prices, review reasonableness of price schedules, regulate terms of contracts, monitor market conditions, or engage in "pointed reexamination" of regulated program). Because Freedom can point to no active regulation of the taxicab market, it fails to meet the second *Midcal* prong. And as it satisfies neither prong, Freedom is not entitled to summary judgment on a state-action-immunity theory.

## CONCLUSION

For the reasons stated above, Yellow, Jet, and Irving are entitled to the relief they seek, but Freedom is not. Accordingly, the Court grants Yellow's, Jet's, and Irving's motions for partial summary judgment. The Court denies Freedom's motion for summary judgment.

Given the relief this Order grants to Yellow, Jet, and Irving, several of Plaintiff's claims against the Answering Defendants remain unaffected. All of Plaintiffs' claims remain as to Freedom, Eagle, U.S. Cab, Diamond, and State Taxicab. Plaintiffs' Clayton Act claims based on illegal mergers remain as to Yellow. Plaintiffs' price fixing claims and Clayton Act

claims based on illegal mergers remain as to Jet. Finally, all of Plaintiff's Sherman Act claims remain as to Irving.

Signed November 28, 2012.

_____
David C. Godbey
United States District Judge

ORDER – PAGE 17